**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**DEQUE SYSTEMS INC.,**

        **Plaintiff,**

**v.**

**BROWSERSTACK, INC., and**        Case No. _____
**BROWSERSTACK LIMITED, and**
**BROWSERSTACK SOFTWARE PVT.**
**LTD.,**

        **Defendants.**

## COMPLAINT

Plaintiff Deque Systems Inc. ("Deque" or "Plaintiff"), through its attorneys files this

Complaint against Defendants BrowserStack, Inc., BrowserStack Limited, and BrowserStack

Software Pvt. Ltd. ("BrowserStack" or "Defendants") and alleges as follows:

## INTRODUCTION

1.      This action involves claims against Defendants arising from their theft and misuse

of Deque's intellectual property. Deque brings this action to recover damages and obtain

injunctive relief resulting from Defendants' willful acts of copyright infringement, breach of

contract, and false advertising.

## PARTIES

2.      Plaintiff Deque Systems Inc. is a Virginia corporation having its principal place of

business located at 381 Elden Street, Suite 2000, Herndon, Virginia 20170.

3.      Upon information and belief, Defendant BrowserStack, Inc. is a Delaware

corporation with a principal place of business of 4512 Legacy Dr., Suite 100, Plano, TX 75024-

2186.

4.      Upon information and belief, Defendant BrowserStack Limited is an Irish private company limited by shares, with its principal office in Dublin, Ireland. Upon information and belief, Defendant BrowserStack Limited wholly owns both Defendant BrowserStack, Inc. and Defendant BrowserStack Software Pvt. Ltd.

5.      Upon information and belief, Defendant BrowserStack Software Pvt. Ltd. is an Indian private limited company, with its principal office in Mumbai, India.

6.      Unless specifically stated otherwise, the acts complained of herein were committed by, on behalf of, and/or for the benefit of Defendants.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§1331 and 1338(a) as an action arising out of violations of the copyright and trademark laws of the United States, 17 U.S.C. § 101 *et seq*., and 15 U.S.C. § 1051 *et seq*.

8.      This Court has supplemental jurisdiction over Deque's state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over Defendants because they have purposefully and intentionally availed themselves of commercial activities in the Commonwealth of Virginia, do business with clients, consumers, and markets within the Commonwealth of Virginia, and promote, market, support, and sell their products and services within this district.

10.     Upon information and belief, one or more employees of Defendants, acting on behalf of Defendants, agreed to Deque's Website Terms of Use and/or Deque's Pro Software License (as defined in ¶¶18, 23, *infra*) by using and/or purchasing Deque's axe DevTools® browser extension for Chrome, thus submitting to the personal jurisdiction and venue of this District and this Division with respect to all matters relating to Defendants' access or use of Deque's website, or arising out of or related to the terms of Deque's Pro Software License.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are subject to the court's personal jurisdiction, have committed unlawful acts at issue in this Complaint in this district, and, upon information and belief, have submitted to adjudicating this dispute in this District pursuant to Deque's Website Terms of Use and/or Deque's Pro Software License. Venue is also proper in this Division as the terms of Deque's Pro Software License provide for exclusive jurisdiction in the courts of the Commonwealth of Virginia sitting in Fairfax County, Virginia or in this judicial district.

## FACTUAL BACKGROUND

**Deque Accessibility Testing Software**

12.     Deque is a web accessibility software and services company. For over 20 years, it has been the leading provider of web and mobile accessibility solutions, including tools, services, and training to provide access to websites and internet software applications. Forrester Research, Inc. deemed Deque a leader in its latest report on digital accessibility platform vendors.

13.     Deque has helped thousands of businesses and organizations meet compliance goals and make the web accessible to all users. The principal mission of Deque is "Digital Equality," and it believes everyone, regardless of their ability, should have equal access to the information, services, applications, and other features of the internet. Deque's clients including technology leaders, large U.S. banks, insurance companies, retailers, airlines, hotel chains, and large government agencies.

14.     As part of its commitment to Digital Equality, Deque released its award-winning accessibility rules engine as open-source software in 2015. Deque's axe-core® is a continuously updated library of accessibility rules that help inform testers and web developers what is and isn't accessible to people with disabilities. Deque's axe-core® has been downloaded more than 1 billion times, and is the de facto standard for accessibility testing, including for Google,

Microsoft and the U.S. Department of Justice, among others. Deque's axe-core® is incorporated into numerous commercial automated accessibility testing products, including those from competitors of Deque, such as BrowserStack.

15.   Deque has also developed its own proprietary accessibility testing software, including: axe DevTools®, which provides accessibility testing software for web developers; axe Auditor®, which provides manual accessibility testing tools for quality assurance; and axe Monitor®, which provides dynamic scanning, monitoring, and reporting on the accessibility status of an entire website.

