UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

        Plaintiff,

  v.

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

        Defendants.

Case No. 1:24-cv-00217-AJT-WEF

**DEFENDANTS' OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   RELEVANT BACKGROUND ................................................................................... 2

    A.    The First Amended Complaint............................................................................. 2

    B.    Relevant Meet and Confer History and Discovery Efforts................................... 3

III.  LEGAL STANDARD.................................................................................................. 7

IV.   ARGUMENT............................................................................................................... 8

    A.    The Court Should Deny Plaintiff's Motion to Compel Because Plaintiff Has Not Met and Conferred in Good Faith to Narrow the Issues; These Issues Are Not Ripe or Are Otherwise Moot........................................................................ 8

    B.    The Documents Requested in Plaintiff's RFPs Are Unwarranted Under Rule 26's Proportionality Standard. ........................................................................... 9

        1.    Defendants Have Already Produced Documents "Material to the Question of the Scope of Infringement" ..................................................... 9

        2.    Defendants Have Already Produced Documents "Material to the Question of Damages and Causation" ..................................................... 12

    C.    Plaintiff's Waiver Argument Lacks Merit and Should Be Disregarded............... 13

C.    CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Ambu, Inc. v. Kohlbrat & Bunz Corp.*,
  No. 5:99CV20–MCK, 2000 WL 17181 (W.D.N.C. 2000) ...................................................... 7

*Donnelly v. Arringdon Dev., Inc*,
  No. 1:04CV889, 2005 WL 8167556 (M.D.N.C. Nov. 8, 2005) ............................................ 13

*Faulkner v. Nat'l Geographic Soc.*,
  576 F. Supp. 2d 609 (S.D.N.Y. 2008). ................................................................................. 11

*Shao v. Allstate Ins. Co.*,
  No. 1:23CV809 (RDA/WEF), 2024 WL 1014172 (E.D. Va. Feb. 5, 2024) ......................... 7, 8

**Statutes and Rules**

17 U.S.C. § 412 ............................................................................................................................ 11

17 U.S.C. § 504 ...................................................................................................................... 11, 12

Civil Local Rule 37 ........................................................................................................................ 8

Fed. R. Civ. Proc. 26 ............................................................................................................ *passim*

Fed. R. Civ. Proc. 34 ................................................................................................................ 8, 13

Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd. (collectively, "Defendants" or "BrowserStack") hereby respectfully submit their opposition ("Opposition") to Plaintiff Deque Systems Inc.'s Motion to Compel Production of Documents (D.I. 72) ("Motion to Compel").

## I.     INTRODUCTION

Plaintiff's Motion to Compel is a pretextual motion to extend the case schedule to accommodate Plaintiff's untimely expert disclosures, for which there is no good cause and, if permitted to do so, would severely prejudice Defendants.[1] Plaintiff omits a critical fact in its Motion to Compel: that Plaintiff has not inspected *the most relevant discovery material* from Defendants in this case—the full source code repository and revision history ("Source Code Repository") for BrowserStack's Accessibility Toolkit (the "Accused Product"), which has been available to Plaintiff for nearly three months. The Source Code Repository is the central evidence in this copyright infringement case. It reflects, among other things, information related to the Accused Product's development, coding, control history, commits,[2] components, creative expression, organization, sequencing, logic flows, decision trees, features, elements, and functionality. The Source Code Repository also would reflect any information concerning any purported copying therein of literal or non-literal elements of Plaintiff's asserted copyrighted works. Indeed, Defendants prioritized and undertook the burden to expeditiously collect the Source Code Repository from India to transport and make it available to Plaintiff for inspection in this District at Plaintiff's request (and to help facilitate settlement). Although Defendants

---

[1] *See* Defendants' Opposition to Motion for Extension of Pretrial Deadlines (filed concurrently herewith).

[2] A "commit" is a snapshot of the full repository at every point in time at which a change was made to any file or group of file in the repository.

