## EXHIBIT A

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| 4 | **RFP 4:** All documents related to all published instances of the Accessibility Toolkit on the Chrome Web Store. | "RFP 4 seeks documents related to all published instances of the Accessibility Toolkit in the Google Chrome Web Store. Google Chrome Web Store is the marketplace where Defendants sell their Accessibility Toolkit. Web Store information will help Plaintiff understand what versions were offered to the public when. Plaintiff anticipates that the amount of copying varied from version to version. Knowing what version was on offer to the public when can be important in determining, among other things, when the version with the most infringing material went live. This information also has damages implications. Despite Defendants' boilerplate objections, this request is a light burden. Defendants' Toolkit has only been out for a little over a year and is currently on version 2.0.0.7. Thus, the number of published instances on the Chrome Web Store is few. There is currently no way for Plaintiff to obtain this information on its own (Plaintiff has checked public webpage archives)." *See* Motion to Compel at 10. | In response to this RFP, BrowserStack made its entire source code repository (hereinafter referred to as "Source Code Repository") for the Accused Product available for inspection on July 3, 2024. The Source Code Repository reflects, *inter alia*, the dates when any part of Accused Product was edited, modified, or changed, and what portions were offered in which published versions and when. Plaintiff has not looked at the available Source Code Repository once. In addition, though duplicative to information in the Source Code Repository, BrowserStack produced copies of the Accused Product published to the Chrome Web Store. BrowserStack also provided documents reflecting the number of downloads of the Accused Product from the Chrome Store.<br><br>In a meet and confer on September 24, Plaintiff could not identify any other documents it needed in response to this RFP.<br><br>Notably, the RFP as it is written is overbroad. The request calls for "all" documents "related to …all published instances of the Accessibility Toolkit." This calls for every document Browserstack has that relates in any way to the Accused Product. Production of such documents would involve collection and review of many millions of documents and take months to complete. These documents, beyond what has already been collected and produced in response to this RFP, are not relevant and the burden and expense of collecting and reviewing such documents would not be proportional to the needs of this case. |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| 6 | **RFP 6:** All Documents concerning issues used during the development process of the Accessibility Toolkit. | "RFP 6 requests all of the documents concerning the issues that BrowserStack used during the development of its Toolkit. (**Ex. 1**.) This seeks documents detailing the kinds of accessibility issues BrowserStack used to develop its software. Insight into the issues BrowserStack used will, inter alia, provide insight into how the Accessibility Toolkit identifies issues and whether it identifies issues using similar code. It could also reveal whether there is copying of nonliteral elements in the Toolkit's issue identification process." *See id.* at 10. | In response to this RFP, BrowserStack made its Source Code Repository available for inspection on July 3, 2024. The Source Code Repository reflects, *inter alia*, the accessibility issues used to develop the Accused Product, and the code used to identify the issues. The Source Code Repository also reflects any purported literal or nonliteral copying of the asserted works. BrowserStack also produced its assisted test rules engine reference spreadsheet which served as a development guide for the Accused Product and identifies other accessibility issues considered.<br><br>In a meet and confer on September 24, Plaintiff could not identify any other documents it needed in response to this RFP. |
| 7-8 | **RFP 7:** All documents related to the requirements, designs or proposals for development of the Accessibility Toolkit.<br><br>**RFP 8:** All documents concerning research reports and artifacts made during development of the Accessibility Toolkit. | "RFPs 7–8 concern documents at the heart of any software development (e.g., research reports, artifacts, designs, proposals, and requirements). (**Ex. 1**.) Information regarding the goals and the process of developing the Toolkit will contextualize Defendants' copying and provide insight into whether the copying was willful. It might also indicate where Plaintiff should look to find evidence of copying. Finally, it might also reveal specific instances of copying. | In response to these RFPs, BrowserStack made its Source Code Repository available for inspection on July 3, 2024. The Source Code Repository reflects the Accused Product's full code and control history, commits and branches, components, creative expression, organization, sequencing, logic flows, decision trees, features, elements, and functionality. It also reflects any purported literal or nonliteral copying of the asserted works therein. Plaintiff has not looked at the available Source Code Repository once. BrowserStack also already produced non-privileged documents located after a reasonable search related to the development of the allegedly copied content within the Accused Product. Plaintiff does not explain why any other |

