**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**DEQUE SYSTEMS INC.,**

    **Plaintiff,**

v.

**BROWSERSTACK, INC., et al.,**

    **Defendants.**

Case No. 1:24-cv-00217-AJT-WEF

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE**

Plaintiff's intellectual property is its Secret Sauce, its corporate DNA, its essence. By copying Plaintiff's valuable software code and reverse engineering it, Defendants accelerated their presence in the lucrative website accessibility testing market, avoided decades of development costs, trial and error time, market research effort, and tens of millions of dollars of expense. Thus, Plaintiff's *damages* will be the focus of this jury trial. To assist the jury in that regard, and in response to the damages expert Defendants intend to have testify before the jury, Plaintiff intends to rely on a rebuttal expert witness.

Back on September 6, 2024, Plaintiff disclosed its rebuttal expert in revised initial disclosures—*weeks* before Defendants filed their affirmative expert report. Moreover, Plaintiff disclosed its damages theory in its initial complaint, in its initial disclosures, in its answers to Defendants' first and second set of interrogatories, and during meet and confers with Defendants' counsel. Finally, in their own motion, Defendants admit that significant portions of Plaintiff's report "could be characterized as a rebuttal report." Dkt. 105 at n.3. Despite this, Defendants pretend to be surprised by Plaintiff's damages theories and its rebuttal expert all while attempting

1

to maintain that Plaintiff's rebuttal report both is, and is not, a proper rebuttal. Defendants' motion to strike strains credulity, wastes the time of this Court and Plaintiff, and should be denied.

## Timeline of Relevant Events

Defendants' motion to strike distorts or omits important aspects of the timeline involved in this case. The following timeline represents events relevant to this motion to strike:

| Date | Event |
| --- | --- |
| 06/07/24 | Plaintiff serves its initial disclosures describing the categories of damages it is seeking. Dkt. 106-1. |
| 07/29/24 | Plaintiff answers Defendants' interrogatories regarding damages with a promise that Plaintiff will elaborate on its damages once discovery progresses. Dkt. 106-2. Plaintiff subsequently elaborates on its damages theory in its amended response after Defendants' first document production. Dkt. 106-3. |
| 08/08/24 | Defendants produce their first set of documents which contain limited financial information re Defendants' revenue. **Ex. 4** (Defendants' first set of financial data was in BROWSERSTACK00000017). |
| 08/09/24 | Plaintiff's expert disclosure due date 08/09/24. Dkt. 35-1 & 37. |
| 09/03/24 | Plaintiff's new counsel file appearances. Dkt. 60. |
| 09/06/24 | Plaintiff amends its initial disclosures to disclose Mr. Kahaian as a damages expert. Dkt. 106-4. |
| 09/13/24 | Plaintiff files a motion for the disclosure of protected information to Mr. Kahaian. Dkt. 64. |
| 09/16/24 | Defendants agreed to the disclosure of protected information to Plaintiff's rebuttal expert, Plaintiff thus withdraws motion for the disclosure of protected information. Dkt. 67. |
| 09/23/2024 | Defendants serve Expert Report of Paul C. Benoit (the "Benoit Report") concurrently with new production including BROWSERSTACK00000653, which contained contemporary financial data. Dkt. 106-5; **Ex. 3** (the email chain is dated 09/24/24, this is because Defendants' counsel are on Pacific Standard Time). |
| 10/08/24 | Due date for rebuttal expert disclosures. Dkt. 35-1 & 37. |
| 10/08/24 | Plaintiff timely serves rebuttal report (the "Kahaian Report") along with additional document production. Dkt. 106-7. |
| 10/11/24 | Discovery closes. Dkt. 35-1 & 37. |

The sequence of these events clearly illustrates that Defendants were well aware that Plaintiff intended to rely on a rebuttal expert as early as September 6, 2024 (weeks before Defendants served their own expert reports). The above timeline also shows that Plaintiff's rebuttal expert disclosures were timely.

