# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

          Plaintiff,

    v.

                                          Case No. 1:24-cv-00217-AJT-WEF

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

          Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS.................................................................................... 2

     A.      Breach of Contract ................................................................................... 2

     B.      Copyright Infringement Claim................................................................. 3

     C.      False Advertising Claim .......................................................................... 5

III.    ARGUMENT ....................................................................................................... 6

     A.      Deque's Reliance on Confidential Settlement Discussions Is Improper.................. 6

     B.      Deque Has No Evidence to Support Its Breach of Contract Claim ........................... 8

         1.      Two of the Three Purported Breaches Were Not Pled ............................... 8

         2.      Deque Has Insufficient Evidence To Establish the Alleged Contracts....... 9

         3.      Deque's Purported "Evidence" Is Insufficient to Establish Breach.......... 11

         4.      Deque Has Not Shown Damages As a Result of Any Alleged Breach of Contract............................................................................................. 14

     C.      Deque Has Insufficient Evidence to Support Its Copyright Claim........................... 14

         1.      There Is No Admission of Copying ......................................................... 15

         2.      Deque Does Not Present Sufficient Evidence of Substantial Similarity .. 19

         3.      There is No Evidence Any License Was Exceeded................................... 24

     D.      Deque Is Not Entitled to Summary Judgment on Its False Advertising Claims... 24

         1.      No Admissible Evidence of Alleged Advertisement ................................ 24

         2.      Deque Has Not and Cannot Establish Literal Falsity .............................. 25

         3.      Deque Fails to Show Materiality, Causation or Damages ....................... 29

IV.     CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Belair v. MGA Entertainment, Inc.*,
    503 Fed. Appx. 65 (2d Cir. 2012) ........................................... 19

*Bell v. Wilmott Storage*,
    12 F.4th 1065 (9th Cir. 2021) ............................................... 19

*Bldg. Graphics, Inc. v. Lennar Corp.*,
    708 F.3d 573 (4th Cir. 2013) ............................................... 15

*C.B. Fleet Co., Inc. v. SmithKline Beecham Cons. Healthcare, L.P.*,
    131 F.3d 430 (4th Cir. 1997) ............................................... 27

*Cottrell v. General Sys. Software Corp.*,
    448 S.E.2d 421 (Va. 1994) .................................................. 10

*Design Res., Inc. v. Leather Indus. of Am.*,
    789 F.3d 495 (4th Cir. 2015) ........................................... 25, 26

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.*,
    666 Fed. Appx. 256 (4th Cir. 2016) ...................................... 15

*Donald A. Gardner Architects, Inc. v. Cambridge Builders, Inc.*
    803 F. Supp. 2d 373 (E.D.N.C. Mar. 22, 2011) ....................... 19

*Enterprise Mgmt. Ltd., Inc. v. Warrick*,
    717 F.3d 1112 (10th Cir. 2013) ........................................... 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .......................................................... 15

*Fiberglass Insulators, Inc. v. Dupuy*,
    856 F.2d 652 (4th Cir. 1988) ............................................... 6

*First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*,
    672 Fed. Appx. 229 (4th Cir. 2016) ...................................... 26

*Flame S.A. v. Freight Bulk Pte. Ltd.*,
    807 F.3d 572 (4th Cir. 2015) ............................................... 8

*Fleming v. Lind-Waldock & Co.*,
    922 F.2d 20 (1st Cir. 1990) ................................................. 9

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
    43 F. Supp. 3d 644 (E.D. Va. Sept. 2, 2014) .......................... 15

*Kohus v. Mariol*,
    328 F.3d 848 (6th Cir. 2003) ................................................................ 14

*L & F Prod., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*,
    845 F. Supp. 984 (S.D.N.Y. 1994), *aff'd*, 45 F.3d 709 (2d Cir. 1995) .................................... 27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................ 30

*Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*,
    No. 3:08CV573-HEH, 2009 WL 2876881 (E.D. Va. Sept. 2, 2009) ..................................... 30

*Merck Eprova AG v. Gnosis S.p.A.*,
    760 F.3d 247 (2d Cir. 2014) ................................................................ 30

*Naimoli v. Pro-Football, Inc.*,
    692 F. Supp. 3d 499 (D. Md. 2023), *rev'd and vac'd on other grounds*, 120 F.4th 380 (4th Cir. 2024) ................................................................ 11

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ................................................................ 15

*Palmer v. Braun*,
    376 F.3d 1254 (11th Cir. 2004) ................................................................ 17

*Pharmanetics, Inc. v. Aventis Pharms., Inc.*,
    182 Fed. Appx. 267 (4th Cir. 2006) ................................................................ 30

*Sater Design Collection v. Waccamaw Constr.*,
    97 U.S.P.Q.2d 1769, 2011 WL 666146 (D.S.C. Feb. 14, 2011) .......................................... 19

*Schering-Plough Healthcare Prd. Inc. v. Schwartz Pharma, Inc.*,
    586 F.3d 500 (7th Cir. 2009) ................................................................ 26

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ................................................................ 25, 26, 30

*Silver Ring Splint Co. v. Digisplint, Inc.*,
    543 F. Supp. 2d 509 (E.D.Va. Apr. 9, 2008) ................................................................ 19

*Subafilms, Ltd. v. MGM–Pathe Commc'ns*,
    24 F.3d 1088 (9th Cir. 1994) ................................................................ 17

*Tattoo Art, Inc. v. TAT Int'l LLC*,
    498 Fed. Appx. 341 (4th Cir. 2012) ................................................................ 24

*Terry v. Jarrell*, No. 3:22CV774,
    2023 WL 2588456 (E.D. Va. Mar. 21, 2023) ................................................................ 24

*United Indus. Corp. v. Clorox C*o.,
140 F.3d 1175 (8th Cir. 1998). ............................................................................... 25

*United States v. Bestfoods*,
524 U.S. 51 (1998)................................................................................................... 8

*United States v. Hartford Accident and Indemnity Co.*,
No. JKB-14-2148, 2016 WL 386218 (D. Md. Feb. 2, 2016).................................. 1, 7

*Verisign, Inc. v. XYZ.com, LLC*,
No. 1:14-CV-01749, 2015 WL 7430016 (E.D. Va. Nov. 20, 2015), aff'd, 848 F.3d 292
(4th Cir. 2017).................................................................................................. 29, 30

*Vitol, S.A. v. Primerose Shipping Co.*,
708 F.3d 527 (4th Cir. 2013) .................................................................................. 8

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,

435 F.3d 989 (9th Cir. 2006) .................................................................................. 9

*Williams v. CDP, Inc.*,
No. 4:09CV84, 2009 WL 10689717 (E.D. Va. Sept. 17, 2009)............................. 10

*Zachair, Ltd. v. Driggs,*
965 F. Supp. 741 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) ................... 9

*Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*,
871 F. Supp. 2d 498 (E.D. Va. 2012), *aff'd*, 547 Fed. Appx. 166 (4th Cir. 2013) .................... 9

## Other Authorities

Clapes, Lynch & Steinberg, *Silicon Epics and Binary Bards: Determining the Proper Scope
of Copyright Protection for Computer Programs*, 34 U.C.L.A. L.Rev. 1493, 1571 (1986-87)23

## Rules

Fed. R. Civ. P. 26(a)(1)(A)(iii) .............................................................................. 14

Fed. R. Evid. 408 ............................................................................................. 6, 7

Federal Rule of Civil Procedure 37(c)(1) ................................................................ 14

## Treatises

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A] .......................... 15, 19

## I.    INTRODUCTION

In its Motion, Deque repeatedly tells the Court that BrowserStack reversed engineered and copied the source code for Deque's DevTools® software into BrowserStack's Accessibility Toolkit.  But it does so without supporting its claims with admissible evidence.  Deque presents no evidence regarding its DevTools® software.  And it presents no evidence of the accused Accessibility Toolkit.  Deque sat on its hands throughout this litigation, neglecting even to review the source code for the accused Accessibility Toolkit, let alone offer it as evidence.  Declaration of Ryan J. Marton in Opposition to Deque's Motion ("Marton Opp Decl.") ¶¶ 2-3.  Without admissible evidence of either its asserted work (*i.e.*, DevTools®) or the accused work (*i.e.*, the Accessibility Toolkit), Deque cannot establish any copying or reverse engineering.

