# APPENDIX A
PUBLIC REDACTED

## APPENDIX A
## SEPARATE STATEMENT RESPONSE TO DEQUE'S STATEMENT OF FACTS

| No. | Deque's Purported Undisputed Facts | BrowserStack's Response and Supporting Evidence |
|---|---|---|
| 1. | Plaintiff Deque Systems Inc. ("Deque") is a Virginia corporation with a principal place of business in Herndon, Virginia. Ex. 7, Kumar Decl., ¶ 3. Defendant BrowserStack, Inc. is a Delaware corporation with a principal place of business in Texas. Dkt. 51, ¶ 3. Defendant BrowserStack Software Pvt. Ltd. is an Indian private limited company with a principal office in Mumbai, India.3 Dkt. 50, ¶ 4. | Undisputed. |
| 2. | Preety Kumar ("Kumar") is Deque's Chief Executive Officer ("CEO"). Ex. 7, Kumar Decl., ¶ 1. Dylan Barrell is Deque's Chief Technology Officer ("CTO"). Ex. 9, Barrell Dep. Tr., 15:18–19. Harris Schneiderman is Deque's Senior Product Manager. Ex. 10, Schneiderman Dep. Tr., 20:6–8. Neel Sinha is Deque's Vice President of Sales. Ex. 11, Sinha Dep. Tr., 7:18–20. | Undisputed. Not material. |
| 3. | Ritesh Arora ("Ritesh") is BrowserStack's cofounder and CEO. Ex. 8, Kumar Dep., 202:10–14 | Undisputed with clarification that Mr. Arora is co-founder and CEO of BrowserStack India. *See* Arora Decl. ¶ 2; *see also* Jain Opp Decl. ¶¶ 4, 7. <br><br> Not material. |
| 4. | Lakshay Arora ("Lakshay") is the Engineering Manager for BrowserStack's accessibility testing products. Ex. 12, Lakshay Dep. Tr., 5:21–23 | Undisputed with clarification that Mr. Lakshay Arora is Engineering Manager at BrowserStack India. *See* Jain Opp Decl. ¶¶ 4, 7. <br><br> Not material. |
| 5. | Apurv Jain ("Jain") is a Product Manager/Group Product Manager at BrowserStack. Ex. 13, Jain Dep. Tr., 9:22–25. Jain was designated as Defendant's Rule 30(b)(6) witness on the following topics: "2. The development of BrowserStack's accessibility testing software; "7. BrowserStack's use of any software, product | Undisputed as to Mr. Jain's position, with clarification that he is the Product Manager/Group Product Manager at BrowserStack India. *See* Jain Opp Decl. ¶¶ 4, 7. <br><br> Otherwise disputed and not material. Mr. Jain was designated as |

