# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

        Plaintiff,

    v.

                                Case No. 1:24-cv-00217-AJT-WEF

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

        Defendants.

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO
      DAMAGES .................................................................................................................... 2

      A.    Deque Did Not Disclose an Affirmative Damages Computation During
            Discovery ............................................................................................................ 2

      B.    Deque Should Be Precluded from Presenting an Affirmative Damages Claim ....... 7

      C.    Summary Judgment of No Damages Is Appropriate in this Case ........................... 9

III.  BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO
      COPYRIGHT INFRINGEMENT ................................................................................ 10

      A.    Deque Does Not Have Admissible Evidence of Copying ..................................... 10

      B.    Deque Does Not Have Admissible Evidence of Substantial Similarity ................ 13

      C.    Deque Has No Evidence of Acts of BrowserStack India in the United States ...... 15

IV.   BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO
      BREACH OF CONTRACT .......................................................................................... 15

      A.    Deque Cannot Avoid Summary Judgment By Asserting New Unplead Contract
            Theories ............................................................................................................ 15

      B.    Deque Has No Evidence to Support New Breach Theories ................................... 17

      C.    No Alleged Breach by BrowserStack US .............................................................. 18

V.    BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO
      FALSE ADVERTISING ............................................................................................. 18

VI.   BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO
      UNJUST ENRICHMENT ........................................................................................... 19

VII.  THERE IS NO BASIS FOR AN INJUNCTION ......................................................... 20

VIII. CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
  566 F. Supp.2d 305 (S.D.N.Y. 2008) ................................................................. 1, 10

*Aquilent, Inc. v. Distributed Sols., Inc.*,
  No. 1:11-CV-393, 2012 WL 405009 (E.D. Va. Feb. 7, 2012) ............................... 16

*Barlow v. Gen. Motors Corp.*,
  595 F. Supp. 2d 929 (S.D. Ind. 2009) .................................................................. 7

*C.B. Fleet Co., Inc. v. SmithKline Beecham Cons. Healthcare, L.P.*,
  131 F.3d 430 (4th Cir. 1997) .............................................................................. 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................ 2

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*,
  No. 3:15-cv-01300, 2016 WL 3452734 (D.S.C. June 24, 2016) ......................... 5

*Compulife Software, Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) .......................................................................... 13

*Copeland v. Bieber*,
  789 F.3d 484 (4th Cir. 2015) .............................................................................. 14

*Dawson v. Hinshaw Music Inc.*,
  905 F.2d 731 (4th Cir. 1990) .............................................................................. 14

*Design Res., Inc. v. Leather Indus. of Am.*,
  No. 1:10CV157, 2014 WL 4159991 (M.D. N.C. Aug. 19, 2014) ........................ 18

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.*,
  666 Fed. Appx. 256 (4th Cir. 2016) .................................................................... 13

*Faiella v. Sunbelt Rentals, Inc.*,
  341 F.R.D. 553 (D.N.J. 2022) .............................................................................. 6

*Farmer v. Payne*,
  No. 1:21CV122, 2022 WL 1633623 (E.D. Va. May 23, 2022) ............................ 3

*First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*,
  672 Fed. Appx. 229 (4th Cir. 2016) .................................................................... 19

*Fleming v. Lind-Waldock & Co.*,
  922 F.2d 20 (1st Cir. 1990) ................................................................................. 16

*Goldberg v. Green and Co., Inc.*,
836 F.2d 845 (4th Cir. 1988) .................................................................................... 2

*Gould Paper Corp. v. Madisen Corp.*,
614 F. Supp. 2d 485 (S.D.N.Y. 2009) ..................................................................... 10

*Hewlett Packard Co. v. Factory Mut. Ins. Co.*,
2006 WL 1788946 (S.D.N.Y. June 28, 2006) ........................................................... 6

*Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*,
No. 2:18-cv-320, 2020 WL 6817060 (E.D. Va. Nov. 3, 2020) ................................. 5

*Justice v. Wiggins*,
No. 9:11-CV-419, 2014 WL 4966896 (N.D.N.Y. Sept. 30, 2014).............................. 3

*Mission Viejo Florist, Inc. v. Orchard Supply Company, LLC*,
No. SACV 16-01841-CJC, 2019 WL 13045043 (C.D. Cal. Apr. 15, 2019) ............ 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*,
658 F. Supp. 775 (N.D. Ill. 1987) ........................................................................... 17

*Network Computing Servs. Corp. v. Cisco Sys., Inc.*,
152 Fed. Appx. 317 (4th Cir. 2005).......................................................................... 3

*Quesenberry v. Volvo Group N. Am., Inc.*,
267 F.R.D. 475 (W.D. Va. 2010).............................................................................. 5

*Rambus, Inc. v. Infineon Techs. AG*,
145 F. Supp.2d 721 (E.D. Va. June 12, 2001) .......................................................... 7

*Rowell v. Palmetto Health Alliance*,
3:093077, 2011 WL 4501978 (D. S.C. Aug. 17, 2011) .......................................... 12

*Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227 (E.D. Va. July 16,
2020) ........................................................................................................................ 8

*Salgado by Salgado v. General Motors Corp.*,
150 F.3d 735 (7th Cir. 1998) .................................................................................... 7

*Scotts Co. v. United Indus. Corp.*,
315 F.3d 264 (4th Cir. 2002) .................................................................................. 19

*See Southern States Rack and Fixture, Inc. v. Sherwinn-Williams Co.*,
318 F.3d 592 (4th Cir. 2003) .................................................................................... 7

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*,
No. SACV-0341, 2016 WL 6562075 (C.D. Cal. Aug. 9, 2016)........................ 1, 8, 9

