# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

        Plaintiff,

    v.

                              Case No. 1:24-cv-00217-AJT-WEF

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

        Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF MOTIONS *IN LIMINE*

## I.    MIL No. 1 to Exclude Witnesses Not Disclosed in Deque's Initial Disclosures

As the non-disclosing party, Deque has the burden to establish the five factors in *Southern States* justifying an exception to the rule excluding evidence that a party failed to properly disclose but seeks to offer.  *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592 (4th Cir. 2003); Fed. R. Civ. P. 37(c)(1).  Deque fails to do so.  Regarding the Accenture witnesses (Adrian McGrogan and Lee Walsh), Deque does not respond at all, effectively conceding their exclusion.  *See Intercarrier Commc'ns, LLC v. Kik Interactive, Inc*., No.3:12cv771, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) (noting party "effectively conced[es]" argument if it fails to respond); *Stenlund v. Marriott Int'l, Inc*., 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to this argument. Plaintiff concedes the point."). BrowserStack has been deprived of any opportunity to take related discovery, and Deque provides no justification, substantial or otherwise, for its disclosure failure.  Deque was on notice as early as this Court's April 9, 2024 order that "no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.").  *See* D.I. 22 (emphasis in original).  These witnesses should be excluded.

Deque also should be precluded from relying on BrowserStack India witnesses, Lakshay Arora, Bhaven Doshi (in his individual capacity), and Nitesh Sethi for its case-in-chief.  Deque proffers no explanation for omitting them from its initial disclosures.  Deque's reliance on generic "catch-all" language is insufficient under Rule 26(a)(1).  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, No. 6:20-CV-1240-WWB-EJK, 2022 WL 20439273, at *2 (M.D. Fla. Nov. 23, 2022) (Rule 26(a)(1) requires disclosing party to provide the "name" of each individual and noting courts have held that "providing only broad, general disclosures falls short of

1

giving the opposing party notice regarding the specific witness or witnesses that the disclosing party intends to rely on in the litigation").

II.    **MIL No. 2 to Exclude Evidence or Argument Regarding Monetary Damages**

Deque makes four inapposite arguments as to why it should be allowed to present a claim for damages despite its failure to provide a computation during discovery.  First, Deque incorrectly argues its disclosure of generalized theories of damages such as "lost profits" or "the amounts the Defendants[] have been unjustly enriched" is a sufficient disclosure.  But the law is clear:  such generalized recitation of damages is insufficient to satisfy Rule 26's requirement of a computation.  *See Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227, at *2-4 (E.D. Va. July 16, 2020); *Isom v. Midwest Div.-OPRMC, LLC*, No. 13-2602-RDR, 2014 WL 3541842, at *3 (D. Kan. July 17, 2014) (finding failure to comply with Rule 26 where "original initial disclosures list the type of damages sought…but fail[ed] to provide any corresponding dollar computation"); *Gillum v. ICF Emergency Mgmt. Servs., LLC*, No. 08-cv-314, 2009 WL 1458200, at *3 (M.D. La. May 21, 2009) (noting that "vague assertions of damages" do not satisfy a party's obligation under Rule 26).

Second, Deque argues that any "surprise" from its failure is "self-inflicted" by BrowserStack because, according to Deque, BrowserStack did not disclose information necessary for Deque's computation in a timely manner.  But the Court already considered and rejected this argument.  *See* D.I. 92 (Order on Motion to Compel).  In denying Deque's motion to compel additional damages-related documents, Judge Fitzpatrick found:

> [BrowserStack has] told you what they have sold the product for. . . . They've told you the revenue that was generated by them selling the product.  They have given you information about how they developed the product, their costs for developing the product. They're going to give you information as to whether or not they contracted with any third-party vendors to help develop the product.  So unless you have an expert that's going to come in here and say I need these other four things, which I will tell you, I don't

know—we talked about proportionality, I don't know what else your damages are going to include.

D.I. 117 (Sept. 27, 2024 Hearing Tr.) at 41:12-24. Thus, he went on to state that "it sounds like, based on the representations of counsel and my review of the pleadings, is that they have really given you everything that you're entitled to[.]" *Id.* at 42:22-43:5. Judge Fitzpatrick then concluded by telling Deque that BrowserStack has "provided you with the discovery necessary to reasonably calculate your damages if you get there." *Id.* at 44:4-7. There is procedurally and substantively no basis for Deque's claim that BrowserStack withheld documents needed for it to make its damages calculation. Moreover, Deque has had a spreadsheet of BrowserStack's financials through February 2024 (revenue, costs, profits) since early August. *See* Reply Declaration of Ryan J. Marton in Support of Defendants' Motions *in Limine* ("Reply MIL Decl.") ¶ 2. The one document Deque asserts was produced late (BROWSERSTACK0000653) simply updated the earlier produced spreadsheet to include data from February 2024 through August 2024, and that spreadsheet was produced on September 23, 2024, nearly three weeks before the close of discovery. *See id.* ¶ 3. Deque does not explain why it waited until December 6, 2024, nearly two months after the close of discovery and four months after receiving BrowserStack's financial information, to provide a damages calculation for the first time.

