UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

        Plaintiff,

  v.

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

        Defendants.

Case No. 1:24-cv-00217-AJT-WEF

**DECLARATION OF RYAN J. MARTON IN SUPPORT OF DEFENDANTS' MOTION
FOR ATTORNEY FEES**

I, Ryan J. Marton, declare as follows:

1.      I am a partner with the law firm of Marton Ribera Schumann & Chang LLP, counsel for Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd. (collectively, "Defendants" or "BrowserStack") in this matter.  I submit this declaration in support of Defendants' Motion for Attorney Fees.  I have personal knowledge of the facts set forth herein unless otherwise indicated, and if called upon to testify, I could and would testify competently thereto.

2.      Attached as **Exhibit 1** to this Declaration is a true and correct copy of a document produced by Plaintiff Deque Systems, Inc. ("Deque") in this litigation, bearing the Bates label DEQUE007159-DEQUE007174, reflecting a February 2024 "Media Coverage Summary" Deque received from its public relations marketing firm, Greentarget.

3.      Attached as **Exhibit 2** to this Declaration is a true and correct copy of an email string from August 17, 2023 produced by Deque in this litigation, bearing the Bates label DEQUE010067-10069, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  See Ex. 2 at DEQUE010067.

4.      Attached as **Exhibit 3** to this Declaration is a true and correct copy of an email string from August 17, 2023 produced by Deque in this litigation, bearing the Bates label DEQUE0010073-DEQUE0010075, in which Deque admits, ██████████████████████████████████████.

5.      Attached as **Exhibit 4** to this Declaration is a true and correct copy of a document produced by Deque in this litigation, bearing the Bates label DEQUE010546, showing █████████████████████████████████████████████████████████████████████████.

1

████████████████████████████████████████████████ during the period BrowserStack was using allegedly copied text and making allegedly false statements about Deque. *See also* September 23, 2024 Expert Report of Paul Benoit (D.I. 106-5) at ¶ 58.

6. Attached as **Exhibit 5** is a true and correct copy of a pdf version of a spreadsheet produced by BrowserStack in this litigation, bearing the Bates label BROWSERSTACK000653, reflecting financials relating to the accused Accessibility Toolkit product.

7. In April 2024, I reached out to counsel for Deque to explore potential settlement given that there were no damages in this case and I requested Deque make a settlement demand. On May 27, 2024, Deque's counsel sent me an email requesting information they purportedly needed before Deque could make a settlement demand. The list included a request for all source code for all versions of the BrowserStack Accessibility Toolkit and source code control system history. A true and correct copy of an email string that includes the May 27, 2024 email is attached as **Exhibit 6** to this Declaration.

8. Deque served its Rule 26(a)(1) initial disclosures on June 7, 2024. A true and correct copy of Deque's Rule 26(a)(1) initial disclosures served on June 7, 2024 is attached to this Declaration as **Exhibit 7**.

9. On July 3, 2024, BrowserStack informed Deque that the requested source code for the Accessibility Toolkit would be available to review. From July 8, 2024 through August 2, 2024, BrowserStack continued to follow up with Deque's counsel regarding the availability of BrowserStack's source code and what software tools Deque wanted for its review. BrowserStack took great pains to make its Accessibility Toolkit source code repository available for review in this litigation. It had an employee personally carry and fly the laptop with the source code repository on a plane from India to United States so that the source code could be

made available in Virginia at its local counsel's offices for Deque's review. A true and correct copy of the email strings with the parties' discussion was previously filed with this Court as Exhibits 7-8 to my Declaration in Support of BrowserStack's Opposition to Motion to Compel and Opposition to Motion for Extension (D.I. 81-7 and D.I. 81-8.

10. On July 8, 2024, I participated in a settlement call with counsel for Deque, during which I explained that this case should settle because there were no damages ███████ ████████████████████████████████ In response, Deque indicated it would be pursuing revenue of non-accused products, but offered no basis to support a theory that the Accessibility Toolkit drove sales of other products. Deque did not make a settlement demand or otherwise make any indication of what it believed was the value of the case.

