# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

**DEQUE SYSTEMS INC.,**

      **Plaintiff,**

**v.**

**BROWSERSTACK, INC., et al.,**

      **Defendants.**

**Case No. 1:24-cv-00217-AJT-WEF**

---

\*\*\* <span style="background:black;color:white">REDACTED</span> \*\*\*

## PLAINTIFF DEQUE SYSTEMS INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY FEES

Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd. (together "BrowserStack") copied *verbatim* Plaintiff Deque System Inc.'s ("Deque") copyrighted works, breached the plain terms of the parties' written licensing agreement, and damaged Deque substantially. Dkt. 44-1 (charts comparing DevTools and Accessibility Toolkit). In its summary judgment motion, Deque described two separate *party admissions* by BrowserStack as well as substantial additional evidence of BrowserStack's copying and reverse engineering. Dkt. 150 & 190.

Deque also has evidence of its damages that a jury could properly consider without any expert testimony. First, Deque had evidence of BrowserStack's revenues from BrowserStack's own financial documents, which is all that it was required to prove. *See* 17 U.S.C. § 504(b); *Dash v. Mayweather*, 731 F.3d 303, 329-30 (4th Cir. 2013). No expert or calculation is needed.[1]

---

[1] BrowserStack's US revenue from the Accessibility Toolkit (ignoring its revenues from sales of other products) is ███████████████ as reflected in BROWSERSTACK17 (Dkt. 160-6) and BROWSERSTACK653 (Dkt. 160-1).

Second, Deque identified two specific customers who either delayed purchasing Deque's products or renegotiated their contractual terms with Deque because of BrowserStack's infringement. *See* Dkt. 150-3 at ¶¶ 20-21. As detailed below, no expert is required to prove these damages.

In addition, Deque is entitled to recover nominal damages, as well as declaratory and injunctive relief. Given that Deque could recover multiple types of relief, without a damages expert, Deque's positions in this case were not frivolous, as BrowserStack argues in its motion. To the contrary, prior to the Court's erroneous ruling on the motions for summary judgment, which is subject to a separate motion for reconsideration, Deque prevailed in whole or in part on every contested motion. *See, e.g.*, Dkt. 63 & 127.

Deque's claims are valid and its evidence is strong. Deque is respectfully seeking appropriate review of the Court's summary judgment decisions. Deque is the victim of BrowserStack's theft, which caused millions of dollars of damages to Deque. Deque did not need an expert to prove or explain these damages or to sustain its claims, which allow for a myriad of remedies, including nominal and injunctive relief. This is absolutely not a case where the Court should impose sanctions against the Plaintiff, Deque. The Court should deny BrowserStack's overreaching motion.

I.    **BrowserStack was not entitled to relief under Fed. R. Civ. P. 37 and Deque's damages evidence should not have been excluded.**

BrowserStack was not entitled to relief under Federal Rule of Civil Procedure 37, and the Court's January 13, 2025 Order [Dkt. 237] does not give BrowserStack a basis for seeking attorney fees now. Deque can evidence its damages without the testimony of an expert witness. For one, the Copyright Act expressly provides that Deque need only present proof of BrowserStack's gross revenues, and that there was a "reasonable relationship" between those revenues and what

BrowserStack copied. 17 U.S.C. § 504(b); *Dash v. Mayweather*, 731 F.3d 303, 329-30 (4th Cir. 2013). Deque intended to do this by introducing BrowserStack's own financial spreadsheets— which had the total revenues on their face. No expert or calculation are needed. Under the burden-shifting framework set forth in 17 U.S.C. § 504(b), BrowserStack would then have to prove its deductible expenses which, ███████████████████████████████████████████ (*see* Dkt. 160-3 (summarizing numerous issues)). BrowserStack clearly understood these burdens, as it was precisely the issue of these off-sets for which BrowserStack proffered an expert – despite being the defendant with *no counterclaim* in this action.

Additionally, Deque also identified two specific customers who either delayed purchasing Deque's products or renegotiated their contractual terms with Deque because of BrowserStack's infringement. *See* Dkt. 150-3 at ¶¶ 20-21. No expert is necessary to prove the damages associated with this because lay witness testimony and documentary evidence sufficiently support Deque's claims for damages. *United States v. Hamaker*, 455 F.3d 1316, 1331 (11th Cir. 2006) (no expert required when lay witness was testifying to facts within documents and using only simple math). As one court explained:

> It is no doubt true that when a measure of damages involves complex calculations requiring specialized knowledge of relevant factors and industry standards—things outside the knowledge of the average juror—testimony by an expert witness may be necessary. *But when the calculations involve simple math or the use of numbers that are clearly presented by the evidence, no expert testimony is needed.*

*Razaghi v. Razaghi*, No. 2:18-cv-01622-EJY, 2024 U.S. Dist. LEXIS 190459, at *5 (D. Nev. Oct. 21, 2024) (emphasis added). Other courts held similarly. *Qwest Corp. v. City of Santa Fe*, No. 10-CV-0617 RB/KBM, 2013 U.S. Dist. LEXIS 201862, at *4 (D.N.M. Apr. 15, 2013) ("Simple mathematical calculations such as addition and division do not require expert testimony."); *Farmasino, Inc. v. Farmasino Pharms. Co.*, No. 5:15-cv-01877-SVW-DTB, 2016 U.S. Dist. LEXIS 194703, at *11 n.8 (C.D. Cal. June 20, 2016) ("the 'tabulation' to which plaintiff takes

issue is a matter of simple arithmetic … This kind of calculation is not the kind … that requires an expert witness. [Witness] is a lay witness and therefore defendants do not need to demonstrate her expertise in performing simple calculations, nor do they need to designate her as an expert witness.").

Deque further reasoned,  (*see* Dkt. 160-3 (summarizing numerous issues)). At the jury trial, all Deque had to show was BrowserStack's gross revenues and that there was a "reasonable relationship" between the profits and what BrowserStack copied. *Dash v. Mayweather*, 731 F.3d 303, 329-30 (4th Cir. 2013). Under the burden-shifting framework set forth in 17 U.S.C. § 504(b), BrowserStack must then prove its deductible expenses which, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Deque's approach to evidencing its damages was fully viable.