16.   Automated accessibility testing is when a rules engine, such as Deque's axe-core®, scans, or analyzes a web page for accessibility issues. These rules engines are built to test against accessibility standards which have predefined criteria for whether something is accessible. Automated testing tools can be browser extensions, like Deque's axe DevTools®, or rules-engines built into automated test environments.

17.   Based on a study conducted by Deque, it was determined that automated testing of web pages identified on average 57.38% of accessibility issues. In an effort to improve on this result, Deque created its Intelligent Guided Testing™ ("IGT"), which is semi-automated or wizard-based testing that covers many issues that previously could only be tested manually by accessibility experts. These additional issues are now detectable through a series of simple guided questions and exercises. Along with automated testing, using IGT will result in finding, on average, 80.39% of all accessibility issues.

18.   Starting in 2020, Deque incorporated its Intelligent Guided Testing™ into its proprietary accessibility testing software, including Deque's axe DevTools®. As part of introducing IGT, Deque also published its Rule Help Pages to provide guidance for the issues

assessed through IGT testing. The Rule Help Pages explain the issues identified by IGTs, their importance, and offers suggestions on how to correct them. The specific IGT issues go beyond the issues and rules contained in Deque's axe-core® open-source library, and are based on years of research by Deque's accessibility experts. The Rules Help Pages have been expanded, and continue to be available in Deque's products as the Doc-Issue-Help pages, currently on version v0.3.0.

19.      A unique and important part of Deque's accessibility testing for web developers are the axe DevTools® browser extensions for Google Chrome, Mozilla Firefox and Microsoft Edge browsers. The axe DevTools® browser extensions allow web developers to automatically test web applications to help identify and resolve common accessibility issues in a simple and easy-to-use interface, without requiring advanced accessibility knowledge. The browser extensions come in a free version, and also, for Chrome and Edge browsers, a Pro version. The Pro version offers a test record manager, testing of individual website components, to abilities to save, export, and share results, and Deque's Intelligent Guided Testing™, with access to the Doc-Issue-Help pages.

20.      Deque's axe DevTools® browser extension for Chrome has been installed in over 475,000 web browsers, with over 300,000 active weekly users. Due to its expertise and deep experience in this field, Deque and its products and services are widely considered to be the industry standard for web accessibility.

21.      Access to the axe DevTools® browser extension for Chrome can be obtained by any user through the Chrome Web Store[1]. Notice is provided on the page that "[u]se of this

---

[1] The extension can be accessed for installation at chromewebstore.google.com/detail/axe-devtools-web-accessib/lhdoppojpmngadmnindnejefpokejbdd.

extension is governed by this license agreement https://www.deque.com/terms-of-use/axe-ext/"
(Hereinafter the "Free Version License," a copy of which is attached hereto as **Exhibit A**). By
downloading and installing the axe DevTools® browser extension for Chrome from the Chrome
Web Store, users agree to be bound by the Free Version License.

22.    Once downloaded and installed on the Chrome browser, the first use of Deque's
axe DevTools® browser extension for Chrome also requires the user to agree to the Deque's
Website Terms of Use (attached hereto as **Exhibit B**). Prior to being able to use the axe
DevTools® browser extension for Chrome, a user is presented with a prompt to accept Deque's
Website Terms of Use, as shown in **Figure 1** below:



**<u>Figure 1. Screenshot of Acceptance Requirement for axe DevTools® Browser Extension</u>**

23.    The Deque's Website Terms of Use also provides that use of Deque's software,
including the axe DevTools® browser extension for Chrome, is governed by the terms of an
accompanying end user license agreement.

24.     The Free Version License, agreed to when downloading the axe DevTools® browser extension for Chrome as noted above, grants a licensee (defined therein as a "Developer") a non-exclusive, non-transferable right to access and use the axe DevTools® browser extension for Chrome (defined therein as the "Service") "solely for the purpose of conducting accessibility testing and submitting, or permitting access to, Developer Test Data."

25.     Among other things, the Free Version License further prohibits a Developer from decompiling, disassembling, decrypting, or reverse engineering the "Service," attempting "to derive the source code for any part of the Service," modifying or creating derivative works of the Service, publish or disclose results of any benchmark tests or other evaluation run on the Service, and using or copying the Service "except as expressly provided" in the Free Version License.

26.     As shown in **Figure 2** below, upon signing up for the Pro version of the axe DevTools® browser extension for Chrome, a user is prompted to register and accept the terms of a software license found at www.deque.com/terms-of-use/axe-devtools-online (hereinafter "Pro Software License," attached hereto as **Exhibit C**).



**Figure 2. Screenshot of registration prompt for axe DevTools® browser extension.**

27.     The Pro Software License applies to the use of any axe branded product, including the axe DevTools® browser extension for Chrome, and all of Deque's axe-branded products are collectively defined as the "Product" under the Pro Software License.