1

have made the Source Code Repository available since at least July 3, 2024, Plaintiff has not inspected it.

If Plaintiff truly sought relevant discovery from Defendants, it would have reviewed the Source Code Repository, the most salient information in this case.  Instead, Plaintiff misrepresents the parties' prior meet and confer efforts and has now manufactured a discovery dispute to excuse its own dilatory conduct, to burden and prejudice Defendants, and to engage in an eleventh-hour fishing expedition to prolong this litigation.  It was not until August 12, 2024—three days after Plaintiff's deadline for its Rule 26(a)(2) expert disclosures had passed, and over two months after Defendants had served their objections and responses (which included the scope of Defendants' agreements to produce and invited Plaintiff to meet and confer on many objected-to document requests)—that Plaintiff, for the first time, raised any of its discovery-related issues with Defendants.  Before Plaintiff filed its motion, the parties had only a single call on these issues on September 4, 2024, and Plaintiff subsequently refused outright to participate in any further conference before moving to compel.  Plaintiff's premature motion seeks relief on issues that are unripe or moot, and which otherwise lack merit under Rule 26's proportionality standard.  Plaintiff's Motion to Compel should be denied in its entirety.

## II.  RELEVANT BACKGROUND

### A.  The First Amended Complaint

This is a copyright infringement case where Plaintiff has accused BrowserStack's Accessibility Toolkit (the "Accused Product") to be an "unauthorized derivative work of Deque's axe DevTools® browser extension for Chrome and the Rules Help Pages" (the "Asserted Works") based on certain text allegedly copied from the Asserted Works into the Accused Product.  *See* First Amended Complaint ("FAC") (D.I. 44-1) ¶ 47.  Plaintiff also alleges

2

separate false advertising claims based on a statement on BrowserStack's website that the Accused Product is "5x faster" than Deque, and that Deque's software "does not have a central dashboard" and "does not support" "multi-page scanning, report consolidation, or de-duplication of issues." *See id.* ¶¶ 65-67.

Plaintiff further claims that Defendants' alleged copying and their creation of a derivative work, as well as the publication of this allegedly false statement (characterized as alleged results of "benchmark tests or other evaluation run" on the axe DevTools® product) breached Plaintiff's Pro Software License. *See id.* ¶¶ 80-83.[3] Plaintiff also claims Defendants were unjustly enriched by what Plaintiff generally alleges as "misappropriation of the content, design and text, including the procedures, processes and methods of operation" of Plaintiff's axe DevTools® browser extension for Chrome, Rules Help Pages, and Doc-Issue-Help pages. *See id.* ¶ 105. Defendants have denied all of Plaintiff's claims and any liability. *See* D.I. 50, 51.

**B. Relevant Meet and Confer History and Discovery Efforts**

Plaintiff served its first set of requests for production ("RFPs") on Defendants on May 9, 2024. Defendants timely served their written objections to each RFP on May 24, 2024 ("May 24 Objections") (D.I. 72-1), and their written responses to each RFP subsequently on June 10, 2024 ("June 10 Responses") (D.I. 72-2). In their June 10 Responses, Defendants expressly identified for Plaintiff those RFPs for which they would search and produce documents, as well as the scope of their agreements to produce. *See generally* D.I. 72-2. In particular, Defendants agreed to undertake collection and production of the entire Source Code Repository (including revision history) for all versions of the Accused Product and make the Source Code Repository available

---

[3] Although in its Motion to Compel Plaintiff cites various other provisions in the Pro Software License (*see* Motion to Compel at 5), Plaintiff does not allege that Defendants breached any of these provisions in its First Amended Complaint. *See, e.g.*, FAC ¶¶ 80-83.