2

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | | In fact, the limited planning documents that Defendants did produce show Defendants' design was informed by Deque products." *See id.* at 11. | documents are relevant or necessary for a substantial similarity analysis between the asserted works and the Accused Product on its copyright infringement claim. To the extent that Plaintiff seeks evidence on willfulness, that is irrelevant in this case. Under the Copyright Act, willfulness is relevant only to statutory damages, which are neither sought by, nor available to, Plaintiff in this case. *See* FAC; 17 U.S.C. §§ 412(2); 504(c)(2). |
| 12 | **RFP 12**: All documents that mention or otherwise concern the Rule Help Pages. | "RFP 12 seeks documents related to the Rules Help Page of Deque's software. (Ex. 1.) Plaintiff alleges that there is evidence of direct copying from Plaintiff's Rules Help Page in Defendants' software. (FAC ¶ 44.) Documents in Defendants' possession concerning the Rules Help Page clearly is probative of the question of access and scope of copying." *See id.* | In response to this RFP, BrowserStack made its Source Code Repository available for inspection on July 3, 2024. The Source Code Repository reflects the Accused Product's full code and control history, commits and branches, components, creative expression, organization, sequencing, logic flows, decision trees, features, elements, and functionality. It also reflects any purported literal or nonliteral copying of the Rules Help Pages. Plaintiff has not looked at the available Source Code Repository once. BrowserStack has also already produced non-privileged documents located after a reasonable search related to the development of the allegedly copied content within the Accused Product.<br><br>There is nothing else responsive to this RFP that is relevant to this case. |
| 15-18 | **RFP 15**: All documents concerning the registration of any BrowserStack employee, | "RFPs 15–18 similarly seek information probative of the question of the extent of access and the number of Defendants' employees who had | In response to these RFPs, BrowserStack produced documents sufficient to show BrowserStack's purchase of licenses to axe DevTools. Moreover, Plaintiff already possesses information concerning anyone who registered for |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | agent or contractor of any version of Deque software, including, but not limited to, trial, beta, free or paid versions.<br><br>**RFP 16**: All documents concerning the purchase of licenses for any Deque software, including the purchases describe in ¶¶ 42 and 43 of the Complaint.<br><br>**RFP 17**: All documents concerning Deque's Website Terms of Use and the Pro Software License described on ¶ 46 of the Complaint.<br><br>**RFP 18**: All documents sufficient to identify all persons who have at any time used or have been licensed to use the Axe DevTools®. | access. Showing Defendants had access to various elements of Plaintiff's copyrighted materials is material to Plaintiff's claims for liability and willfulness. Hence these RFPs seek information regarding how many BrowserStack employees had access to Deque's software. They also seek information regarding how many licenses BrowserStack purchased to Deque's software. This information is directly relevant to damages. For example, if Plaintiff seeks a reasonable license fee as a measure for actual damages, the number of BrowserStack users is directly relevant to proving damages." *See id.* | axe DevTools affiliated with BrowserStack (*e.g.*, registering with an @browserstack.com email address) and their usage. To the extent that Plaintiff seeks evidence on willfulness, that is irrelevant in this case. Under the Copyright Act, willfulness is relevant only to statutory damages, which are neither sought by, nor available to, Plaintiff in this case. *See* FAC; 17 U.S.C. §§ 412(2); 504(c)(2).<br><br>Notably, the RFP as it is written is overbroad. The requests call for "all" documents "concerning …" broad categories of information are also over broad, unduly burdensome, and seek information not relevant to nor proportional to the needs this case. To the extent Plaintiff is asking Defendants for documents sufficient to identify "all persons who have at any time used" axe DevTools, this is not only impracticable, but also over broad, unduly burdensome, and seeks information not relevant to nor proportional to the needs this case and would include anyone regardless of their involvement in development of the Accused Product. |