**Argument**

**1.      FRCP 26(2)(D) expressly allows Plaintiff to use a rebuttal expert without disclosing an affirmative expert.**

Hyperbolically, Defendants emphasize that Plaintiff did not disclose any affirmative experts before the scheduled deadline. However, the Federal Rules of Civil Procedure *expressly allow* for Plaintiff to use an expert solely for rebuttal purposes. Rule 26(2)(D) states as follows:

> (D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
>
> > (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
> > (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

The Rule does not require that a party must first disclose an affirmative expert in order to use a rebuttal expert. In fact, Plaintiff could use a rebuttal expert even if neither party chose to rely on an affirmative expert. *Olivero v. Trek Bicycle Corp.*, No. 16-cv-0761-WJM-MJW, 2018 U.S. Dist. LEXIS 119490, at *3-4 (D. Colo. July 18, 2018) ("Indeed, with some frequency the Court sees one party presenting its theory without expert testimony and the opposing party challenging that theory with expert testimony."). Affirmative and rebuttal experts are two distinct types of experts, and no party is obligated to rely on both. *See id.* Hence, the above language in Rule 26 differentiates between the time to disclose affirmative and rebuttal experts.

3

In this case, Plaintiff timely disclosed a rebuttal expert. As Defendants acknowledge, the scheduling order dictated that Plaintiff must disclose its affirmative experts by August 9, 2024. Dkt. 105 at 3. Plaintiff did not disclose an affirmative expert, though admittedly Plaintiff did, without success, request an extension of time to disclose affirmative experts. The scheduling order then specified that Defendants must serve their expert disclosures on September 23, 2024, which they did. **Ex. 3.** Finally, the scheduling order required rebuttal expert disclosure by October 8, 2024, which is the same day that Plaintiff served its expert report. Dkt. 105 at 3, 5.

**2. The contents of the Kahaian Report squarely rebut the subject matter raised in the Benoit Report.**

Defendants' motion to strike relies on finding that the Kahaian Report supposedly is not an actual rebuttal report, whatever that means. Defendants' argument requires them to establish that the Kahaian Report was not focused "on the same subject matter identified by the opposing party's expert report." *Snider-Jefferson v. Amigo Mobility Int'l, Inc.*, No. 2:15-cv-406, 2016 U.S. Dist. LEXIS 109319, at *13 (E.D. Va. Aug. 17, 2016). Importantly, the inquiry compares whether the rebuttal report addresses the same subject matter. It does not mandate that a rebuttal expert avoid providing corrections or more appropriate analysis. When a party submits an expert report regarding a particular subject matter, that subject matter is open to rebuttal which includes rebuttals that provide more accurate methodologies. *The Kahaian Report systematically details the deficiencies of the Benoit Report.* Dkt. 106-6 (Report pgs. 10-15).[1] After articulating these deficiencies, the Kahaian Report corrects them by proposing more accurate methodologies and by pointing to evidence that the Benoit Report wrongly claimed did not exist. *Id.* (Report pgs. 16-21). The Kahaian Report is therefore firmly a rebuttal report.

---

[1] Defendants have filed the Benoit Report (Dkt. 106-5) and the Kahaian Report (Dkt. 106-6) under seal. Consequently, there is no ECF page number. Plaintiff will cite to the reports respective ECF number and state the specific report page or paragraph number in parentheticals.

Defendants' arguments that the Kahaian Report sways into new subject matter is essentially that Mr. Kahaian is not allowed to correct the deficiencies in the Benoit Report by suggesting more accurate methodologies or evidence. This is evident from the fact that Defendants admit a significant portion of the Kahaian Report "could be characterized as a rebuttal report." Dkt. 105 at n.3. The parts of the Kahaian Report Defendants find objectionable are those parts where the Kahaian Report states what the Benoit Report "should have" done. However, the law does not say that a rebuttal expert cannot assert that the methodology used by the opposing party's expert is inaccurate, inappropriate, or otherwise lacking and that there is a more appropriate methodology that should be used. In fact, one cannot illustrate that a methodology is inaccurate without reference to some other benchmark (i.e., a more accurate methodology). Similarly, the law does not state that when one party's expert concludes there is "no evidence" that a rebuttal expert is not allowed to rebut that conclusion by pointing to the relevant evidence. The law says that the Kahaian Report must discuss the same subject matter discussed in the Benoit Report. That is what the Kahaian Report does.