Deque tries to sidestep this evidentiary deficiency by premising its case on purported "admissions" of copying made during settlement discussions.  Putting aside the fact that BrowserStack never made any such admissions, statements made during settlement negotiations are inadmissible.  Fed. R. Evid. 408.  And the law clearly prohibits the use of inadmissible settlement discussions to support summary judgment.  *United States v. Hartford Accident and Indemnity Co.*, No. JKB-14-2148, 2016 WL 386218, at *2 (D. Md. Feb. 2, 2016) ("Where evidence is inadmissible pursuant to Rule 408, such evidence 'cannot be considered for purposes of summary judgment.'") (internal citations omitted).

Take away Deque's resort to inadmissible and fabricated "admissions," all that remains are unsubstantiated accusations.  Deque neglected to develop the evidence needed to support its case.  It has no evidence of the accused Accessibility Toolkit.  It did not conduct any comparison of its DevTools® software to the Accessibility Toolkit as is required to prove the alleged copying or reverse engineering underlying its breach of contract and copyright infringement claims.  It has no admissible evidence of the alleged false advertisement.  It did not show that

1

statements about DevTools® were false.  And finally, it has no evidence of any damages, having failed to disclose or formulate any damages calculation.  Accordingly, the Court should deny Deque's motion for summary judgment.

## II.    STATEMENT OF FACTS[1]

1.      Deque filed suit on February 13, 2024 alleging that BrowserStack copied Deque's DevTools® software.  *See* D.I. 1.  After learning of the lawsuit, BrowserStack's CEO, Ritesh Arora, reached out to Deque's CEO, Preety Kumar "to explore the possibility of a constructive resolution."  Declaration of Ritesh Arora in Opposition to Deque's Motion ("Arora Decl."), ¶¶ 3-4, Ex. 1.  In emails labeled "Privileged and confidential settlement discussions," Mr. Arora proposed meeting for the purposes of "[e]xploring collaborative resolution."  *Id*. ¶¶ 4-6, Ex. 1.

2.      [DISPUTING Deque Fact 22]:  Mr. Arora and Ms. Kumar met in-person on March 14, 2024 to discuss possible settlement of the litigation.  *Id*. ¶ 6.  At no time during the meeting, or otherwise, did Mr. Arora admit to copying Deque code or indicate that it was common practice to copy software from other companies.  *Id*. ¶¶ 6-7.  BrowserStack denies and has always denied Deque's claims and any liability in this lawsuit.  *Id*. ¶ 8.

### A.    Breach of Contract

3.      The First Amended Complaint's ("FAC's") breach of contract claim alleges that BrowserStack purchased DevTools® and agreed to Deque's Pro Software License ("Pro Licence").  FAC ¶¶ 27-35, 55, 79-82.  Deque claims BrowserStack's alleged copying breached the Pro License's prohibition against creating derivative works, and that statements that BrowserStack was "5x faster" than Deque breached the prohibition against benchmark tests or

---

[1] Because many enumerated "facts" in the Motion are immaterial, Defendants recite and address herein only relevant and disputed material facts. A comprehensive response to each of Deque's numbered-paragraphs is provided in the Separate Statement attached as Appendix A hereto.

evaluation runs of DevTools®.  *Id.* ¶¶ 79-83.  The FAC does not allege breach based on Deque's website Terms of Use ("ToU") or the Pro License's prohibition against reverse engineering of DevTools®.  *Id.*

4.      [DISPUTING Deque Facts 13 and 39]:  The Deque axe Issue Help pages (such as those in the webpage print-outs in Deque Ex. 2) are publicly accessible from Deque's website without creating a Deque account, logging in, or agreeing to the terms of a Deque license.  Marton Opp Decl. ¶¶ 8-9, Exs. 17-18.

5.      [DISPUTING Deque Fact 15]:  BrowserStack US ██████████████████ ████████████████████████████████████████.  Declaration of Apurv Jain in Opposition to Deque's Motion ("Jain Opp Decl.") ¶¶ 4-7.

## B.      Copyright Infringement Claim

6.      For copyright infringement, the FAC alleges that BrowserStack copied portions of the DevTools® software and the Rules Help Pages text into its Accessibility Toolkit.  *See* FAC ¶¶ 42-44, 56, 58, 73-75; *see also* Defs. Ex. 3[2] (D.I. 141-3) at 1-2 & Ex. A.

7.      Deque does not allege infringement based on ████████████████████ ████████████████████ the "Requirements document").  *See id.*  ██████████ ████████████████████████████████.  Jain Opp. Decl. ¶ 19; *see also id.* ¶¶ 4-7.

8.      Between July 3, 2024 (when BrowserStack first made its code available) and October 11, 2024 (close of discovery), Deque never reviewed the Accessibility Toolkit source code.  Marton Opp Decl. ¶ 2.  And Deque has not included either the Accessibility Toolkit product or its source code on its Trial Exhibit List.  *See id.* ¶ 3; D.I. 123.

---

[2] Citations to "Defs. Ex." refers to exhibits attached to the Marton Decl. (D.I. 141) filed in support of BrowserStack's Motion for Summary Judgment "Defs. MSJ" (D.I. 145).

9.     The portions of DevTools® and the Rules Help Pages that Deque alleges were copied reflect little to no creativity beyond what is in the public Web accessibility standards set forth in the Web Content Accessibility Guidelines ("WCAG").  Declaration of Mihran Yenikomshian in Opposition to Deque's Motion ("Yenikomshian Decl.") ¶ 20, *see also id*. ¶¶ 17-21; *see also* Defs. Ex. 3 at Ex. A (identifying allegedly copied content).

10.     The portions of DevTools® that Deque alleges were copied ████████████ ███████████████████ Yenikomshian Decl. ¶¶ 11-14, Fig. 1a.  The portions of the Rules Help Pages that Deque alleges were copied ██████████████████████ ████  *Id.* ¶¶ 11-14, Fig. 1b.

11.     BrowserStack ██████████████████████████████████████ ████████████████.  Jain Opp Decl. ¶ 23.

12.     ████████████████████████████████████████████ ████████████████████████████████.  *Id.* ¶ 21, Ex. 2.

13.     [DISPUTING Deque Facts 31 and 43]:  Mr. Jain ████████████████ ██████████████████████████  *See* Deque Ex. 13 (Jain Tr.) at 38:7-12.  And Deque has not cited admissible evidence regarding comparison of the DevTools® source code or operation of the product to the Accessibility Toolkit.  *See* Motion, *generally*.

14.     [DISPUTING Deque Fact 41]:  Deque Ex. 5 does not make any showing of what is in DevTools®.  *See* Deque Ex. 5 (purporting to compare portions of the Requirements document to what Deque contends is text from its Rules Help Pages).  And it does not cite evidence.  *Id.*  Similarly, Deque Ex. 6 does not cite any evidentiary source.  *See* Deque Ex. 6.

15.     [DISPUTING Deque Fact 43]:  Deque Ex. 4, which purports to compare portions of the Requirements document to what Deque contends is text from the Rules Help Pages, does

not illustrate similarities between DevTools® and the Accessibility Toolkit.  *See* Deque Ex. 4 (making no reference to DevTools® or the Accessibility Toolkit).  Deque Ex. 4 additionally fails to identify any evidentiary source.  *Id.*

### C.    False Advertising Claim

16.    [DISPUTING Deque Fact 44]:  Deque has no admissible evidence of, and does not present a reproduction or the full context of, the at-issue BrowserStack advertisement. *Compare* Motion at 11 (¶ 44), citing FAC ¶ 64 and Deque Ex. 7 (¶ 19) *with* FAC ¶¶ 63, 64.