1

| | | |
|---|---|---|
| | or service of Deque"; "10. The position and responsibilities of various BrowserStack employees"; "11. All facts related to the claims made in Deque's most recent complaint"; and "14. BrowserStack's testing and substantiation practices with regard to its advertising materials." *Id.* at 13:12–20. | BrowserStack's representative on certain topics subject to the objections and modifications set forth in BrowserStack's September 23, 2024 Objections and Responses to Notice of Deposition. Marton Opp Decl., Ex. 21. For example, for Topic Nos. 7 and 11 BrowserStack agreed to produce a witness "to testify on Plaintiff's allegations of copying, breach of contract, and false advertising as are alleged in the First Amended Complaint." *Id.* at 13, 17. For Topic No. 14, BrowserStack agreed to produce a witness to testify regarding "the analysis done related to the alleged false advertising at issue in the First Amended Complaint." *Id.* at 21. |
| 6. | Bhaven Doshi ("Doshi") is a Director of Product and Program Management at BrowserStack. *See* Ex. 14, Doshi Dep. Tr., 10:1–2. Doshi was designated as BrowserStack's Rule 30(b)(6) witness on the following topics: "1. All of BrowserStack's software offerings containing its accessibility testing software"; "4. The marketing of BrowserStack's accessibility testing software"; "6. BrowserStack's customer demographics and target markets"; "8. BrowserStacks' software subscription model"; "9. BrowserStack's company policies including but not limited to document retention and intellectual property policies"; "12. All topics included in both parties' interrogatories and requests for production"; "15. BrowserStack's financials including but not limited to revenue generated from its accessibility testing software and its other software offerings"; and "16. BrowserStack's valuation and its valuation of its accessibility testing software." *Id.* at 5:15–19 | Undisputed as to Mr. Doshi's position, with the clarification that he is the Director of Product and Program Management at BrowserStack India. *See* Jain Opp Decl. ¶¶ 4, 7. Otherwise disputed and not material. Mr. Doshi was designated as BrowserStack's representative on certain topics subject to the objections and modifications set forth in BrowserStack's September 23, 2024 Objections and Responses to Notice of Deposition. Marton Opp. Decl., Ex. 21. For example, for Topic No. 1, BrowserStack agreed to produce a witness "to testify on BrowserStack's accessibility testing software offering, and any software offering that contains it." *Id.* at 7. For Topic No. 6, BrowserStack agreed to produce a witness "to testify on BrowserStack's customer demographics and target markets for BrowserStack's accessibility testing software." *Id.* at 12. For Topic No. 8, BrowserStack agreed to produce a witness "to testify on marketing and sales of |

2

|   |   |   |
|---|---|---|
|   |   | BrowserStack's accessibility testing software." *Id.* at 14.  For Topic No. 9, BrowserStack agreed to produce a witness "to testify on any BrowserStack Software written document retention and intellectual property policies." *Id.* at 15.  For Topic No. 12, BrowserStack agreed to produce a witness "to testify on Defendants' interrogatory responses." *Id.* at 19.  For Topic No. 15, BrowserStack agreed to produce a witness "on financials, including revenue, related to BrowserStack's accessibility testing software." *Id.* at 22.  For Topic No. 15, BrowserStack agreed to produce a witness "on any valuation done of BrowserStack's accessibility testing software." *Id.* at 23. |
| 7. | Nitesh Sethi ("Sethi") is a Director of Engineering at BrowserStack. Ex. 15, Sethi Dep. Tr., 5:13–14 | Undisputed, with the clarification that Mr. Sethi is Director of Engineering at BrowserStack India.  *See* Jain Opp Decl. ¶¶ 4, 7. |
| 8. | Arpan Shukla ("Shukla") is a Lead Software Engineer at BrowserStack. Ex. 16, Shukla Dep. Tr., 6:4–5 | Undisputed, with the clarification that Mr. Shukla is Lead Software Engineer at BrowserStack India.  *See* Jain Opp Decl. ¶¶ 4, 7. |
| 9. | DevTools is a proprietary software program, consisting of multiple versions registered by Deque with the U.S. Copyright Office. *See* Ex. 7, Kumar Decl., ¶ 14; Ex. 19, Public Catalog Printouts | Deque has provided insufficient evidence to establish this. |
| 10. | DevTools was developed by Deque's employees as works made for hire. *See* Ex. 7, Kumar Decl., ¶ 13 | Immaterial.  Deque has provided insufficient evidence to establish this.  Ms. Kumar's declaration does not establish foundation and personal knowledge for the attestation. |
| 11. | Deque also authored the "Rules Help Pages," which has been registered with the U.S. Copyright Office as an independent work. *Id.* ¶ 14; Ex. 19, Public Catalog Printouts | Deque has provided insufficient evidence to establish this. |