*Terry v. Jarrell*,
No. 3:22CV774, 2023 WL 2588456 (E.D. Va. Mar. 21, 2023) ............................................ 12

*United States Whiterock*,
No. 5:09-HC-2163-FL, 2012 WL 1925702 (E.D.N.C. May 18, 2012) .................................... 5

*Verisign, Inc. v. XYZ.COM, LLC,*
No. 1:14-cv-01749, 2015 WL 7430016 (E.D. Va. Nov. 20, 2015) ........................................ 18

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) .............................................................................................. 16

*Williams v. N. Charleston Police Dept.*,
No. 2:13-cv-02969, 2014 WL 4273317 (D.S.C. Aug. 29, 2014) ............................................. 3

*Zachair, Ltd. v. Driggs,*
965 F. Supp. 741 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) .................................. 16

*Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*,
871 F. Supp. 2d 498 (E.D. Va. 2012), *aff'd*, 547 Fed. Appx. 166 (4th Cir. 2013) .................. 16

## **Rules**

Fed. R. Civ. P. 26(a)(1)(A)(iii) .............................................................................................. 1

Fed. R. Civ. P. 56(c) ............................................................................................................... 2

## I. INTRODUCTION

Requiring a plaintiff to make the mandatory disclosures called for by the Federal Rules and to develop admissible evidence to support its claims before allowing it to proceed to trial is not a "technical loophole." It is the law. Throughout this litigation, Deque has ignored—and now, in its opposition to summary judgment, it asks the Court to ignore—its legal obligations as the plaintiff in this case.

The Federal Rules required Deque to provide a computation of damages with its Rule 26(a)(1) initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). It did not do so. Defs. Ex. 1 (D.I. 141-1) (Deque initial disclosures) at 6; *see also* Defs. MSJ (D.I. 145) at 11. Instead, it asks the Court to ignore its dereliction, disingenuously claiming BrowserStack improperly withheld evidence needed to calculate damages. Plf. Opp. (D.I. 160) at 7 (¶ 30), 24. Deque ignores that Judge Fitzpatrick already ruled on this issue, telling Deque that BrowserStack has "provided you with the discovery necessary to reasonably calculate your damages." September 27 Hearing Transcript ("Sept. Tr.") (D.I. 117) at 44:4-7.[1] Yet, Deque still did nothing. Having failed to disclose a computation of its affirmative damages claim during the discovery period, it cannot do so at trial. *See 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp.2d 305, 318-319 (S.D.N.Y. 2008) (granting summary judgment where plaintiff was precluded from presenting at trial damages theory that did not appear in Rule 26(a) initial disclosures); *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*, No. SACV-0341, 2016 WL 6562075, at *12 (C.D. Cal. Aug. 9, 2016) (granting summary judgment of no damages where plaintiff failed to timely disclose a computation of damages).

---

[1] A copy of the Sept. Tr. is attached to this Reply as Exhibit A for the Court's convenience.

The Federal Rules also require Deque to come forth with *admissible* evidence to support its claims. Fed. R. Civ. P. 56(c); *see also Goldberg v. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) ("conclusory assertions . . . are not enough to withstand summary judgment"). It did not do so. It tells the Court that BrowserStack copied and reverse engineered Deque's software code. *See* Plf. Opp. (D.I. 160) at 1. But it does not cite evidence of its copyrighted code. Nor does it cite evidence of BrowserStack's accused software. The only thing Deque cites to support its copying and reverse engineering allegations are its unverified complaint, unverified interrogatory response, and attorney-created comparison charts that fail to identify any source of admissible evidence. *Id.* at 3-4 (¶¶ 10, 14-16), 12-14, 18, citing D.I. 44-1 (unverified FAC), D.I. 141-3 (unverified interrogatory response), D.I. 147-6, 147-7, 147-8 (comparison charts). None of this is admissible evidence.

With trial just one month away, Deque's lack of admissible evidence cannot continue to be ignored. BrowserStack respectfully requests the Court to enter summary judgment in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (entitlement to summary judgment can be established by showing that there is an absence of evidence to support the nonmoving party's case).

## II.     BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO DAMAGES

### A.     Deque Did Not Disclose an Affirmative Damages Computation During Discovery

Deque does not and cannot genuinely dispute that it did not disclose its affirmative damages computation at any point in discovery. Plf. Opp. (D.I. 160) at 7-8 (¶¶ 30-34); *see also*

Defs. MSJ (D.I. 145) at 8-9 (¶¶ 30-34).[2]  Instead, it offers three excuses as to why it could not

make the required computation, or that the computation has since been provided.

First, Deque submits a purported Rule 56(d) declaration, claiming BrowserStack did not

produce evidence needed for Deque to make a damages calculation.  Plf. Opp. (D.I. 160) at 24,

citing Opp. Ex. 6 (D.I. 160-3).  As an initial matter, Deque's Rule 56(d) declaration was not

made "under the penalty of perjury" and thus cannot be used to oppose summary judgment.

Opp. Ex. 6 (D.I. 160-3); *see Farmer v. Payne*, No. 1:21CV122, 2022 WL 1633623, at *1 (E.D.