In addition, Deque's position that "Browserstack cannot be unfairly surprised by its own profits" is belied by the fact that Deque's late served damages computation is not based on BrowserStack's profits. *See* D.I. 157-7 and D.I. 160-8. Indeed, BrowserStack has made



*See* D.I. 160-1 (showing

. Instead, Deque's damages computation seeks

*See* D.I. 157-7 and D.I. 160-8. Both of these figures are based on Deque documents, material Deque had since before filing this lawsuit.



See D.I. 160-8, Ex. E (showing ███████████████████████████████

███████████████████████ D.I. 160-8, Ex. D Sched. 3 (showing ████████████

████████████████████████████████████████ Deque also

asserts it is entitled to recover ████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████ See D.I. 157-7, p. 4

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████

Third, Deque argues attorneys' fees and post-judgment interest cannot be calculated in

advance.  But neither of these theories of recovery is presented to or calculated by the jury – and,

thus, is irrelevant to this motion *in limine*.  More importantly, neither post-judgment interest nor

attorneys' fees are recoverable in this case absent a predicate finding of monetary damages

(which should be precluded because of the instant motion).  Indeed, Deque seeks attorneys' fees

in connection with only its false advertising claims.  For either of these claims to be viable,

Deque must establish actual damages (which needed to be disclosed in computation).  *See*

*Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc*., No. CIV.A.3:08CV573-HEH,

2009 WL 2876881, at *2 (E.D. Va. Sept. 2, 2009) ("In the Fourth Circuit, proof of actual

damages is critical to the viability of a Lanham Act claim."); Va. Code Ann. § 59.1-68.3

(allowing recovery for a false advertising claim under Virginia law only to a "person who suffers loss as a result of a violation").

Fourth, Deque argues (impliedly) that its late disclosure should be excused because any "surprise" can be ameliorated by an adjustment to the schedule. But requiring an adjustment to the schedule reflects the fact that Deque's failure was not harmless and supports the exclusion sought. *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc*., No. 19-cv-505, 2020 WL 4574493, at *8 (E.D. Va. Aug. 7, 2020) (holding that the inability of "[plaintiff] to cure the surprise to…[defendant] without disrupting preparations for trial in this case" weighs "strongly in favor of the exclusion of any damages evidence at trial"). *Foodbuy, LLC v. Gregory Packaging, Inc*.—cited by Deque—merely stands for the unremarkable position that district courts have broad discretion "to determine whether a nondisclosure of evidence is substantially justified or harmless[.]" 987 F.3d 102, 117 (4th Cir. 2021). In that case, it was not clear that plaintiff's "introduction of its damages calculation and methodology amounted to a surprise" – and given the district court's broad discretion and provision of extra time for the defendants to respond, the court did not find it an abuse of discretion to allow the plaintiff to present a damages case. *See id*. In addition, the opposing party's "counsel acknowledged that the court's approach 'sounded fair and reasonable.'" *Id*. at 118. In this case, there is no dispute that Deque's assertion ██████████████████████████████████████████████ ████████████ two months after the close of discovery, amounts to a prejudicial surprise, and BrowserStack has been given no opportunity to respond to these previously undisclosed theories and calculations, and—unlike the party in *Foodbuy*—Browserstack does not consent to Deque's belated disclosure.

III.    <u>**MIL No. 3 to Exclude Mr. Kahaian from Providing Testimony of an Affirmative Damages Calculation and Theories**</u>

Deque contends Mr. Kahaian can testify to Deque's affirmative damages calculations because his "rebuttal report" pertains to the same subject matter (*i.e.* damages) as BrowserStack's damages expert disclosures.  Opp. (D.I. 207) at 6, quoting *Snider-Jefferson v. Amigo Mobility Int'l, Inc.*,  No. 2:15-cv-406, 2016 WL 4424954, at *4 (E.D. Va. Aug. 17, 2016). That is not the law. Deque improperly truncates language from caselaw that very clearly limits rebuttal reports to those "***solely to contradict or rebut evidence*** on the same subject identified by the opposing party's expert report."  *Snider-Jefferson*, 2016 WL 4424954, at *4, quoting *Withrow v. Spears*, 967 F. Supp. 2d 932, 1001 (D. Del. 2013).  Indeed, Deque's cited quotation is taken from a case in which the court explicitly states that "expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that report, do not qualify as proper rebuttal or reply reports." *Withrow*, 967 F. Supp. 2d at 1001, *citing Glass Dimensions, Inc. ex. rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013). And in the very case on which Deque relies, this District warned that "[a]n expert cannot bootstrap new opinions onto a rebuttal when those new opinions were available to the expert at the time of his initial disclosure, even if part of a rebuttal is well-founded."  *Snider-Jefferson*, 2016 WL 4424954, at *4 (finding plaintiff's "rebuttal" expert report went beyond rebutting defendant's expert, attempting to bolster testimony for plaintiff's case-in-chief).