11. On July 29, 2024, Deque served its Responses to BrowserStack's First Set of Interrogatories. Deque did not verify any of the responses in its Responses to BrowserStack's First Set of Interrogatories. A true and correct copy of Deque's Responses to Defendants' First Set of Interrogatories served on July 29, 2024 is attached to this Declaration as **Exhibit 8**.

12. On August 7, 2024, the parties had a follow-up settlement call during which Deque's counsel indicated to me that they did not expect to review BrowserStack's source code. Deque never reviewed BrowserStack's source code (through a retained expert or otherwise), and never made any request to do so during the discovery period.

13. On August 8, 2024, BrowserStack produced to Deque financial data for its Accessibility Toolkit product through the start of February 2024, ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████ BrowserStack later produced an updated financial spreadsheet, updating

3

the data through August 2024, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14. The Court's Rule 16(b) Scheduling Order (D.I. 37; D.I. 3501) in this case set the deadline for Deque to serve Rule 26(a)(2) expert disclosures as August 9, 2024. Deque did not serve any expert reports or make any Rule 26(a)(2) disclosures by the August 9, 2024 deadline. It did not serve a technical expert report. Nor did it serve any expert disclosures to support its damages claim or otherwise provide a disclosure of its calculation of damages by the August 9, 2024 deadline. Prior to the August 9, Deque never asked for an extension of the expert disclose deadline. Deque did not make any mention of extending the time for expert disclosures until August 23, 2024 when the parties were negotiating a stipulation to extend BrowserStack's deadline to serve responsive expert reports given Deque's delay in producing documents. At that time, Deque indicated it was interested in an extension to disclose experts (but not serve expert reports) under Rule 26(a)(2). BrowserStack did not agree and Deque did not otherwise move the Court or take action on that request.

15. On August 14, 2024, I sent counsel for Deque a letter urging Deque to make a reasonable settlement demand or dismiss the case given that Deque has no available damages in this case. I explained that if BrowserStack is forced to continue litigation, it would seek recovery of attorney fees. A true and correct copy of my August 14, 2024 letter is attached to this Declaration as **Exhibit 9**. In response to my letter, I had a settlement call with Deque on August 28, 2024, during which Deque indicated it had no interest in settlement at this time.

16. On August 30, 2024, Deque served its First Supplemental Responses to Defendants' First Set of Interrogatories. Deque did not verify any of the responses in its First Supplemental Responses to BrowserStack's First Set of Interrogatories. A true and correct copy

of Deque's First Supplemental Responses to Defendants' First Set of Interrogatories served on August 30, 2024 is attached to this Declaration as **Exhibit 10**.

17. On August 31, 2024, BrowserStack served on Deque an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68, offering $101,000.00, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ A true and correct copy of the August 31, 2024 Rule 68 Offer of Judgment is attached to this Declaration as **Exhibit 11**. Deque never responded to the Rule 68 Offer of Judgment.

18. On September 6, 2024, Deque served its Supplement to Its Initial Disclosures. A true and correct copy of Deque's Supplement to Its Initial Disclosures served by Deque on September 6, 2024 is attached to this Declaration as **Exhibit 12**. Deque has not otherwise amended or supplemented its Rule 26(a)(1) initial disclosures.

19. Attached as **Exhibit 13** is a true and correct copy of BrowserStack's September 18, 2024 First Amended Responses to Deque's First Set of Interrogatories.

20. On October 9, 2024, two days before the close of discovery in this action, I deposed Harris Schneiderman, Senior Product Manager at Deque both in his personal capacity and as Deque's representative. The deposition of Mr. Schneiderman was transcribed by a certified court reporter. I was present at the deposition and the transcript accurately represents the proceedings. A true and correct copy of relevant excerpts of the October 9, 2024 Deposition of Harris Schneiderman is attached as **Exhibit 14** to this Declaration.

21. On November 21, 2024, I once again spoke with counsel Deque regarding the possibility of settlement. Counsel indicated that Deque was not inclined to make a settlement offer.

5

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on January 27, 2025 in San Francisco, California.

/s/   Ryan Marton
Ryan Marton