## II.    BrowserStack is not entitled to attorney fees under the Copyright Act.

BrowserStack is not entitled to attorney fees under the Copyright Act.  Under that Act, a court considers four factors: "(1) the motivation of the parties, (2) the objective reasonableness of the legal and factual positions advanced; (3) the need in particular circumstances to advance the considerations of compensation and deterrence; and (4) any other relevant factor presented." Dkt. 248, PageID# 4288; *see Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 234 (4th Cir. 1993) (internal citations omitted). These factors do not favor awarding BrowserStack attorney fees.[2]

---

[2] BrowserStack has mentioned its Rule 68 offer of judgment in its motion for attorney fees. However, BrowserStack does not assert Rule 68 as a basis for its motion. To be clear, Rule 68 is not available to BrowserStack. For one, "Rule 68 does not apply where judgment is entered against the plaintiff-offeree and in favor of the defendant-offeror." *Philpot v. Indep. Journal Review*, No. 1:20-cv-00590-AJT-TCB, 2021 U.S. Dist. LEXIS 239011, at *2 (E.D. Va. Nov. 30, 2021) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352, 101 S. Ct. 1146, 67 L. Ed. 2d 287 (1981)); *see*

**A.    Copyright Act Factor Two: Deque's legal and factual position was reasonable.**

Deque's positions both on damages and on the merits of this action are reasonable. Not only did Deque have strong evidence of Defendants' liability for infringement and damages, but Deque sought relief other than monetary damages, could establish its damages by reliance on straightforward data and simple math, and met its burden of identifying Defendants' revenue. The second factor weighs strongly against Defendants' request for attorney fees.

**i.    Copyright infringement does not require proof of monetary damages.**

Deque's copyright infringement claim is strong. Defendants' own founder and CEO admitted to copying, and even apologized for doing so. Moreover, contrary to Defendants' representations to this Court, damages are not an element of a copyright infringement claim. So long as a plaintiff requests injunctive or declaratory relief (as Deque did here), a case can proceed without evidence of specifically quantified monetary damages. This standard is widely shared across multiple circuits.[3]

The Copyright Act requires a plaintiff to prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,*

---

*also Delta Air Lines*, 450 U.S. at 352 ("if we limit our analysis to the text of the Rule itself, it is clear that it applies only to offers made by the defendant and only to judgments obtained by the plaintiff. It therefore is simply inapplicable to this case because it was the defendant that obtained the judgment."). Additionally, Rule 68 does not allow for recovery of attorney fees for Lanham Act claims because "The Lanham Act … does not define costs to include attorney's fees but only allows recovery of attorney's fees in exceptional cases." *Kingsford Prods. Co. v. Kingsfords, Inc*., Case No. 86-2447-S, 1989 U.S. Dist. LEXIS 15908, at *4 (D. Kan. Dec. 20, 1989).

[3]  That BrowserStack claimed to have stopped its infringing conduct should be of no moment. "'[V]oluntary cessation of a challenged practice' generally [will not] moot a plaintiff's claims. A 'defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *GW Acquisition Co., LLC Pageland Ltd. Liability Co. v. MagLandBroker, LLC*, 1:22-cv-255 (LMB/JFA), 2023 WL 125018, at *16 (E.D. Va. Jan. 6, 2023) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (internal citations omitted).

*Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Crucially, this articulation of elements from the Supreme Court has been interpreted to mean that "[t]he existence of damages suffered *is not an essential element* of a claim for copyright infringement." *Davis v. Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001) (citing *Feist*) (emphasis added). In *Davis,* the District Court declined to address liability on summary judgment and instead awarded summary judgment to the defendant on the grounds that plaintiff could not prove their damages. *Id.* The Second Circuit reversed, holding that damages are not a required element of a copyright infringement claim and that plaintiff was entitled to a declaratory judgment of infringement at minimum. *Id.* [4]

Many courts across various circuits have acknowledged this well-settled rule that monetary damages are not a required element of a copyright infringement claim where a plaintiff seeks declaratory or injunctive relief. *Kiernan Joseph Liebl, Inc. v. Indian Farm Ests. LLC*, No. 24-11019-NMG, 2024 U.S. Dist. LEXIS 196571, at *6 (D. Mass. Oct. 28, 2024) ("[A] valid copyright infringement claim requires neither proof of intent nor damages … As such, there can be no doubt that a lack of damage to the plaintiff or a lack of bad intent by the defendant, even if true, could in no circumstance defeat an otherwise potentially viable copyright claim."); *Bell v. Taylor,* 791 F.3d 745, 748 (7th Cir. 2015) (citing *Davis* and noting plaintiff's copyright claim should have gone forward despite a lack of damages because plaintiff had request injunctive relief, though ultimately dismissing the case on other grounds); *John Anthony Drafting & Design, LLC v. Burrell*, No. CV-18-00970-PHX-ESW, 2019 U.S. Dist. LEXIS 187966, at *18 (D. Ariz. Oct. 30, 2019) (quoting *Davis*); *Neri v. Monroe*, No. 11-cv-429-slc, 2014 U.S. Dist. LEXIS 24176, at *30, n. 10 (W.D.

---

[4] The Fourth Circuit has not explicitly addressed this holding from *Davis*. However, the Fourth Circuit has cited *Davis* favorably for its analysis of other copyright damages issues. In fact, two of the Fourth Circuit's most influential damages cases cite to *Davis. See Dash v. Mayweather*, 731 F.3d 303, 312 (4th Cir. 2013); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003).

Wis. Feb. 25, 2014) (distinguishing *Davis* in dismissing a copyright claim with no damages where the plaintiff did not seek injunctive or declaratory relief); *Williams v. Aho*, No. CV 16-2088 PSG (FFMx), 2016 U.S. Dist. LEXIS 195930, at *6 (C.D. Cal. Sep. 2, 2016) ("Precedent clearly establishes that damages are not an element of a copyright infringement claim and a level of uncertainty exists in establishing copyright damages."); *Predator Int'l, Inc. v. Gamo Outdoor United States*, No. 09-cv-00970-PAB-KMT, 2013 U.S. Dist. LEXIS 36866, at *19 (D. Colo. Mar. 18, 2013) ("Entitlement to monetary damages is not an element of a copyright claim seeking either declaratory or injunctive relief.").

The leading treatise on copyright law has also adopted this rule. Nimmer on Copyright § 13D.02 (2024) ("Plaintiff's prima facie case need not demonstrate any harm to plaintiff resulting from the infringement…" and noting that nominal damages or non-monetary relief are possible without actual damages). Granting summary judgment in favor of BrowserStack was inconsistent with the evidence, statutes and other authorities. BrowserStack is certainly not entitled to sanctions.

### ii. Deque requested injunctive and declaratory relief and was entitled to pursue such relief regardless of whether it established monetary damages.