28.     Among other things, users of the Pro version of the axe DevTools® software agree under the Pro Software License that they may not:

- "Decompile, disassemble, decrypt, or reverse engineer the Product or attempt to derive the source code for any part of the Product;"

- "Modify or create derivative works of the Product;"

- "Share the Product access credentials with any other resource, including, but not limited to, where licensed on a named-user basis, permitting more than one natural person to access or use the Product, whether concurrently, non-concurrently, or otherwise;"

- "Publish or disclose to any third party the results of any benchmark tests or other evaluation run on the Product;" or

- "Otherwise use or copy the Product except as expressly provided in the Terms."

29.     The Pro Software License further includes a provision granting Deque the right to annually audit any customer's use of the licensed software and compliance with the License terms.

**Deque's Copyrights**

30.     One of Deque's most valuable assets is its intellectual property, which Deque relies on to protect its investments and legal rights in its web accessibility tools. To protect its Rules Help Pages and its axe DevTools® browser extension for Chrome software, Deque has complied in all respects with Title 17 of the United States Code, and all other laws governing copyrights, to secure copyright registrations for both.

31.     Deque is the owner of the following registrations for versions of its axe DevTools® browser extension for Chrome software (collectively referred to as the "Copyrighted Software Works"):

| Copyright Title | Registration No. | Year of Creation |
|---|---|---|
| Axe Dev Tools v3.7.0. | TX0009335645 | 2018 |
| Axe Dev Tools v3.8.0. | TX0009335914 | 2019 |
| Axe Dev Tools v3.9.0. | TX0009340330 | 2019 |
| Axe Dev Tools v3.10.0. | TX0009340341 | 2019 |
| Axe Dev Tools v4.0.0. | TX0009335692 | 2019 |
| Axe Dev Tools v4.1.0. | TX0009336616 | 2019 |
| Axe Dev Tools v4.2.0. | TX0009336019 | 2019 |
| Axe Dev Tools v4.3.0. | TX0009338465 | 2019 |
| Axe Dev Tools v4.4.0. | TX0009336533 | 2020 |
| Axe Dev Tools v4.5.0. | TX0009337562 | 2020 |
| Axe Dev Tools v4.6.0. | TX0009336758 | 2020 |
| Axe Dev Tools v4.6.2. | TX0009336764 | 2020 |
| Axe Dev Tools v4.7.0. | TX0009336762 | 2020 |
| Axe Dev Tools v4.8.0. | TX0009336375 | 2021 |
| Axe Dev Tools v4.8.5. | TX0009336379 | 2021 |
| Axe Dev Tools v4.9.0. | TX0009336480 | 2021 |

(Attached hereto as **Exhibit D** is the U.S. Copyright Office registration information for each of the Copyrighted Software Works.)

32.     Deque is the owner of the following registration for the original version of its Rules Help Pages (referred to as the "Copyrighted Library"):

| Copyright Title | Registration No. | Year of Creation |
|---|---|---|
| Rules Help Pages | TX 9-359-731 | 2020 |

(Attached hereto as **Exhibit E** is the U.S. Copyright Office registration information for the Copyrighted Library.)

33.     The Copyrighted Software Works and Copyrighted Library (collectively the "Copyrighted Works") were created, developed, and owned by Deque, by and through its employees or pursuant to a work made for hire agreement, have been created through the expenditure of considerable labor, skill, and judgment on the part of Deque, and contain original text and are copyrightable subject matter under the laws of the United States. The U.S. copyright registrations for each of the Copyrighted Works are valid and enforceable, and all rights, title and interest in and to them belong solely to Deque.

**BrowserStack's Accessibility Toolkit**

34.     BrowserStack markets and sells a browser extension for Google Chrome and Microsoft Edge "for testing the accessibility of your website or web application." (Hereinafter referred to as the "BrowserStack Accessibility Toolkit.")[2]

35.     The BrowserStack Accessibility Toolkit is available for anyone to use with Google Chrome, and downloadable from the Chrome Web Store, at

---

[2] *See* https://www.browserstack.com/docs/accessibility/overview/install-browser-extension.

https://chromewebstore.google.com/detail/accessibility-toolkit/fmkhjeeeojocenbconhndpiohohajokn.