3

for Plaintiff's inspection subject to the terms of an adequate protective order. *See id.* at Responses to RFPs 1, 2, 27. Defendants also agreed to search for and produce other categories of documents, including, *inter alia*:

- Documents sufficient to show the history of the Accused Product's availability on the Chrome Web Store (*see id*. at Response to RFP 4);

- Documents referring or relating to the alleged copying of Plaintiff's asserted copyrighted works (*see id*. at Responses to RFPs 9, 10, 12, 13, 19, 24);

- Documents related to the alleged false advertising at issue (*see id*. at Responses to RFPs 9, 10, 13, 26, 38, 39, 43);

- Documents sufficient to show the number of users of the Accused Product (*see id*. at Responses to RFPs 40, 41);

- Documents sufficient to show the pricing history of the Accused Product (*see id*. at Response to RFP 42);

- Representative marketing or advertising materials for the Accused Product (*see id*. at Response to RFP 45);

- Documents sufficient to show advertising and promotional expenses related to the Accused Product (*see id*. at Response to RFP 45);

- Documents sufficient to show the purchase by BrowserStack of any licenses to axe DevTools® (*see id*. at Responses to RFPs 16, 18); and

- Documents sufficient to show revenue received from the Accused Product (*see id*. at Response to RFP 49).

Plaintiff's RFPs were facially over broad, unduly burdensome, ambiguous, and/or sought information not relevant to the parties' claims or defenses or otherwise not proportional to the needs of this case. Defendants therefore did not agree to produce documents for many but stood on their objections and advised Plaintiff of their availability to meet and confer to discuss the relevance and/or scope of the information sought by them. *See id*. at Responses to RFPs 3, 5-8, 11, 15, 17, 20-23, 25, 28-37, 46-48; *see also* D.I. 72-1 at Objections to RFPs 3, 5-8, 11, 15, 17, 20-23, 25, 28-37, 46-48.

4

For over two months, Plaintiff did not raise any issues concerning Defendants' May 24 Objections or June 10 Responses.  Rather, the parties negotiated and jointly sought entry of a protective order to facilitate the exchange of discovery, which the Court entered on June 21, 2024.  *See* D.I. 54.  As Plaintiff is aware, Defendants prioritized and undertook the time, expense, and burden to collect and physically transport the Source Code Repository from India, and expeditiously made it available as early as July 3, 2024.  *See* Exhibit 1[4] at 15 (July 3, 2024 9:49am email).  Despite these efforts, Plaintiff still has not inspected the Source Code Repository.

Additionally, on August 8, 2024, Defendants produced documents which included, *inter alia*, financials and usage data related to the Accused Product.  Plaintiff served no expert disclosures by its August 9, 2024 deadline.  Plaintiff also raised no discovery-related issues with Defendants by or before this date.[5]

---

[4] Citations to **Exhibits 1 through 7** herein are in reference to the exhibits attached to the Declaration of Ryan J. Marton in Support of Defendants' Opposition to Motion to Compel Production of Documents and Opposition to Motion for Extension of Pretrial Deadlines filed concurrently herewith.

[5] In contrast, Defendants spent significant time to confer in good faith to obtain basic discovery responses and documents from Plaintiff for Defendants' own expert reports, which necessitated an extension on remaining expert deadlines.  *See* Exhibit 1; D.I. 58.  Plaintiff's dilatory conduct is further reflected in the fact that it did not make its own source code available for inspection to Defendants (which Defendants had requested for months) until September 20, 2024.

It was only on August 12, 2024,[6] three days *after* Plaintiff's expert deadline had passed, that Plaintiff *first* raised its discovery-related issues with Defendants. *See* Exhibit 3 at 1-2. Plaintiff did not ask until August 26, 2024 to meet and confer on these issues. *See* Exhibit 4 at 10. To discuss Plaintiff's issues, the parties agreed to a telephonic meet and confer on September 4, 2024. *See* Exhibit 5 at 1-3. During this initial (and only) meet and confer call on these issues, Defendants reiterated that the requests were unduly burdensome, overly broad, and did not seek relevant information as propounded. Defendants asked Plaintiff to provide legal authority and to justify the relevance of such broad requests for this case, which Plaintiff agreed to do. Plaintiff provided this follow-up over one week later, on Friday, September 13, 2024.[7] *See* Exhibit 4 at 4. On September 17, 2024, Defendants requested a follow-up call on September 18 or 19 to confer on