| 19 | **RFP 19**: All documents sufficient to identify any | "RFP 19 seeks documents concerning any attempt to unravel Plaintiff's | BrowserStack has already produced non-privileged documents located after a reasonable search referring or |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | attempts to de-minimize, de- obfuscate, decompile or otherwise reverse engineer the code for any Axe DevTools® software or product, including browser extensions. | code. Plaintiff does not publish its code in a format that allows for consumers to simply tinker with Plaintiff's source code. In order to obtain the source code, Defendants would have to perform several actions to the source code (e.g., de-minimizing and decompiling) in order to reverse engineer Plaintiff's software. This is generally an undertaking that would produce a paper trail. Plaintiff is entitled to review any documents related to this reverse engineering attempt as it is directly relevant to proving access to the source code specifically (not just the software generally). This information can also have bearing on substantial similarity and may even reveal evidence of direct willful copying." *See id.* at 11-12. | relating to the alleged copying of the asserted works. BrowserStack's Source Code Repository also has been available for inspection since July 3, 2024. Plaintiff has not looked at it once. The Source Code Repository reflects the Accused Product's full code and control history, commits and branches, components, creative expression, organization, sequencing, logic flows, decision trees, features, elements, and functionality. It also reflects any purported literal or nonliteral copying of the asserted works therein. Plaintiff does not explain why any other documents are relevant or necessary for a substantial similarity analysis between the asserted works and the Accused Product on its copyright infringement claim. To the extent that Plaintiff seeks evidence on willfulness, that is irrelevant in this case. Under the Copyright Act, willfulness is relevant only to statutory damages, which are neither sought by, nor available to, Plaintiff in this case. *See* FAC; 17 U.S.C. §§ 412(2); 504(c)(2). |
| 20-24, 27 | **RFP 20:** All documents sufficient to identify when BrowserStack's services were developed for web accessibility testing.<br><br>**RFP 21:** All documents | "RFPs 20–24 and 27 seek documents directed at the "who, what, when, where, and how" in terms of Defendants' copying. The requested documents would allow Plaintiff to identify when BrowserStack began developing its Toolkit and when it began developing its web accessibility | In response to this RFP, BrowserStack made its Source Code Repository available for inspection on July 3, 2024. The Source Code Repository reflects the "who, what, when, where, and how" of any alleged copying, including what parts of the Accused Product were edited, modified, or changed, when, and by whom. BrowserStack has also already produced non-privileged documents located after a reasonable search referring or relating to the alleged |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | concerning the development, creation and/or deployment of the Accessibility Toolkit.<br><br>**RFP 22:** All documents that identify when the Accessibility Toolkit was developed.<br><br>**RFP 23:** All agreements and correspondence between BrowserStack and any employee, independent contractor, or other individual or entity who contributed in any way to the software or content for the Accessibility Toolkit, including but not limited to, anyone involved in the development of features for web accessibility testing.<br><br>**RFP 24:** All documents | testing software in general (the Toolkit is not BrowserStack's only accessibility testing product). The documents would show who participated in the development (and thus who might have participated in the copying). This information can easily lead to Plaintiff discovering admissible evidence in the form of testimony from those involved in the copying, which may reveal either evidence of access or even direct evidence of willful infringement. This information is additionally relevant to establishing a timeline, causation, and damages." *See id.* at 12. | copying of the asserted works. Plaintiff does not explain why any other discovery called for by these requests is relevant or necessary. Plaintiff references some other "web accessibility testing software in general" but Defendants are aware of none; the Accused Product is BrowserStack's only web accessibility testing product. To the extent that Plaintiff seeks evidence on willfulness, that is irrelevant in this case. Under the Copyright Act, willfulness is relevant only to statutory damages, which are neither sought by, nor available to, Plaintiff in this case. *See* FAC; 17 U.S.C. §§ 412(2); 504(c)(2).<br><br>To the extent these RFPs seek "all" documents they are over broad, unduly burdensome, and seek information not relevant to nor proportional to the needs this case. Both the amount at issue and the *de minimis* copying alleged (which are described in detail in Defendants' expert reports) do not justify the collection, review, and/or production of millions of documents. If, after Plaintiff reviews the Source Code, Plaintiff contends other information is needed, Defendants are willing to meet and confer on producing such information. |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | concerning the efforts of BrowserStack or any employee, independent contractor, or other individual or entity acting on its behalf, to reverse engineer or use any method, automated software, or devices, such as spiders, robots or data mining techniques, such as scraping, spidering, crawling or any other techniques, to download, store, distribute or otherwise reproduce software or content from the Axe DevTools®.