Defendants also argue that "The Kahaian Report's lost profits analysis is not a rebuttal to the Benoit Report" relying on the fact that "the Benoit Report did not even advance a calculation of lost profits." Dkt. 105 at 12. That is false. The Benoit Report directly raised the subject of lost profits in Section IV(A)(I) entitled "There Is No Evidence Showing That Deque Has Suffered Any Lost Profits Due to Any of BrowserStack's Alleged Wrongdoing." Dkt. 106-5 (Report pg. 19). The Benoit Report concluded (incorrectly) that there was no evidence of lost profits but reserved the right to modify its conclusions in the presence of new information. ECF 106-5 (Report pgs. 19, 31). The Kahaian Report faulted the Benoit Report for concluding, incuriously and without support, that there was no evidence of lost profits. The Kahaian Report corrected this deficiency

5

by analyzing Deque's financial information, which was produced to Defendants and Benoit who were more than free to change their conclusion that there was "no evidence" of lost profits.

Defendants are also insistent that the Kahaian Report's calculation of avoided research and development costs is inappropriate for a rebuttal report. Dkt. 105 at 8-9. Here again, however, Section IV(C) of the Benoit Report is entitled "Research and development Costs Avoided by Alleged Copying." Dkt. 106-5 (Report pgs. 29-30). The Benoit Report recites BrowserStack's alleged development timeline, combines them with conclusions from the Yenikomshian technical report, and concludes "[t]here is no evidence that BrowserStack avoided any research and development costs." Dkt. 106-5 (Report pg. 30). That conclusion invites a rebuttal expert to testify as to the fact that, contrary to Benoit's conclusion, there in fact is evidence of cost savings.

It is worth emphasizing that Defendants did not need information from Deque to conduct a development cost avoided analysis. Defendants know exactly how much time and money it took to develop their own product. Defendants had a technical expert that could have provided expert opinion on the time and resources it would normally take to develop software like Deque's Accessibility Testing Code and compared it with BrowserStack's actual development time. This could have supported the conclusion that BrowserStack's development time and costs were within normal parameters. In fact, the Benoit Report did something very similar when it cited the calculation from the technical report on hours it took to remove copied code. Dkt. 106-5 (Report pg. 30). Rather than running a robust analysis, the Benoit Report lazily announces there is no evidence Defendants saved development costs and refused to revise this conclusion before the close of discovery despite having time to do so.

### 3. Defendants were not prejudiced by the production of information concurrent with the Kahaian Report.

Defendants complain that their expert was prejudiced by not having access to certain records until after the first draft of their expert report was served. Dkt. 105 at 12-13. And yet Defendants never moved to compel the production of this information. Moreover, given ongoing discovery issues caused by Defendants' failures to timely product responsive documents, Plaintiff offered to stipulate to extensions regarding experts to avoid exactly this type of problem. Defendants refused.

Defendants further argue that the mere fact that select documents were produced concurrently with the Kahaian Report indicates that the Kahaian Report is not a true rebuttal report. Nonsense. A rebuttal expert is not required to consider only the documents and/or information that were cited to or relied upon by the opposing expert who is being rebutted. No expert is so limited, and any expert—whether affirmative or rebuttal—is permitted to rely on documents or information necessary to support his or her opinions. Furthermore, Defendants' protestations regarding the "unfairness" of the timing of this production are insincere at-best, as Defendants did the same thing when they produced BROWSERSTACK00000653 (which contained contemporary financial data that had previously never been disclosed) concurrently with the Benoit Report. **Ex. 3.**

The Kahaian Report includes citations to documents that were produced within the discovery period and concurrently with the Kahaian Report. Dkt. 106-7 (emails showing new production prior to and concurrent with the Kahaian Report). This production was applied to rebut points already made by the Benoit Report. *See* Dkt. 106-6 (Report pgs. 16-17). In other words, the Kahaian Report did not use new information to go off on a tangent to discuss subject matter outside of the Benoit Report. All documents produced concurrently with the Kahaian Report were used to discuss subjects raised in the Benoit Report.

7

Additionally, Defendants explicitly reserved the right to amend their report "based on the production of additional data" and had time to do so. Dkt. 106-5 (Report pg. 31). The purpose of this reservation is for exactly the situation Defendants complain of now. Defendants knew that expert rebuttal disclosures were due on October 8, 2024, and that discovery closed on October 11, 2024. Dkt. 35-1 & 37. Having reserved the right to modify the Benoit Report and having been expressly given multiple indications that Plaintiff planned to submit a rebuttal report that could come as late as October 8, Defendants had every opportunity to take steps to ensure their expert could exercise this reserved right to revise his report between October 8 and 11. Indeed, with respect to their other expert, Defendants did serve an amended expert report at the close of discovery. Defendants understood that their affirmative experts had the right and ability to amend their expert reports. They simply chose not to.