17.    [DISPUTING Deque Facts 46 and 47]:  The alleged advertisement does not state "accessibility testing software is '5x faster' than Deque's products" or that "Deque's products lack several features including a centralized dashboard, multipage scanning, and report consolidation."  *Id.*

18.    [DISPUTING Deque Fact 49]:  While the Accessibility Toolkit uses the Axe-Core open source software, BrowserStack ████████████████████████████████████ ██████████████████████████████████████████.  Jain Opp Decl. ¶ 22.

19.    BrowserStack analyzed the Accessibility Toolkit and estimated that it is approximately five times faster than other web accessibility testing products, including Deque's DevTools®.  Jain Opp Decl. ¶¶ 11-15.

20.    [DISPUTING Deque Fact 54]:  DevTools® did not have a centralized dashboard (wherein a list of all available reports and the details of those reports could be accessed in a single centralized place) at the time Deque filed this lawsuit in February 2024.  Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 280:7-281:3 (████████████████████████████████████ ██████████████); Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 173:22-174:21 (████████████ ███████████████████████████████████████████████████████████████").

21.   [DISPUTING Deque Fact 55]:  DevTools® did not have consolidated reports at the time Deque filed this lawsuit in February 2024.  Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 282:15-283:5 (



); Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 158:14-159:16 (

).

22.   [DISPUTING Deque Fact 56]:  DevTools® did not have multi-page scanning at the time Deque filed this lawsuit in February 2024.  Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 282:5-14 (

); Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 157:18-158:4 (

).

## III.   ARGUMENT

### A.   Deque's Reliance on Confidential Settlement Discussions Is Improper

Throughout its motion, Deque attempts to shirk its evidentiary burden by relying on purported "admissions" of copying supposedly made by BrowserStack's CEO, Mr. Arora, in an in-person meeting with Deque's CEO, Ms. Kumar.  Motion at 1-3, 7, 16-17, 20.  What Deque ignores, however, is that reliance on any statement made during the meeting is a violation of the Federal Rules' prohibition against use of statements made during compromise negotiations.  *See* Fed. R. Evid. 408; *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) (stating that Rule 408 "excludes from evidence all statements made in the course of settlement negotiations") (citation omitted).

There can be no doubt that the meeting between Mr. Arora and Ms. Kumar was convened for the purposes of negotiating a settlement to this litigation.  *See Fiberglass*, 856 F.3d at 654 ("To determine whether the statements are covered by [Rule 408], the inquiry is whether the statements or conduct were intended to be part of the negotiations for compromise.") (internal

quotations and citation omitted). Mr. Arora reached out to Ms. Kumar for the sole purpose of negotiating a resolution to the lawsuit. Arora Decl. ¶ 3. In his initial email, Mr. Arora noted that he "learned about the legal action initiated by Deque against BrowserStack" and wanted to "explore the possibility of a constructive resolution." *Id.* ¶¶ 3-4, Ex. 1 (at DEQUE009602). Thus, he titled his email "BrowserStack<>Deque | Exploring Collaborative Resolution" and marked his communication "[Privileged and confidential settlement discussions]." *Id.* ¶ 4, Ex. 1 (at DEQUE009602). His follow-up communication, which ultimately led to scheduling of the meeting, was also marked "[Privileged and confidential settlement discussions]." *Id.* ¶¶ 5-6, Ex. 1 (at DEQUE009601). And all statements Mr. Arora made during the meeting were made in the context of negotiating a compromise resolution to the lawsuit. *Id.* ¶ 6. Even Ms. Kumar admits that she and Mr. Arora discussed resolution of the litigation during the meeting. Deque Ex. 8 at 91:22-92:9. Thus, any statements made by Mr. Arora during his settlement discussions with Ms. Kumar are inadmissible, and cannot be used to support Deque's request for summary judgment. *See* Fed. R. Evid. 408; *Hartford*, 2016 WL 386218, at *2.

Furthermore, Mr. Arora never made any admission of copying. The March 14 settlement meeting was the only time Mr. Arora ever met with or had any discussions with Ms. Kumar. Arora Decl. ¶ 6. And at no point during that meeting did Mr. Arora admit to copying Deque's source code or indicate it was industry practice to copy other software. *Id.* ¶ 7. To the contrary, in his initial communication, Mr. Arora reassured Ms. Kumar that BrowserStack "prioritizes ethical practices, values innovation, and upholds original work" and that he was committed to "uphold[ing] these values." *Id.* ¶ 4, Ex. 1 (at DEQUE009602). He again assured Ms. Kumar of BrowserStack's "ethos and culture that values innovation and original work" in his follow-up communication. *Id.* ¶ 5, Ex. 1 (at DEQUE009601). Thus, there was no "admission" of copying.

**B.      Deque Has No Evidence to Support Its Breach of Contract Claim**

On summary judgment, Deque asserts that "BrowserStack"[3] breached:

1) the Pro License which appears to have been printed on December 15, 2023 (*see* Deque Ex. 21), alleging breach of provisions prohibiting:

   o "[d]ecompil[ing], disassembl[ing], decrypt[ing], or reverse engineer[ing] the Product" (the "Reverse Engineering Provision"); and

   o "[m]odify[ing] or creat[ing] derivative works of the Product" (the "Derivative Work Provision")

2) Deque's website ToU that appears to have been printed on December 15, 2023 (*see* Deque Ex. 22), alleging breach of the following provision:

   o "no portion of this website [the deque.com website] may be distributed or reproduced by any means, or in any form, without Deque's prior written permission" (hereinafter the "Website Reproduction Provision").

*See* Motion at 6, 7, 16-19.  Deque does not present sufficient evidence to support a finding of breach as to any of these three provisions.

**1.      Two of the Three Purported Breaches Were Not Pled**

As an initial matter, two of the allegedly breached provisions, namely the Pro License's Reverse Engineering Provision and the ToU's Website Reproduction Provision, were never pled. *See* FAC ¶¶ 78-85.  The FAC alleges only that "BrowserStack" breached (1) the Pro License's Derivative Work Provision "[b]y incorporating and/or copying portions of the axe DevTools® browser extension for Chrome into BrowserStack's Accessibility Toolkit" and (2) the Pro

---

[3] For its contract claim, Deque treats defendants BrowerStack, Inc. (a U.S. based Delaware corporation, "BrowserStack US") and BrowserStack Software Pvt. Ltd. (an Indian private limited company, "BrowserStack India") as a single unified entity.  Deque, however, has done nothing to establish that the actions of one BrowserStack entity can be attributed to the other. This is improper, and alone precludes summary judgment.  *See Flame S.A. v. Freight Bulk Pte. Ltd.,* 807 F.3d 572, 587 (4th Cir. 2015),citing *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543-44 (4th Cir. 2013) ("the corporate form ordinarily prohibits one entity from being liable for the acts of a separate, though related, entity"); *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (recognizing the "general principle of corporate law" that "a parent corporation ... is not liable for the acts of its subsidiaries").