3

| | | |
|---|---|---|
| 12. | The Rules Help Pages were created by Deque's employees as works made for hire. Ex. 7, Kumar Decl., ¶ 13 | Immaterial. Deque has provided insufficient evidence to establish this. |
| 13. | The Rules Help Pages work in tandem with DevTools and cannot be lawfully accessed without creating a Deque account, logging in, and agreeing to the terms of a Deque license. *Compare id.* ¶¶ 8–12, 17 *with* Ex. 12, Lakshay Dep. Tr., 45:18–46:4 | Disputed. Deque's "Rules Help Pages" is publicly accessible without having to create a Deque account, log into the Deque website, or agree to the terms of any "Deque license." Marton Opp Decl. ¶ 9, Ex. 18. |
| 14. | DevTools provides access to Deque's Rules Help Pages, which provide additional content regarding accessibility issues and recommended remedial actions. *See* Ex. 10, Schneiderman Dep. Tr., 46:16–48:5; Ex. 9 Barrell Dep. Tr., 237:12–238:16. Rules Help Pages are labeled and categorized according to unique "Rule IDs." Ex. 10, Schneiderman Dep. Tr., 46:16– 48:5 | Disputed. Deque has provided insufficient evidence to establish that DevTools "provides access to Deque's Rules Help Pages." |
| 15. | In order to access DevTools and obtain a license, users are required to access Deque's website, create an account, and agree to either: (1) the "Deque Software License Terms – axe DevTools Free Extension" ("Free License"), Ex. 20; and/or (2) the "Deque Software License Terms - axe products" ("Pro License"), Ex. 21. *See* Ex. 7, Kumar Decl., ¶ 9–12; Ex. 22 ("By accessing this site, you agree to these terms and conditions.") | Undisputed as to current state of affairs. No evidence regarding access at the time BrowserStack purchased DevTools®. |
| 16. | As shown in Exhibit 18, over 100 BrowserStack employees created accounts with Deque. Ex. 18, Accounts List; *see also* Ex. 7, Kumar Decl., ¶ 18; Ex. 28, Usage Reports | Immaterial. |
| 17. | BrowserStack purchased at least 7 Pro Licenses. Ex. 25, Receipts; Ex. 26; Receipts | Immaterial. |
| 18. | Both the Pro License and the Free License contain the following prohibitions: (1) "[BrowserStack] may not, and may not allow any third party to . . . [d]ecompile, | Immaterial as to the "Free License." Undisputed as to the "Pro License." |

4

|   |   |   |
|---|---|---|
|   | disassemble, decrypt, or reverse engineer the Product or attempt to derive the source code for any part of the Product"; or (2) "Modify or create derivative works of the Product." Ex. 20, Free License; Ex. 21, Pro License |   |
| 19. | On its website, Deque's Terms of Use ("ToU") contain the following express prohibition: "The information on this website is protected by copyright. Except as specifically permitted, *no portion of this website may be distributed or reproduced by any means*, or in any form, without Deque's prior written permission." Ex. 22, ToU (emphasis added) | Undisputed. |
| 20. | BrowserStack made the decision to develop web accessibility testing software in or around August 2022. Ex. 13, Jain Dep. Tr., 133:2–8 | Undisputed. |
| 21. | Internal documents reveal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id*; Ex. 7, Kumar Decl., ¶ 16 | Immaterial. |
| 22. | Eventually, BrowserStack's and Deque's respective CEOs had a meeting in which BrowserStack's CEO admitted BrowserStack copied Deque's software because investors had been pressuring BrowserStack to enter into an adjacent market. Ex. 8, Kumar Dep. Tr., 89:15–91:7 | Disputed. Inadmissible evidence related to conduct or statement made during compromise negotiations about claims submitted in violation of Federal Rule of Evidence 408. Mr. Arora did not admit to copying Deque's software. Arora Decl. ¶¶ 6-8. |
| 23. | In November 2022, BrowserStack released an "Alpha" version of ATT to various BrowserStack customers. Ex. 13, Jain Dep. Tr. at 134:13–19 | Disputed and immaterial. In November 2022, Browsertack offered a "closed Alpha" of the Accessibility Toolkit to a limited set of users. *See* Deque Ex. 13 (Jain Tr.) at 134:2-19 |