Va. May 23, 2022) (noting that declarations that do not contain any language indicating they

were sworn under the penalty of perjury do not constitute evidence that contribute to the

statement of undisputed facts), citing *Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 152

Fed. Appx. 317, 321 (4th Cir. 2005); *Williams v. N. Charleston Police Dept.*, No. 2:13-cv-02969,

2014 WL 4273317, at *2 (D.S.C. Aug. 29, 2014) ("[T]o be competent evidence considered on

summary judgment, an affidavit or declaration must be sworn under oath or made under penalty

of perjury.").  The declaration also comes too late, two months after the close of discovery.  *See*

*Justice v. Wiggins*, No. 9:11-CV-419, 2014 WL 4966896, at *6 (N.D.N.Y. Sept. 30, 2014)

(denying Rule 56(d) motion filed after the close of discovery as untimely).  But more

substantively, the Court already considered and rejected Deque's argument.  *See* Order on

---

[2] In considering whether Deque's initial disclosures provide a computation of damages as required by Rule 26(a)(1), Judge Fitzpatrick noted, "[t]he initial disclosure issue is an issue.  I mean, it's, you know, there was—you know, the initial disclosures back in June were not specific.  They were not—and you know, I mean, I've heard counsel on a number of occasions tell me, you know, how their damages constitute millions and millions of dollars, but I'm not sure why we can come to that conclusion[.]"  October 27 Hearing Transcript ("Oct. Tr.") (D.I. 154) at 41:6-14.  A copy of the Oct. Tr. is attached to this Reply as Exhibit B for the Court's convenience.

Motion to Compel (D.I. 92). In denying Deque's motion to compel additional damages-related documents, Judge Fitzpatrick found:

> [BrowserStack has] told you what they have sold the product for. . . . They've told you the revenue that was generated by them selling the product. They have given you information about how they developed the product, their costs for developing the product. They're going to give you information as to whether or not they contracted with any third-party vendors to help develop the product. So unless you have an expert that's going to come in here and say I need these other four things, which I will tell you, I don't know—we talked about proportionality, I don't know what else your damages are going to include.

Sept. Tr. (D.I. 117) at 41:12-24. Thus, he went on to state that "it sounds like, based on the representations of counsel and my review of the pleadings, is that they have really given you everything that you're entitled to[.]" *Id*. at 42:22-43:5. Judge Fitzpatrick then concluded by telling Deque that BrowserStack has "provided you with the discovery necessary to reasonably calculate your damages if you get there." *Id*. at 44:4-7. Thus, there is procedurally and substantively no basis for Deque's claim that BrowserStack withheld documents needed for it to make its damages calculation.[3]

Deque's second argument belies its first[4]; it contends that its damages calculation was disclosed in its rebuttal expert report. Plf. Opp. (D.I. 160) at 8 (¶ 32), 27. But a rebuttal expert report served just three days before the close of discovery "may not simply stand in the place of Plaintiff's required 26(a)(1)(A)(iii) disclosures." *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*,

---

[3] Additionally, the claimed need for additional discovery does not relieve Deque of its obligation to meet discovery deadlines. *See* Sept. Tr. at 32:23-34:8 (Judge Fitzpatrick explaining that "[y]ou don't just let deadlines pass and say, well, it was unrealistic for us to respond. . . . We don't just show up at the end of September and say, hey, we missed a deadline in the middle of August.").

[4] To the extent Deque was able to provide a damages calculation in its rebuttal expert report and with its untimely second supplement to its initial disclosures (Opp. Ex. 7, D.I. 157-5) without additional documents from BrowserStack shows that there is no merit to its claims of needing additional discovery.

No. 2:18-cv-320, 2020 WL 6817060, at *4 (E.D. Va. Nov. 3, 2020) (striking portions of expert

report advancing damages theories and calculations not disclosed in initial disclosures), quoting

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300, 2016 WL

3452734, at *2 (D.S.C. June 24, 2016).  More importantly, as Judge Fitzpatrick noted when he

was considering the propriety of Deque's "rebuttal" damages expert report, a true rebuttal report

cannot advance an affirmative damages calculation:

> [BROWSERSTACK'S COUNSEL]:  I don't see how an affirmative damages case
> could be a true rebuttal in any context.
>
> THE COURT:  I don't disagree with that.  I will tell you I don't disagree with that
> . . .

October 17 Hearing Transcript ("Oct. Tr.") (D.I. 154) at 45:23-46:1.  Judge Fitzpatrick

understood that the damages calculations set forth in Deque's rebuttal report was "a clear effort

to circumvent the initial disclosures, which was not made." *Id*. at 42:7-7-10.  Thus, he noted it

"is clear, there are likely parts of—significant parts of plaintiff's expert disclosures that go well

beyond what is proper rebuttal[]." *Id*. at 49:20-23.  Thus, Deque cannot point to its rebuttal

expert report to satisfy its initial disclosure obligation of providing an affirmative damages

calculation. *See generally* Defs. Motion to Strike (D.I. 105).

In apparent acknowledgement of the deficiencies with its damages disclosures, as its final

argument, Deque points to a revised set of initial disclosures served with its opposition. *See* Plf.

Opp. (D.I. 160) at 7-9 (¶¶ 30-34), 24; Opp. Ex. 7 (D.I. 157-7).  These revised disclosures,

however, come too late. *Quesenberry v. Volvo Group N. Am., Inc.*, 267 F.R.D. 475, 480 (W.D.

Va. 2010) ("They had a duty under Rule 26(a)(1) and (e)(1) to make and supplement initial

disclosures in a timely manner, and twenty-eight days before trial, four months after the close of

fact discovery, is not timely."); *United States Whiterock*, No. 5:09-HC-2163-FL, 2012 WL

1925702, at *2 (E.D.N.C. May 18, 2012) ("[s]upplementation to identify a witness for the first

time after the close of discovery is manifestly not timely"). Discovery closed two months ago on October 11, 2024. D.I. 37 at 1. There is no reason that Deque could not have provided these disclosures during discovery, as much of it is based on Deque's own documents. *See* Opp. Ex. 7 (D.I. 157-7), citing Kahaian Report (Opp. Ex. 8, D.I. 160-4).[5] Deque simply did not bother to provide a timely damages calculation. Indeed, after neglecting its duty throughout discovery and then being told of the deficiencies with its initial disclosures, Deque represented to the Court it was working on and would supplement its initial disclosures before the October 18, 2024 Final Pretrial Conference. Opp. to Motion to Strike (D.I. 112) at 9. Deque did not follow through on its representation to the Court and instead, without any explanation, waited another *two months* before providing the current revised disclosures. Judge Fitzpatrick summarized Deque's lack of diligence in providing its damages calculation as follows:

> I'm not sure what plaintiff was doing for four months with respect to prosecuting this case, right? There was a long time, and I'm not really sure what was happening. I know what should have been happening, but what [sic] wasn't happening[.]