But that is exactly what Deque is trying to do here.  It is trying to bootstrap its undisclosed damages theories and calculations onto a "rebuttal" report.  Deque offers no explanation for why these damages theories and calculations were not previously disclosed in an opening expert report.  Instead, Deque cites *FLOE Int'l, Inc. v. Newmans' Mfg.*, No. 04-5120,

2006 WL 5159513, at *7 (D. Minn. Feb. 23, 2006) to argue that it should be allowed to provide a rebuttal even where it did not provide an opening expert report.  Opp. (D.I. 207) at 6.  Deque's argument misunderstands *FLOE Int'l* and misses the point.  In *FLOE*, the court allowed the party without the burden of proof to submit a responsive expert report where the party with the burden of proof failed to make an opening disclosure.  2006 WL 5159513, at *7.  Thus, *FLOE* supports BrowserStack's submission of its responsive damages report, but says nothing about the scope of any rebuttal Deque may submit.

Finally, Deque argues that Judge Fitzpatrick already denied BrowserStack's motion.  But Judge Fitzpatrick "share[d] the defense's concern about the timing, the procedure, and the backwards nature of the [damages] disclosure," and invited BrowserStack to raise the issue of "the scope of [] either fact lay witness or expert witness with respect to damages…in the context of perhaps another motion in limine[.]"  MIL Decl., Ex. 15 (D.I. 180-15) (Oct. 17, 2024 Hearing Tr.) at 48:18-50:25.  We are now at the motions *in limine* stage and the issue is ripe for resolution.  The scope of BrowserStack's damages expert's testimony is set and circumscribed by his expert report.  And thus, the scope of Mr. Kahaian's rebuttal testimony is also set and circumscribed.  Mr. Kahaian cannot advance an affirmative damages calculation or theory in "rebuttal" that was never disclosed to BrowserStack's expert and which he was never given an opportunity to address.  Thus, this Court should grant BrowserStack's motion *in limine* excluding Mr. Kahaian from testifying to an affirmative damages theory or calculation.

## IV.    <u>MIL No. 4 to Exclude Lay Witnesses from Providing Expert Opinion Testimony</u>

When considering the distinction between lay and expert testimony, the Fourth Circuit will consider whether the testimony relies on specialized knowledge or skill that the jury lacks.  *Daedalus Blue, LLC v. Microstrategy Inc.*, No. 20cv551, 2023 WL 5337826, at *5 (E.D. Va. Aug. 18, 2023), citing *United States v. Farrell*, 921 F.3d 116, 143 (4th Cir. 2019); *Certain*

*Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (excluding conclusions of a lay witness that were not "ones that a normal person would form based upon his perceptions"). Here, Deque admits that it intends to have its lay witnesses provide testimony that requires specialized expertise. *See* Opp. (D.I. 207) at 8; *see also* MILs Decl., Ex. 13 (D.I. 185-3) at 225:11-20 (testifying based on his "expert opinion").

Specifically, Deque intends to rely on its lay witness's review of the accused BrowserStack source code and his opinions regarding similarity with Deque's source code. *See* Deque MSJ Reply (D.I. 190) at 2-3. It argues that it can do so because many of its lay witnesses are software engineers with personal knowledge of Deque's source code. *See* Opp. (D.I. 207) at 8. But Deque's witnesses do not have personal knowledge of BrowserStack's source code. And any review and comparison of BrowserStack's code to Deque's code was done solely for the purposes of this litigation, not as a part of their regular employment. This is exactly the type of specialized knowledge, analysis, and opinions that is properly the subject of expert testimony that should have been disclosed with Rule 26(a)(2) expert disclosures. *See Daedalus Blue*, 2023 WL 5337826, at *5 (excluding as improper expert testimony the testimony of defendant's employee with personal knowledge of at issue software comparing different at issues software products); *Certain Underwriters*, 232 F.3d at 204 (finding court erred in admitting as lay testimony opinions and conclusions that could only be drawn by an engineer). Deque's failure to disclose such expert analysis has denied BrowserStack the opportunity to cross-examine the witness on his analysis and to have its technical expert respond.