Deque's First Amended Complaint seeks "[e]ntry of judgment in favor of Deque against Defendants, that Defendants have infringed Deque's copyright rights." Dkt. 44-1. This is a straightforward request for a declaration of liability made separate and apart from any request for damages. *See id.* (requesting damages subsequent to a declaration). Declaratory relief is particularly valuable in this case. A primary purpose of declaratory relief is to erase uncertainty and clarify the relationship between parties. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) (quoting Edwin M. Borchard, Declaratory Judgments 107-09 (1934)). This function is particularly valuable here where uncertainty allows for one party to exploit

ambiguity in its favor. For example, BrowserStack has taken the Court's summary judgment opinion and held it up to the market, calling it a "landmark victory for innovation and integrity." **Exhibit 1, BrowserStack Press Release.** Moreover, there is still an existing contractual relationship between the parties. BrowserStack built its Accessibility Toolkit on Deque's axe core code, which is subject to an open-source license agreement between Deque and its users. Dkt. 150-5, PageID# 2042 (█████████████████████████████████

██████). A declaratory judgment that Defendants have infringed on Deque's copyright would have allowed Deque to better evaluate its options and relationship with BrowserStack under the axe core license agreement.

Deque also sought equitable relief, including a request that this Court order an audit to prove that BrowserStack actually removed the material that it copied. Respectfully, this Court's contention that Deque gave up its equitable relief claims on December 20, 2024, during oral argument on the parties' summary judgment motions is mistaken. At that hearing, in response to one of the Court's questions Deque said it was *primarily* seeking damages, but it did not expressly waive or abandon its requests for equitable relief. Transcript of December 20, 2024 Hearing, at p. 36:15-20. *See Hammond v. Pac. Mut. Life Ins. Co.*, 159 F. Supp. 2d 249, 257 (E.D. Va. 2001) ("[a] waiver may be express or implied, but '[a] waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waiver such rights'"). In any event, a plaintiff in a copyright infringement matter is entitled to pursue its claims even where it has not asked for monetary damages, so long as declaratory or equitable relief is sought. Therefore, Deque's legal position in pursuing its copyright claims was entirely reasonable as a matter of law.

### iii. Deque sought development cost as damages under its breach of contract and unjust enrichment theories.

BrowserStack argues that Deque's claim for saved development costs is evidence that

Deque litigated this matter unreasonably because such damages are not available under copyright law. Dkt. 248, PageID# 4290. Defendants' argument ignores the fact that these damages were not claimed as damages for Deque's copyright claim. Instead, they were sought under Deque's contract and unjust enrichment claims. Dkt. 141-5 (Deque's response to BrowserStack's Second Set of Interrogatories explaining that Deque's contracts damages include "the value of the intellectual property and other information misappropriated, stolen, and/or reverse engineered by BrowserStack as measured by Deque's development costs."). The benefit conferred on a defendant is a hallmark measure of unjust enrichment damages. *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486, 840 S.E.2d 337, 341 (2020) (defining damages for unjust enrichment). As such, recovering saved development costs (an obvious benefit conferred to defendants) was a reasonable theory for at least one of Deque's claims and does not support an award of attorney fees.

iv.    **Deque's argument for indirect profits is expressly recognized by copyright law.**

BrowserStack also argues it was unreasonable of Deque to try to extend its claims to BrowserStack's "other" products that were not specifically named in the complaint. This argument fails. It is a fundamental tenant of copyright law that a plaintiff is entitled to a defendant's profits from *non-infringing products* where the plaintiff can show that defendant was using the infringing product to drive sales of non-infringing products. As Judge Posner explained, "the purpose of allowing suit for the infringer's lost profits is to make infringement worthless to the infringer. *This will sometimes require tracing those profits into another product*, as where it is bundled with the infringing product." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 933 (7th Cir. 2003) (emphasis added); *see also Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) (allowing for recovery of casino profits because the casino used an infringing musical program to draw in customers); *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004) (discussing indirect profits generally); 5 Nimmer on Copyright § 14.03 (2024).

At trial, Deque was prepared to present to the jury evidence showing that BrowserStack was using the Accessibility Testing Toolkit products as a way of getting consumers to purchase its other products. BrowserStack's own data supports this theory. BrowserStack carefully tracked cross-selling of its products, which revealed ███████████████████████████████████ ██████████████████████████████ Dkt. 160-1, PadeID# 2606 (spreadsheet entitled "Cross sell/Upsell" showing ████████████████ ██████████████████████████ ) Although the Court denied Deque's motion to compel production of BrowserStack's financial data for other products (*see* Dkt. 127 granting Deque's motion to compel in part), there was nothing unreasonable about Deque's legal theory for recovery of damages in the form of indirect profits.

### v.    Deque engaged in reasonable efforts to settle this dispute.

BrowserStack falsely contends that Deque made no efforts to settle the matter. BrowserStack's misrepresentations to this Court are well beyond advocacy and are simply troubling. Deque's CEO and lead trial counsel meaningfully participated in the in-person settlement conferences facilitated by the Magistrate Judge at the Courthouse. Immediately after the October 17, 2024 settlement conference, and in furtherance of those settlement discussions, counsel for Deque sent a detailed written follow-up settlement communication to BrowserStack's counsel, which BrowserStack's counsel ignored.

Undeterred, Deque's counsel initiated additional settlement discussions during the summary judgment phase of this case. As a result, counsel for the parties communicated by phone, email, and text about potential settlement on multiple occasions, as recently as January 5, 2025. The parties conveyed in writing and by phone several specific and significant monetary settlement proposals. Deque even proposed a mediation conducted by a qualified neutral facilitator, and the parties conferred about that prospect, as well. Without detailing the parties' specific settlement

offers and counteroffers, and short of publicly providing the exact settlement numbers that the parties proposed and exchanged, this Court should know that the parties absolutely did seriously confer about settlement on multiple occasions. Deque assumes the parties did so in good faith as part of an honest desire by each side to try to reach a reasonable compromise resolution of this action. And the parties did make progress. It is false for BrowserStack to tell this Court otherwise. Deque has been open to reasonable settlement throughout this process, and remains so now.

### vi.    Deque presented strong facts in support of its claims.

Deque has direct evidence of BrowserStack's copyright infringement, a uniquely strong factual position. Even if the focus is solely on factual copying (i.e., not focusing on substantial similarity and the verbatim nature of the copying), the facts decidedly favor Deque.



Dkt. 150-5, 44:12-15, 45:23-46:4.

*Id.* at 46:17-20.

*Id.* at 50:4-6.

*Id.* at 52:13-17.

*Id.* at 44:17-45:9.

*Id.* at 48:10–49:22. This is compelling evidence of BrowserStack's copying in fact and the strength

on this element alone demonstrates that Deque was reasonable in pursuing its copyright infringement claims.