36.    The BrowserStack Accessibility Toolkit contains code copied from (and thus substantially similar to) Deque's axe DevTools® browser extension for Chrome. For example, version 1.0.0.4 of the BrowserStack Accessibility Toolkit contains a file titled "IGTRules.8548b9b3.js," containing java script that is copied directly from at least version 4.9.0 of Deque's axe DevTools® browser extension for Chrome, as shown in the table below:

| Deque 4.9.0:<br>Formatted excerpt of file "vendor.bundle.js" | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "IGTRules.8548b9b3.js" |
|---|---|
| "keyboard-inaccessible":{<br><br>"shortText":"Action cannot be performed by keyboard alone",<br><br>"issueDescText":"General - There is no way to perform the function using only the keyboard."}, | [D.KEYBOARD_INACCESSIBLE]: {<br><br>shortText: "Function cannot be performed by keyboard alone",<br><br>issueDescText: "There is no way to perform the function using only the keyboard on the same screen or on a qualifying conforming alternate version.", |
| "focus-indicator-missing":{<br>"shortText":"Focus indicator is missing",<br>"issueDescText":"The visual focus indicator is missing altogether."}, | [D.FOCUS_INDICATOR_MISSING]: {<br>shortText: "Focus indicator is missing",<br>issueDescText: "The visual focus indicator is missing altogether.", |
| "focus-on-hidden-item":{<br>"shortText":"Hidden or empty element receives focus",<br>"issueDescText":"Keyboard focus or touch screen swiping falls on an element that is hidden or empty."}, | [D.FOCUS_ON_HIDDEN_ITEM]: {<br>shortText: "Hidden or empty element receives focus",<br>issueDescText: "Keyboard focus or touch screen swiping falls on an element that is hidden or empty." |
| "aria-role-missing":{<br>"shortText":"Role: The element\'s role is missing or incorrect",<br>"issueDescText":"The element\'s role is missing or is not appropriate for the element\'s function."}, | [D.ARIA_ROLE_MISSING]: {<br>shortText: "Role: The element's role is missing or incorrect",<br>issueDescText: "The element's role is missing or is not appropriate for the element's function.", |

| Deque 4.9.0:<br>Formatted excerpt of file "vendor.bundle.js" | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "IGTRules.8548b9b3.js" |
|---|---|
| "aria-state-property-missing":{<br><br>"shortText":"States/Properties: The element has missing or incorrect states or properties",<br><br>"issueDescText":"The element has missing or incorrect states or properties that are necessary for screen reader users to interact with or understand the content conveyed by the element."}, | [W.ACCESSIBLE_STATES]: {<br><br>    shortText: "Element has missing or incorrect states",<br><br>    issueDescText: "The element has missing or incorrect states or properties that are necessary for screen reader users to interact with or understand the content conveyed by the element." |
| "focus-window-launches":{<br><br>"shortText":"New window launched when component receives focus",<br><br>"issueDescText":"New window launched when a component receives focus."}, | D.FOCUS_WINDOW_LAUNCHES]: {<br><br>    shortText: "New window launched when component receives focus",<br><br>    issueDescText: "New window launched when a component receives focus.", |
| "aria-name-missing-incorrect":{<br><br>"shortText":"Name: The element\'s name is missing or incorrect",<br><br>"issueDescText":"The element\'s accessible name is missing or is not appropriate for the element\'s purpose."}, | [W.ACCESSIBLE_NAME]: {<br><br>    shortText: "Element does not have an appropriate accessible name",<br><br>    issueDescText: "The element's accessible name is missing or is not appropriate for the element's purpose.", |

37.     In another example, version 1.0.0.4 of the BrowserStack Accessibility Toolkit contains a file titled "default.1bfa8a9b.js," containing java script that is copied directly from at least version 4.9.0 of Deque's axe DevTools® browser extension for Chrome, as shown in the following table below:

| Deque 4.9.0:<br>Formatted excerpt of file "panel.bundle.js" | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "default.1bfa8a9b.js" |
|---|---|
| ```
}] : [{
        id: e + "-false",
        value: "false",
        label: f.a`No, there is no alternative`
    }, {

        id: e + "-true-alternative",
        value: "true",
``` | ```
u.createElement(ir, {
        ariaLabelText: "No, there is no alternative.",
        id: pn.NO,
        labelText: "No, there is no alternative.",

u.createElement(ir, {
        ariaLabelText: "Yes, there is an alternative and it is in the tab order.",
``` |

| Deque 4.9.0:<br>Formatted excerpt of file "panel.bundle.js" | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "default.1bfa8a9b.js" |
|---|---|
| label: f.a`Yes, there is an alternative AND the alternative is in the tab order`<br>    }, {<br><br><br><br>        id: e + "-false-no-alternative",<br>        value: "false-no-alternative",<br>        label: f.a`Yes, there is an alternative but it is not in the tab order`<br>    }] | id: pn.YES_IN_ORDER,<br>        labelText: "Yes, there is an alternative and it is in the tab order.",<br><br>u.createElement(ir, {<br>        ariaLabelText: "Yes, there is an alternative but it is not in the tab order.",<br>        id: pn.YES_NO_IN_ORDER,<br>        labelText: "Yes, there is an alternative but it is in the tab order.", |