---

[6] Plaintiff misrepresents that its discovery issues were first raised on August 1, 2024. *See* Motion to Compel at 2. They were not. These discovery issues were "first presented on August 12" and only in response to issues which Defendants had been raising as early as July 3, 2024 regarding deficiencies in Plaintiff's discovery responses which were impacting Defendants' ability to prepare their expert reports. *See* Exhibit 4 at 11 (August 26, 2024 email); *see generally* Exhibit 3. Plaintiff did not even serve its first set of interrogatories until August 14, 2024 (after its expert deadline had passed), and to date has raised no issues whatsoever as to the sufficiency of Defendants' objections and responses to them.

[7] Plaintiff misrepresents that the parties had a September 11 meet and confer call where Defendants "agreed to produce a few additional documents but refused to comply with the vast majority of Plaintiff's requests." Motion to Compel at 2. That September 11 call was scheduled as required by Section 29 of the Stipulated Protective Order (D.I. 54) to confer on Defendants' objections to the disclosure of Protected Materials to the expert Plaintiff had disclosed on September 6, 2024. *See* Exhibit 6. Defendants asked Plaintiff to be prepared to discuss also the outstanding issues regarding its August 30, 2024 supplemental interrogatory responses since Plaintiff had not responded to Defendants' requests to meet and confer on them. *See* Exhibit 2. In the September 11 call Plaintiff advised it had no further supplementation, and also asked that the case schedule be extended for its expert disclosures. Defendants advised they were not inclined to agree but stated that Plaintiff could send them a written proposal, which Plaintiff did later that that day. *See* Exhibit 6 at 2. Defendants never "refused" to comply with any requests during that September 11 call but had reminded Plaintiff that they were still awaiting Plaintiff's follow-up from the September 4 call. Plaintiff's new counsel also was unaware that the Source Code Repository had long been made available, and Defendants later provided background emails to substantiate this. *See* Exhibit 7 at 1 (Sept. 12, 2024 email).

6

Plaintiff's follow-up correspondence. *See id*. at 3. Plaintiff ignored Defendants' request until September 20, 2024, responding with an outright refusal of "No" and notifying Defendants for the first time shortly before filing this motion that it would be seeking a court order.[8] *See id*. at 2-3.

As seen herein, these issues are not only unripe, but the requested broad categories of documents Plaintiff seeks are unwarranted under Rule 26's proportionality standard.

## III. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Thus a "party may obtain discovery regarding any non-privileged matter that is relevant to its claim and proportional to the needs of the case." *Shao v. Allstate Ins. Co.*, No. 1:23CV809 (RDA/WEF), 2024 WL 1014172, at *1 (E.D. Va. Feb. 5, 2024), citing Fed. R. Civ. P. 26(b)(1). "The rule requires parties to consider, among other things, 'the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (citations omitted). "The Court, on motion or on its own, must limit discovery when the discovery sought is unreasonably cumulative or can be

---

[8] Plaintiff moves to compel numerous RFPs (specifically, RFPs 24, 40-42, 44-45 and 49) which were raised for the first time in its September 13, 2024 email. *See* Exhibit 4 (*compare* August 26 *with* September 13 emails). The parties had not conducted any telephonic or in-person meet and confer on these RFPs and Plaintiff refused to do so prior to filing its Motion to Compel. *See id*. On this basis alone, Plaintiff's Motion to Compel should be denied. *See, e.g.*, *Ambu, Inc. v. Kohlbrat & Bunz Corp.*, 2000 WL 17181, at *2 (W.D.N.C. 2000) (stating the fact that movants "did not confer with opposing counsel and attempt to resolve this dispute before filing the motion to compel is sufficient reason to deny the motion").

obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* citing Fed. R. Civ. P. 26(b)(2)(C). Rule 34 requests for production must be within the scope of Rule 26(b) and must describe with "reasonable particularity" the item to be produced. *See* Fed. R. Civ. Proc. 34(a),(b)(1)(A).