<br><br>**RFP 27:** All documents, including but not limited to infrastructure logs reports or other types of architectural reports, concerning changes to BrowserStack's web accessibility testing | | |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | services implemented, either through the use of internal or external software tools (whether open source or paid). | | |
| 26 | **RFP 26.** All documents concerning the efforts of BrowserStack to test the speed or evaluate the performance of the Accessibility Toolkit. | "RFP 26 relates to false advertising and breach of contract. The elements of false advertising (under the Lanham act) are as follows:… Once again, Plaintiff's breach of contract claim argues that one component of the breach was unauthorized publication of data gathered from testing Deque's software. Defendants have agreed to produce documents to substantiate its claim that its software performs certain tasks 5x faster than Deque's software. However, RFP 26 is broader. RFP 26 seeks all documents related to speed testing on Deque's software. This information is relevant because, while Defendants may have a specific test that resulted in support for its 5x faster claim, other testing by Defendants may show that this figure is misleading. For example, Defendants could have artificially narrowed the parameters of the test to | BrowserStack has already agreed to and have produced non-privileged documents located after a reasonable search relating to the alleged statements at issue. *See id*. at Responses to RFPs 9, 10, 13, 26, 38, 39, 43.

Notably, this RFP is overbroad. It seeks "all" documents "concerning the efforts of BrowserStack to test the speed or evaluate the performance" of its own product. This request is unduly burdensome and seeks information neither relevant to nor proportional to the needs this case. To the extent Plaintiff intended to refer to RFP 25 and not RFP 26, again, Defendants have already agreed to and has produced non-privileged documents located after a reasonable search relating to the alleged false statements at issue (and has not "artificially narrowed" its agreement to produce to only documents that "substantiate" its claim as Plaintiff speculates). |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | | force a specific result." *See id*. at 12-13. | |
| 28-30 | **RFP 28:** All business plans concerning web accessibility testing.<br><br>**RFP 29:** All business plans concerning rules for web accessibility testing.<br><br>**RFP 30**: All presentations concerning web accessibility testing. | "RFPs 28–30 seek business plans and presentations concerning BrowserStack's web accessibility testing. These documents are likely to contain a variety of relevant information, including information regarding what value BrowserStack assigns to its accessibility testing line of business. This is directly relevant to determining, for example, the value of the benefit conferred onto Defendants." *See id*. at 13-14. | In response to these RFPs, Defendants have already produced documents and information on financials related to the Accused Product, including revenue and profit information, and have also produced their damages expert report. Though not relevant, Defendants have also agreed to produce non-privileged presentations that tout the value of accessibility testing that can be located after a reasonable search.<br><br>Plaintiff has not identified what else is relevant. |
| 31-32 | **RFP 31:** All documents concerning customer's or potential customer's requests, desires or wishes for web accessibility testing.<br><br>**RFP 32:** All documents concerning lost sales, bids, contracts, or other business by BrowserStack for failure to offer web accessibility testing prior to the | "RFPs 31–32 request information concerning BrowserStack's customer demand for accessibility testing. This can be indicative of the value of Defendants' accessibility testing software. The information requested in RFP 32 can also be used to show how much revenue BrowserStack missed out on because it lacked accessibility testing. This in turn can serve as a yardstick for determining the value conferred onto Defendants." *See id.* at 14. | Defendants have already agreed to and have produced documents and information on financials related to the Accused Product, including revenue and profit information, and have also produced their damages expert report. Documents regarding some expected value of the Accused Product, does not impact Plaintiff's actual damages, Defendants' revenue and profits, or any relevant measure of damages in this case. Though not relevant, Defendants have also agreed to produce non-privileged presentations that refer to consumer demand for accessibility testing that can be located after a reasonable search. |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