Finally, given the stilted pace of discovery, Plaintiff has offered several times to stipulate to extensions regarding expert timelines. This would have given both parties more time to prepare more robust expert reports. Perceiving some strategic advantage, Defendants declined. Thus, Defendants not only had the chance to revise their report after new information was produced, but Defendants also had the chance to stipulate to new expert deadlines. They cannot now complain about the consequences.

**4.  Defendants had notice of Plaintiff's theory of damages from its initial disclosures and answers to Defendants' interrogatories.**

Defendants complain that they did not have Plaintiff's theory of damages because Plaintiff did not amend its initial disclosures or provide an answer to Defendants' interrogatory asking for Plaintiff's theory of damages. This argument is obviously false.

First, Plaintiff stated its basis for damages in the complaint and initial disclosures. Dkt 1, 44-1, 106-1, 106-3. In addition, Plaintiff subsequently amended its initial disclosures to disclose

Mr. Kahaian on September 6, 2024, weeks before Defendants' expert served his report. Rule 26 does not demand that Plaintiff provide exact numbers, rather "[t]he level of specificity required varies depending on the stage of the litigation and the claims at issue." *Eisen v. Day*, No. 21-cv-05349-VKD, 2024 U.S. Dist. LEXIS 50880, at *3 (N.D. Cal. Mar. 21, 2024). Plaintiff did not amend its disclosures to include a more specific computation of damages because the majority of Plaintiff's damages theories rely heavily on information that only Defendants have access to, and which Defendants delayed producing. Defendants have been less than forthcoming with financial information (hence the pending motion to compel (Dkt. 71)).

For example, Plaintiff has only received revenue information on the Accessibility Toolkit standalone browser extension product (despite the longstanding rule that copyright infringement entitles a Plaintiff to indirect profits from other products if it can prove causation). Moreover, this information did not arrive in full until September 23, 2024 (Defendants' initial production of financial data was not up to date). **Ex. 3** (email showing BROWSERSTACK00000653, which included contemporary financial data, was produced on September 23, 2024). Plaintiff is currently in the process of revising its initial disclosures to provide more exact numbers now that it has concluded that Defendant is unlikely to provide the financial data to which Plaintiff is entitled. These updated initial disclosures will be provided before the upcoming pretrial hearing.

Defendants also complain that Plaintiff supposedly did not elaborate on its damages theories in its response to Defendants' interrogatories. First, Plaintiff provided detailed articulation of its theory of damages in its amended response to Defendants' first set of interrogatories. Dkt. 106-3 at 5-7. This response was as detailed as possible given the development of the proceedings at the time and it even cited case law so that Defendants could fully understand the legal theory Plaintiff was relying on. Plaintiff did not present exact numbers nor could it have. Once again,

9

Plaintiff's damages rely heavily on data in the possession of Defendants. Plaintiff could not have answered Defendants' damages questions in their first set of interrogatories with specific numbers because Plaintiff did not receive any financial data regarding Defendants' revenue until August 8, 2024 (one day before expert disclosures were due) and did not receive contemporary data until September 23, 2024. **Ex. 3.** Defendants' interrogatories were served June 21, 2024. **Ex. 2.** Plaintiff's responses were thus due July 21 (weeks before Defendants produced their first document showing any financial data). Given these series of events, Plaintiff could not have provided a specific calculation of damages in its response to Defendants' first set of interrogatories. Conversely, shortly after receiving Defendants' contemporary financial information in BROWSERSTACK00000653, Plaintiff responded to Defendants' second set of interrogatories citing the specific documents it intended to rely on to support its damages claims. **Ex. 1.**

Finally, it is *curious* that Defendants complain that they were prejudiced by a lack of insight into Plaintiff's damages theory and yet the Benoit Report discusses each damages theory related to the categories of damages Plaintiff disclosed in its initial disclosures. Defendants and Benoit were able to do this because Plaintiff told Defendants exactly what Plaintiff's theory of damages was. If Defendants wanted exact numbers sooner, they should have provided the requested financial data in a timely manner.