License provision that "prohibits any user, including BrowserStack, from publishing the results of any benchmark tests or other evaluation run on the axe DevTools® browser extension for Chrome." *Id.* It does not allege breach of the Pro License's Reverse Engineering Provision or the ToU's Website Reproduction Provision. *Id.*[4] This alone precludes summary judgment on these two theories. *Wasco Prods., Inc. v. Southwall Techs., Inc*., 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."), quoting *Fleming v. Lind-Waldock & Co*., 922 F.2d 20, 24 (1st Cir. 1990); *see also Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*, 871 F. Supp. 2d 498, 508 (E.D. Va. 2012), *aff'd*, 547 Fed. Appx. 166 (4th Cir. 2013) (observing that allegations not appearing in the complaint "cannot be relied upon for the purpose of … summary judgment") (internal citations and quotations omitted); *Zachair, Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (explaining that a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

### 2.    Deque Has Insufficient Evidence To Establish the Alleged Contracts

Deque asserts that "BrowserStack" entered into the December 15, 2023 Pro License "[w]hen BrowserStack purchased Deque's DevTools BrowserStack product," and that "BrowserStack" assented to the December 15, 2023 ToU by creating "Deque accounts and the

---

[4] In interrogatory responses served October 4, 2024 (seven days before the close of discovery), Deque identified breach of "all provisions related to Deque's intellectual property rights" and "all provisions related to the prohibition of reverse engineering" from both the ToU and Pro License. Defs. Ex. 5 (D.I. 141-5) at Rog. 12. But vague references made at the end of discovery cannot expand the scope of the case beyond the operative pleading. *Aquilent, Inc. v. Distributed Sols., Inc.*, No. 1:11-CV-393, 2012 WL 405009, at *9-10 (E.D. Va. Feb. 7, 2012) (granting summary judgment against contract claim where the particular breach was not plead in the complaint but was identified in an interrogatory response); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 658 F. Supp. 775, 778 (N.D. Ill. 1987) ("Just how discovery responses can cure threshold pleading defects is another unexplained mystery.").

accessing of Deque's website."  Motion at 15.  But there is no evidence ███████████████

███████████████████████████████████████████

███████████████████████  In fact, the only evidence regarding BrowserStack US is

testimony that ███████████████████████████████████

███████████████████████████████████████████

███████████████.  *See* Jain Opp Decl. ¶¶4-7.  As such, there is no evidence of any

agreement with BrowserStack US to base any contract claim.  *Williams v. CDP, Inc*., No.

4:09CV84, 2009 WL 10689717, at *2 (E.D. Va. Sept. 17, 2009) ("[O]nly the promisor is liable

for the legal interests, duties and obligations promised in the contract…Without a promisor-

promisee relationship, a party may not be sued for breach of contract."), citing *Cottrell v.

General Sys. Software Corp*., 448 S.E.2d 421, 422 (Va. 1994).

There is also no evidence that BrowserStack India assented to the two specifically

asserted agreements (*i.e.* the Pro License printed on December 15, 2023 and the ToU printed on

December 15, 2023).  With respect to the December 15, 2023 Pro License, Deque relies on an

invoice for DevTools® issued November 30, 2021 (*see* Deque Ex. 26) and an April 21, 2022

DevTools® purchase receipt (*see* Deque Ex. 25) as evidence of BrowserStack India's purchase

of DevTools® and thus, assent to the Pro License.  Motion at 15-16.  However, the Pro License

Deque alleges was breached is dated December 15, 2023 and there is no evidence that this

agreement was operative at the time of the alleged 2021 and 2022 purchases.

The same is true with the website ToU.  Deque offers no evidence that either

BrowserStack entity assented to the ToU back in 2021 and 2022.  Furthermore, contrary to

---

[5] Deque Ex. 26 includes a DevTools® invoice that Deque issued to "BrowserStack, Inc." on November 30, 2021, but that does not show that BrowserStack US actually purchased or used any Deque product.  *See* Jain Opp Decl. ¶¶ 4-7.

Deque's assertion, users navigating to Deque's website are not prompted to review the ToU. Marton Opp Decl. ¶¶ 4-9.  And users can create and login to a Deque account without viewing or agreeing to the website ToU.  *Id*. ¶ 7.  Furthermore, the deque.com "issue" or "rules" help pages that Deque alleges was copied do not link to or reference the ToU.  *Id*. ¶¶ 8-9.  Indeed, the deque.com homepage does not reference or link to the ToU.  *Id.* ¶ 4.  Instead, at the bottom of that page, arrived at after substantial scrolling, buried among more that 40 links, there is a link to "Legal" which directs to another page with many links including a "Learn more" button about "Website Terms of Use," which, if clicked, directs the user to the ToU.  *Id.* ¶¶ 4-6.  Website terms of use, such as these, "buried at the bottom of the page" or "available only if users scroll to a different screen" are generally not enforceable.  *Naimoli v. Pro-Football, Inc.*, 692 F. Supp. 3d 499, 508 (D. Md. 2023), *rev'd and vac'd on other grounds*, 120 F.4th 380 (4th Cir. 2024) ("[C]ourts generally will not enforce agreements when the terms are buried at the bottom of the page or tucked away in obscure corners of the website, especially when such scrolling is not required to use the site, or when the terms are available only if users scroll to a different screen") (internal quotations and citations omitted).  As such, Deque has insufficient evidence to establish that either BrowserStack entity assented to either the ToU or the Pro License submitted in evidence.

### 3.    Deque's Purported "Evidence" Is Insufficient to Establish Breach

Deque asserts BrowserStack breached the Reverse Engineering and Derivative Work Provisions of the Pro License by accessing "code" from DevTools® and copying that code into BrowserStack's Accessibility Toolkit.[6]  *See e.g.*, Motion at 16-19 ("BrowserStack reverse

---

[6] The Accessibility Toolkit is software for testing websites for compliance with accessibility guidelines such as the Web Content Accessibility Guidelines ("WCAG") created by the World

engineered and impermissibly modified DevTools to create ATT"). But there is no evidence supporting Deque's story; BrowerStack independently developed the Accessibility Toolkit, as evidenced by the fact that ███████████████████████████████████████████ ███████████. Marton Opp Decl. ¶¶ 9-10, Ex. 19 (██████████████████████████ ███████████████████████████████████████████████████████ █████████████████████") and Ex. 20 (authenticating and describing Ex. 19); *see also* Jain Opp. Decl. ¶ 23.

Deque rests its case on Mr. Arora's "admissions" in the hopes of proving reverse engineering and copying of code from DevTools®. *See* Motion at 16-17. However, as explained above, Mr. Arora neither made the alleged "admissions," nor are they admissible. *See* Section III.A, *supra*. Beyond Deque's inaccurate and improper reference to Mr. Arora's inadmissible statements, Deque relies exclusively on a Requirements document (Deque Ex. 1a) as evidence of the alleged "reverse engineering" and creation of a "derivative" work. *Id*. But the Requirements document (████████████████████████████████████████ █████████████████████████████████████████████████████ ██████████████████████████████ Opp Decl. ¶ 19. ████████ █████████████████████████████████████. *Id*. The Requirements document includes █████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████. *See* Deque Ex. 1a. ████

Wide Web Consortium ("W3C"), an international non-profit leader in Internet standardization. *See* https://www.w3.org/WAI/standards-guidelines/wcag/. *See* Jain Opp Decl. ¶ 7.

███████████████████████████████████████████████████████████████

███████████████████████████████████. *Id.*; Jain Opp Decl. ¶ 19.

While Deque asserts that the Requirements document ███████████████████████

███████████████████████████████████████" (*see* Motion at 8), it has

presented no evidence that any Deque code was copied into or used in any way to create the

Accessibility Toolkit.  In fact, Deque cites no evidence of the Accessibility Toolkit or what is or

is not in it.  This is because Deque did not even bother to look at the Accessibility Toolkit source

code (despite the fact it was made available to Deque in this case).  Marton Opp Decl. ¶ 2.  And,

indeed, conspicuously absent from Deque's trial exhibit list is any evidence of BrowserStack's

product or code.  *Id.* ¶ 3; D.I. 123.  Thus, the only evidence regarding the Accessibility Toolkit is

that it was independently created without copying DevTools® code.  Jain Opp Decl. ¶ 23.

The Pro License Reverse Engineering Provision precludes users of the DevTools® from

"decompil[ing], disassembl[ing], decrypt[ing] or reverse engineer[ing] the Product or attempting

to derive the source code for any part of the Product."  Deque Ex 21.  Deque's "evidence" does

not even address or relate in any way to reverse engineering or deriving the source code of

DevTools®.  Indeed, Deque has presented no evidence that BrowserStack accessed, analyzed, or

used any code from DevTools®.