| | | |
|---|---|---|
| 24. | In January 2023, BrowserStack released an updated "Alpha" version of ATT. *Id.* at 135:10–22 | Immaterial. |
| 25. | In August 2023, BrowserStack released a final market ready version of ATT. *Id.* at 136:5–8 | Disputed. BrowserStack released a version of the Accessibility Toolkit in August 2023. But it was not the "final" version. It has since launched other versions. Jain Opp Decl. ¶ 24. |
| 26. | Deque employees generated a graph of BrowserStack's usage of DevTools; the above ATT development timeline has been superimposed to demonstrate peaks in usage around version releases. Ex. 7, Kumar Decl., ¶ 18; Ex. 28, Usage Data and Development Timeline | Immaterial. Not admissible evidence. Exhibit has not been authenticated and proper foundation has not been set for admission into evidence. |
| 27. | BrowserStack ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Ex. 13, Jain Dep. Tr., 30:14–22; Ex. 12, Lakshay Dep. Tr., 6:11–20 | Immaterial. |
| 28. | According to Jain, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Compare* Ex. 13, Jain Dep. Tr., 66:17–67:5 *with* Ex. 1, Requirements. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 13, Jain Dep. Tr., 38:1–6, 66:17–67:5, 68:16–21 | Disputed. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Jain Opp Decl. ¶ 19. BrowserStack independently developed the Accessibility Toolkit. *Id.* ¶ 23. |
| 29. | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 12, Lakshay Dep. Tr., 31:4–6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 13, Jain Dep. Tr., 38:1–6, 66:17–67:5, 68:16–21 | Disputed. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Jain Opp Decl. ¶ 19. BrowserStack independently developed its assisted test rules engine. *Id.* ¶ 23. |

| | | |
|---|---|---|
| 30. | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 1, Requirements | Undisputed and immaterial. |
| 31. | In total, ▮▮▮▮▮ *See id.* ▮▮▮▮▮ *See* Ex. 13, Jain Dep. Tr., 68:16–69:3. ▮▮▮▮▮ *Id.* at 38:7–12 | Disputed.<br><br>The earliest version of the Accessibility Toolkit made available to limited customers in November 2022 did not include keyboard navigation or assisted elements tests.  Jain Opp Decl. ¶ 24. |
| 32. | ▮▮▮▮▮▮▮▮▮▮. Ex. 1, Requirements | Undisputed and immaterial. |
| 33. | ▮▮▮▮▮. Ex. 8, 44:24–45:9, 48:10–49:2. ▮▮▮▮▮ | Disputed.<br><br>▮▮▮▮▮ Jain Opp Decl. ¶ 20.<br><br>The earliest version of the Accessibility Toolkit made available to limited customers did not have assisted tests. Jain Opp Decl. ¶ 24.  Any assisted tests coded into later versions of the Accessibility Toolkit were independently developed and not copied from any DevTools® code.  *Id.* ¶¶ 23-24. |
| 34. | ▮▮▮▮▮. Ex. 12, Lakshay Dep. Tr., 44:3–6 | Undisputed and immaterial. |

| | | |
|---|---|---|
| 35. | ███████████████████. Ex. 13, Jain Dep. Tr., 60:20–61:19, 65:1–66:12, 69:5–71:9 | Undisputed and immaterial. |
| 36. | ███████████████████." Ex. 13, Jain Dep. Tr., 46:17–24, 53:4–6 | Disputed and immaterial.<br><br>No evidence showing that what is in Deque Exhibit 2 is what Mr. Jain testified about. *See* Defs. Opp. at 16-17. |
| 37. | ███████████████████." Ex. 12, Lakshay Dep. Tr., 5:24–6:4. ███████████████████ Ex. 1, Requirements; Ex. 12, Lakshay Dep. Tr., 45:18–23 | Disputed.<br><br>To the extent that Deque is contending that DevTool® code was used for creating the Accessibility Toolkit, BrowserStack denies such an assertion. The Accessibility Toolkit was independently developed by BrowserStack. Jain Opp Decl. ¶ 23. |
| 38. | ███████████████████ Ex. 12, Lakshay Dep. Tr., 45:24–47:24. ███████████████████ *Id.* at 46:2–4 | Immaterial. |