Oct. Tr. at 44:15-20. There has been no change—no new information that has become available that justifies Deque sandbagging BrowserStack with supplemental initial disclosures at this late date. *See Hewlett Packard Co. v. Factory Mut. Ins. Co.*, 2006 WL 1788946, at *14-15 (S.D.N.Y. June 28, 2006) (stating that the purpose of Rule 26(a) is to accelerate discovery and "prevent the practice of 'sandbagging' an adversary with new evidence"); *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 563 (D.N.J. 2022) (stating that Rule 26(e) does not "bestow upon litigants unfettered

---

[5] The Kahaian Report relies largely on conversations with Deque's CEO and Deque's own documents for its damages calculations. *See* Kahaian Report (Opp. Ex. 8, D.I. 160-4) at fns. 24, 27-29, 33-35. Additionally, as Deque has repeatedly represented that the Kahaian Report is a "rebuttal" expert report, it cannot be relied on to provide an affirmative damages calculation. *See generally* Defs. Motion to Strike (D.I. 105).

freedom to rely on supplements produced after a court-imposed deadline"); *Barlow v. Gen. Motors Corp.*, 595 F. Supp. 2d 929, 935-36 (S.D. Ind. 2009) (duty to supplement should not be turned into "an opportunity and even a right to hold back their real damages theories and computations until nearly the eve of trial").

**B.**     **Deque Should Be Precluded from Presenting an Affirmative Damages Claim**

Unable to deny its failure to provide any damages computation during discovery, Deque argues that an exclusionary sanction is not warranted. Plf. Opp. (D.I. 160) at 26-28. But the Rule 37(c) exclusionary sanction is *automatic and mandatory* unless the sanctioned party can show that the violation was substantially justified or harmless. *See Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735,7 42 (7th Cir. 1998); *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp.2d 721, 724 (E.D. Va. June 12, 2001). And Deque does not even attempt to show that its nondisclosure was substantially justified or harmless. *See Southern States Rack and Fixture, Inc. v. Sherwinn-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (setting forth five-factor test); *see* Plf. Opp. (D.I. 160) at 26-28.

Instead, Deque takes the incredulous position that BrowserStack's cited law is inapposite because there was no comparable delay in disclosure in this case. Plf. Opp. (D.I. 160) at 26. Deque's position is indefensible. As noted above, and in BrowserStack's moving papers, Deque did not provide a damages computation with its June initial disclosures, with its July discovery responses, with an August initial expert report, with its August supplemental discovery responses, with its September first supplement to its initial disclosures, or even before the Final Pretrial Conference like it promised the Court it would. *See* Section II.A, *supra*; Defs. MSJ (D.I. 145) at 8-9 (SUF 30-34). At no point has Deque articulated a justification for its abject failure to disclose a damages computation, other than repeating the mantra of needing discovery from BrowserStack, an argument that, as noted above, the Court explicitly rejected and would not, in

any event, relieve Deque of its discovery obligations.  *See* Section II.A, *supra*; *see also* Defs. MSJ (D.I. 145) at 16-17.

Deque next suggests that the Court should not exclude its damages claim because BrowserStack did not actively and repeatedly press Deque for its damages calculations.  Plf. Opp. (D.I. 160) at 26-27.  That is not the law.  Rule 26 requires Deque to provide its damages computation "*without awaiting a discovery request*[.]"  Fed. R. Civ. P. 26(a)(1) (emphasis added).  Thus, Deque had an affirmative obligation to provide the damages computation regardless of whether BrowserStack pushed for the disclosure.  *See TCL*, 2016 WL 6562075, at *10 ("TCL still had an *affirmative obligation* to, under Rule 26(a), provide its computation of damages. . . . This obligation must be met *without the need for a motion to compel*.") (emphasis added and citations omitted).

Deque goes on to suggest that it did not need to provide the Rule 26(a)(1) damages computation because of the relatively small volume of documents in this case.  Plf. Opp. (D.I. 160) at 26-27.  There is no law to support Deque's position.  To the contrary, a party cannot meet its Rule 26(a)(1) obligations simply by pointing to documents.  *Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227, at *2-4 (E.D. Va. July 16, 2020) ("District courts have . . . held that, where a party only . . . refers to documents from which the opposing party can presume damages, the disclosing party has not met its obligation.").

Thus, none of Deque's arguments save it from Rule 37's automatic exclusionary sanction.  Each of the factors the Court is to consider favors exclusion:  (1) the failure to provide a timely damages computation has prejudiced BrowserStack's ability to prepare an informed defense and have its expert respond to Deque's damages case, (2) there is no way to cure the surprise and prejudice to BrowserStack as discovery is now closed, (3) allowing Deque's late

disclosure risks disrupting the Court's schedule,[6] (4) the issue of damages is important to BrowserStack's case, and (5) Deque provides no justification for its delay.  *See* Defs. MSJ (D.I. 145 at 14-17.