Similarly, with respect to damages calculations, Deque intends to have lay witnesses, such as its CEO, Ms. Kumar, testify as to the calculation of damages in this case, claiming she has personal knowledge as to how Deque has been damaged. *See* Opp. (D.I. 207) at 9. But her

testimony shows that ███████████████████████████████████ *See* Marton MSJ Decl., Ex. 9 (D.I. 145-3) (Kumar Tr.) at 101:9-16, 102:11-21, 104:21-106:8, 165:12-17, 166:6-167:4, 171:17-22). ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ Moreover, neither she nor any other Deque employee has personal knowledge of BrowserStack's financial data, including revenue, costs, or profits relating to the accused Accessibility Toolkit. Nor has any Deque lay witness been disclosed or qualified as having the expertise to review and analyze any financial and sales data to determine a calculation of damages. Accordingly, Deque's lay witnesses should be precluded from providing expert technical or damages related testimony.

## V.    MIL No. 5 to Preclude Settlement-Related Conduct and Statements

Deque suggests that to be inadmissible, an offer of settlement or compromise must be "supported by valuable consideration" under Rule 408(a)(1). Opp. (D.I. 207) at 10. This argument is inapplicable as Defendants seek exclusion not under Rule 408(a)(1), but Rule 408(a)**(2)**, which prohibits use of evidence of "conduct or a statement made during compromise negotiations about the claim." FRE 408(a)(2); *see* MILs at 14. Thus whether "valuable consideration" was or was not offered is irrelevant.

Deque also argues that settlement negotiations must "be consensual" to suggest that the purported statements made by Mr. Arora fall outside the scope of FRE 408. Opp. (D.I. 207) at 11. But "it is the offeror's intent that is controlling[.]" *Columbia Gas Transmission, LLC v.*

*Haas*, 409 F. Supp. 3d 420, 436 (D. Md. 2019), aff'd, 837 F. App'x 155 (4th Cir. 2020);

*Fiberglass Insulators*, 856 F.2d at 654 ("To determine whether the statements are covered by the rule, the inquiry is whether the 'statements or conduct were **intended** to be part of the negotiations for compromise.'" (emphasis added); *Columbia Gas Transmission*, 409 F. Supp. 3d at 435 ("[O]ffers to settle, or statements made alongside offers to settle, are excluded **even if no settlement negotiations follow or if the party to whom the offer is made refuses to engage in compromise negotiation**.") (internal quotations and citation omitted, emphasis added); *see also Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 222 (4th Cir. 2020) ("At bottom, Rule 408(a)'s exclusionary provision extends to evidence of an effort to 'compromise' a 'disputed claim.') (citation omitted); *Onyx Films LLC v. Koch*, 523 F. Supp. 3d 799, 801-02 (E.D. Va. 2021) ("Rule 408 encourages honest attempts to settle controverted claims without resorting to expensive and time consuming litigation"…"when the issue of admissibility of settlement negotiations is in doubt, the better practice is to exclude evidence of compromises or compromise offers under Rule 408") (internal quotations and citations omitted).[1]

Here, Deque cannot credibly claim that the statements and conduct made in connection with this in-person meeting were not intended to be a part of compromise negotiations.  Mr. Arora's introductory email concerned the "legal action initiated by Deque," was labeled as "[Privileged and confidential settlement discussions]," requested of Ms. Kumar "the opportunity

---

[1] Although Deque cites *Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc.*, 299 F. Supp. 2d 892, 895 (E.D. Wis. 2004), this case is distinguishable and supports exclusion here.  In *Lee Middleton*, defendant's CEO approached plaintiff's president at a trade show and engaged in *ex parte* settlement discussions, where plaintiff's president never indicated a willingness to discuss the matter, never indicated a belief that he was engaging in a settlement discussion, and never otherwise indicated he was accepting defendant's offer to enter into settlement discussions.  In stark contrast here, Ms. Kumar clearly indicated and acknowledged her engagement in compromise negotiations through her email responses to Mr. Arora and by agreeing to meet in-person at lunch to discuss the same.

for a brief conversation," and that he was "reaching out to explore the possibility of a constructive resolution." D.I. 165-1. Ms. Kumar accepted Mr. Arora's invitation by stating, "I'd be happy to talk after you conclude your investigation" and they subsequently arranged their schedules to meet in-person to discuss. *Id.* Ms. Kumar's *post hoc* re-characterizations of that meeting do not change the clear expressed intent that the purpose of the agreed-to in-person meeting was to have a "productive conversation" to explore "collaborative resolution" of Deque's claims. *Id.*

Deque's final argument regarding FRE 801(d)(2) party opponent admissions is irrelevant because, as noted above, these alleged statements by Mr. Arora are inadmissible under FRE 408.[2] If anything, Deque's argument shows that its sole purpose of introducing Mr. Arora's alleged conduct and statements is to establish the validity of its disputed claim; Deque claims no other purpose or exception under FRE 408. *See generally* Opp. (D.I. 207) at 10-12.