Furthermore, Deque was not required to take at face value BrowserStack's assertion that it has no profits. Deque is entitled to challenge that contention. Indeed, under 17 U.S.C. § 504(b), Deque was required *only* to establish BrowserStack's revenue and a "reasonable relationship" between that revenue and the infringement, of which there was evidence in the record. *See Dash v. Mayweather*, 731 F.3d 303, 330 (4th Cir. 2013). The Copyright Act then shifts the burden to the defendant to prove its expenses. *See e.g., Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003); ("Once the copyright owner has established the amount of the infringer's gross revenues, the burden shifts to the infringer to prove either that part or all of those revenues are 'deductible expenses' … "). This framework prevents a defendant from inventing bogus expenses to reduce its profits to zero. Hence, Deque was permitted to evidence BrowserStack's revenue. It is BrowserStack, not Deque, who then bears the burden of convincing the jury of its expenses to be netted against that revenue. Other circuits who have addressed this exact issue have held that the jury has the authority to determine whether a defendant's expenses are fabricated. *Singletary Constr., LLC v. Reda Home Builders, Inc.*, 815 F. App'x 892, 896 (6th Cir. 2020) ("[W]ell-established Sixth Circuit caselaw permits the jury to disbelieve a defendant's articulation of deductible expenses and award the plaintiff the full amount of gross revenue that the defendant earned from its infringement."). Deque contends that the jury should have had the opportunity to do so in this case and was not unreasonable in taking that position. In sum, Deque had a perfectly reasonable theory supporting its recovery of BrowserStack's profits under its copyright claim.

**B.    Copyright Act Factor One: Deque's motives were proper.**

Deque is not a nefarious intellectual property troll engaged in the habit of filing vexatious actions. To the contrary, Deque's motivation in bringing this action is to secure the protection to

which it is entitled under the Copyright Act and to stop the infringer's misconduct. Deque developed axe core, an effective rule engine for automatically detecting accessibility issues on Internet websites. Deque provides axe core for free under an open-source license for anyone to build from. BrowserStack built its own products from axe core, but didn't stop there. BrowserStack took the further step of signing up as a customer for Deque's paid DevTools product and then copied Deque's copyrighted content verbatim and used it to build competing products. Dkt. 150-5, PageID# 2042.

By copying Deque's copyrighted content and holding it out as its own, BrowserStack not only harmed Deque economically, but also disrespected Deque's work in the accessibility sector. Hence, Deque sought monetary relief, and also injunctive and declaratory relief. Notably, the Court did not rule either way whether BrowserStack did or did not copy Deque's copyrighted content. Deque presented overwhelming evidence that BrowserStack did copy, including BrowserStack's own admissions. Deque's motives were, and always have been, the protection of its intellectual property and the enforcement of its contract. Ironic that the admitted copyright infringer, BrowserStack, has the audacity to question the motives of the victim, Deque.

### i.    BrowserStack mischaracterizes the evidence.

BrowserStack argues that Deque had an improper motive because it capitalized on the timing of BrowserStack's Initial Public Offering ("IPO"). This argument refers to an email in which a Deque employee noted ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Dkt. 249-1 (Mr. Barrell's August 16, 2023, email). In his August 16, 2023, email, Mr. Barrell stated ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

███████████ *Id.* ████████████████████████████████████

████████████████████████████████████████████████████████

████ In full context it is clear that a Deque employee was developing possible thoughts on potential legal strategy after already discovering BrowserStack's copying and reverse engineering. It does not suggest or establish an improper motive—at best it was a musing by a single Deque employee and not indicative of Deque's intentions or conduct.

### ii.    There is no evidence Deque used this litigation to smear BrowserStack.

BrowserStack argues that Deque's motivation for filing suit was to drag BrowserStack through the mud and undercut BrowserStack's capacity to develop its own technology. There is no evidence of this. Deque released a single press release announcing the litigation when it filed the initial complaint in this action. The purpose of this press release was simply to explain Deque's motivation to Deque's clients and to reassure axe core users that Deque had no concerns with their use of axe core to build their own products – since that free use was always planned and intended by Deque. **Exhibit 2, Deque Press Release.**  In other words, Deque wanted to ensure the market that it would not file these kinds of claims lightly.  And it did not do so here.

Furthermore, Deque did not need to engage in this litigation to launch a smear campaign to undercut Defendants' reputation for developing its own technology. BrowserStack's reputation is already out in the open. BrowserStack's founder (and current CEO) has publicly bragged that in 2011 BrowserStack's founders reverse engineered "an entire website," which gave them all of the JavaScript and CSS files they needed to make their own. *See* The BrowserStack story, from Co-founder, and CEO Ritesh Arora, YouTube, (https://www.youtube.com/watch?v=XgN0h-mXe2s) (starting at timestamp 1:28). Similarly, it is a matter of public record that BrowserStack has been sued for misappropriation of intellectual property before. *Software Research, Inc. v. BrowserStack, Inc.*, No. 4:21-cv-8124, (N.D. Cal 2021) (patent infringement case, filed in 2021 and settled in

2022). It is neither disparaging nor untrue to accurately state that a party has been sued previously for claims similar to those brought by Deque. More importantly, it is true that BrowserStack copied from Deque.

### iii.    The existence of harm is immaterial to motive.

BrowserStack argues that Deque's motivations were unreasonable because it suffered no harm, as evidenced by Deque's continued sales growth. Dkt. 248, PageID# 4289. This argument fails. First, evidence that sales continued to grow is not evidence that a company was not harmed. Sales can be damaged by infringement and still grow. *Sunoco Partners & Mktg. Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1179 (Fed. Cir. 2022) (noting in the patent context that lost sales are recoverable as actual damages where "patentee proves it would have made additional sales but for a defendant's infringement."). *Sinclair Broad. Grp., Inc. v. Colour Basis, LLC*, No. CCB-14-2614, 2016 U.S. Dist. LEXIS 84154, at *28 (D. Md. June 29, 2016) ("Actual damages 'may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement.'") (quoting Nimmer).[5] This why actual damages in infringement cases often require analysis of the rates of sales growth. Additionally, as set forth above, proof of damages is not required to bring a valid copyright infringement claim. The same will be demonstrated regarding a false advertising claim below. Thus, Deque was entitled to pursue multiple of its claims regardless of whether its motive was damages or some other form of relief.

---

[5] This should not be confused with the recovery of a *defendant's profits* which is a separate recovery allowed in conjunction with recovery of actual damages. 17 U.S.C § 504 ("an infringer of copyright is liable for … the copyright owner's actual damages *and* any additional profits *of the infringer*") (emphasis added).