38.    The BrowserStack Accessibility Toolkit further contains substantial amount of text copied verbatim from Deque's Rules Help Pages and/or its Doc-Issue-Help pages. In the same file titled "IGTRules.8548b9b3.js" discussed above, text appearing under a heading of "How to Fix" is the same text appearing in the How to Fix sections for two different issues in the Rules Help Pages, as shown in the table below:

| Deque Rules Help Pages | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "default.1bfa8a9b.js" |
|---|---|
| (Issue: keyboard-inaccessible)<br><br>**How To Fix**<br><br>**Fix this issue by ensuring the component can be used by the keyboard.**<br><br>Utilizing standard HTML form controls and link elements guarantees keyboard operation. User agents provide the keyboard operation of standard controls and additionally map them to an accessibility API. The API is then used by assistive technologies to extract the necessary information and relate them to the user. Standard controls and links include:<br><br>• `<a>`<br>• `<button>`<br>• `<input>`(various types including, but not limited to: "text", "checkbox", "radio")<br>• `<select>`<br>• `<textarea>`<br><br>If you create a custom version of a native HTML element or a custom control or widget that does not have a native HTML equivalent, you must add keyboard focusability (via tabindex="0") and keyboard events via JavaScript as well as the relevant element role(s) using ARIA. | [D.KEYBOARD_INACCESSIBLE]: {<br><br>................<br><br>    howToFix: `Fix this issue by ensuring the component can be used by the keyboard.<br><br>    Utilizing standard HTML form controls and link elements guarantees keyboard operation. User agents provide the keyboard operation of standard controls and additionally map them to an accessibility API. The API is then used by assistive technologies to extract the necessary information and relate them to the user. Standard controls and links include:<br><br>1. `<a>`<br>2. `<button>`<br>3. `<input>`(various types including, but not limited to: "text", "checkbox", "radio")<br>4. `<select>`<br>5. `<textarea>`<br><br>    If you create a custom version of a native HTML element or a custom control or widget that does not have a native HTML equivalent, you must add keyboard focusability (via tabindex=\u201D0\u201D) and keyboard events via JavaScript as well as the relevant element role(s) using ARIA.` |

| Deque Rules Help Pages | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "default.1bfa8a9b.js" |
|---|---|
| (Issue: focus-indicator-missing)<br><br>**How To Fix**<br>**Common keyboard focus indicator solutions include:**<br><br>1. A 2px box around the focused element<br>2. A change in the background color of the focused element<br>3. The addition of an icon, such as an arrow, next to a menu item<br>4. The addition of a thick line under or next to the focused element<br>5. A distinctive change to the text of the component such as making it bold and/or underlined<br>6. Use the default browser focus indicator.<br><br>NOTE: Since each browser has its own default focus indicator style, check each of the major browsers (Chrome, Firefox, Edge, IE, Safari) to ensure the default focus indicator is visible as you tab through the page.<br><br>A keyboard focus indicator can take different forms; it does not have to be a boring box. But the goal is to provide a difference in contrast between a component's default and focused states of at least 3 to 1 or another distinctive visual change. | [D.FOCUS_INDICATOR_MISSING]: {<br><br>................<br><br>tags: ["WCAG247"],howToFix: `Common keyboard focus indicator solutions include:<br><br>1. A 2px box around the focused element<br><br>2. A change in the background color of the focused element<br><br>3. The addition of an icon, such as an arrow, next to a menu item<br><br>4. The addition of a thick line under or next to the focused element<br><br>5. A distinctive change to the text of the component such as making it bold and/or underlined<br><br>6. Use the default browser focus indicator.<br><br>NOTE: Since each browser has its own default focus indicator style, check each of the major browsers (Chrome, Firefox, Edge, IE, Safari) to ensure the default focus indicator is visible as you tab through the page.<br><br>A keyboard focus indicator can take different forms; it does not have to be a boring box. But the goal is to provide a difference in contrast between a component's default and focused states of at least 3 to 1 or another distinctive visual change.` |

39.     As a result of the extensive copying of code from Deque's axe DevTools® browser extension for Chrome and from Deque's Rules Help Pages, the BrowserStack Accessibility Toolkit is an unauthorized derivative work of the Deque's axe DevTools® browser extension for Chrome and the Rules Help Pages.

40.     The copying of code from Deque's axe DevTools® browser extension for Chrome and Rules Help Pages by Defendants is so pervasive and blatant within the BrowserStack

15

Accessibility Toolkit that BrowserStack actions cannot be characterized as accidental, and instead were intentional and willful.

41.     Defendants had access to Deque's axe DevTools® browser extension for Chrome, and thus the Rules Help Pages, through multiple purchases of the Pro version and personal registrations by employees or other representatives of Defendants.