**IV.    ARGUMENT**

    **A. The Court Should Deny Plaintiff's Motion to Compel Because Plaintiff Has Not Met and Conferred in Good Faith to Narrow the Issues; These Issues Are Not Ripe or Are Otherwise Moot**

To begin, the Court should deny Plaintiff's Motion to Compel and require Plaintiff to meet and confer in good faith so that the parties may narrow the areas of disagreement for the Court, as required by the Local Rules of this District. *See, e.g.*, Civil Local Rule 37(E) ("Counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy."); *see also* Civil Local Rule 37(H) ("Should any party or attorney fail to comply with any of the provisions of this Local Rule 37 or otherwise fail or refuse to meet and confer in good faith in an effort to narrow the areas of disagreement concerning discovery, sanctions provided by Fed. R. Civ. P. 37 may be imposed").

Plaintiff has not conferred in good faith, and the issues raised in Plaintiff's motion are neither ripe[9] nor sufficiently narrowed for the Court. *See* Part II.B *supra*. This is apparent in the fact that shortly after filing its discovery motion, Plaintiff changed course and advised that it was

---

[9] This is the second time that Plaintiff has filed an unripe motion without adequately meeting and conferring with Defendants. *See* D.I. 64, 67; Exhibit 6 at 1 (explaining why Plaintiff's Motion for Disclosure of Protected Material to Expert (*see* D.I. 64, 65)—which was subsequently withdrawn (*see* D.I. 67)—was unripe and procedurally improper).

8

"more than willing to attempt to resolve any of the issues (or all, if possible), so we can lighten the load for the court."  Exhibit 4 at 1.  Plaintiff subsequently agreed to confer the following week, and the parties did so on September 24, 2024.

### B. The Documents Requested in Plaintiff's RFPs Are Unwarranted Under Rule 26's Proportionality Standard

Regardless, Plaintiff's request to compel production on RFPs 4, 6-8, 12, 15-24, 26-32, 40-42 and 44-49 should be denied.  These RFPs, as propounded, are unreasonable and unwarranted under Rule 26's proportionality standard.  Plaintiff makes no attempt to narrow these RFPs, which are facially overbroad, unduly burdensome, and essentially would include any and all documents and communications related in any way to the Accused Product.  These would require Defendants to review *millions* of documents with marginal or no relevance to the parties' claims or defenses or any other issues in this case.  Nor would such an undertaking be warranted given the nominal amount in controversy[10] (which includes no quantified damages identified by Plaintiff[11]), and the fact that all allegedly copied text has been removed from the Accused Product.  The documents requested by these RFPs also are cumulative and unnecessary when Defendants have already produced the core materials in this case (the Source Code Repository) and other relevant information.  This is particularly significant here because Plaintiff has not even looked at the Source Code Repository or explained how or why the Source Code Repository and other information produced by Defendants are insufficient.  Plaintiff's Motion to

---

[10] Defendants' production documents and damages expert report show that Defendants have made *no* profit to date on the Accused Product.

[11] Defendants are not aware of any amount in controversy claimed by Plaintiff.  Defendants have repeatedly sought information on *any* damages amounts claimed by Plaintiff including in response to Defendants' interrogatory calling for such information.  *See, e.g.*, Exhibit 1 at 8 (August 8, 2024 12:01pm email at Par. 3.f); Exhibit 2 at 3 (Sept. 4, 2024 11:16am email at Par. 4.a).  Plaintiff has adduced none.

9

Compel is a pretext to justify a change to the pretrial schedule and to enable Plaintiff to serve late expert disclosures. Defendants should not be forced now, with two and a half weeks remaining in the discovery period, to undertake significant collection, search, review, and production efforts for cumulative and/or irrelevant documents which Plaintiff, like with the Source Code Repository, will not even review.