| | introduction of the Accessibility Toolkit. | | |
| 40-42 | **RFP 40:** Documents sufficient to identify the number of users that have accessed, used, or requested to use the Accessibility Toolkit since it was first launched.<br><br>**RFP 41:** Documents sufficient to show the number of registered users or purchases of the Accessibility Toolkit.<br><br>**RFP 42:** Documents sufficient to show the pricing history for all services offered through the Accessibility Toolkit. | "RFPs 40–42 seek information concerning fundamental data essential to any damages argument, such as pricing history and the number of registered users and purchasers of the Accessibility Toolkit. There is no good reason for Defendants to refuse to produce this information." *See id.* at 14. | Defendants have already agreed to and have produced documents and information in response to these RFPs, including the number of users and sales of the Accused Product and pricing related to the Accused Product. Defendants have also agreed to search for and provide historical pricing data. Defendants do not understand what other relevant information Plaintiff seeks with these RFPs. |
| 44-48 | **RFP 44:** Documents sufficient to show monthly or quarterly advertising and promotional expenses for the Accessibility Toolkit | "RFPs 44–48 seek information regarding Defendants' marketing. The way in which Defendants market their products is relevant to any claim for indirect profits. A common causation argument for indirect profits is the use | In response to these RFPs, Defendants have produced representative marketing and advertising materials, as well as information sufficient to show relevant marketing costs. In addition, Defendants' marketing, advertising and promotional related to the Accused Product have been, and are, publicly available, including on BrowerStack's website. |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|------|----------------------------------|-------------------------------------------|----------------------|
|      | and any other services offered by BrowserStack in conjunction with or including the Accessibility Toolkit.<br><br>**RFP 45:** Documents concerning the marketing, advertising or promotion of the Accessibility Toolkit whether solely or in conjunction with any other software services offered by BrowserStack.<br><br>**RFP 46:** Documents concerning bids for, or purchases of, Google Ads or other keyword-based online advertising related to Deque's Accessibility testing, at all times.<br><br>**RFP 47:** Documents concerning third-party press concerning accessibility testing software or services offered by BrowserStack. | of infringing material to promote other aspects of the infringer's business. See Frank Music Corp. v. MGM, Inc., 772 F.2d 505, 517 (9th Cir. 1985); Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 797 (8th Cir. 2003). Defendants' marketing materials will provide insight into whether Defendants use infringing materials to promote their other products. It is therefore essential that Defendants produce the requested documents." *See id.* at 14. | Plaintiff has not explained why Defendants' production to date is insufficient, nor explained how the broad categories of information sought by RFPs 45-48 have any relevance to the parties' claims or defenses (including any relevant damages theory) or proportional to the needs of this case. |

| Nos. | Requests for Production ("RFPs") | Plaintiff's Position in Motion to Compel | Defendants' Position |
|---|---|---|---|
|  | **RFP 48:** All documents concerning customer reviews of the Accessibility Toolkit. |  |  |
| 49 | **RFP 49:** Documents sufficient to identify the amount and sources of all revenues BrowserStack has received, directly or indirectly, from the Accessibility Toolkit from the date the Accessibility Toolkit was launched through the present. | "RFP 49 asks for direct and indirect revenue data from Defendants' sales of their Accessibility Toolkit. This request is clearly proper as indirect revenue data is material to the question of damages." *See id.* at 14. | Defendants have already agreed to and have produced documents and information on financials related to the Accused Product, including all revenue and profit information, and have also produced their damages expert report. Plaintiff has demanded production of financial information for all BrowserStack products including all non-accused products. It has not provided any legal basis for such a broad request.<br><br>After filing its Motion to Compel, Plaintiff explained that it sought revenue information on three particular BrowserStack offerings that appeared to incorporate or bundle the Accused Product. Defendants advised this was contrary to their understanding but that they would investigate and, if it were the case, would produce such information. Defendants have since confirmed the Accused Product is not bundled or otherwise included with these three offerings. These products' reference to WCAG compliant accessibility testing relates to BrowserStack's cloud-hosted screen reader function and is not in reference to the Accused Product. |