**5.**    ***Southern States Rack & Fixture* is not relevant here.**

Defendants' reliance on *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003) is misplaced. That case involved an expert who disclosed an expert opinion and then subsequently revealed that he had expanded his opinion beyond that which was originally disclosed. *Id.* In other words, the case involved the disclosure of a new expert opinion after the deadline passed. That put Federal Rule of Civil Procedure 37(c)(1) at issue. However, Rule 37(c)(1) is only at issue if a party fails to disclose a witness under Rule 26. As already mentioned

10

above, the deadline for the disclosure of a rebuttal expert was October 8, 2024. Plaintiff met that deadline. Again, Defendant seems to erroneously contend that Plaintiff cannot disclose a rebuttal expert without having disclosed an affirmative expert. Nonetheless, because the factors of *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.* do less to help Defendants' argument and instead illustrate the absurdity of Defendants' motion, Plaintiff will address them.

### a. *Defendants are not surprised.*

Defendants pretend to be blindsided by the Kahaian Report, going so far as to write that "[t]here can be no doubt BrowserStack was surprised by Deque's late disclosure of the Kahaian Report." Dkt. 105 at 16. This statement has a precarious relationship with the factual record.

As illustrated in the above timeline, Plaintiff amended its initial disclosures disclosing Mr. Kahaian and specifically stating that Plaintiff intended to rely on his expertise. Dkt. 106-4. This happened on September 6, 2024, which was weeks before Defendants' experts served their affirmative expert report. Plaintiff also moved to allow disclosure of protected information to Mr. Kahaian on September 13, 2024. Dkt. 64. Plaintiff withdrew said motion on September 16, 2024 because Defendants *agreed to allow Plaintiff to disclose protected information to Mr. Kahaian.* Dkt. 67. To agree to allow information to be disclosed to an expert and then to turn around and feign surprise that Plaintiff would rely on that expert is deeply unpersuasive.

### b. *Allowing Plaintiff's rebuttal expert does not affect the jury trial whatsoever.*

Defendants also argue that the jury trial will somehow be disrupted because, if Plaintiff's rebuttal expert is allowed in, then Defendants will have to take additional discovery and rebut him. Dkt. 105 at 18-19. This is incorrect. Defendants are not entitled to rebut a rebuttal. Again, Defendants reserved the right to amend their expert reports if subsequent information was produced. Defendants had every indication that Plaintiff was filing a rebuttal report and that said report was due on October 8, 2024. They could have had their experts on standby to supplement

11

their initial report as needed, they did not do that. Defendants' lack of diligence to exercise the rights they reserved does not amount to a trial disruption. Plaintiff simply followed the schedule and timely submitted a rebuttal expert report. The jury trial should go forward with no delay or disruption.

### c. *The importance of the testimony favors Plaintiff.*

Plaintiff agrees that expert testimony on damages is important to both parties in this case. Dkt. 105 at 19. However, the Kahaian Report is especially important to Plaintiff, in particular where the jury will decide the appropriate amount of Plaintiffs' damages, and Defendants plan to submit "expert" testimony to the jury designed to minimize those damages through the seriously flawed and unreliable testimony that Mr. Benoit intends to offer.

### Conclusion

For the reasons set forth herein, the Court should deny Defendants' motion to strike the Kahaian Report.

Dated: October 15, 2024

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

 /s/ Charles W. Chotvacs
Charles W. Chotvacs (VSB# 70045)
1301 K Street, N.W., Suite 1100 West
Washington, D.C. 20005
Telephone: (202) 906-8600
Facsimile: (202) 906-8669
cchotvacs@dykema.com

Steven McMahon Zeller (*pro hac vice*)
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
szeller@dykema.com

**BODMAN PLC**

/s/ Justin P. Bagdady
Justin P. Bagdady (*pro hac vice*)
201 S. Division Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 930-2727
Facsimile: (743) 930-2494
jbagdady@bodmanlaw.com

Stephen P. Dunn (*pro hac vice*)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
Telephone: (248) 743-6031
Facsimile: (248) 743-6002
sdunn@bodmanlaw.com

Alan Gocha (*pro hac vice*)
99 Monroe Ave NW
Suite 300
Grand Rapids, MI 49503
Telephone: (616) 205-4330

***Counsel for Plaintiff Deque Systems Inc.***

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2024, the foregoing Response in Opposition to Defendants' Motion to Strike was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which shall send notification of electronic filing to all counsel of record.

    /s/ Charles W. Chotvacs
Charles W. Chotvacs

4877-6363-1856.1