The Derivative Work Provision precludes users of DevTools® from "modify[ing] or

creat[ing] derivative works of the Product."  Deque Ex 21.  Deque merely concludes

BrowserStack created a derivative work of DevTools® "by combining copied materials with

additional ATT code."  Motion at 18.  But there is no evidence in the record that BrowserStack

copied any part of DevTools®, let alone combined any part of DevTools® with the Accessibility

Toolkit.  Indeed, as mentioned above, there is no evidence in the record of what is or is not in the Accessibility Toolkit at any point in time.

### 4. Deque Has Not Shown Damages As a Result of Any Alleged Breach of Contract

Deque admits that for its breach of contract claim, it must show it has been damaged as a result of the alleged breach.  Motion at 14.  But Deque cannot show any recoverable damage caused by the alleged breach.  As an initial matter, Deque is precluded from recovering any damages in this case because it failed to disclose a damages computation during discovery in violation of Fed. R. Civ. P. 26(a)(1)(A)(iii) and Fed. R. Civ. P. 37(c)(1).  *See* Defs. MSJ (D.I. 145) at 11-17.  Further, the only damages Deque claims in its Motion ("lost sales … because [BrowserStack] avoided tens of millions in development costs via copying") has not been shown to be caused by any alleged breach.  *See id.* at 19.  Indeed, competition from BrowserStack entering the accessibility market does not equate to damages resulting from a breach of contract. Deque has not shown that the alleged "reverse engineering" or "copying" caused any loss in sales or revenue.  *See* Defs. MSJ (D.I. 145) at 11-17.

### C. Deque Has Insufficient Evidence to Support Its Copyright Claim

For its copyright claim, Deque alleges that BrowserStack copied code from DevTools® and text from the Rules Help Pages into BrowserStack's Accessibility Toolkit.  FAC ¶¶ 42-44, 47-48, 75; Defs. Ex. 3 (D.I. 141-3) at Ex. A; *see also e.g.* Motion at 1-3, 7, 16-17, 20.  To prevail on this claim, Deque must prove that original and protectable elements of DevTools® and the Rules Help Pages were copied.  *See Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015).

Indeed,"[n]ot all 'copying' is actionable . . . it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent element of the work *that are original*."  *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (emphasis in original),

citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *see also Copeland*, 789 F.3d at 489 ("To establish a claim for copyright infringement . . . a plaintiff must prove that it possesses a valid copyright and the defendant copied elements of its work that are original and protectable."); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp. 3d 644, 658-59 (E.D. Va. Sept. 2, 2014) (copying "requires not only a showing that a defendant copied a plaintiff's work, but that the defendant copied 'protected elements' of the plaintiff's work") (citation omitted). "This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A] ("Nimmer"), citing *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004). Thus, the law requires Deque to present undisputed admissible evidence that the code for the Accessibility Toolkit is "substantially similar" to the DevTools® code or associated Rules Help Pages. *See Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 Fed. Appx. 256, 263 (4th Cir. 2016), citing *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 577-78 (4th Cir. 2013). Deque tries to avoid proving "substantial similarity," claiming that no such showing is required in light of "admissions" of copying. *See* Motion at 20-21. Deque is wrong on both the facts and the law.

### 1.    There Is No Admission of Copying

With respect to the facts, there is no admissible evidence that BrowserStack admitted to copying code from DevTools® or the Rules Help Pages into the Accessibility Toolkit. Deque first claims that Mr. Arora admitted to copying during his discussions with Ms. Kumar. *Id.* at 20. But as noted previously, there were no such admissions and more importantly, statements made in those discussions are not admissible. *See* Section III.A, *supra*.

Deque alternatively points to testimony from Mr. Jain, Group Product Manager at BrowserStack India, suggesting that ███████████████████████████████

██████████████████████████. Motion at 20-21.  Mr. Jain made no such admissions.  As

an initial matter, the testimony Deque relies on relates to the Requirements document.  *See id.*;

*see also id.* at 8-10 (Deque Facts ¶¶ 28-38, 40-42), referencing Deque Exs. 1, 1a.  But Deque's

copyright infringement claim accuses the Accessibility Toolkit software, not the Requirements

document.  *See* FAC ¶¶ 42-44, 47-48, 75; D.I. 141-3 at 1-2 & Ex. A; Motion at 1-3, 7, 16-17, 20.

Therefore, whatever the evidence may show about the Requirements document, it does not and

cannot constitute an admission regarding the Accessibility Toolkit.

Moreover, none of the cited testimony discusses any of Deque's copyrighted works.

While Mr. Jain testified ████████████████████████████████████

███████████████████ (*see* Deque Ex. 13 (Jain Tr.) at 52:13-23, 53:4-6), ████████████

████████████████████████████████████████████████████

████████  Deque submits that Ex. 2 is a collection of webpages from Deque's Rules Help

Pages that counsel captured by clicking on the links in the Requirements document (Exhibit 1a).

Darling Decl. ¶ 4; Deque Ex. 2.  But, as shown in the example below, ████████████

████████████████████████████████████████████

████████████████████████████████████



*Compare* Deque Ex. 1a (https://axe.deque.com/rule-help/en/keyboard-inaccessible) to Deque Ex.

2 (https://docs.deque.com/issue-help/1.0.0/en/keyboard-inaccessible). ████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████

More importantly, Deque does not make any showing that the webpages in Deque Ex. 2 constitute its copyrighted Rules Help Pages. Indeed, Deque does not present any evidence of the actual copyrighted Rules Help Pages. All Deque points to is Mr. Jain's ██████████

█████████████████████████████████████████████████

████████████████████████. That is not an admission with respect to either the accused Accessibility Toolkit or the asserted copyrighted Rules Help Pages.

Deque also contends █████████████████████████████

███████████████████ Motion at 9, 20-21. ████████████

█████████████████████████████████████████

█████████████████████████████████████████████████

███████ Jain Opp Decl. ¶ 19; *see also id*. ¶¶ 4-7. Thus, regardless of whether there was any copying, the Requirements document cannot form the basis of a claim for infringement of a U.S. copyright. *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) ("[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States."), citing *Subafilms, Ltd. v. MGM–Pathe Commc'ns Co.*, 24 F.3d 1088, 1091 (9th Cir. 1994) (en banc).

The only evidence Deque points to regarding the accused Accessibility Toolkit is testimony from Mr. Jain ██████████████████████████████████████

█████████████████ *See* Motion at 21, citing Deque Ex. 13 (Jain Tr.) at 48:10-49:22. With

respect to that, Mr. Jain testified ██████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████    Deque Ex. 13 (Jain Tr.) at 48:10-███████████████

███████████████████████    *See* Deque Ex. 1a (Column G).  But Deque does not

present any evidence ███████████████████████████████████████

█████████████████████████████████████████████████████████

████████    *See* Deque Ex. 13 (Jain Tr.) at 48:10-14.  Thus, nothing about Mr. Jain's

testimony equates to an admission that BrowserStack copied Deque's copyrighted Rules Help

Pages into the Accessibility Toolkit.

Deque goes on to argue that copying is also shown by the fact ████████████

███████████████████████████████████████████.  Motion at 21.

But Deque does not cite any evidence showing ██████████████████████████

██████████████.  Rather, the evidence Deque cites ███████████████████

████████████████████ (Deque Ex. 1a) █████████████████████████

███████████████ (Deque Ex. 2).  Motion at 21.  There is no basis to then conclude that

BrowserStack copied DevTools® code or the copyrighted Rules Help Pages into the

Accessibility Toolkit.  Moreover, ████████████████████████████████

███████████████████████████████████████████████████

████████    Jain Opp Decl. ¶ 21, Ex. 2.  Thus, a review of Deque's evidence shows that there is no

basis to find any admission of copying.