| | | |
|---|---|---|
| 39. | The webpages are only available once a user logs into DevTools. *Id.* | Disputed.<br><br>The help pages available on Deque's website are accessible without logging into DevTools.® Marton Opp Decl. ¶ 9, Ex. 18. |
| 40. | ███████████████████████████<br>███████████████████████████<br>███████████████████." Ex. 13, Jain Dep. Tr., 52:13–17 | Undisputed and immaterial. |
| 41. | Exhibit 5 illustrates the similarities between the Requirements' issue descriptions and the issue descriptions found in Deque's Rules Help Pages and DevTools. *See also* Ex. 6, ATT Code Comparison | Disputed.<br><br>Deque Exhibit 5 does not reference anything relating to DevTools.® *See* Deque Ex. 5. It is not evidence as it was created by attorneys without citations to any source of evidence. *Id.* Deque Exhibit 6 is not evidence. It is an attorney-created documents does not cite any source of evidence. |
| 42. | ███████████████████████████<br>███████████████████████████<br>*Compare* Ex. 1, Requirements (Column Q) *with* Ex. 2, Requirements Links. These Rules IDs are generated by DevTools. *Cf.* Ex. 7, Kumar Decl., ¶ 17 | Disputed.<br><br>There is no evidence of Deque's copyrighted Rules Help Pages, and no evidence showing what is generated by DevTools®. |
| 43. | ATT's assisted tests operate similar to DevTools' IGT assisted tests, including in that they both scan for issues, flag them, and provide details and instructions on how to fix the identified issues via the Rules Help Pages. Ex. 7, Kumar Decl., ¶ 7. Exhibit 4 illustrates the similarities (in red) between each program's "How to Fix" text. Note, the highlighted word "focusability" appears in both, despite it clearly being a typographical error. *See* Ex. 4 | Disputed.<br><br>There is no evidence showing how the Accessibility Toolkit assisted tests operate or how DevTools® IGT tests operate.<br><br>Exhibit 4 does not contain any evidence of either the Accessibility Toolkit or DevTools®. *See* Deque Ex. 4 (making no reference to DevTools® or the Accessibility Toolkit).<br><br>"Focusability" is not a typographical error. It is a term used in the accessibility industry. Jain Opp Decl. ¶ 21. |

9

| | | |
|---|---|---|
| 44. | BrowserStack posted the following comparative advertisement on its website, which was captured by Deque prior to initiating this litigation:<br><br>*Compare* Dkt. 44-1, ¶ 64 (highlighting added) *with* Ex. 7, Kumar Decl., ¶ 19. | Disputed.<br><br>No evidence of alleged advertisement. No foundation to establish admissibility of attorney-created image. No foundation or admissible evidence cited that "BrowserStack posted the following comparative advertisement on its website" nor that it "was captured by Deque" prior to initiating litigation. |
| 45. | BrowserStack removed the above advertisement from its website after this action was filed. Ex. 7, Kumar Decl., ¶ 19 | Disputed.<br><br>No foundation or personal knowledge established for Ms. Kumar's declaration. |
| 46. | In its advertising, BrowserStack claimed that its accessibility testing software is "5x faster" than Deque's products. Dkt. 44-1, ¶ 64; *see also* Ex. 7, Kumar Decl., ¶ 19 | Disputed.<br><br>No evidence of alleged advertisement. The screenshot of the alleged advertisement does not state that BrowserStack's "accessibility testing software is 5x faster than Deque's products." FAC (Dkt. 44-1) ¶ 64. |
| 47. | In its advertising, BrowserStack claims Deque's products lack several features, including a centralized reporting dashboard, multipage scanning, and report consolidation. Dkt 44-1, ¶ 64; *see also* Ex. 7, Kumar Decl., ¶ 19 | Disputed.<br><br>No evidence of alleged advertisement. The screenshot of the alleged advertisement does not state "Deque's products lack several features, including a centralized reporting dashboard, multipage scanning, and report consolidation." FAC (Dkt. 44-1) ¶ 64. |
| 48. | ███████████████████ ███████████████████ *See* Ex. 13, Jain Dep. Tr., 128:5–29:6; Ex. 9, Barrell Dep. Tr., 279:19–23 | Disputed.<br><br>Cited testimony does support this statement, ████████████ ████████████████████<br><br>BrowserStack independently developed features that contribute to efficiency |