### C.    Summary Judgment of No Damages Is Appropriate in this Case

Given that Deque's damages computation should be excluded, it cannot present an affirmative damages case to a jury and summary judgment of no damages should be entered.  *See id.* at 16-17 (citing caselaw support for summary judgment of no damages where party fails to provide required damages computation).  Deque tries to avoid the inevitable consequence of its discovery failure by suggesting the cases cited by BrowserStack are inapposite.  Plf. Opp. (D.I. 160) at 24-26.  But just as in those cases, here, without disclosure of a damages computation, Deque has insufficient evidence to support a damages claim.

In *TCL*, the plaintiff pointed to deposition testimony and late-produced billing records to support its damages claim.  2016 WL 6562075, at *11-12.  But the court found the testimony did not support a calculation of damages and there was no justification for supplementing deficient Rule 26(a) disclosures with late-produced records.  *Id.* at *12.  Similarly, here, Deque points to its CEO's testimony (which fails to establish foundation or personal knowledge of facts) that Deque had to renegotiate contracts with customers because of BrowserStack.  Plf. Opp. (D.I. 160) at 26, citing Kumar Decl. (D.I. 147-9) ¶¶20-21.  Like the deposition testimony in TCL, Ms. Kumar's testimony does not support a damages computation, cannot supplement deficient Rule 26(a) disclosures, and is insufficient for a jury to determine actual damages.

---

[6] Indeed, after doing nothing for most of the discovery period, Deque now suggests its late supplementation of its initial disclosures should result in an extension of the Court's deadlines. *See* Plf. Opp. (D.I. 160) at 24 n.9.

In *Mission Viejo Florist, Inc. v. Orchard Supply Company, LLC*, the plaintiff relied on an affidavit from its corporate representative, who testified regarding a "loss of expected growth" damages theory and calculation that was not disclosed in its Rule 26(a)(1) initial disclosures. No. SACV 16-01841-CJC, 2019 WL 13045043, at *5 (C.D. Cal. Apr. 15, 2019). The court granted summary judgment of no damages, finding that the plaintiff could not rely on this undisclosed damages theory and calculation. *Id.* Similarly, here, Deque relies on Ms. Kumar's declaration to advance a damages theory and calculation not disclosed in its Rule 26(a)(1) initial disclosures, and thus, summary judgment of no damages should likewise be entered.

Finally, in *Gould Paper Corp. v. Madisen Corp.*, the court precluded counterclaimants from proving damages despite them having evidence in the form of 629 pages of documents detailing the basis for their damages claim because the counterclaimants did not provide a computation of damages in its initial disclosures. 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009), citing *24/7 Records,* 566 F. Supp.2d at 318 (theory of damages precluded because plaintiff failed to make mandatory initial disclosure). Here, regardless of whether Deque has witness testimony or documentary evidence, it failed to make mandatory disclosure of its damages computation and thus is precluded from proving damages. Accordingly, summary judgment of no damages should be entered against Deque.

## III. BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO COPYRIGHT INFRINGEMENT

### A. Deque Does Not Have Admissible Evidence of Copying

Deque repeatedly claims that BrowserStack built its Accessibility Toolkit software product by "copying verbatim" Deque's copyrighted DevTools® software and Rules Help

Pages.[7]  *See* Plf. Opp. at 4 (¶ 16), 12-13, 17-19.  But it does not cite any admissible evidence to support this claim.  Particularly noteworthy is the fact that Deque has no evidence of its asserted works; it does not offer into evidence its copyrighted DevTools® software or its copyrighted Rules Help Pages.[8]  Deque's opposition makes a single reference to Deque Ex. 2 (D.I. 147-4), which it contends is its copyrighted "Rules Help Pages."  *Id.* at 12.  But as Deque's counsel explains, Deque Ex. 2 (D.I. 147-4) is a collection of webpages captured by counsel after being re-directed to the pages from links on a Requirements document created and produced by BrowserStack.  Deque Ex. 30 (Darling MSJ Decl., D.I. 147-32) ¶ 4.  There is no showing that the webpages collected by counsel are, in fact, the copyrighted version of the Rules Help Pages.  *See* Defs. Opp. (D.I. 169) at 16-17.

Likewise, Deque has no evidence of the accused work; Deque does not offer into evidence the accused BrowserStack Accessibility Toolkit.  *See id.* at 3 (¶ 8), 13, 20 n.8.  Indeed, Deque never even reviewed the Accessibility Toolkit source code.  Marton Opp. Decl. (D.I. 170) ¶¶ 2.  Nor is the Accessibility product or source code listed on Deque's trial exhibit list.  *Id.* ¶ 3; D.I. 123.  Thus, Deque cannot introduce the Accessibility Toolkit into evidence, and cannot make the comparison between the asserted Deque DevTools® code and Rules Help Pages and the accused BrowserStack Accessibility Toolkit required to prove copyright infringement.

---

[7] While Deque asserts BrowserStack copied its works verbatim, it then goes on to say that BrowserStack "instead of copying them verbatim, BrowserStack wrote some of the 'How to Fix' text for the assisted tests without copying language from Deque's Rules Help Pages."  Plf. Opp. at 17.

[8] As noted in BrowserStack's moving papers, Deque does not even address 15 of its 17 copyright registrations.  *See* Def. MSJ (D.I. 145) at 17.  In its opposition, Deque claims it does not need to discuss "immaterial differences between various software versions," but it cannot make such an assertion or claim infringement of registered works that it does not introduce into evidence, or even discuss.  *See* Plf. Opp. at 2-3 (¶ 9).