## VI.    MIL No. 6 to Exclude References to "Misappropriation," "Secret Sauce," or "Secrets"

Deque concedes that no confidential information, trade secrets, or any other secrets are at issue. Use of terms "secret" or "secrets" are thus irrelevant, have no probative value, and would cause undue prejudice by confusing and misleading the jury regarding the asserted intellectual property (copyright) and legal claims at issue in this case (copyright infringement, breach of contract, false advertisement, and unjust enrichment). For the same reasons, the terms "secret sauce" and any purported "misappropriation" thereof should be precluded under FRE 402 and 403. Deque seeks to rely on a non-literal definition of "secret sauce" to argue that it does not mean anything secret, but something "special" instead. Opp. (D.I. 207) at 13-14. But this only shows how the term's ambiguity would further confuse and mislead the jury. The term "secret

---

[2] Mr. Arora also has denied he ever made any such purported statements. *See* D.I. 165.

sauce," on its face, is "secret," or, at minimum, implies something secret.  Deque also omits its plain definition of "a secret element, strategy, procedure, etc., that accounts for or increases the chances of success."  *See* https://www.dictionary.com/browse/secret-sauce; *see also Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 368 (S.D.N.Y. 2023) ("secret sauce" defined by expert as "some secret way of doing business that other people don't have access to, something that creates a dramatic differentiation between a company and its competitors").  It is reasonable to assume and expect that a jury would ascribe or infer something "secret" with its usage, and it should therefore be precluded.

This phrase also has no relevance or probative value, and is prejudicial, confusing, and misleading, if used by Deque as it intends to "colloquially" describe the "harm that intellectual property misappropriation has."  Opp. (D.I. 207) at 14.  No cognizable legal claim of "intellectual property misappropriation" exists in this case.  Regardless, the purported copying of a "secret sauce" neither accurately conveys governing law nor a measure of damages for copyright infringement, the only intellectual property claim in this case.  The conclusory and argumentative term "secret sauce" also lacks foundation as to how the "code" purportedly copied (which relates to the W3C web accessibility standards) is even the "core" or "heart" "of Deque's products."  Because any purported "misappropriation" of a "secret sauce" has no relevance or probative value, and risks unfair prejudice by confusing and misleading the jury, Deque should be precluded from using these words and phrases in evidence and arguments presented to the jury.

## VII.   MIL No. 7 to Exclude Testimony Regarding Development of Deque Intellectual Property Not Alleged to Be Copied

Deque argues that it should be allowed to introduce evidence of its company's entire history of development, which includes unasserted intellectual property unrelated to the claims of this case.  Specifically, Deque contends that the asserted works were built upon all

development work that preceded it.  But Deque makes no showing that creation  would be extremely prejudicial to BrowserStack, with no material relevance to the claims in this case.

**VIII.    MIL No. 8 to Exclude Statements that BrowserStack's Financials are Fraudulent**

Deque's opposition to MIL No. 8 rests on a complete misapprehension of BrowserStack's request.  BrowserStack asks the Court to preclude Deque from presenting argument or eliciting evidence from its own witnesses and counsel that BrowserStack's financial information is unreliable.  *See* MILs (D.I. 184) at 17.  BrowserStack explicitly carved out cross-examination of BrowserStack's witnesses from its request, and Deque is free to question BrowserStack about the financial information it supplied.  What Deque should ***not*** be permitted to do is make baseless accusations that BrowserStack is attempting to defraud the Court, whether that comes from Deque's witnesses, who have no personal knowledge, or from Deque's counsel, who should be limited to evidence presented at trial.

**IX.    MIL No. 9 to Exclude Inflammatory and Derogatory Statements Such as "Stole," "Steal," "Theft," "Wrongful," or "Guilty"**

Deque's opposition does not and cannot dispute that words such as "stole," "steal," "theft," "wrongful," and "guilty" are pejorative and inflammatory, and serve no relevant or probative value in this case which involves claims of copyright infringement, breach of contract, false advertising, and unjust enrichment.  Rather, Deque merely argues that it should be permitted to use such words because they are "common," "accessible," and part of "everyday

lexicon" in the English language.  Opp. (D.I. 207) at 17-18.  But this common usage is the very reason why such words would be prejudicial.  Deque does not contest that these words inherently suggest immoral and criminal conduct of Defendants and the victimization of Deque, and evoke the emotions and instincts of a jury to find liability and to punish.  Deque also does not address that such words suggest criminal and other theories of civil liability which are not at issue in this case, whereby their use would conflate immaterial and irrelevant issues and create confusion for the jury.  Indeed, as shown in its past briefing and in deposition testimony, Deque will rely ubiquitously on such inflammatory language to influence the jury.  *See* MILs (D.I. 184) at 18 n.12.  Additionally, Deque cites no case where a court has allowed use of such derogatory characterizations.  To the contrary, courts have granted such motions *in limine*, and the Court should similarly do so here.  *See* MIL (D.I. 184) at 19 (citing cases).