C.     **Copyright Act Factor Three: This case does not present a scenario which warrants deterrence.**

The third factor from *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 234 (4th Cir. 1993) as cited by BrowserStack is "the need in particular circumstances to advance the considerations of compensation and deterrence." Dkt. 248, PageID# 4288. BrowserStack once again heavily relies on the fact that Deque could not show damages for its infringement claim. *Id.* at PageID# 4292. BrowserStack contends that plaintiffs like Deque need to be deterred from bringing copyright claims where there are no actual damages. *Id.* According to BrowserStack, deterring damageless plaintiffs is in furtherance of copyright law policy. However, the literal opposite of this position is true. Copyright law accepts and understands that proving actual damages is difficult if not impossible in many cases. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (noting that actual damages are "often virtually impossible to prove" in a copyright infringement case). As explained below, such an understanding about the uncertainty of actual damages is baked into 17 U.S.C. § 504.

Deque has already demonstrated that damages are not a required element for a copyright infringement claim. *Davis v. Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001). This in and of itself dispenses with the notion that plaintiffs without actual damages need to be deterred.

Moreover, the inability to prove actual damages is contemplated by the Copyright Act itself in so much as it explicitly allows plaintiffs to forgo actual damages in favor of statutory damages. *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231, 73 S. Ct. 222, 224 (1952) (noting one purpose of statutory damages in the Copyright Act is to allow recovery where it is difficult or impossible to prove actual damages); *Smith v. Thomas*, 911 F.3d 378, 381 (6th Cir. 2018) ("Because actual damages are often difficult to prove in copyright infringement cases, statutory damages ensure that infringers are adequately deterred and copyright owners are

16

adequately compensated."). Books could be filled with quotes from courts acknowledging the inherent difficulty in proving that a nontangible asset has suffered some concrete harm. Every copyright infringement plaintiff is necessarily embarking on an uphill battle when it comes to damages. The law acknowledges this and accepts that it is entirely possible that a plaintiff with a meritorious case can come out with absolutely no actual damages. Consequently, it would violate fundamental copyright law policy to award attorney fees on the theory that a plaintiff without proof of actual damages needs to be deterred.

Finally, BrowserStack makes no showing that it "needs" compensation. It alleges that it needs compensation, but the wording of the third factor from *Rosciszewski* clearly contemplates the financial situations of the prevailing and non-prevailing party. *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 234 (4th Cir. 1993) ("In evaluating this factor, the court may find relevant, among other circumstances, the ability of the non-prevailing party to fund an award."). Absent some showing that BrowserStack has gone from a very successful tech company to a destitute one, there is no "need" for BrowserStack to be compensated. As detailed herein, BrowserStack incurred its fees fighting a meritorious lawsuit.

## III.     This is not an exceptional case under the Lanham Act.

BrowserStack claims that it is entitled to an attorney fee award because this is the type of exceptional case that qualifies for an attorney fee award under the Lanham Act. "Under § 1117(a), attorney's fees are awarded to prevailing defendants *only in rare circumstances* based on the district court's holistic consideration of the facts and circumstances particular to the case." *Bliss Collection, LLC v. Latham Co.*, LLC, 82 F.4th 499, 516 (6th Cir. 2023) (emphasis added). Courts do not "award attorney's fees as a penalty for failure to win . . . The legislative purpose behind 35 U.S.C. § 285 is to prevent a party from suffering a gross injustice, not to punish a party for losing." *Munchkin, Inc. v. Luv N' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (quoting *Octane Fitness,*

*LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749 (2014)).[6]

Attorney fees are only permissible under the Lanham Act in "exceptional" cases. The Supreme Court has defined an exceptional case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Thus, BrowserStack bears the burden of showing that Deque's positions were unusually weak, or that Deque engaged in unreasonable conduct over the course of litigation, such that BrowserStack suffered an injustice. *See Poly-America, L.P. v. API Indus.*, 666 F. Supp. 3d 415, 418 (S.D.N.Y. 2023) ("the party moving for an attorney's fees award must do more than just show that the non-moving party's litigating position was incorrect, it must persuade the Court that the party's arguments had little to no legal merit."). BrowserStack has not done either, and its Motion should be denied.

## A.    Deque's Lanham Act claim was not unusually weak.

BrowserStack argues that Deque's Lanham Act claims are unusually weak for the same reasons it argued that Deque's other claims were weak. As set forth in detail above and below, these arguments fail.

### i.    False advertising does not require proof of damages.

BrowserStack does not make a separate argument for why this case is exceptional. Rather, it incorporates its Copyright Act argument to argue that this case is an exceptional case under the Lanham Act. Dkt. 248, PageID# 4293-94. Deque's legal position in its false advertising claim was,

---

[6] Note, this case, like *Octane Fitness* is interpreting "exceptional case" in the patent context. However, the trend in most circuits, including the Fourth Circuit, is to treat the determination of exceptional cases (whether they be patent or trademark) the same. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 485 (4th Cir. 2018) ("Our holding that a preponderance of the evidence standard applies to the 'exceptional case' analysis under the Lanham Act also comports with the trend in other circuits to apply *Octane Fitness* to motions for attorney fees under the Lanham Act.").

like its copyright claims, strong. The mere fact that Deque did not prevail does not make this case "exceptional." Like a copyright infringement claim, a false advertising claim under the Lanham Act does not require proof of actual damages. A plaintiff who suffered no damages whatsoever can either recover a defendant's profits, can recover nominal damages, or can be awarded injunctive relief.

The elements of a false advertising claim do not require a plaintiff to prove damages where a plaintiff is seeking profits or injunctive relief. A plaintiff need only prove that "the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales *or by a lessening of goodwill* associated with its products." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (emphasis added). The fact that this element can be satisfied by showing *likely* injury (i.e., not actual injury) necessarily means that it does not require proof of specific damages. Moreover, false advertising damages are subject to the principles of equity, and equity gives courts tremendous latitude to fashion appropriate remedies. *See* 15 U.S.C. § 1117.