42.     For example, on or about November 30, 2020, Stebin Sunny, a Senior Test Engineer employed by BrowserStack and located in Mumbai, India, purchased at least six licenses for the axe DevTools® browser extension for Chrome, which renew on an annual basis.

43.     On or about April 21, 2021, an additional renewing license for the axe DevTools® browser extension for Chrome was purchased by a user through an email address of web@browserstack.com.

44.     The purchases described herein provided BrowserStack with access to and use of at least version 4.9.0 of the axe DevTools® browser extension for Chrome, and subsequent versions.

45.     At least nine different individuals, utilizing email addresses from the browserstack.com domain, and, on information and belief employed by BrowserStack at the time, have registered for use of the axe DevTools® browser extension for Chrome. The individuals, and their apparent BrowserStack job title, are:

      (a)     Sonu R (sonu.r@browserstack.com)  -  Engineering Manager QA

      (b)     Kush Shah (kush@browserstack.com)  -  QA Engineering Manager

      (c)     Ribin Roy (ribin@browserstack.com)  -  Senior Front End Manager

      (d)     Sadaat M (sadaat@browserstack.com)  -  Lead Software Development Engineer Test

      (e)     Aman Pandey (aman@browserstack.com)  -  Senior Software Engineer

(f)     Abhi Singh (abhi.s@browserstack.com)  -  Senior Customer Engineer

(g)     Amar Ahuja (amar.a@browserstack.com)  -  Software Development Engineer Test

(h)     Manoj Gupta (manoj@browserstack.com)  -  Senior Frontend Developer

(i)     Apurv Jain (apurv@browserstack.com)  -  Principal Product Manager

46.     BrowserStack's registration and purchases of the axe DevTools® browser extension for Chrome required BrowserStack's employees or other representatives, to agree to the Deque's Website Terms of Use and the Pro Software License, thus causing Defendants to enter into agreements with Deque regarding access and use of the axe DevTools® browser extension for Chrome.

47.     Installing Deque's axe DevTools® browser extension allows access to parts of the software code for the extension, as well as the Rules Help Pages, including parts that were incorporated into BrowserStack's Accessibility Toolkit as shown in the excerpts depicted in paragraphs 36-38 above.

48.     On information and belief, one or more of the above employees of BrowserStack were responsible for, worked on, or otherwise associated with the development, creation and deployment of the BrowserStack Accessibility Toolkit.

49.     In May or June 2023, BrowserStack began rolling out its Accessibility Toolkit. As part of the rollout process, BrowserStack published a webinar with multiple speakers discussing the BrowserStack Accessibility Testing product.[3] The webinar is presented by Apurv Jain,

---

[3] *See* [Webinar] Introducing BrowserStack Accessibility Testing: Your accessibility super app, posted May 31, 2023 at https://www.youtube.com/watch?v=BJHCHS0W2Gk (hereinafter the "May 31 Webinar").

"Product Manager at BrowserStack," and Arpit Jain, "Product Marketing Manager at BrowserStack."

50.     During the webinar, the speakers mention that BrowserStack had been working on its Accessibility Testing product "for the past one year" and that the product would address "a key problem in the accessibility testing industry." The speakers also refer to the product as a "super app" and state that the product includes a Google Chrome browser extension.

51.     The description for the webinar states that: "BrowserStack's newly launched Accessibility Testing enables organizations to make accessibility a hassle-free priority. Now identify, manage, and report issues 5X faster while also monitoring the accessibility of your website using a single platform."

52.     On information and belief, Apurv Jain, Product Manager at BrowserStack who presented in the May 31 Webinar is the same Apurv Jain who registered as a user for the axe DevTools® browser extension for Chrome.

**BrowserStack's False Advertising**

53.     BrowserStack has also advertised the superiority of its Accessibility Testing products by making false and/or misleading statements.

54.     In one example found at https://www.browserstack.com/dg/browserstack-accessibility-testing-vs-deque (the "BrowserStack False Advertisement"), BrowserStack exhorts prospective customers to "upgrade from Deque, BrowserStack is 5x faster."

55.     The BrowserStack False Advertisement includes a table purportedly comparing "BrowserStack Accessibility Testing" to Deque that contains materially false statements. The table is shown below in Figure 3.

**Figure 3. Screenshot of comparison table in BrowserStack False Advertisement.**

56.     The table in Figure 3 asserts that "Automatic Tests" performed by Deque are "Slow & time-consuming," while those performed in BrowserStack Accessibility Testing are "5x faster."

57.     BrowserStack's comparative statement is a specific, quantifiable and measurable claim based on the speed of Deque's and BrowserStack's products. At a minimum, BrowserStack's statement implies that testing data supports the conclusion that "Automatic Tests" performed in BrowserStack Accessibility Testing is five times faster. On information and belief, no such testing exists, or, if testing exists, it is does not reliably prove the assertion of "5x faster."