For the Court's convenience and ease of reference, the parties' respective positions on the specific RFPs raised in the Motion to Compel are provided in the attached **Exhibit A,** and the two general categories are addressed summarily below.

1. **Defendants Have Already Produced Documents "Material to the Question of the Scope of Infringement"**

To the extent that Plaintiff seeks documents concerning the scope of copying or infringement, the most salient information, Defendants' Source Code Repository, has been made available to Plaintiff since July 3, 2024. Plaintiff has not reviewed it. The Source Code Repository reflects the Accused Product's full code and control history, commits and branches, components, creative expression, organization, sequencing, logic flows, decision trees, features, elements, and functionality. It also would reflect any purported literal or nonliteral copying of any of the asserted copyrighted works. Plaintiff fails to even mention the Source Code Repository to the Court in its Motion to Compel and provides no explanation why Plaintiff has not reviewed it nor why the Source Code Repository does not provide all of the information it needs to conduct a substantial similarity analysis for its copyright infringement claim. Defendants also already agreed to conduct a reasonable search and have produced non-privileged documents related to the alleged copying of the asserted copyrighted works.

Additionally, to the extent that Plaintiff claims documents are needed to establish either willfulness or access (*see, e.g.*, Motion to Compel at 11-12), both are irrelevant. Section 504 of

10

the Copyright Act sets forth the remedies that a plaintiff may pursue in a copyright infringement action: actual damages and any additional profits of the infringer, or statutory damages. *See* 17 U.S.C. § 504(a)(1)(2). Willfulness is relevant to only statutory damages, *see* 17 U.S.C. § 504(c)(2), and Plaintiff does not seek statutory damages in this case.[12] *See generally* FAC; *see also, e.g.*, *Faulkner*, 576 F. Supp. 2d at 613 (no punitive damages available in copyright infringement actions, explaining "no proper role for proof of willfulness" as copyright infringement "is a strict liability wrong in the sense that a plaintiff need not prove wrongful intent or culpability in order to prevail"). Nor is there need for additional evidence related to access as Defendants do not dispute that BrowserStack Software had access. Indeed, Defendants agreed to produce, and have already produced, documents showing licenses purchased to the axe DevTools product. BrowserStack Software was a Deque customer for years and used the Deque product for accessibility testing of BrowserStack's own website. Plaintiff already possesses, and has also produced, documents related to BrowserStack's usage.

Plaintiff also seeks to compel production in response to RFP 26,[13] which it contends relates to false advertising and breach of contract. Motion to Compel at 13. However, Defendants already agreed to and have produced non-privileged documents located after a reasonable search related to the alleged statements at issue (without qualification as to whether such documents support or do not support the alleged statements). Plaintiff has not explained how any other information called for by RFP 26 is relevant to these claims. *See* Exhibit A at 5-6; *see also* FAC ¶¶ 82, 83 (D.I. 44-1) (breach of contract claim based specifically on the alleged

---

[12] Nor could Plaintiff seek statutory damages since it did not register its works prior to commencement of the alleged infringement. *See* 17 U.S.C. §§ 412, 412(2); *see also, e.g.*, *Faulkner v. Nat'l Geographic Soc.*, 576 F. Supp. 2d 609, 612 n.6 (S.D.N.Y. 2008).

[13] Plaintiff appears to erroneously reference RFP 26 instead of RFP 25; Defendants therefore address both. *See* Exhibit A at 8-9.

11

false "5x faster" advertisement being a publication of "a purported evaluation run" of axe DevTools®).

For the foregoing reasons, and the reasons set forth in Exhibit A, Plaintiff's Motion to Compel RFPs 4, 6, 7-8, 12, 15-18, 19, 20-24, 27, and 26 should be denied. *See* Exhibit A at 1-9.