### 2.    Deque Does Not Present Sufficient Evidence of Substantial Similarity

#### a.    Deque's Copyright Claim Requires Deque to Present Admissible Evidence of Substantial Similarity

Deque is also wrong on the law.  Even if a plaintiff can establish copying, the plaintiff

must still prove substantial similarity between the accused and copyrighted work.  Nimmer at

§ 13.03[A]; *see also Sater Design Collection v. Waccamaw Constr.*, 97 U.S.P.Q.2d 1769, 2011

WL 666146, at *6 (D.S.C. Feb. 14, 2011) ("even in a situation where a defendant admits copying

or witnesses are available who actually viewed the act of copying, . . . copying as a legal

proposition must still be established; hence substantial similarity remains an indispensable

element of plaintiff's proof") (internal citations and quotations omitted); *Belair v. MGA*

*Entertainment, Inc.*, 503 Fed. Appx. 65, 66 (2d Cir. 2012) ("To prove copyright infringement, a

plaintiff must establish both (1) actual copying and (2) the illegality of that copying as evidence

from a substantial similarity between defendant's work and the protectible elements of plaintiff's

work.").  Even Deque's own cited caselaw acknowledges that a substantial similarity inquiry is

still necessary where copying is established.  *See* Motion at 22, citing *Bell v. Wilmott Storage*, 12

F.4th 1065, 1074 (9th Cir. 2021) (noting that "even where the fact of copying is conceded, no

legal consequences will follow from that fact unless the copying is substantial"), quoting

Nimmer at § 13.03[A].[7]

---

[7] Deque cites *Silver Ring Splint Co. v. Digisplint, Inc.*, where the court did require a "substantial similarity" analysis.  543 F. Supp. 2d 509, 513-514 (E.D.Va. Apr. 9, 2008) ("Defendant's liability for copyright infringement turns on whether the allegedly infringing works are 'substantially similar' to Plaintiff's [asserted work].").  The other two cited cases involved accused works  that were complete duplicate reproductions of the asserted works.  *See Donald A. Gardner Architects, Inc. v. Cambridge Builders, Inc.* 803 F. Supp. 2d 373, 380 (E.D.N.C. Mar. 22, 2011) (admitted use of house design); *Enterprise Mgmt. Ltd., Inc. v. Warrick* 717 F.3d 1112, 1116 (10th Cir. 2013) (admitted reproduction of copyrighted diagram in course materials).  Here, Deque has not alleged, let alone shown, that the Accessibility Toolkit is a reproduction of either the DevTools® software or the Rules Help Pages.  *See* Defs. Ex. 3 (D.I. 141-3) at Ex. A.

And certainly here, where there is no admission, no concession, and no direct evidence of copying (*see* Section III.C.1 *supra*), Deque must present undisputed evidence that the accused Accessibility Toolkit is "substantially similar" to the protected elements of DevTools® and the Rules Help Pages. *See Devil's Advocate,* 666 Fed. Appx. at 263. In the Fourth Circuit, "substantial similarity" requires Deque to show that its asserted works (DevTools® and the Rules Help Pages) and BrowserStack's Accessibility Toolkit are (1) extrinsically similar because they contain substantially similar ideas to works subject to copyright protection, and (2) intrinsically similar because they express those ideas in a substantially similar manner from the perspective of the intended audience of the work. *See Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732-33 (4th Cir. 1990); *Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015).

### b.    Deque Has No Evidence of Extrinsic Similarity

The extrinsic similarity prong looks to external criteria of substantial similarity—often in the form of expert testimony—between the protectable original elements of the asserted work and the alleged copy. *Copeland*, 789 F.3d at 489. Here, Deque does not even introduce any evidence of the accused Accessibility Toolkit.[8] Thus, it does not and cannot offer any evidence, through expert testimony or otherwise, as to the similarities between the Accessibility Toolkit code and the protectable elements of DevTools® code or the Rules Help Pages. *See* Defs. MSJ (D.I. 145) at 18-22.

_____

[8] The only exhibit that even purports to identify source code files for the Accessibility Toolkit is Deque Ex. 6, which Deque makes only one passing reference to in its Motion. *See* Motion at 10 (¶ 42). But Deque Ex. 6 is an attorney-created chart, does not identify any evidentiary source, and is not cited to support any claim in Deque's Motion. Deque also did not review the Accessibility Toolkit code during discovery, and does not list the product itself or its code as trial exhibits. *See* Marton Opp Decl. ¶¶ 2-3; D.I. 123. Thus, Deque has no way to introduce the Accessibility Toolkit into evidence, and cannot make a "substantial similarity" showing.

Instead, Deque simply concludes without citation to any evidence that "Deque's Rules Help Pages contain original expressions in the way they express accessibility standards, instructions, and fixes." Motion at 23. The only evidence that exists, however, shows that ████

█████████████████████████████████████████████████████████████████

███████████████████████████. Yenikomshian Decl. ¶¶ 15-21. BrowserStack's technical expert, after reviewing the asserted works (*i.e.*, the DevTools® source code and the Rules Help Pages), the accused work (*i.e.*, the Accessibility Toolkit source code), and the WCAG standards, concluded that the allegedly copied text reflects little to no creativity beyond the standards on which it is based. *Id.* ¶ 20; *see also id.* ¶¶ 3-4, 12, 15-21.

Deque also tries to suggest, without any evidence, that BrowserStack "engaged in verbatim copying" and thus, the Accessibility Toolkit necessarily copies whatever protectable content remains after filtering out non-protectable elements from the DevTools® source code and the Rules Help Pages. Motion at 24. But Deque does not even allege that BrowserStack copied the entirety of the DevTools® source code and the Rules Help Pages. Its allegations are limited to a handful of text. *See* Defs. Ex. 3 (D.I. 141-3) at Ex. A. And as noted above, as to those allegedly copied portions, the language expresses little creativity beyond the industry accessibility standards. Yenikomshian Decl. ¶¶ 15-21.

BrowserStack's expert further conducted a quantitative analysis of the DevTools® source code and the Rules Help Pages and found ██████████████████████████████

█████████████████████████████████████████████████. *Id.* ¶ 11-14.

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

21



*Id*. ¶ 13, Figs. 1a-1b. Deque does not have a technical expert, fails to consider the allegedly copied portions of the DevTools® source code and Rules Help Pages relative to the entire work.

Most notable, however, is Deque's failure to even review the source code for the accused Accessibility Toolkit. Marton Opp Decl. ¶ 2. Without evidence of what is in the accused work, Deque has not and cannot prove that the Accessibility Toolkit software is extrinsically substantially similar to the DevTools® source code or Rules Help Pages. The only evidence that does exist is Mr. Yenikomshian's testimony that the allegedly copied portions of Deque's asserted works are not protectable creative expression ███████████████████

█████████     Yenikomshian Decl. ¶¶ 11-21.

---

[9] Deque cites a portion of Mr. Yenikomshian's expert report where ████████████████

██████████████████████. *See* Motion at 24, citing Deque Ex. 27 ¶¶ 54, 57(c). As an initial matter, Mr. Yenikomshian's report is inadmissible hearsay. *David v. Summit Comm. Bank*, No. 1:22-cv-1154, 2023 WL5615983, at *10 (E.D.Va. Aug. 30, 2023), citing *Page v. Virginia Bd. of Elecs.*, No. 3:13-c-678, 2015 WL 3604029, at* 30 n.42 (E.D.Va. June 5, 2015). Additionally, in that part of the report, Mr. Yenikomshian █████████████████████

████████████████     ████████████████

c.    **Deque Has No Evidence of Intrinsic Similarity**

Deque also fails to establish intrinsic similarity between the Accessibility Toolkit and Deque's DevTools® source code or Rules Help Pages.  The intrinsic inquiry is a subjective, measuirng the "total concept and feel" of the works in asking if they are substantially similar. *Copeland*, 789 F.3d at 489.  This inquiry must be made from the perspective of the "intended audience" of the copyrighted work.  *Dawson*, 905 F.2d at 736.  Where the "intended audience" possesses specialized expertise, "[s]uch an inquiry may include, and no doubt in many cases will require, admission of testimony…from those who possess expertise with reference to the…perceptions of the intended audience."  *Id*.