10

| | | |
|---|---|---|
| | | gains in the Accessibility Toolkit. Jain Opp Decl. ¶¶ 22-23. |
| 49. | In other words, ▓▓▓▓▓ *Cf.* Ex. 13, Jain Dep. Tr., 128:5–29:6 | Disputed.<br><br>Cited testimony does support this statement, ▓▓▓▓▓<br><br>BrowserStack independently developed additional functionality in building the Accessibility Toolkit that contributes to its overall speed. Jain Opp Decl. ¶¶ 22-23. |
| 50. | BrowserStack's "5x faster" comparative advertising claim was based on the following calculations<br><br>*See id.* at 82:8–83:14; Ex. 23, Pricing Page and Speed Calculations | Disputed. Jain Opp Decl. ¶¶ 11-15. |
| 51. | The ▓▓▓▓▓ *See* Ex. 13, Jain Dep. Tr., 86:22–87:7 | Disputed and immaterial.<br><br>Cited testimony does support this statement. |

| | | |
|---|---|---|
| 52. | During his deposition, [REDACTED] *Id.* at 87:22–88:12 | Disputed. Cited testimony does support this statement. Mischaracterizes testimony. Testimony speaks for itself. |
| 53. | Jain [REDACTED] *Id.* at 86:22–87:7 | Undisputed and immaterial. |
| 54. | At all relevant times, Deque offered and offers a centralized reporting dashboard in connection with the sale of accessibility testing software. Ex. 9, Barrell Dep. Tr., 279:17–80:21 | Disputed. DevTools® did not have a centralized reporting dashboard (wherein a list of all available reports and the details of those reports could be accessed in a single centralized place) at the time Deque filed this lawsuit in February 2024. Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 280:7-281:3 [REDACTED]; Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 173:22-174:21 [REDACTED]"). |
| 55. | At all relevant times, Deque offered and offers consolidated reports in connection with the sale of accessibility testing software. *Id.* at 282:15–283:5 | Disputed. DevTools® did not have consolidated reports at the time Deque filed this lawsuit in February 2024. Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 282:15-283:5 ([REDACTED]; Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 158:14-159:16 ([REDACTED]. |
| 56. | At all relevant times, Deque offered (since 2006) and offers multipage scanning | Disputed. |

| | | |
|---|---|---|
| | functionality in connection with the sale of accessibility testing software. *Id.* at 281:4–21 | DevTools® did not have multi-page scanning at the time Deque filed this lawsuit in February 2024. Defs. Ex. 8 (D.I. 145-2, Barrell Tr.) at 282:5-14  ; Defs. Ex. 10 (D.I. 145-4, Schneiderman Tr.) at 157:18-158:4 |
| 57. | BrowserStack's reverse engineering, copyright infringement, and false advertising substantially damaged Deque, including by (a) reducing Deque's sales and (b) allowing BrowserStack to undercut Deque's prices (as BrowserStack avoided development costs by copying Deque's code, which took over a decade and tens of millions of dollars to create). *See* Ex. 7, Kumar Decl., ¶ 15. As one example, Deque was forced to revise a quote for licensing DevTools to a major software company as a result of BrowserStack's price undermining. *See* Ex. 24, Revised Quote | Disputed.<br><br>No foundation or personal knowledge for Ms. Kumar's declaration. No evidence that Deque Ex. 24 was a revised proposal or that any revisions were due to BrowserStack.<br><br>Deque is precluded from claiming damages. *See* Defs. MSJ (D.I. 145) at 11-17. |

13