Indeed, the only "evidence" Deque cites to support its claim of verbatim copying is not evidence at all. Deque supports its copying claim with its unverified complaint, its unverified interrogatory responses, and three attorney-created comparison charts. *See* Defs. Opp. at 4 (¶16), 12-14, 17-19, citing FAC (D.I. 44-1) ¶¶ 42-44, Defs. Ex 3 (Deque's interrogatory response, D.I. 141-3), Deque Exs. 4-6 (D.I. 147-6, 147-7, 147-8). Deque's unverified complaint and unverified interrogatory response do not constitute admissible evidence. *See Terry v. Jarrell*, No. 3:22CV774, 2023 WL 2588456, at *3 (E.D. Va. Mar. 21, 2023) ("Because [plaintiff] failed to swear to the contents of his Complaint under penalty of perjury, the allegations contained therein do not constitute admissible evidence.") (citation omitted); *Rowell v. Palmetto Health Alliance*, 3:093077, 2011 WL 4501978, at * 1 (D. S.C. Aug. 17, 2011) (finding unverified interrogatory responses did not constitute admissible evidence sufficient to defeat summary judgment).

The attorney-created comparison charts are also not admissible evidence of copying. As an initial matter, the charts at Deque Exs. 4-5 (D.I. 147-6 and 147-7) purport to compare BrowserStack's Requirements document to the webpages collected by Deque's attorney (Deque Ex. 2). *See* Deque Ex. 30 (D.I. 147-32) ¶¶ 6-7. The Requirements document is not the accused work. And Deque Ex. 2 (D.I. 147-4) has not been shown to be the asserted copyrighted Rules Help Pages. Deque Ex. 6 (D.I. 147-8) purports to compare the accused Accessibility Toolkit to Deque's DevTools® source code and Rules Help Pages. But Deque does not identify what evidence serves as the source of information for that chart. It does not offer any testimony explaining how the chart was created. The only thing Deque cites is the testimony of Ms. Kumar, who claims "a Deque employee examined BrowserStack's Toolkit," but she did not set forth the basis for her knowledge, did not identify the Deque employee, did not explain how the Deque employee accessed the Accessibility Toolkit code, did not produce the purportedly

examined Accessibility Toolkit code, and did not indicate whether the employee-reviewed code was used to create the Deque Ex. 6 (D.I. 147-8) comparison chart.  Plf. Opp. (D.I. 160) at 16-17, citing Deque Ex. 7 (Kumar Decl., D.I. 150-3) ¶ 17.  As such, we have no way of verifying whether the purported Accessibility Toolkit code referenced in Deque Ex. 6 (D.I. 147-8) is, in fact, BrowserStack's code.  Consequently, the cited charts are nothing more than attorney argument with no evidentiary underpinning, and thus, are insufficient to evidence copying.

### B.    Deque Does Not Have Admissible Evidence of Substantial Similarity

Deque tries to avoid having to prove "substantial similarity" by claiming BrowserStack admits to verbatim copying and does not contest copying in fact.  *See* Plf. Opp. at 1, 13, 15.  That is simply untrue, as set forth in BrowserStack's Opposition to Deque's Motion for Summary Judgment.  *See* Defs. Opp. (D.I. 169) at 15-18.  Here, there is no admission, no concession, and no direct evidence of copying.  Thus, Deque undoubtedly must present undisputed evidence that the accused Accessibility Toolkit is "substantially similar'" to the protected elements of DevTools® and the Rules Help Pages to prove factual and legal copying.  *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 Fed. Appx. 256, 263 (4th Cir. 2016) (proof of copying requires plaintiff to show substantial similarity).

Deque does not even try to cite evidence of extrinsic similarity.  Instead, it attempts to push the burden onto BrowserStack to identify the unprotectible elements of Deque's asserted works.  Plf. Opp. at 14, citing *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1306 (11th Cir. 2020).  But *Compulife* placed the burden on the defendant to prove some or all copied material is unprotectible in situations where "the plaintiff has proven . . . that the defendant engaged in factual copying[.]"  *Id*.  Deque has not proven factual copying here.  Moreover, *Compulife* is an Eleventh Circuit case.  The Fourth Circuit, however, places the burden on the plaintiff to show possession of a valid copyright, the defendant's access to the copyrighted work,

13

and substantial similarity between the plaintiff's and defendant's work. *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732 (4th Cir. 1990).

For the extrinsic prong of the substantial similarity analysis, the Fourth Circuit requires an "analytic dissection" of the copyrighted work to separate original and protectable expression from those that are not. *Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015). After telling the Court BrowserStack copied Deque's valuable source code, it now changes its position and argues that BrowserStack copied (and not verbatim) only plain text, not program logic or algorithms. Plf. Opp. at 12-13, 17. Deque claims it, thus, does not need expert testimony to prove extrinsic similarity. *Id*. But Deque's only "evidence" of copying is a chart purporting to compare source code files from the Accessibility Toolkit to source code files from DevTools®. *See* Defs. Ex. 3 (D.I. 141-3); Deque Ex. 6 (D.I. 147-8). At a minimum, an expert with software experience is needed to establish whether the allegedly copied content is indeed only plain text, whether it also covers program logic or algorithms, and whether it is protectible expression. Deque offers no expert testimony to support these assertions. In any event, whether or not expert testimony is needed for the extrinsic similarity filtration analysis, Deque has not identified any evidence, expert or otherwise, to show substantial extrinsic similarity. *See* Section III.A, *supra.*

Deque also completely disregards the fact that the intrinsic similarity prong must be conducted from the perspective of the intended audience of the copyrighted work. *Dawson*, 905 F.2d at 736. Deque does not dispute that the intended audience of its copyrighted works are software developers. Plf. Opp. at 4 (¶ 16). Yet it offers no evidence from the perspective of anyone qualified as having the expertise of a software developer. This alone defeats Deque's copyright infringement claim.