## X.  MIL No. 10 to Exclude Evidence or Argument Regarding Extraterritorial Conduct

Deque does not dispute that the only relevant acts by the BrowserStack defendants that could establish liability must happen in the United States.  Opp. (D.I. 207) at 19, citing *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) (denying a motion to dismiss for lack of subject matter jurisdiction, reasoning that importation into the United States as an act that violates the exclusive right of distribution).  Deque claims that BrowserStack India's extraterritorial actions must be presented to the jury "to be able to prove that the work is infringing *before* its importation."  Opp. (D.I. 207) at 19 (emphasis original).  Deque is wrong.  Establishing that a work is infringing requires that Deque show access to its registered works and substantial similarity between the registered work(s) and BrowserStack's accused product.  *Dawson*, 905 F.2d at 732.  It does not require that Deque confuse the jury by suggesting that this trial's scope includes punishing BrowserStack for purported conduct that occurs outside the jurisdiction of the United States.

14

## XI.    <u>MIL No. 11 to Exclude Testimony Regarding Speculative Damages</u>

Deque should be precluded from presenting or eliciting argument, evidence, or testimony regarding any purported revenue Deque would have earned if BrowserStack had not entered the market for two independent reasons.  First, Deque's 30(b)(6) witness ███████████████ ████████████████████████████████████████████████████████.  *See* MIL Decl. ¶¶ 20, 21, Ex. 14 (Sinha Tr.) at 104:9-16.  Allowing Deque to now present details regarding loss it did not disclose during discovery would be prejudicial.  Second, ███████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████    *See* D.I. 157-7.

## XII.    <u>MIL No. 12 to Exclude Any Testimony or Facts Regarding Contributions to Copyrighted Works by Individuals Not Listed in Response to Interrogatory No. 1</u>

Deque's opposition claims that its failure to disclose the alleged author of "most of the Rules Help Pages" it asserts as its copyrighted work was BrowserStack's negligence.  But BrowserStack propounded interrogatories seeking precisely this information.  It was Deque who failed to disclose the fact that Ms. Phillips was the author of "most of" the allegedly copied works and instead disclosed the names of another 111 employees who were not the relevant authors.  Deque also argues that because the copyrighted works were made for hire, the author's testimony is irrelevant.  It is not.  Particularly here, where "most of," or in fact, all of the material allegedly copied was derived from industry standards, the testimony of the alleged author is highly relevant to originality of the work and its entitlement to copyright protection.  "The mere fact that a work

is copyrighted does not mean that every element of the work may be protected.  Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 1289, 113 L. Ed. 2d 358 (1991).  Deque admitted that ████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ D.I. 141-10 (Ex. 10 at 35:9-37:16; *see also id*. at 29:25-30:12, 38:23-39:9, and 40:23-43:5 (referencing Ex. 3 (D.I. 141-3) at Ex. A)).  For this type of derivative work, "the author's contributions must satisfy the originality requirement." *Darden v. Peters*, 488 F.3d 277, 286 (4th Cir. 2007) (citing *Feist* at 111).  Ms. Phillips' testimony regarding the extent to which Ms. Phillips may have copied or otherwise derived the at-issue text in this case from the W3C standards body itself is highly relevant to whether it is entitled to copyright protection.  BrowserStack's position is that it is not.  Given Deque's choice not to disclose Ms. Phillips in its discovery responses, it should now be precluded from using any argument, evidence, or testimony regarding her written work at trial.