Consequently, "an inability to show actual damages does not alone preclude a recovery under section 1117." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed. Cir. 1984).[7] Courts have applied this rule to allow recovery of profits and other types of monetary relief in false advertising cases. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) ("Nothing in the Lanham Act conditions an award of profits on plaintiff's proof of harm, and we've held that profits may be awarded in the absence of such proof."); *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 686 (6th Cir. 2000) ("a plaintiff seeking to recover damage control costs under the Lanham Act for a defendant's false advertising is not required to show that

---

[7] Section 1117 (15 U.S.C. § 1117) outlines damages for trademark infringement *and* claims arising under § 1125(a) which is the statutory basis for Lanham Act false advertising claims.

the false advertising created actual confusion *or damages* in the marketplace."); *Fortunet, Inc. v. Gametech Ariz. Corp.*, No. 2:06-CV-00393-PMP-PAL, 2008 U.S. Dist. LEXIS 96565, at *21 (D. Nev. Nov. 26, 2008) ("a plaintiff must establish injury resulting from the defendant's false advertising, once injury is established the plaintiff's inability to show actual damages does not preclude recovery for a Lanham Act false advertising claim."). Additionally, courts almost universally apply this rule to non-monetary relief. *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980) (noting injunctive relief only requires showing injury in fact or likelihood of injury but does not require showing actual damages); *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1443 (E.D.N.C. 1986) (citing *Johnson & Johnson* noting "the quantum of proof required to obtain injunctive relief is much less than that required for monetary damages.").[8]

In this case, all Deque needs to prove is that its legal position was reasonable. Deque had sufficient legal support for the fact that all it had to prove was injury/harm in fact which could potentially entitle it to BrowserStack's profits (subject to the Court's discretion), nominal damages, or injunctive relief which was also requested in Deque's amended complaint. Dkt. 44-1.

---

[8] To be clear, *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017) does state that proof of damages is required to recover *damages* under the Lanham Act. However, this case is distinguishable from the above cases. The above cases hold that proof of actual damages is not required to obtain injunctive relief or a defendant's profits. The question in *Verisign* was whether actual damages (i.e., lost sales) required proof. Hence, the *Verisign* court's language specifies "To recover *damages* under the Lanham Act, [plaintiff] must show not only false advertising by [defendant], but also that [defendant's] statements caused [plaintiff] actual damages." *Id.* (emphasis added). It is obvious that one must have proof of diverted sales or other measurable harm to recover *actual* damages. A dogmatic interpretation would also eviscerate the ability to prevail by demonstrating likelihood of injury, an option expressly recognized by the elements of a false advertising claim. *Id.* at 298-99 (acknowledging that the fifth element requires a plaintiff to show "the plaintiff has been *or is likely* to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.") (emphasis added). It would similarly run contrary to the equitable nature inherent in Lanham Act relief.

ii.  **Deque was entitled to argue that this Court should adopt the presumption of harm rule for comparative advertising.**

"A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, *especially on an issue with no directly controlling precedent*." *Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018) (emphasis added). Deque's theory of harm relied on a legal presumption. Other circuits have held there is a presumption of harm where advertisements are comparative (i.e., it compares two products), but this Circuit has neither adopted nor rejected this presumption. As the court in *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 211 (3d Cir. 2014) explained:

> The justification for applying this presumption, therefore, is twofold: (1) a misleading or false comparison to a specific competing product necessarily causes that product harm by diminishing its value in the mind of the consumer, similar to trademark infringement cases; and (2) the harm necessarily caused to reputation and goodwill is irreparable because it is virtually impossible to quantify in terms of monetary damages.

Other circuits have adopted this rule for similar reasons. *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) ("A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer."); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (noting the Lanham act allows for recovery of profits without proof of actual harm reasoning such recovery is "appropriate in false comparative advertising cases, where it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff 's pocket."); *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 259 (2d Cir. 2014) (detailing the reasoning behind the presumption of harm in comparative advertising claims noting that "injury may be presumed, because there [is] not the same concern of awarding damages for merely speculative injury."). This presumption is often applied in the context of proving irreparable harm for an award of injunctive relief, or for proving harm as a matter of standing, but *TrafficSchool.com* also applied the presumption to the recovery of profits.

The Fourth Circuit has referenced this presumption of harm in cases of comparative advertising, but has neither explicitly adopted or rejected it. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) (noting that some courts apply the presumption only to comparative advertising cases and others apply it where the advertisement had a tendency to deceive). Thus, it is an open question in the Fourth Circuit whether this presumption applies. Consequently, Deque was entirely reasonable to advocate that this Court should adopt the position taken by multiple other circuits.

The case law above makes clear that a presumption of harm would *at least* be enough for Deque to show irreparable harm to support its claim for equitable relief, declaratory relief, or nominal damages. Deque asked for a declaration that the advertisements were false. Dkt. 44-1. A judgment with nominal damages would establish that the ad was false. This would at minimum help Deque address any consumers who had lingering doubts from BrowserStack's advertisement and allow Deque to conduct its own corrective advertising. Deque further asked for this Court to award any injunctive relief that may be proper. *Id.*

The fact that BrowserStack removed the false advertisement did not moot injunctive relief, because the Court still could have ordered BrowserStack to publish reparative advertising or a statement that its claims were false. *See e.g., Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 264 (2d Cir. 2014) (discussing an injunction ordering the defendant to run a comprehensive corrective advertising campaign); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 17 (7th Cir. 1992) (discussing a potential order directing a defendant to issue corrective advertising as more tailored remedy to a false advertising claim than a full recall and relabeling). Consequently, even without proof of monetary damages, Deque had reason to keep pursuing its false advertising claim for hope of a nominal damages or injunctive relief. This cannot be deemed an unreasonable or meritless legal position. To hold that it was an unreasonable position would punish Deque for

22

pursuing what the law clearly says it is entitled to pursue.

### iii. There were valid reasons for Deque to pursue its false advertising claim even after BrowserStack removed the false ad.

Deque was not unreasonable for pursuing declaratory or injunctive relief after BrowserStack voluntarily took down the false advertisement in question. First, as detailed above, there was a conceivable path that Deque could take to leverage the equitable nature of the Lanham act to obtain monetary relief. Additionally, the doubts that are created by false advertising can "linger in the minds of consumers." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 17 (7th Cir. 1992). Hence, again, even nominal damages and a judgment that an ad is false can be of value to a plaintiff in a false advertising case even if that value is only vindication that the statement about their product was false. Deque could use the finding that the ad was false to conduct its own corrective advertising.

## IV. Under No Circumstances Are Attorney and Expert Fees Warranted Against Counsel Under 28 U.S.C. 1927 as Deque Did Not Multiply the Proceedings and Was Not Unreasonable or Vexatious.

BrowserStack's final argument is that attorney fees are appropriate under 28 U.S.C. § 1927 and the court's inherent power because, as BrowserStack asserts, Deque knew it could not prove damages by the expert disclosure deadline. Those arguments fail for the same reasons Deque has already explained above and further explains below.

First, an award of attorney fees under a court's inherent power to impose sanctions requires showing "something more egregious than that required for other types of sanctions" like those sanctions found in Rule 11, 37, and under 28 U.S.C. § 1927. *Sanford v. Virginia*, 689 F. Supp. 2d 802, 813 (E.D. Va. 2010) (explaining that a court's inherent power is broad with respect to the type of conduct that is sanctionable, but narrow in the sense that it only applies to conduct more egregious than the conduct policed by other sanctions). Consequently, it is probative if not

23

conclusive that (as shown below) Deque's conduct does not rise to the level of sanctionable conduct under 28 U.S.C. § 1927.