58.     Figure 3 shows BrowserStack also claims Deque's software "does not have a central dashboard" and "does not support" multi-page scanning, report consolidation, or de-duplication of issues. These are also materially false and/or misleading statements.

Without any supporting evidence, BrowserStack's false and misleading statements have impugned the integrity and effectiveness of Deque's accessibility testing software products.

59.     Defendants' false and misleading statements have wrongfully diverted profits from Deque, unjustly enriched Defendants, and harmed Deque's goodwill by diluting the perceived quality and value of Deque's products in the mind of customers and prospective customers. Defendants' false and misleading statements are also damaging to the consuming public.

60.     Deque has sustained and will continue to sustain irreparable damages as a result of Defendants' wrongful conduct, unless enjoined.

### FIRST CLAIM FOR RELIEF
### (FEDERAL COPYRIGHT INFRINGEMENT, 17 U.S.C. § 501(A))

61.     Deque restates and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

62.     All of the Copyrighted Works are original works of authorship of Deque. Deque is the lawful owner and holder of the copyrights in each of its respective Copyrighted Works.

63.     BrowserStack's creation, marketing, and sale of the software copied from the Copyrighted Works was unauthorized, intentional and willful, and infringed Deque's copyrights and harmed Deque.

64.     The willful and unauthorized copying by BrowserStack of the Copyrighted Works, as well as BrowserStack's production, distribution, and sale of its Accessibility Toolkit (the "Infringing Software") has resulted in wrongful profits to BrowserStack, the full extent of which is yet undetermined, and losses to Deque, the full extent of which is yet undetermined.

65.     By reason of BrowserStack's willful infringement of the Copyrighted Works, BrowserStack has also diminished the value of Deque's goodwill and reputation, resulting in monetary damage and irreparable injury to Deque.

66.     By reason of BrowserStack's willful infringement of the Copyrighted Works, BrowserStack has irreparably injured Deque's rights in the Copyrighted Works and, unless enjoined by this Court, will continue to do so.

<div align="center">

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

</div>

67.     Deque restates and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

68.     Defendants, through one or more representatives of Defendants, entered into a valid agreement with Deque by agreeing at Deque's Website Terms of Use and/or the Pro Software License. Both the Website Terms of Use and the Pro Software License are governed by Virginia substantive law.

69.     The Pro Software License requires any user, including BrowserStack, to refrain from, among other things, creating derivative works of the axe DevTools® browser extension for Chrome, or otherwise using the software except as provided under the agreement.

70.     By incorporating and/or copying portions of the axe DevTools® browser extension for Chrome into BrowserStack's Accessibility Toolkit, BrowserStack has violated at least the Pro Software License.

71.     The Pro Software License further prohibits any user, including BrowserStack, to refrain from publishing the results of any benchmark tests or other evaluation run on the axe DevTools® browser extension for Chrome.

72.     By advertising that BrowserStack is 5x faster than Deque, BrowserStack has published a purported evaluation run on the axe DevTools® browser extension for Chrome, in violation of at least the Pro Software License.

73.     Deque has performed all of its obligations under the Deque's Website Terms of Use and/or the Pro Software License.

74.     As a result of BrowserStack's breaches, Deque has been damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(VIOLATION OF LANHAM ACT SECTION 43a, 15 U.S.C. §1125)**

75.     Deque restates and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

76.     BrowserStack's false and/or misleading statements, false description(s) of fact, and/or false or misleading representation(s) of fact, as set forth above, constitute false advertising in violation of Section 43a of the Lanham Act, 15 U.S.C. § 1125(a).

77.     BrowserStack has made and distributed, in commercial advertising or promotion in interstate commerce and in this District, false descriptions of fact, and/or misleading representations of fact which misrepresents the nature, characteristics, and/or qualities of BrowserStack's and/or Deque's goods, services, or commercial activities, as to a purported benefit of BrowserStack's product when compared to Deque's competing product.

78.     These false and misleading representations of fact actually deceive, or have a tendency to deceive, a substantial segment of Deque's customers and potential customers. This deception is material in that it is likely to influence the purchasing decisions of Deque's customers and potential customers.

79.     As a result of BrowserStack's unlawful conduct, Deque has suffered and will continue to suffer significant monetary and reputational injury.

80.     In addition, as described more fully above, BrowserStack has caused, and will continue to cause, immediate and irreparable injury to Deque for which there is no adequate remedy at law. As such, Deque is entitled to the preliminary and permanent injunctive relief specified below under 15 U.S.C. § 1116.