**2. Defendants Have Already Produced Documents "Material to the Question of Damages and Causation"**

On a copyright infringement claim, a plaintiff is entitled to its actual damages caused by the infringement and a defendant's additional profits. 17 U.S.C. § 504. Defendants agreed to and have produced relevant information, which include financials (including sales, revenue, cost and profit information) related to the Accused Product, and information on the number of users of the Accused Product. *See* Part II *supra*; Exhibit A at 9-12. Defendants also have produced an expert report on damages. Though marketing, advertising, and pricing information for the Accused Product have been and still are all publicly available, Defendants also produced representative materials to Plaintiff. *See id.* Plaintiff has not explained how these issues are ripe[14] or otherwise how the other unduly burdensome and broad categories of information sought on these requests are relevant or proportional to the needs of this case under Rule 26. *See* Exhibit A at 9-12. Plaintiff's Motion to Compel RFPs 28-30, 31-32, 40-42, 44-48, and 49 should be denied. *See id.*

---

[14] For example, Plaintiff did not explain until September 24, *after* filing its Motion to Compel, that it sought revenue information on three particular BrowserStack offerings that appeared to incorporate or bundle the Accused Product. Defendants advised this was contrary to their understanding but that they would investigate and, if it were the case, would produce such information. Defendants have since confirmed the Accused Product is not bundled or otherwise included with these three offerings. The reference to WCAG compliant accessibility testing relates to BrowserStack's cloud-hosted screen reader function and is not in reference to the Accused Product.

12

**C. Plaintiff's Waiver Argument Lacks Merit and Should Be Disregarded**

Finally, Plaintiff's general assertion—that there somehow has been complete waiver of Defendants' objections—has no merit. Defendants raised specific objections applicable to each respective RFP. If there is any similarity between the respective objections, it is because the same objections apply to each of Plaintiff's patently overbroad, ambiguous, unduly burdensome, and non-particularized requests which seek information neither relevant to the parties' claims and defenses nor proportional to the needs of this case. *See, e.g.*, *Donnelly v. Arringdon Dev., Inc*, No. 1:04CV889, 2005 WL 8167556, at *2 (M.D.N.C. Nov. 8, 2005) (denying motion to compel as requests calling for, *inter alia*, "any and all" documents "relating to" overly broad and failed to provide reasonable particularity required by Rule 34(b)). Here, Defendants timely served written objections and responses to each request, informed Plaintiff of the scope of their agreements to produce, invited Plaintiff to confer on the objected-to requests, subsequently collected and produced documents consistent with their objections and responses, and have been proactively involved in discovery and the subsequent meet and confer process regarding their objections. Defendants adequately preserved their objections and are aware of no case where such a prejudicial finding of waiver has been found in these circumstances at the expense of evaluating the discovery issues on the merits. Moreover, Plaintiff never once raised a waiver argument over the past three months or in any prior correspondence or conference of the parties, including in the parties' September 4 meet and confer call (or the subsequent September 24 call). Plaintiff instead first raised this in its September 13, 2024 email in preparation of its Motion to Compel.[15] *See* Exhibit 4 at 4. This argument is a red herring and should be disregarded.

---

[15] Also, insofar as Plaintiff contends Defendants' objections are waived, Plaintiff's similar objections should also be deemed waived.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion to Compel.

Dated:  September 25, 2024    Respectfully submitted,

/s/    Belinda D. Jones
Belinda D. Jones (VSB No. 72169)
bjones@cblaw.com
Roman Lifson (VSB No. 43714)
rlifson@cblaw.com
Christian & Barton, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-3095
Tel.:         (804) 697-4100
Fax:         (804) 697-4112


Ryan J. Marton (*pro hac vice* admitted)
ryan@martonribera.com
Songmee L. Connolly (*pro hac vice* admitted)
songmee@martonribera.com
Phillip J. Haack (*pro hac vice* admitted)
phaack@martonribera.com
Carolyn Chang (*pro hac vice* admitted)
carolyn@martonribera.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:      (415) 360-2515

*Attorneys for Defendants BrowserStack, Inc. and BrowserStack Software India Pvt. Ltd.*