The Fourth Circuit recognizes that "[w]hen dealing with computer programs…[t]he average judge or jury cannot read source code or appreciate the 'total concept and feel' of a program.  Thus, it is necessary to rely on the reaction of persons who do typify the members of the intended audience."  *Dawson*, 905 F.2d at 736, citing Clapes, Lynch & Steinberg, *Silicon Epics and Binary Bards: Determining the Proper Scope of Copyright Protection for Computer Programs*, 34 U.C.L.A. L.Rev. 1493, 1571 (1986-87).  Here, Deque acknowledges that the

██████████████████████████████████████████████████████████████████

Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 149:17-150:30.  Yet, Deque offers no expert testimony as to the perspective of the intended ████████████████, and thus no basis for a finding of intrinsic similarity.  This failure alone defeats Deque's request for summary judgment.

Deque instead relies on testimony from Mr. Jain describing ████████████████████ ████████████████████████████████████████████████████ ████████████████████████  Motion at 25.  It then makes the unsupported argument that BrowserStack "████████████████████████████████████████████ ████████████████████  *Id.*  But Deque never once showed how the allegedly

copied language is used in either its DevTools® software or BrowserStack's Accessibility Toolkit. It offers no evidence at all about its DevTools® software and thus cannot show how the intended user would compare DevTools® and the Accessibility Toolkit.

### 3. There is No Evidence Any License Was Exceeded

Deque makes the final tautological argument that there is copyright infringement because BrowserStack breached the license agreement (breach of which requires proof of copyright infringement). *See* Section III.B, *supra*. Not only does this argument fail for the reasons its claim for breach of the Pro License fails (*see id.*), but the caselaw Deque cites is also inapposite. *See* Motion at 25. In *Tattoo Art, Inc. v. TAT Int'l LLC*, the defendant admittedly used and reproduced plaintiff's copyrighted tattoo designs and the dispute was over royalty payments under a license agreement for use of the copyrighted design. 498 Fed. Appx. 341, 344 (4th Cir. 2012). That situation is not analogous to this case, where there is no admission or even allegation that BrowserStack reproduced DevTools® in its entirety.

### D. Deque Is Not Entitled to Summary Judgment on Its False Advertising Claims

#### 1. No Admissible Evidence of Alleged Advertisement

Deque's false advertising claim must fail because the alleged advertisement is not in evidence. Deque cites to only allegations in its unverified FAC and Ms. Kumar's declaration. *See* Motion at 11 (¶¶ 44-47); *see also* FAC ¶¶ 63-65. But allegations in an unverified complaint are not evidence. *See, e.g.*, *Terry v. Jarrell*, No. 3:22CV774, 2023 WL 2588456, at *3 (E.D. Va. Mar. 21, 2023) ("Because [plaintiff] failed to swear to the contents of his Complaint under penalty of perjury, the allegations contained therein do not constitute admissible evidence.") (citation omitted). Similarly, declarations used on summary judgment must contain admissible evidence and be based on personal knowledge. Fed. R. Civ. P. 56(c)(4). Ms. Kumar does not establish the foundation needed to authenticate the purported advertisement. She did not

"capture" the image herself.  *See* Deque Ex. 7 ¶ 19.  She does not identify how, where, or when the alleged advertisement was available or captured, which "Deque employees" captured it, or her basis of knowledge.  *Id*.  The proffered image is also, at best, incomplete, limited to what unidentified "Deque employees" subjectively decided to be "at the heart of [the purported] false advertising," without showing the full context of the advertisement as it appeared.  *Id*.  Thus there is no evidence of any complete advertisement or the context in which it appeared, which is required for a literal falsity analysis.  *See Scotts Co. v. United Indus. Corp*., 315 F.3d 264, 275 (4th Cir. 2002) (assessing falsity requires, "a court [to] analyze the message conveyed within its full context"), quoting *United Indus. Corp. v. Clorox C*o., 140 F.3d 1175, 1180 (8th Cir. 1998).  Deque's summary judgment motion should be denied on these evidentiary failures alone.

### 2.    Deque Has Not and Cannot Establish Literal Falsity

Deque also fails to establish that any statement was literally false.  *See* Motion at 26 (asserting literal falsity only).  For literal falsity, a statement must be "false on its face," which "may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated."  *Design Res., Inc. v. Leather Indus. of Am*., 789 F.3d 495, 501 (4th Cir. 2015) (internal quotations and citations omitted).

Here, Deque alleges literal falsity with respect to what it characterizes as "two categories of comparative advertising," interpretating the advertisement as comparing the Accessibility Toolkit broadly to all of Deque's accessibility testing products (not just DevTools®).  *See* Motion at 27 (stating BrowserStack claimed "(1) ATT is five times faster than Deque's accessibility testing products; and (2) Deque does not offer a centralized reporting dashboard, consolidated reports, or multipage scanning functionality in connection with its accessibility testing products"); *see also id.* at 11 (¶¶ 44-47).

### a.      Ambiguous Statements Cannot Be Literally False

But the statements that the Accessibility Toolkit "is five times faster than Deque's

accessibility products" or that "Deque does not offer a centralized reporting dashboard,

consolidated reports, or multipage scanning functionality in connection with its accessibility

testing products" does not appear explicitly anywhere on the face of the alleged advertisement.

Motion at 11 (¶ 44); Deque Ex. 7 ¶ 19; FAC ¶ 64.  Nor can Deque prove that its interpretation of

the statements is conveyed by necessary implication.  It has no evidence of the full context of the

image, and thus no evidence of how the intended audience would understand the statements in

their full context.  *See Design Res.*, 789 F.3d at 501-502; *see also Schering-Plough Healthcare*

*Prd. Inc. v. Schwartz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009) (explaining the

significance of context and audience to determine literal falsity and noting that a plaintiff "cannot

just intone 'literal falsity' and by doing so prove a violation of the Lanham Act").  At best, this

limited screenshot of the purported advertisement is ambiguous as to what statements are being

made as to which Deque products.  Ambiguity alone defeats Deque's request for summary

judgment.  *Scotts*, 315 F.3d at 275 (where graphic could be "reasonably be understood as

conveying different messages," "literal falsity argument must fail") (citation omitted); *First Data*

*Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 Fed. Appx. 229, 235 (4th Cir. 2016) (finding

"advertisements not unambiguous and therefore cannot be literally false").

### b.      Deque Has Made No Showing of Falsity

#### (1)      Deque Fails to Show that the "5x faster, end-to-end accelerated workflows" Statement Is False

Additionally, Deque has no evidence that any of the statements are false.  With respect to

"5x faster, end-to-end accelerated workflows," Deque first argues the statement is literally false

because BrowserStack "has no basis for its assertion" because "Jain never actually tested

Deque's software." Motion at 27. That is not the applicable standard. Only with respect to "test-validated" claims—*i.e.*, where a party claims that its representations have been verified to be accurate through testing—can literal falsity be proven "by showing the test asserted to validate it did not in fact do so." *C.B. Fleet Co., Inc. v. SmithKline Beecham Cons. Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997). The purported advertisement here does not suggest, mention, or imply any testing whatsoever. Motion at 11 (¶ 44); FAC ¶ 64. And Deque has provided no evidence or made any argument that any consumer did or would view this as a "test-validated" claim. Thus, Deque must affirmatively prove "5x faster, end-to-end accelerated workflows" is literally false. *See C.B. Fleet*, 131 F.3d at 436 (where there was no express assertion of test validation and no evidence that consumer public viewed it as such, plaintiff had to prove literal falsity); *L & F Prod., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co*., 845 F. Supp. 984, 1000-01 (S.D.N.Y. 1994), *aff'd*, 45 F.3d 709 (2d Cir. 1995) (superiority claim not tests-based where no evidence of explicit or implicit reference to tests, and thus requiring plaintiff to "produce evidence that affirmatively shows the superiority claim to be false").[10]