**C.**     **Deque Has No Evidence of Acts of BrowserStack India in the United States**

Deque's claim that BrowserStack India can be liable for copyright infringement is based solely on the contention that BrowserStack India imported the Accessibility Toolkit into the United States by sending it to BrowserStack US.  But Deque does not present any evidence of BrowserStack India importing the Accessibility Toolkit into the United States.  *See* Plf. Opp. at 19-20.  The only "evidence" Deque cites is BrowserStack US's distribution of the Accessibility Toolkit in the United States through the Chrome Store, and U.S. based users of the Accessibility Toolkit.  *Id.* at 20.  Deque does not, however, provide any evidence of the missing piece—that BrowserStack India provided the Accessibility Toolkit to BrowserStack US in the United States.  Thus, it cannot prove any liability by BrowserStack India.[9]

## IV.     BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO BREACH OF CONTRACT

**A.**     **Deque Cannot Avoid Summary Judgment By Asserting New Unplead Contract Theories**

Deque tries to avoid summary judgment on its contract claims by relying on new theories of breach that were not plead in its FAC.  Plf. Opp. at 11.  Specifically, Deque notes that BrowserStack did not address breach of Deque's website ToU or the prohibition against reverse engineering in the Free and Pro License.  That is because the FAC alleged only breach of the Pro License's prohibition against creation of derivative works and the prohibition against conducting benchmark tests and evaluation runs of DevTools®.  FAC (D.I. 44-1) ¶¶ 78-85.  Having failed to plead breach of the website ToU, breach of the Pro License reverse-engineering prohibition, or breach of the Free License, Deque cannot now rely on those provisions to avoid summary

---

[9] Deque does not allege any theory of secondary liability for copyright infringement against BrowserStack India.

judgment. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."), quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990); *see also Zee Co. v. Williams, Mullen, Clark & Dobbins, P.C.*, 871 F. Supp. 2d 498, 508 (E.D. Va. 2012), *aff'd*, 547 Fed. Appx. 166 (4th Cir. 2013) (observing that allegations not appearing in the complaint "cannot be relied upon for the purpose of … summary judgment") (internal citations and quotations omitted); *Zachair, Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (explaining that a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

Deque argues that it identified these additional breaches in its interrogatory responses. Plf. Opp. at 11, citing Defs. Ex. 5 (D.I. 141-5) at Response to Rog 12. But those interrogatory responses were served October 4, 2024, just one week before the close of discovery. Defs. Ex. 5. Additionally, Deque's response was vague and non-specific, identifying all Deque licenses and terms of use, as well as:

> All provisions related to Deque's intellectual property rights; all provisions related to the prohibition of reverse engineering efforts; all provisions related to the prohibition of testing Deque software; all provisions relating to account sharing; and, all provisions related to the publication of testing results.

*Id*. Such vague references made at the end of discovery cannot expand the scope of the case beyond the operative pleading. *Aquilent, Inc. v. Distributed Sols., Inc.*, No. 1:11-CV-393, 2012 WL 405009, at *9-10 (E.D. Va. Feb. 7, 2012) (granting summary judgment against contract claim where the particular breach was not plead in the complaint but was identified in an interrogatory response); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 658

F. Supp. 775, 778 (N.D. Ill. 1987) ("Just how discovery responses can cure threshold pleading defects is another unexplained mystery.").

**B.      Deque Has No Evidence to Support New Breach Theories**

Even if Deque could now assert breach of the website ToU or License provisions prohibiting reverse-engineering (which it cannot), Deque still could not defeat summary judgment.  First, Deque does not have sufficient evidence of the operative ToU, Free License, and Pro License that existed at the time BrowserStack allegedly agreed to their terms.  *See* Defs. Opp. (D.I. 169) at 9-11.  The contracts that Deque offers and that are on its trial exhibit list are dated December 15, 2023.  *See* Deque Exs. 20-22 (D.I. 147-22, 147-23, 147-24); *compare* D.I. 123 at 5 (items 93-95).  But Deque alleges that BrowserStack entered into these contracts back in 2021 or 2022 when it was developing the Accessibility Toolkit.  *See* Plf. Opp. (D.I. 160) at 10-12.  There is no evidence connecting the December 2023 contracts that Deque submits in evidence to what BrowserStack would have been asked to execute in 2021 or 2022.

Additionally, Deque has not made a sufficient showing that BrowserStack breached the "reverse engineering" provision of the either the Free or Pro License.  Deque points to Mr. Jain's review of Deque's Rules Help Pages when creating the Requirements document.  But the Free and Pro License applies to the DevTools® software, not the Rules Help Pages.  *Id.* at 12.  Thus, nothing about Mr. Jain's review of the Rules Help Pages is relevant to breach of the Free or Pro License.  Deque also suggests that notes regarding use of "axe" shows that BrowserStack "reverse-engineered" DevTools® code.  *Id.*  But even accepting Deque's definition of "reverse-engineering," there is no showing that any use of DevTools® by BrowserStack was "to learn the details of [DevTools®'s] design, construction, or production."  The evidence merely shows that BrowserStack used DevTools®, which it had a paid license to do.  Indeed, Deque admits that BrowserStack did not conduct any benchmark tests or evaluation runs of DevTools®.  *See id.* at

7 (¶ 27), admitting Defs. MSJ (D.I. 145) SUF 27 ("BrowserStack did not conduct any benchmark tests or evaluation runs of axe DevTools®."). Thus, it could not have "reverse-engineered" the software.

### C. No Alleged Breach by BrowserStack US

Deque argues that a single BrowserStack US employee signed up for a trial version of DevTools®, thus binding BrowserStack US. *Id*. at 10. At best, this implicates a Free License, which as noted in Section IV.A, *supra*, is not a pled basis for breach of contract. Thus, there is no basis for liability for BrowserStack US. *See* Defs. MSJ (D.I. 145) at 28.