## XIII.   <u>MIL No. 13 to Exclude Arguments Related to Alleged "Spikes in Usage"</u>

Deque's opposition fails to address that it has never alleged a breach of contract or other legal claim based on any alleged spikes in usage or excessive frequency of use by BrowserStack of axe DevTools.  *See* MIL (D.I. 184) at 21.  Nor has Deque alleged breach of contract based on a theory of reverse engineering.  *See* Def's MSJ Opp. (D.I. 169) at SUF ¶ 3; *id*. at 8-9 (III.B.1), 11-13 (III.B.3).  Thus permitting Deque to argue or introduce evidence of "spikes" or "excessive" use of axe DevTools risks unfair prejudice and confusion of issues for the jury by implying not only that BrowserStack's mere use of axe DevTools as a licensed user was improper but that such use was by someone involved in the development of the Accessibility Toolkit.  The relevant inquiry in this case is whether any protectible expression in axe DevTools

v.4.9.0 and/or the Rules Help Pages was copied by BrowserStack into the accused Accessibility Toolkit, and if so whether this rendered the Accessibility Toolkit so substantially similar to constitute a reproduction or derivative work of those copyrighted works. This is done by evaluating the works at issue, not by prejudicially suggesting that the licensed use of axe DevTools by BrowserStack was "excessive" or otherwise wrongful.

## XIV.    MIL No. 14 to Exclude Statements of Intent or Willfulness

Deque fails to address BrowserStack's primary argument—that evidence of willfulness has "no proper role" where statutory damages are not at issue, as is the case here. *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 279 (D. Del. 2013). In the Fourth Circuit, "plaintiffs can establish a *prima facie* case of infringement by showing possession of a valid copyright, the defendant's access to the plaintiff's work, and substantial similarity between the plaintiff's and defendant's works." *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732 (4th Cir. 1990). None of the above elements require showing evidence of "BrowserStack's mindset and conduct" as Deque contends. Opp. (D.I. 207) at 24. Evidence of BrowserStack's purported willfulness or intent is not probative of any issue in the case, and Deque has not identified any claim or defense for which it would be probative. Given this failure, Deque's reliance on the statement that "[e]vidence that is highly probative invariably will be prejudicial to the defense," rings especially hollow. Opp. (D.I. 207) at 24, quoting, *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998). Evidence of willfulness is not "highly probative," or even minimally probative in this case, unlike the situation in *Grimmond*, where the evidence at issue "directly established an element of the offense." *Grimmond*, 137 F.3d at 833.

With respect to its false advertising claims, Deque's failure to identify any evidence of willfulness in response to BrowserStack's interrogatory should prevent it from identifying new

17

evidence at this late stage.  Deque should not be permitted to conduct a trial by ambush by presenting arguments based on no evidence or evidence not disclosed before this late stage.

**XV.  MIL No. 15 to Exclude Statements Regarding Alleged BrowserStack Culture**

Deque's opposition simply asserts that because highly prejudicial testimony may be "directly relevant," FRE 403 should be ignored.  This is not the law.  In fact, "***[a]lthough relevant,*** evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Kannapel v. Hudson*, 12 F.3d 205 (4th Cir. 1993) (emphasis added).  "Unfair prejudice speaks to the capacity of some ***concededly relevant evidence*** to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Sheffield*, No. 23-4045, 2024 WL 3717056, at *2 (4th Cir. Aug. 8, 2024) (citations omitted and emphasis added).  Statements or testimony about BrowserStack's "culture" are not probative of the specific alleged copying Deque claims in this case but are only intended to bias the jury to make a finding in the absence of facts. Moreover, Deque's baseless allegations regarding BrowserStack's purported "culture" are not only prejudicial but also irrelevant, in violation of FRE 402.  Deque has no actual evidence of any such "culture" other than its witnesses and attorneys' willingness to distort facts and make highly prejudicial allegations which bear no relevance to any claim or defense in this case.  Contrary to Deque's unsupported arguments, testimony and argument referring to BrowserStack as having a "'culture' of copying" or alleging that BrowserStack was "'founded' on copying," that it "'condone[s]' copying of others' products as a regular practice," or that BrowserStack "regularly reverse engineer[s] others' products, is not relevant to any "intent, motive, [or] absence of mistake" at issue in this case.  Thus, FRE 404 also prohibits its use at trial.

**XVI.  MIL No. 16 to Exclude References to Any Alleged Copying of Any Works Other than axe DevTools 4.9.0 or the Rules Help Pages**

Deque's opposition does not address the fact that the ***only*** two registered works identified as copied by BrowserStack are axe DevTools v.4.9.0 and the Rules Help Pages. *See* D.I. 145