Second, 28 U.S.C. § 1927 applies *only* to cases in which an attorney "multiples the proceedings…unreasonably and vexatiously." In the Fourth Circuit, "[b]oth multiplication and '[b]ad faith on the part of the attorney' are preconditions to imposing fees under § 1927." *Mulugeta v. Ademachew*, 2019 WL 7945712, at *2 (E.D. Va. Nov. 6, 2019) (citing *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012)). Courts in the Eastern District of Virginia have applied an objective standard for bad faith.[9] To satisfy the bad faith standard, BrowserStack must show that Deque "'pursu[ed] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" *Stradtman v. Republic Services, Inc.*, 121 F. Supp. 3d 578, 582 (E.D. Va. 2015) (citing *Collins v. Dollar Tree Stores*, 2:09cv486, 2010 WL 9499078, at *3 (E.D. Va. May 28, 2010) (quoting *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 614 (7th Cir. 2006))). BrowserStack can show neither that Deque multiplied the proceedings nor that Deque acted in bad faith.

   i.    **Deque's loss at summary judgment is immaterial to the bad faith inquiry.**

Deque's lack of success at the summary judgment stage cannot be used as evidence that Deque pursued a path that a reasonably careful attorney would have known was unsound. As this Court has pointed out,

> Losing the summary judgment motion because of lack of factual support does not show that [a party's] counsel pursued a path that a reasonable attorney would have known to be unsound. In fact, if the Court were to accept that alone as evidence of bad faith, every party who has had their motion for summary judgment granted would have a basis for fees and costs against the losing party for multiplying the proceedings a result that runs counter to

---

[9] The Fourth Circuit does not appear to have decided whether an objective or subjective standard applies. *See, e.g., Thomas v. Ford Motor Co.*, 244 Fed.Appx 535, 539-40 (4th Cir. 2007) (citing many cases in which a subjective standard was applied); *U.S. ex. rel Davis v. U.S. Training Ctr, Inc.*, 2012 WL 12827679, at *2 (E.D. Va. 2012), and thus we maintain that a subjective standard should apply in order to preserve this issue for appeal..

the statute's purpose of preventing wasteful litigation and the American Rule that each party generally bears its own expenses … Put another way, just because a party cannot overcome a motion for summary judgment does not mean that the case is flawed from the outset. *Nor does it mean that, as the record develops and it becomes clear to a neutral observer that one side has a stronger likelihood of success, an attorney should cease trying to marshal the facts and the law to zealously advocate on behalf of his client.*

*Stradtman*, 121 F. Supp. 3d, at 585 (emphasis added).

The *Stradtman* court squarely addresses a line of thinking that is implicit in BrowserStack's argument. BrowserStack essentially contends that when Deque realized proving damages would be hard (which is typical in a copyright infringement case, *see supra*) Deque should have packed up and went home. This Court squarely rejected that argument in *Stradtman* and should here as well. As the Court ruled in *Malibu Media, LLC v. Baizid,* 152 F.Supp.3d 496, 502 (E.D. Va. 2015):

Simply put, the gist of this part of defendant's argument is that plaintiff's evidence was too weak…[s]uch evidentiary arguments go to the merits of the case, and are therefore beyond the province of § 1927. Even *if* such arguments were appropriate under § 1927, plaintiff has sufficient evidence to create a jury question on defendant's liability…Thus, plaintiff had sufficient foundation to pursue this case.

Thus, even if Deque's evidence was found to be too weak to prove its damages claim (it was not), sanctions under § 1927 are not appropriate.

### ii. Deque was entitled to pursue its claims without an affirmative expert.

BrowserStack suggests that the moment Deque could no longer put on an affirmative expert is the moment when Deque should have dismissed this case. However, as already demonstrated, multiple of Deque's claims did not require damages to prevail. Additionally, Deque did have, and intended to present to the jury, evidence of damages through lay witness testimony and supporting documentation which is a permissible and reasonable tactic. *See supra*, Section I (detailing cases). Once more, copyright law allows Deque to recover profits simply by showing a Defendant's revenue and a reasonable relationship between that revenue and the infringement which doesn't require an expert. *See supra*. *See* 17 U.S.C. § 504; *Dash v. Mayweather*, 731 F.3d 303, 330 (4th Cir. 2013). Deque thus had multiple viable damages theory that did not require an expert.

Consequently, Deque's pursuit of its claims in the face of uncertain damages does not establish that Deque multiplied these proceedings nor that Deque acted in bad faith.

The cases cited by BrowserStack in its motion are not to the contrary. Rather, they involve far more egregious conduct that substantially expanded the litigations at issue. For example, in *Sweetland v. Bank of Am. Corp.*, the Fourth Circuit affirmed the award of attorney's fees associated with the attorney's conduct in moving for partial summary judgment without any factual basis supporting his claims, refused to provide discovery despite a court order to do so, and admitted in a deposition that he had lied to defense counsel "for the purposes of settlement bluster"—falsely claiming that he had evidence crucial to the viability of his claims. Contrary to his representations, defense counsel never had such evidence, nor did he have any plan to acquire it. 241 Fed.Appx. 92, 96-98 (4th Cir. 2007). And in *In Ali v. BC Architects Engs.*, this Court awarded § 1927 attorney's fees in response to the pursuit of allegations that were "factually false" and "entirely groundless," as "the documentary and testimonial evidence within [counsel's] possession clearly and undisputedly refuted any such claim." 2023 WL 3191435, at *6-7 (E.D. Va. March 31, 2023). The Court noted that "the Fourth Circuit has affirmed sanctions under § 1927 in similar circumstances…when the asserted legal argument is contradicted by large amounts of unrebutted evidence and undercut by glaring inconsistencies in the plaintiff's account of events." *Id.* at 6. Such is not the case here.

### iii. Deque's discovery motions were largely successful and did not create unnecessary work for BrowserStack.

Until the summary judgment stage, Deque prevailed on every contested motion that the Court decided. Deque survived BrowserStack's 12(b)(6) motion. Dkt. 63. Deque won part of its motion to compel with respect to its request for certain engineering documents improperly withheld by BrowserStack. Dkt. 127. Deque defeated BrowserStack's motion to strike Deque's

rebuttal expert. *Id.* BrowserStack even acknowledges that Deque withdrew its motion requesting extension of expert deadlines. Dkt. 248, PageID# 4295. BrowserStack treats this as damning evidence of unreasonableness, but this proves the opposite—Deque reasonably pursued its case and in the one instance when it was appropriate to do so Deque withdrew its motion rather than needlessly pursue it further. A party that was even partially successful on its motions cannot be said to have vexatiously multiplied the proceedings.