81.     Pursuant to 15 U.S.C. § 1117, Deque is entitled to recover from BrowserStack the damages sustained by Deque as a result of BrowserStack's acts in violation of Section 43 of the Lanham Act.

82.     Pursuant to 15 U.S.C. § 1117, Deque is also entitled to recover from BrowserStack the gains, profits, and advantages that it has obtained as a result of its unlawful acts.

83.     Pursuant to 15 U.S.C. § 1117, Deque is further entitled to recover the costs of this action. Moreover, on information and belief, BrowserStack's conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Deque to recover additional damages and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF
## (VIOLATION OF Va. CODE §18.2-216)

84.     Deque restates and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

85.     BrowserStack has violated and continues to violate Section 18.2-216 of the Virginia Code by making, in an advertisement, false and/or misleading statements, false description(s) of fact, and/or false or misleading representation(s) of fact, as set forth above.

86.     BrowserStack has made false descriptions of fact, and/or misleading representations of fact which misrepresent the nature, characteristics, and/or qualities of BrowserStack's and/or Deque's goods, services, or commercial activities, as to a purported benefit of BrowserStack's product when compared to Deque's competing product, with intent to sell BrowserStack's product or induce the public to enter into an obligation regarding BrowserStack's product.

87.     These false and misleading representations of fact actually deceive, or have a tendency to deceive, a substantial segment of Deque's customers and potential customers. This deception is material in that it is likely to influence the purchasing decisions of Deque's customers and potential customers.

88.     As a result of BrowserStack's unlawful conduct, Deque has suffered and will continue to suffer significant monetary and reputational injury.

89.     By reason of BrowserStack's conduct, Deque is entitled to recover full damages from Defendants.

90.     By reason of BrowserStack's conduct, Deque is entitled to recover reasonable attorneys' fees under Va. Code § 59.1-68.3.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Plaintiff Deque Systems Inc. prays that this Court enter judgment in its favor and against Defendants, and that the Court order as follows:

a.     Entry of judgment in favor of Deque against Defendants, that:

1.   Defendants have infringed Deque's copyright rights;

2.   Defendants have breached their contractual obligations to Deque; and

3.   Defendants have committed false advertising.

b.      That Defendants, and all agents or persons and entities in active concert or participation with Defendants, be preliminarily and permanently enjoined from producing, utilizing, copying, reproducing, distributing, selling or displaying materials that infringe the Copyrighted Works, and immediately surrender to Plaintiff all Infringing Software in their possession, custody or control;

c.      That Plaintiff be awarded its actual damages from Defendants sustained as a result of Defendants' copyright infringement of the Copyrighted Works, breach of contracts and false advertising;

d.      That Defendants be required to account for and to disgorge all profits obtained as a result of their copyright infringement;

e.      That Plaintiff be awarded the value of the damage to its goodwill and reputation sustained as a result of Defendants' copyright infringement, and false advertising;

f.      That Plaintiff be granted preliminary and permanent injunctive relief requiring Defendants or any of their representatives, agents, or affiliates to permit a audit of Defendants' use of Deque products pursuant to the terms of the Pro Software License;

g.      That Plaintiff be awarded its costs and attorney's fees incurred in bringing this action;

h.      That Plaintiff be awarded treble damages in an amount to be proven at trial;

i.      That Defendants be ordered to pay Plaintiff's pre-judgment and post-judgment interest; and

j.      That Plaintiff be granted such other and further legal and equitable relief against Defendants as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Deque Systems Inc. hereby requests a trial by jury on all issues triable by a jury.


Dated:  February 13, 2024                    Respectfully submitted,


                                             D**YKEMA** G**OSSETT** **PLLC**

                                             By: ___/s *Charles W. Chotvacs*_____
                                                  Charles W. Chotvacs (VA Bar #70045)
                                                  1301 K Street NW
                                                  Suite 1100 West
                                                  Washington, D.C. 20005
                                                  Telephone: (202) 906-8600
                                                  Facsimile: (202) 906-8669


                                                  J. Daniel Harkins (*pro hac vice* forthcoming)
                                                  dharkins@dykema.com
                                                  Ryan D. Borelo (*pro hac vice* forthcoming)
                                                  rborelo@dykema.com
                                                  112 East Pecan Street, Suite 1800
                                                  San Antonio, Texas 78205
                                                  Telephone: (210) 554-5500
                                                  Facsimile: (210) 226-8395


                                                  Steven McMahon Zeller (*pro hac vice* forthcoming)
                                                  szeller@dykema.com
                                                  10 South Wacker Drive, Suite 2300
                                                  Chicago, Illinois 60606
                                                  Telephone: (312) 876-1700
                                                  Facsimile: (312) 876-1155


                                             *Attorneys for Plaintiff Deque Systems Inc.*


4870-7740-5850.6

26