Deque, however, cites no evidence—no tests, studies, expert opinions, customer surveys, testimony, or documents—that even suggests that the Accessibility Toolkit's was ***not*** five times faster than DevTools® (or any other Deque product). *See generally* Motion; *see also* Defs. MSJ (D.I. 145) at 6 (SUF ¶¶ 19-23). Indeed, the evidentiary record proves the statement was, in fact,

---

[10] Even if this were a test-validated claim (though it is not), Deque still has not shown that BrowserStack's analysis was "not sufficiently reliable" to make the claim. *C.B. Fleet*, 131 F.3d at 436. Deque presents only arguments, not evidence. *See* Motion at 28 (arguing, with no evidentiary support, that BrowserStack "has no basis for its assertion," "effectively made up its numbers," and "cannot permissibly use objective mathematical comparisons to Deque when its 'numbers' were based on general comparisons to the market"), whereas BrowserStack set forth the rationale and bases for its understanding of the efficiency gains facilitated by the Accessibility Toolkit. Jain Opp Decl ¶¶ 11-6; Deque Ex. 13 (Jain Tr.) 89:1-91:24, 92:2-94:18 (explaining basis for calculating speed improvement), 82:15-83:24, 84:6-86:20, 87:11-88:12.

true.  *See supra* n.10; Defs. MSJ (D.I. 145) at 7 (¶¶ 20-22); Jain Opp Decl. ¶¶ 11-16 (setting

forth basis for estimate of 5x faster); *id.*, Ex. 1 (Deque's admission that its testing was

"challenging" and "time-consuming"); Deque Ex. 13 (Jain Tr.) at 86:11-20 (████████████

████████████████████████████████); Defs. Ex. 10 (D.I. 145-

4, Schneiderman Tr.) at 151:10-15, 152:10-14 (██████████████████████████

████████████████████████████████").

   Deque alternatively argues that since "█████████████████████████

████████████████████████████████████████████

████ Motion at 27.  This again is conclusory with no supporting evidence.[11]  No evidence

explains, *e.g.*, how Deque's open-source software was implemented or interacts with the two

respective products; what, if any, correlation exists between it and the two products' testing

speeds; or how its use rebuts or was not already accounted for in BrowserStack's speed

improvement calculation analysis.  Indeed, ████████████████████████████

████████████████████████████████

████████████████████████████████.

Jain Opp Decl. ¶ 22.  As Deque provides nothing to substantiate its argument, there is no

evidence to support any finding of falsity.

   **(2)  Deque Fails to Show Any Other Statement Is False**

   Deque goes on to claim that other statements listing product features are false because "at

all relevant times Deque offered centralized reporting dashboard, consolidated reports, and

multipage scanning functionality in connection with its accessibility testing products."  Motion at

---

[11] The testimony Deque cites does not support its argument.  *See* Motion at 12 (¶ 48).  Mr. Jain merely testified that BrowserStack ████████████████████████████
Deque Ex. 13 (Jain Tr.) at 128:5-29:6.

28.  Deque's cited evidence does not establish falsity ███████████████. *See,*

*e.g.*, Deque Ex. 9 (Barrell Tr.) at 279:17-280:21; 281:4-21; 282:15-283:5 (██████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████. Defs. Ex. 10

(D.I. 145-4, Schneiderman Tr.) at 158:14-159:16; *see also* Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at

282:15-283:5. ████████████████████████████████

████. Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 1587:18-158:4; Defs. Ex. 8 (D.I. 145-

2, Barrell Tr.) at 282:5-14. ████████████████████████████

███████████████████████████████████. Defs. Ex. 10

(D.I. 145-4, Schneiderman Tr.) at 173:10-25. ████████████████████████

████████████████████████████████████. *Id*. at

171:24-174:21; *see also* Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 280:7-281:3 (██████████

██████████████████████████); Jain Opp Decl. ¶¶ 16-18.

### 3.    Deque Fails to Show Materiality, Causation or Damages

Deque is also not entitled to summary judgment on materiality, causation, or damages.

For materiality, Deque cites *no* evidence that any statement, even if false, was likely to influence

purchasing decisions.  *See* Motion at 28-29; *Verisign, Inc. v. XYZ.com, LLC*, No. 1:14-CV-

01749, 2015 WL 7430016, at *4 (E.D. Va. Nov. 20, 2015), aff'd, 848 F.3d 292 (4th Cir. 2017)

(recognizing split in authorities "on deciding the issue of materiality" and finding "[u]nder either

analysis" element not shown because statements were found true, and even if false, plaintiff

presented "no evidence to show that consumers were influenced" by them).

Deque also cites no evidence that any customer ever saw or relied on the statements, or

that it suffered any resulting damages.  *See* Motion at 29-30.  Instead, Deque rests solely on is

assertion that since the statements are "comparative," "courts presume injury."  Motion at 29-30.

This misstates the governing law, and the only case cited by Deque[12] does not support this

assertion.  Rather, in the Fourth Circuit it is a "core requirement" that a plaintiff "show economic

or reputational injury flowing directly from the deception wrought by the defendant's

advertising."  *Verisign*, 848 F.3d at 299-300 (citations omitted), citing *Lexmark Int'l, Inc. v.

Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Even if a presumption were applied,

it is "only as to causation; the *extent of money damages* is a separate matter that must have

evidentiary support."  *Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. Appx. 267, 273-74

(4th Cir. 2006) (citations omitted) (affirming summary judgment of no false advertising where

plaintiff produced no evidence of damages even if harm presumed); *cf. Lumber Liquidators, Inc.

v. Stone Mountain Carpet Mills, Inc.*, No. 3:08CV573-HEH, 2009 WL 2876881, at *2 (E.D. Va.

Sept. 2, 2009) ("In the Fourth Circuit, proof of actual damages is critical to the viability of a

Lanham Act claim.").  Deque has no evidence showing materiality, causation, or damages, much

less any law that warrants summary judgment in Deque's favor in its absence.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Deque's

Motion for Summary Judgment.

---

[12] In *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 259 (2d Cir. 2014), the Second Circuit affirmed that a presumption of injury could be applied where plaintiff had proven "deliberate deception" and "literal falsity" in "a two-player market."  *Id.*  No claim of willfulness or proof of literal falsity is present here.  Indeed, BrowserStack is aware of no Fourth Circuit law which has applied a presumption (let alone an irrebuttable one or one to grant summary judgment) where, as here, there is not a scintilla of evidence of literal falsity, consumer deception, actual damages, or any intentional or continuing violative conduct. *Cf. Scotts*, 315 F.3d at 274 (recognizing Fourth Circuit has never directly spoken to applicability of presumption of irreparable harm in false ad cases in context of preliminary injunction, and declining to do so where plaintiff "failed to make even a *prima facie* showing of consumer confusion, thus precluding application of the presumption, regardless of how it is formulated").

Dated:  December 6, 2024              Respectfully submitted,

                                     /s/     Belinda D. Jones
                                     Belinda D. Jones (VSB No. 72169)
                                     bjones@cblaw.com
                                     Roman Lifson (VSB No. 43714)
                                     rlifson@cblaw.com
                                     Christian & Barton, L.L.P.
                                     901 East Cary Street, Suite 1800
                                     Richmond, Virginia 23219-3095
                                     Tel.:          (804) 697-4100
                                     Fax:           (804) 697-4112


                                     Ryan J. Marton (*pro hac vice* admitted)
                                     ryan@martonribera.com
                                     Songmee L. Connolly (*pro hac vice* admitted)
                                     songmee@martonribera.com
                                     Phillip J. Haack (*pro hac vice* admitted)
                                     phaack@martonribera.com
                                     Carolyn Chang (*pro hac vice* admitted)
                                     carolyn@martonribera.com
                                     MARTON RIBERA SCHUMANN & CHANG LLP
                                     548 Market Street, Suite 36117
                                     San Francisco, CA 94104
                                     Telephone:      (415) 360-2515

                                     *Attorneys for Defendants BrowserStack, Inc. and*
                                     *BrowserStack Software Pvt. Ltd.*