## V. BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO FALSE ADVERTISING

Deque does not submit any evidence showing any customer saw, relied on, or was misled by the alleged false advertisement. *See* Plf. Opp. at 6 (¶23), 20-22. Thus, Deque cannot prevail on its false advertising claims. *See Verisign, Inc. v. XYZ.COM, LLC,* No. 1:14-cv-01749, 2015 WL 7430016, at *5 (E.D. Va. Nov. 20, 2015); *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2014 WL 4159991, at *14 (M.D. N.C. Aug. 19, 2014) (summary judgment "required" where no evidence advertisements were read or that buying decisions were made based on them "as opposed to any of the other incalculable business reasons").

Deque also has no evidence that the "5x faster, end-to-end accelerated workflows" statement is false. Instead, it argues that BrowserStack has no substantiation for such a statement. *See* Plf. Opp. at 20. But BrowserStack explained the basis for claims that BrowserStack is "5x faster." Defs. MSJ (D.I. 145) at 26. That is sufficient. Only with respect to "test-validated" claims—*i.e.*, where a party claims that its representations have been verified to be accurate through testing—can literal falsity be proven "by showing the test asserted to validate it did not in fact do so." *C.B. Fleet Co., Inc. v. SmithKline Beecham Cons. Healthcare,*

*L.P.*, 131 F.3d 430, 435 (4th Cir. 1997). The purported advertisement here does not suggest, mention, or imply any testing whatsoever. FAC ¶ 64. And Deque has provided no evidence or made any argument that any consumer did or would view this as a "test-validated" claim. Thus, Deque must affirmatively prove "5x faster, end-to-end accelerated workflows" is literally false, which it does not do. *See* Defs. Opp. (D.I. 165) at 27-28.

Deque also has no basis to claim falsity of the other statements relating to available features, as the evidence, including testimony from Mr. Barrell, shows that DevTools® did not have central reporting dashboard, consolidated reports, or multipage scanning functionality. *See* Defs. MSJ (D.I.145) at 7 (SUF 21), 26; Defs. Opp. (D.I. 169) at 28-29. Deque contends these statements are false because other Deque products have some of the listed features. *See* Plf. Opp. at 22. Thus, at best, the purported advertisement is ambiguous as to what statements are being made as to which Deque products. Ambiguity alone defeats Deque's claim of falsity. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 275 (4th Cir. 2002) (where graphic could be "reasonably be understood as conveying different messages," "literal falsity argument must fail") (citation omitted); *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 Fed. Appx. 229, 235 (4th Cir. 2016) (finding "advertisements not unambiguous and therefore cannot be literally false").

## VI.    BROWSERSTACK IS ENTITLED TO SUMMARY JUDGMENT OF NO UNJUST ENRICHMENT

Deque argues that its unjust enrichment claim should survive summary judgment because it goes beyond preempted copyright infringement and breach of contract claims. Plf. Opp. at 23. Specifically, Deque argues that its unjust enrichment cause of action includes a claim for "recovery of all of the Deque property that BrowserStack misappropriated regardless of whether the material is subject to copyright protection." *Id.* But its FAC pleads unjust enrichment only

with respect to copying of DevTools® and associated Help Pages. FAC (D.I. 44-1) ¶ 105. It does not allege all Deque property. In any event, discovery has closed, and at no point has Deque identified any copying or misappropriation of any Deque property beyond the content alleged to have been copied from DevTools® and the Rules Help Pages. *See e.g.* Defs. Ex. 3 (Exhibit A to interrogatory response). Thus, it has no evidence to support any unjust enrichment claim beyond what is preempted by its copyright infringement and breach of contract claims.

## VII. THERE IS NO BASIS FOR AN INJUNCTION

Deque contends there is at least a dispute of material fact as to whether an injunction is appropriate, but it cites no evidence creating any sort of dispute. The only evidence that exists is BrowserStack's evidence showing that the allegedly copied content and allegedly false advertisement have both been removed and no longer exist. *See* Def. MSJ (D.I. 145) at 30, citing SUF 14 and 18. Deque tries to claim that additional advertisements also include false statements, pointing to a "5x faster" statement purportedly posted by BrowserStack in the Chrome Webstore. *See* Plf. Opp. at 4 (¶ 18). Deque has never before identified this purported advertisement or alleged it as a basis for its false advertising claim. Moreover, the exhibit was never produced during discovery and is not listed on Deque's trial exhibit list. *See* D.I. 123. Thus, it cannot be used to create a dispute of fact or as the basis for seeking an injunction in this case.

## VIII. CONCLUSION

For the foregoing reason, BrowserStack respectfully requests this Court grant its Motion for Summary Judgment.

Dated: December 12, 2024       Respectfully submitted,

/s/    Belinda D. Jones
Belinda D. Jones (VSB No. 72169)
bjones@cblaw.com

Roman Lifson (VSB No. 43714)
rlifson@cblaw.com
Christian & Barton, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-3095
Tel.:            (804) 697-4100
Fax:            (804) 697-4112


Ryan J. Marton (*pro hac vice* admitted)
ryan@martonribera.com
Songmee L. Connolly (*pro hac vice* admitted)
songmee@martonribera.com
Phillip J. Haack (*pro hac vice* admitted)
phaack@martonribera.com
Carolyn Chang (*pro hac vice* admitted)
carolyn@martonribera.com
Hector Ribera (*pro hac vice* admitted)
hector@martonribra.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:        (415) 360-2515

*Attorneys for Defendants BrowserStack, Inc. and*
*BrowserStack Software Pvt. Ltd.*