(Defs' MSJ) at ¶¶ 9, 17.  Deque should not be allowed at trial to now expand the scope of its infringement claims to encompass other works.  First, Deque argues, without explanation, that "the version numbers" are "immaterial."  Opp. (D.I. 207) at 26.  But if version numbers do not matter, then there is no need for Deque to refer to any version other than v.4.9.0, the only version from which any text was ever identified as copied by BrowserStack.  *See* D.I. 44-1 (FAC) at ¶¶ 42-43; MIL Decl., Ex. 3 at Ex. A.[3]  Second, Deque argues that its "publicly available release notes clearly show that version 4.9.0 was not released until September of 2024," citing to Exhibit 1.  *See* Opp. (D.I. 207) at 26-27; *id*. at Ex. 1.  But Deque does not explain why this matters when v.4.9.0 (TX0009336480) has a creation date in 2021 (*see* D.I. 44-1 ¶ 37), and, again, is the only version ever identified by Deque as copied.  Finally, Deque contends that its witnesses can testify as to the "release dates of each version," and that it produced source code for "multiple versions" of DevTools.  Opp. (D.I. 207) at 27.  But, again, Deque misses the point in that it did not actually allege copying by BrowserStack of these other unspecified versions.  Nor has Deque ever identified the similarities or differences between the versions, fifteen of which were registered as separate works.  *See* D.I. 44-1 at ¶ 37.  Allowing references to the copying of any versions other than v.4.9.0 would mislead and confuse the jury, and improperly expand this case beyond its proper scope which should be defined by what Deque identified in its FAC and interrogatory responses.

Similarly, with the "Deque Issue Help Pages" (*see, e.g.*, MIL Decl., Ex. 3 at Ex. A), "Docs-Issue-Help Pages" (*see id.*, Ex. 2 (Response to Interrogatory No. 1), and the "Doc-Issue-

---

[3] Deque erroneously cites to "Dkt. 153-13" as purported evidence of copying of some other unidentified versions of axe DevTools.  *See* Opp. (D.I. 207) at 26. Insofar as this refers to the attorney-created document, D.I. 150-13, at best it purports to reflect usage data by BrowserStack as licensed users of axe DevTools and does not reflect any copying thereof into the accused product.

Help pages" (*see, e.g.*, D.I. 44-1 (FAC) at ¶¶ 24, 25), Deque again confuses and conflates which registered work is at issue.  Deque makes the mere conclusory assertion that they are "just other names" or "rebrand[s]," but points to no evidence in the record whereby these rebranded versions can be evaluated, including to what extent any copyrightable expression (*e.g.*, creative text, color and font selection, content placement, arrangement, design) may be similar or different from the registered work (TX 9-359-731), which ones were created when and by whom, and whether one or more would be a reproduction or derivative of the other.  Deque should be limited to what it has identified during discovery as the registered work asserted as infringed: DEQUE009921-DEQUE009966.  *See* D.I. 185-3 (Response to Interrogatory No. 11); MILs Reply Decl. ¶¶ 4-5, Ex. 1 (attaching copy of the work identified by Deque).  This is the asserted work which the jury should evaluate to assess whether any protectible expression was purportedly copied into the Accessibility Toolkit, and if so, to what extent that could give rise to liability under the Copyright Act.  Referencing and introducing evidence on any other purported rebranded versions of the work would confuse and mislead the jury in its evaluation of Deque's copyright infringement claim.

Finally, Deque fails to address the argument that it should be precluded from introducing any evidence, testimony, or arguments referencing any alleged copying of "Deque products" or "other Deque products" more generally.  *See* MILs (D.I. 184) at 24-25, n. 13.  Any alleged copying of any "other" Deque products is outside the scope of this case, has no probative value and would be prejudicial to BrowserStack and confusing and misleading to the jury by suggesting other Deque products or works are at issue when none are.  Defendants' motion *in limine* in this regard should therefore be granted.

## CONCLUSION

Accordingly, Defendants respectfully request the Court grant their motions *in limine*.

Dated:  January 2, 2025             Respectfully submitted,

                                     /s/    Belinda D. Jones
                                     Belinda D. Jones (VSB No. 72169)
                                     bjones@cblaw.com
                                     Roman Lifson (VSB No. 43714)
                                     rlifson@cblaw.com
                                     Christian & Barton, L.L.P.
                                     901 East Cary Street, Suite 1800
                                     Richmond, Virginia 23219-3095
                                     Tel.:       (804) 697-4100
                                     Fax:       (804) 697-4112

                                     Ryan J. Marton (*pro hac vice* admitted)
                                     ryan@martonribera.com
                                     Songmee L. Connolly (*pro hac vice* admitted)
                                     songmee@martonribera.com
                                     Phillip J. Haack (*pro hac vice* admitted)
                                     phaack@martonribera.com
                                     Carolyn Chang (*pro hac vice* admitted)
                                     carolyn@martonribera.com
                                     Hector Ribera (*pro hac vice* admitted)
                                     hector@martonribra.com
                                     MARTON RIBERA SCHUMANN & CHANG LLP
                                     548 Market Street, Suite 36117
                                     San Francisco, CA 94104
                                     Telephone:     (415) 360-2515

                                     *Attorneys for Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd.*