### iv. Deque used its rebuttal expert witness appropriately.

BrowserStack has also accused Deque of unreasonable litigation tactics for naming a rebuttal expert, despite having no affirmative expert. First, Deque's rebuttal expert *was* timely disclosed. Second, Deque intended at all times to use its rebuttal expert as just that—a rebuttal expert. That was Deque's right: once BrowserStack proffered an expert to opine on off-sets to be applied to its revenue, as was BrowserStack's burden to do, Deque had the right to rebut that expert's opinion with one of its own. Deque did not, for example, rely upon the anticipated testimony of its rebuttal expert in support of its own motion for summary judgment. Deque did not intend to call its rebuttal expert during its case-in-chief at trial.

Moreover, it is not an unreasonable litigation tactic to use a rebuttal expert without also using an affirmative expert. In fact, when BrowserStack tried to strike Deque's rebuttal expert report arguing it was improper, BrowserStack failed. Dkt. 127. As Deque explained in its opposition to BrowserStack's motion to strike (Dkt. 112), it was not unreasonable for Deque to move forward without having disclosed an affirmative expert. *Olivero v. Trek Bicycle Corp.*, No. 16-cv-0761-WJM-MJW, 2018 U.S. Dist. LEXIS 119490, at \*3-\*4 (D. Colo. July 18, 2018) ("Indeed, with some frequency the Court sees one party presenting its theory without expert testimony and the opposing party challenging that theory with expert testimony."). Deque was, though, entitled to call its rebuttal expert at trial for the purpose of rebutting the testimony of

BrowserStack's expert. Similarly, copyright law requires BrowserStack prove its expenses. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003). Because Deque had elicited deposition testimony ███████████████████████ (*see* Dkt. 160-3 at ¶¶ 9-10 (summarizing relevant testimony)), Deque anticipated BrowserStack might use its expert to counter Deque's attack. At that point, Deque could also rely on its rebuttal expert.

BrowserStack does try to argue that Deque relied on its rebuttal report during summary judgment. *See* Dkt. 248 Page ID# 4296. However, BrowserStack's citation to Deque "relying" on its rebuttal report is a citation to paragraph 32 of Deque's opposition to BrowserStack's motion, which states: "Deque timely served a rebuttal damages expert report. *See* [attached rebuttal report]." Dkt. 160 at ¶ 32. This is not an example of Deque "relying" on a rebuttal report for an improper purpose, this is simply Deque citing the date of a rebuttal report to establish that it was timely served—which it was. BrowserStack's mischaracterization of Deque's briefs in this action does not establish that Deque litigated this case improperly—it establishes the opposite.

**v.    Deque was entitled to argue that the meeting between Ritesh Arora and Preety Kumar was not a privileged settlement discussion.**

It was also not inappropriate for Deque to rely on Ritesh Arora's admission to Preety Kumar that BrowserStack copied from Deque. The Court has not ruled otherwise. BrowserStack contends that these communications were privileged settlement discussions – but they weren't. Deque made a nonfrivolous argument, relying on the Federal Rules of Evidence, existing case law, and respected treatises that these were not privileged settlement discussions. Dkt. 190, PageID# 3689-90. The fact that there was a plausible legal basis to hold that these communications were not privileged is enough to dispense with the notion that Deque's position was unreasonable.

**vi.    Deque's Rule 56 declaration was appropriate.**

BrowserStack also argues that Deque's Rule 56(d) declaration was improper and evidence

of vexatious behavior because the theories in that declaration had already been rejected by this Court. This is plainly not true. The majority of Deque's Rule 56(d) declaration concerned BrowserStack's financial data, ███████████████████████. Dkt. 160-3. This Court has never ruled on whether BrowserStack's financial data was reliable. The declaration was meant to highlight that, while BrowserStack claims the white hat, ██████████████████████ ███████████████████████████████████████████ *Id*. at ¶ 6 (██████ ████████████████████████████████████████████████████████ ██████████████████████. This supported Deque's argument that BrowserStack's discovery tactics were partially responsible for Deque's lack of damage evidence. It is also unclear how this declaration is vexatious, considering its filing created no additional work for BrowserStack.

**vii. Deque's investigation of BrowserStack's code was not illegal.**

BrowserStack also suggests that Deque behaved unreasonably because prior to filing this lawsuit a Deque employee "improperly" accessed BrowserStack's source code. Dkt. 248, PageID# 4276. That is false. The review of the source code in question was for the sole purpose of gathering evidence of BrowserStack's copying for imminent litigation. This is not illegal. The Fourth Circuit rather famously held in *Bond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003) that fair use applies where a copyrighted work was copied to be used as evidence in litigation (this applies even where the litigation has nothing to do with copyright). *See also Stern v. Does,* 978 F. Supp. 2d 1031, 1047 (C.D. Cal. 2011) ("Reproduction of copyrighted material for use in litigation or potential litigation is generally fair use, even if the material is copied in whole."); *Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982). Deque has not used the code it accessed for any purpose other than to investigate its claims, and there is no allegation otherwise. Deque's conduct was entirely appropriate.

In sum, BrowserStack cannot point to frivolous motions, fishing expeditions, or other instances of conduct that would indicate Deque multiplied these proceedings to harass BrowserStack. Deque was at least partially successful with respect to all of the motions that were decided in this case, until the last. Deque has provided robust legal and factual support for the positions it has taken throughout this litigation. Thus, BrowserStack incurred its attorney fees fighting meritorious claims and must bear them itself.

## CONCLUSION

This Court should deny BrowserStacks' motion for attorney fees.

Dated: February 10, 2025

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

 /s/ Charles W. Chotvacs
Charles W. Chotvacs (VSB# 70045)
1301 K Street, N.W., Suite 1100 West
Washington, D.C. 20005
Telephone: (202) 906-8600
cchotvacs@dykema.com

**BODMAN PLC**

Justin P. Bagdady (*pro hac vice*)
Spencer M. Darling (*pro hac vice*)
201 S. Division Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 930-2727
jbagdady@bodmanlaw.com
sdarling@bodmanlaw.com

Stephen P. Dunn (*pro hac vice*)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
Telephone: (248) 743-6031
sdunn@bodmanlaw.com

*Counsel for Plaintiff Deque Systems Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of February, 2025, the foregoing Opposition to Defendants' Motion for Attorney Fees was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which shall send notification of electronic filing to all counsel of record.

               /s/ Charles W. Chotvacs
               Charles W. Chotvacs