# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

        Plaintiff,

   v.

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

        Defendants.

Case No. 1:24-cv-00217-AJT-WEF

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY FEES

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BROWSERSTACK IS ENTITLED TO FEES UNDER THE COPYRIGHT ACT ..... 3

    A.    Deque Took Unreasonable Positions Throughout the Litigation .......................... 3

        1.    Deque Had No Basis to Continue Pursuit of its Copyright Claim ...................... 3

        2.    Deque Advanced Untenable Arguments ............................................................. 8

    B.    Deque Proceeded With This Case for an Improper Purpose ............................... 10

    C.    An Award of Fees Will Deter Deque's Conduct ................................................ 14

III.  BROWSERSTACK IS ENTITLED FEES UNDER THE LANHAM ACT ................ 15

    A.    Deque Had No Basis to Maintain Its False Advertising Claim ........................... 15

IV.   THE COURT SHOULD AWARD FEES AGAINST COUNSEL ................................ 17

    A.    Deque's Counsel Made Bad Faith Arguments that Needlessly Multiplied and
        Prolonged Proceedings ....................................................................................... 17

V.    CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ali v. BC Architects Engs., PLC*,
    No. 1:19-cv-01385, 2023 WL 319435 (E.D. Va. Mar. 31, 2023)........................................... 18

*Allora, LLC v. Cambridge Builders of Johnston Cty., Inc.*,
    532 Fed. Appx. 349 (4th Cir. 2013)................................................................................. 13, 14

*Arizona v. City of Tucson*,
    761 F.3d 1005 (9th Cir. 2014) ............................................................................................... 4

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 531 (S.D.N.Y. 2006) ............................................................................ 12, 14

*Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*,
    26 F. Supp. 2d 834 (E.D. Va. 1998) .................................................................................... 16

*Design Resources, Inc. v. Leather Indus. of Am.*,
    789 F.3d 495 (4th Cir. 2015) ............................................................................................... 15

*Eagle Servs. Corp. v. H2O Indus. Servs.*,
    532 F.3d 620 (7th Cir. 2008) ............................................................................................ 3, 7

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006).............................................................................................................. 6

*Fey v. Panacea Mgmt. Grp., LLC*,
    261 F. Supp. 3d 1297 (N.D. Ga. 2017) ................................................................................. 6

*GW Acquisition Co., LLC Pageland Ltd. Liability Co. v. MagLand Broker, LLC*,
    2023 WL 125018 (E.D. Va. Jan. 6, 2023) ............................................................................. 6

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    No. 6:18-cv-00243, 2019 WL 4734950 (E.D. Tex. May 22, 2019) ........................................ 4

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
    152 F. Supp. 3d 503 (E.D. Va. 2015). .................................................................................. 15

*Lumber Liquidators Inc. v. Stone Mountain Carpet Mills, Inc.*
    No. 3:08CV573, 2009 WL 2876881 (E.D. Va. Sept. 2, 2009)................................................ 15

*Oracle Corp. v. SAP AG*,
    734 F. Supp. 956 (N.D. Cal. 2010) ...................................................................................... 11

*Par Microsystems, Inc. v. Pinnacle Dev. Corp.*,
    995 F. Supp. 653 (N.D. Tex. 1998) ....................................................................................... 3

*Pharmanetics, Inc. v. Aventis Pharms., Inc.*,
  182 Fed. Appx. 267 (4th Cir. 2006) ........................................................................ 16

*Verisign, Inc. v. XYZ.com*,
  848 F.3d 292 (4th Cir. 2017) .................................................................................. 15

**<u>Statutes</u>**

28 U.S.C. § 2201 ........................................................................................................ 4

**<u>Rules</u>**

Fed. R. Civ. P. 57 ...................................................................................................... 4

**<u>Treatises</u>**

6 William F. Patry, *Patry on Copyright* § 22:124 (Sept. 2024) ............................... 3

## I.    INTRODUCTION

Despite knowing that BrowserStack did ███████████ of the accused Accessibility Toolkit; despite knowing that BrowserStack's total U.S. revenues ███████████; and despite having no entitlement to damages after disregarding all of its disclosure obligations, Deque nevertheless doggedly pursued this case, even telling the Court that *damages* would be the focus of trial. *See e.g.* Deque's Opp. to Motion to Strike (D.I. 112) at 1. Deque and its counsel now tell the Court that their continued pursuit of claims was reasonable because Deque was entitled to *non-monetary* relief and nominal damages. What Deque and its counsel fail to tell the Court is that Deque did not plead a claim for declaratory relief and never asked for nominal damages. *See* FAC (D.I. 44-1). They were not interested in stopping wrongful conduct, recovering nominal damages (or even BrowserStack's revenues), or obtaining an injunction or declaration of rights; they had already been offered those things: BrowserStack ceased all complained of conduct within two weeks of being sued, offered to pay over $100,000 (which is ███████████████████████), and offered entry of judgment in Deque's favor on all causes of action. *See* Offer of Judgment (D.I. 242-11). In truth, Deque and its counsel held steadfast to this lawsuit because they wanted to leverage an absurdly large pay out based on a dubious and untimely $30 million saved development costs damages theory.

In doing so, they repeatedly made misrepresentations to drag out the case in the hopes of giving life to dead claims. They told BrowserStack they needed to see all versions of BrowserStack's source code before they could make a settlement offer, but then they never reviewed any of the source code. *See* Motion (D.I. 248) at 5-7. In seeking to compel additional financial documents, they told the Court BrowserStack produced financials for only "a couple of lines of code," when BrowserStack in fact produced financials for the entire accused Accessibility Toolkit product. *Id*. at 9. After their request for additional financials was denied,

they repeatedly misrepresented to the Court the scope of allegations in the First Amended Complaint to try to capture non-accused products and broaden the scope of discovery and potential damages. *Id*. at 9-10. They mischaracterized their expert's affirmative damages calculations as "rebuttal" in an effort to circumvent the Court's expert disclosure deadlines. *Id.* at 19-20; *see also* SJ Order (D.I. 237) at 11, 14. And when forced to address why they failed to make requisite damages disclosures, they repeatedly blamed BrowserStack for failing to produce documents despite the Court's finding that BrowserStack had produced everything Deque needed to determine damages and despite the fact that Deque's ultimate damages theory was based largely on information not in BrowserStack's possession. Motion (D.I. 248) at 9; *see also* SJ Order (D.I. 237) at 13.

Even now, in opposing BrowserStack's request for fees, Deque and its counsel continue their practice of misrepresenting facts to avoid an inevitable adverse outcome. They tell the Court that Deque was entitled to continue pursuit of this case to obtain declaratory relief, but nowhere in the First Amended Complaint is there any cause of action or request for declaratory relief. *See* FAC (D.I. 44-1). They tell the Court that for Deque's copyright infringement claim, they never claimed damages based on a saved development cost theory. But in no less than five separate documents, Deque alleged saved development costs as damages for copyright infringement. *See e.g.* Deque's MSJ (D.I. 150) at 13 (¶ 57); Deque's Opp. to Motion to Strike (D.I. 112) at 1; Kahaian Report (D.I. 160-4) ¶¶ 53, 64-68, 86-92; Deque's Second Supplemental Initial Disclosures (D.I. 157-7) at 5; Deque's Response to Second Set of Interrogatories (D.I. 141-5) at PageID#1475 (Response to Rog. 17). Finally, Deque and its counsel contend that they engaged in meaningful settlement discussions, both during the settlement conference before Judge Fitzpatrick and in a written communication immediately afterwards. Opp. (D.I. 259) at

10.  But Deque and its counsel were ████████████████████████ and instead ███████████████████████████████████████████████████████ ███████████████████████████████████. *See* Marton Reply Decl. ¶ 2.  And Deque's written communication immediately following the settlement conference likewise focused on the ███████████████████████████████████████████████████████████ █████ *Id.* ¶ 3, Ex. 15.

At every turn, Deque and its counsel refused to accept the reality of the situation—that it had no basis to continue this litigation.  Their lack of candor before the Court and their obdurate insistence on proceeding in the face of their disregard of discovery obligations and deficient evidence of damages demonstrate their bad faith and warrants the award of fees.

## II.    BROWSERSTACK IS ENTITLED TO FEES UNDER THE COPYRIGHT ACT

### A.    Deque Took Unreasonable Positions Throughout the Litigation

#### 1.    Deque Had No Basis to Continue Pursuit of its Copyright Claim

Deque first argues that, even without a damages claim, it was reasonable to continue litigating its copyright claim to obtain declaratory relief or collect nominal damages.  But not once in any discovery response or filing did Deque ask for declaratory judgment or nominal damages.[1]  *See e.g.*, D.I. 157-7 at 3-5.  And when the Court explicitly asked Deque whether it was seeking any relief beyond damages for its copyright claim, Deque did not mention nominal damages or any claim for declaratory relief.  *See* Dec. Tr. (D.I. 239) at 36:15-20.  Now it changes

---

[1]  Courts have held that nominal damages are not recoverable in copyright cases given the carefully defined statutory damages scheme set forth in 17 U.S.C. §§ 504(b)-(c).  *See Par Microsystems, Inc. v. Pinnacle Dev. Corp.*, 995 F. Supp. 653, 663 (N.D. Tex. 1998); *Eagle Servs. Corp. v. H2O Indus. Servs.*, 532 F.3d 620, 623 (7th Cir. 2008) (stating that there is no right to nominal damages in a copyright suit); 6 William F. Patry, *Patry on Copyright* § 22:124 (Sept. 2024) ("There is no such concept as 'nominal' damages in copyright law.").

its story and tells the Court that it made a "straight forward request for a declaration of liability separate and apart from any request for damages."  Opp. (D.I. 259) at 7 (citing FAC (44-1) at Prayer for Relief ¶ a.1.).  But a simple review of Deque's First Amended Complaint shows that Deque is misrepresenting its pleading.  Deque asked for entry of judgment in its favor, but did not seek a declaration of rights.  *See* FAC (44-1) at Prayer for Relief.   In fact, the terms "declaration," "declare," and "declaratory" do not appear anywhere in the pleading.  *See generally id.*  Contrary to Deque's representation, the First Amended Complaint does not state a claim for declaratory relief; it does not recite any of the statutes or rules governing declaratory judgment actions, and does not allege any of the requisite conditions for maintaining an action under the Declaratory Judgment Act.  *See id.*; Fed. R. Civ. P. 57; 28 U.S.C. § 2201; *see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243, 2019 WL 4734950, at * 4 (E.D. Tex. May 22, 2019) (recognizing that to be entitled to declaratory relief, a party must bring an action for declaratory judgment in its pleadings); *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) ("Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion.").

In any event, a claim for nominal damages and declaratory relief still would not justify Deque's continued pursuit of its copyright claim.  By August 31, BrowserStack had already offered to pay Deque $101,000 and to enter judgment in Deque's favor on all claims, including copyright infringement.[2]  *See* Ex. 11 [Offer of Judgment (D.I. 242-11)] at 1.  Acceptance of the

---

[2]  Deque argues that BrowserStack's Rule 68 Offer of Judgment cannot be the basis for this fees motion as judgment was entered in BrowserStack's favor.  *See* Opp. (D.I. 259) at 4 fn.2.  To be clear, BrowserStack does not rely on Rule 68 for the award of fees, but as evidence that Deque was not genuinely interested in the relief it now tells the Court it was seeking, having refused BrowserStack's offer granting Deque everything it says it was entitled to recover with its continued pursuit of this lawsuit.

offer would have given Deque everything it now says it wanted, and more than it could have possibly been entitled to in this case.  It would have given Deque judgment of infringement and payment ███████████████████████.  Yet, Deque rejected the offer and insisted on proceeding.

Deque also argues that its copyright claim was still viable without a claim for damages because it was entitled to pursue injunctive relief.[3]  Deque's argument ignores two things.  First, as the Court noted, Deque admitted during the summary judgment hearing that its copyright claim was really about damages.  SJ Order (D.I. 237) at 5 fn.2.; Dec. Tr. (D.I. 239) at 36:18-20; *see also id*. at 45:1-9.  It now contends it never abandoned its claim for equitable relief.  But at no point during the hearing did Deque tell the Court that its copyright claim should survive summary judgment regardless of whether it could prove damages because it was seeking an injunction.  Indeed, that was clearly the point of the Court's question when it asked whether Deque was "seeking any equitable relief with respect to the copyright claim beyond damages." Dec. Tr. (D.I. 23) at 26:15-16.  And instead of unequivocally telling the Court it would be moving forward with a request for an injunction, it told the Court that "at this point, it is primarily a damages issue.  I mean, I think that is fair enough, yes." *Id*. at 36:17-20.[4]  Therefore,

---

[3]  Deque also makes a passing suggestion that it requested an audit as part of its copyright claim.  *See* Opp. (D.I. 259) at 8.  The First Amended Complaint, however, makes no request for an audit with respect to Deque's copyright infringement claim.  *See generally* FAC (D.I. 44-1).  The only allegations regarding an audit relate to the Pro License Agreement and Deque's claim for breach of contract, and have no connection to Deque's copyright infringement claim.  *See id*. ¶ 35, Prayer for Relief ¶ f, Ex. C at Section 8 (Audit Rights provision in Pro License).

[4]  BrowserStack also understood Deque to have abandoned its claim for an injunction at the summary judgment hearing, and Deque did not object or correct BrowserStack when it told the Court "I think [Deque] conceded here that they're not seeking equitable relief under the copyright statute." Dec. Tr. (D.I. 239) at 45:4-6.

despite what Deque is telling the Court now, it clearly was not concerned with or motivated by an injunction when it pressed on with its copyright claim.

Second, as detailed in BrowserStack's motion for summary judgment, Deque was not entitled to an injunction. *See* Defs. MSJ (D.I. 145) at 30. An injunction requires evidence of continuing harm. *See eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006). And the evidence in this case showed that there was no such threat. BrowserStack removed all allegedly copied content as soon as it learned about Deque's complaints.[5] *See* Defs. MSJ (D.I. 145) at 5 (SUF ¶ 14). And there is no evidence showing—nor does Deque make any allegations—that the current version of the Accessibility Toolkit contains any copied content or that there is any threat of future infringement. *See* Defs. MSJ (D.I. 145) at 30; Deque's MSJ Opp. (D.I. 160) at 29; *see also* Dec. Tr. (D.I. 239) at 45:1-6. Thus, even if Deque had not abandoned its request for an injunction, it would have been unreasonable for Deque to continue this case just to seek one, given that it made no allegations and had no evidence of any ongoing or future infringement. *See Fey*, 261 F. Supp. 3d at 1311 ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a

---

[5] Deque cites caselaw that stands for the proposition that voluntary cessation of a challenged practice does not moot a plaintiff's claim. *See* Opp. (D.I. 259) at 5 fn. 3. But the "voluntary cessation" doctrine has no application here, where BrowserStack is not challenging the existence of an Article III case or controversy and asserting that mootness deprives the Court of jurisdiction to hear the case. *GW Acquisition Co., LLC Pageland Ltd. Liability Co. v. MagLand Broker, LLC*, 2023 WL 125018, at *15 (E.D. Va. Jan. 6, 2023) (explaining that mootness is when there is no longer an Article III case or controversy, *i.e.* when issues presented are no longer live or the parties lack a legally cognizable interest). Regardless, obtaining an injunction still requires Deque to present evidence of a threat of continuing and future harm. *See Fey v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1314 (N.D. Ga. 2017) (denying permanent injunction where defendants stopped using copyrighted material and there was no evidence showing a real and immediate threat of future infringement). And as explained above, Deque had no such evidence.

merely conjectural or hypothetical—threat of *future* injury.") (internal citations and quotations omitted).

Lastly, Deque tells the Court it was not unreasonable for it to continue pursuing its copyright claim because it had strong facts to support its case. *See* Opp. (D.I. 259) at 11-12. It contends that it needed only to establish BrowserStack's revenues to present a damages case to a jury. *Id*. at 12. While that may be true, Deque ignores the fact that it failed to make the discovery disclosures required to preserve and present such a claim. As the Court noted in its summary judgment ruling, "Deque clearly and repeatedly failed to disclose adequately its damages claim in its initial disclosures, responses to BrowserStack's damages interrogatories, or expert reports, as prescribed by Rule 26 of the Federal Rules of Civil Procedure." *See e.g* MSJ Order (D.I. 237) at 7-8. Thus, regardless of whether Deque could show BrowserStack's revenues, it was precluded from doing so because of its discovery violations. Without damages, consideration of the merits of Deque's underlying claim is irrelevant. *See Eagle Servs.*, 532 F.3d at 623 ("When a plaintiff is just suing for money and he has no ground at all for obtaining a money judgment the fact that his rights may have been violated does not save his suit from being adjudged frivolous.") (internal citations omitted). Once Deque decided not to comply with its damages disclosure obligations, it should have known it had no reason to continue litigating.

But more than that, Deque also did very little to develop the evidence needed to prove the alleged copying. By the time of trial, it had no admissible evidence of the accused Accessibility Toolkit. *See* Defs. MSJ Opp. (D.I. 169) at 20 & fn.8 (explaining Deque's lack of admissible evidence of accused Accessibility Toolkit). It asked for and was given access to source code for every version of BrowserStack's Accessibility Toolkit, but then never reviewed it and did not include the Accessibility Toolkit or the source code in its trial exhibit list. *Id.* at 3 (¶ 8); Marton

Decl. (D.I. 249) ¶¶ 7, 9, 12.  It did not make any technical expert disclosures and thus had no way to show how someone with the requisite skill to review source code would compare the accused and copyrighted code.  *See e.g.* Defs. MSJ Opp. (D.I. 169) at 20, 23 (noting Deque's lack of expert testimony needed to prove extrinsic and intrinsic similarity).  Throughout this litigation, Deque demonstrated an unwillingness to fully engage and prosecute its claim.  If Deque was not willing as the plaintiff to spend the time, money, and other resources necessary to properly develop and prove its case, it was not reasonable for it to force BrowserStack to spend time, money, and resources to defend itself.

### 2.    Deque Advanced Untenable Arguments

Not only did Deque have no good faith basis to maintain its copyright claim, it also continued to litigate using questionable tactics.  Deque contends that it was well within its rights to seek indirect profits from non-infringing products.  Opp. (D.I. 259) at 9.  This argument again ignores that it had no ability to seek any damages after refusing to make required damages disclosure.  In any event, Deque ultimately did not pursue indirect profits from the sale of non-infringing products (presumably because there was no evidence the Accessibility Toolkit drove sales of other products).  Deque went well beyond that to argue that its complaint accused products other than the Accessibility Toolkit.  In seeking discovery relating to all of BrowserStack's products, Deque told the Court at the September 27 hearing that this case was about more than the Accessibility Toolkit, that it identified and accused other products in its First Amended Complaint.  Sept. Tr. (D.I. 177-1) at 23:17-22.  But the First Amended Complaint does not identify or accuse any BrowserStack product other than the Accessibility Toolkit.  *See* FAC (D.I. 44-1) at ¶¶40-48; Sept. Tr. (D.I. 177-1) at 25:18-26:3, 26:13-27:16.  Despite this, Deque continued to misrepresent its allegations and the scope of the case at the October 17 hearing, again telling the Court that the allegations in the complaint accuse several other BrowserStack

products.  Oct. Tr. (D.I. 177-2) at 3:4-4:20.  But the only other products Deque could identify in

the First Amended Complaint were allegations about *Deque's* product offerings, not

BrowserStack's.  *Id*. at 6:7-8:7, 8:25-9:23.  Thus, the Court found that the complaint was limited

to the Accessibility Toolkit.  *Id*. at 21:1-5.  Undeterred, Deque repeated the same rejected

argument for a third time during the January 13 hearing, telling the Court:

> … what we are talking about here is far broader and includes far more products,
> plural, than only what counsel wants the Court to believe is or should be the focus
> here.
> …
> [T]his is far more broad than just BrowserStack's accessibility testing tool in
> isolation, but it's about accessibility testing technology and capabilities that may
> be multiple BrowserStack products sold to multiple different platforms on its
> internet website to customers today, Your Honor.

Jan. Tr. (Ex. 17) at 14:22-15:23.  When asked by the Court whether Deque was claiming

infringement by all these other products, Deque's counsel lied and said, "Yes, sir."  *Id*. at 15:25-

16:2.  When asked where Deque has specified revenue or profit attributable to these other

products, Deque's counsel hedged because he knew no such information or disclosures were

made.  *Id*. at 16:3-17.  When asked which accused products were alleged in the complaint,

Deque's counsel lied again and said "Products plural are described in the amended complaint,

Your Honor. … All of the BrowserStack products, plural, that enable accessibility testing on an

automated basis."  *Id*. at 17:22-18:22; *see also id*. at 16:20-17:12 (BrowserStack's counsel

explaining that Judge Fitzpatrick already determined that the First Amended Complaint identifies

and accuses only the Accessibility Toolkit product).  In opposing this request for fees, Deque

says nothing about and provides no justification for its misrepresentations to the Court.

Deque also neglects to address the frivolous arguments it made to explain its failure to

make damages related disclosures.  Deque repeatedly tried to blame its non-disclosure of its

damages calculation on the need for documents from BrowserStack, despite the fact that the

Court already found that BrowserStack already had provided Deque "with the discovery necessary to reasonably calculate damages." Sept. Tr. (D.I. 177-1) at 44:4-7. It made this argument in seeking a retroactive extension of the expert disclosure deadline. *See* Fee Motion (D.I. 248) at 8, citing D.I. 75 at 5. Its CEO made this same argument at her deposition when evasively answering questions regarding damages. *See* Fee Motion (D.I. 248) at 11, citing Kumar Tr. (D.I. 185-2) at 171:17-22, 101:9-102:6, 102:11-21, 103:24-105:20, 165:12-17. And Deque recycled this argument again when opposing summary judgment on the damages issue. *See* Fee Motion (D.I. 248) at 14.

Deque also fails to address its repeated attempts to circumvent damages disclosures deadlines with unauthorized untimely submissions. It tried to pass off late-disclosed affirmative expert damages calculations in the Kahaian Report, repeatedly telling the Court it was a timely "rebuttal" report. *See* Fee Motion (D.I. 248) at 15, 19, 24. Without requesting leave, it then served a 6-month late supplement to initial disclosures two months after the close of discovery, setting forth its affirmative damages calculations and citing the Kahaian Report, which was supposed to be limited to rebuttal opinions and calculations. *Id*.; *see also generally* Second Supplement to Initial Disclosures (157-7) (citing Kahaian Report).

Deque used these improper tactics to drag out litigation on its copyright claim, when it should have accepted that its failure to meet discovery obligations was a death knell to its claim.

### B.    Deque Proceeded With This Case for an Improper Purpose

In truth, Deque was not interested in any of the remedies available through this lawsuit. It was not concerned about stopping infringement through an injunction. After discovering what it suspected was BrowserStack's copying, Deque did nothing. *See* Fee Motion (D.I. 248) at 3-4. It did not give BrowserStack notice of claims or send any cease and desist letter. It could have

immediately ended any alleged infringement by simply reaching out to BrowserStack, but instead let BrowserStack carry on for five more months.

Nor was Deque genuinely interested in seeking recoverable damages.  After filing suit, it did almost nothing to develop its damages claim.  It missed all its damages disclosure deadlines, unconcerned with precluding its claim for damages.  When it learned that BrowserStack's gross revenues for the Accessibility Toolkit product ████████████, it did not seek to resolve this case.  Instead, it concocted an unrecoverable saved cost of development theory, as a way to demand $30 million from BrowserStack, ████████████ what it could ever recover in this case.  *See Oracle Corp. v. SAP AG*, 734 F. Supp. 956, 971-72 (N.D. Cal. 2010) (finding no support for copyright damages based on saved development costs).  Deque now contends it never claimed saved development costs as damages for its copyright claim.  Opp. (D.I. 259) at 8-9.  That is just untrue.  Deque alleged saved development costs as damages for its copyright claim in numerous Court filings and discovery responses.  Specifically, in its October 4 response to an interrogatory asking for evidence supporting damages for copyright infringement, Deque responded:

> Plaintiff identifies and relies upon the documents it has produced, or will produce, which identify ***the development costs incurred by Plaintiff to create and develop its software products, including the Asserted Works***, which were stolen and/or reversed engineered by Defendants.

D.I. 141-5 at Response to Rog. 17.  In opposing the motion to strike the Kahaian Report, Deque argued that "[***b]y copying Plaintiff's valuable software code*** and reverse engineering it, ***Defendants … avoided decades of development costs***[.]"  D.I. 112 at 1.  In its Motion for Summary Judgment, Deque states that Deque was damaged when BrowserStack "***avoided development cost by copying Deque's code***, which took over a decade and tens of millions of dollars to create."  D.I. 150 at 13 (¶ 57).  In the Kahaian Report, Deque identifies damages for

11

alleged wrongful conduct including the "difference in total development costs Deque incurred to create its accessibility products compared to the total development costs BrowserStack incurred to create the BrowserStack Accessibility Toolkit." D.I. 160-4 at ¶ 53; *see also id.* ¶¶ 64-68, 86-92. And in its December 6 Second Supplement to Initial Disclosures, under the section on copyright infringement, Deque stated "Deque incorporates by reference the damages calculations in the Kahaian Report (for the relevant period), including but not limited to the lost profits' [sic] calculation of $2,204,817 and ***$30,258,034 in avoided development costs***." D.I. 157-7 at 5; *see id.* at 3-5.

Thus, as Deque's own submissions confirm, Deque continued to pursue this case in the hopes of coercing a large payout from BrowserStack based on an inflated and unrecoverable damages claim. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 531, 538 (S.D.N.Y. 2006) (awarding fees to defendant where plaintiff pursued claims on unrecoverable damages theory). Deque had no genuine interest at any point in this case in discussing settlement. Even after it its damages disclosure deadlines lapsed and after it learned that BrowserStack gross revenues were ██████████████████████, Deque still would not resolve this case. It rejected BrowserStack's offer to enter judgment in Deque's favor and to pay $101,000 (█████████████ ██████████████████). Marton Decl. (D.I. 249) ¶ 17, Ex. 11 (D.I. 242-11); *see Baker*, 431 F. Supp. 2d at 537 (finding improper motivation where plaintiff refused offer to settle for more than double defendant's gross profits).

Deque now contends that it engaged in reasonable efforts to settle this case during the October 3 settlement conference before Judge Fitzpatrick and in a written communication following the conference. *See* Opp. (259) at 10. Deque fails to mention that it came to the October 3 settlement conference unprepared to discuss any specific terms for resolution. Marton

Reply Decl. ¶ 2. And while BrowserStack flew a representative with settlement authority to Virginia from India, Deque indicated it did ███████████████████████████ ████████████████ *Id*. Instead, Deque used the October 3 settlement conference ███████ ███████████████████████████████████████████████████████ ███████████████████████████████. *Id*.

The same is true with Deque's follow-up written communication on October 4. Deque did not seek to engage in reasonable and realistic discussions about how to resolve this case. Instead, ████████████████████████████████████████. *Id*. ¶ 3, Ex. 15. Its October 4 communication did not make any settlement offer, did not respond to any of BrowserStack's previous offers, and did not disclose the amount of damages it was seeking in this case. *Id*. Thus, while Deque had BrowserStack's Rule 68 Offer of Judgment for over a month, it still provided no explanation of why BrowserStack's offer was not sufficient to resolve this case. *See Allora, LLC v. Cambridge Builders of Johnston Cty., Inc.*, 532 Fed. Appx. 349, 354 (4th Cir. 2013) (finding failure to consider settlement shows that party "may not have been acting in good faith in continuing to litigate").

Deque also references settlement communications it initiated during the summary judgment phase of this case. On January 3, 2025, following the hearing on the parties' motions for summary judgment, Deque's counsel did reach out to initiate settlement discussions, communicating his belief █████████████████████████████████████ ████████████. Marton Reply Decl. ¶ 4. Counsel followed up with a settlement offer on January 5, but Deque's offer was still based, in part, on ████████████████████ ███████████████████████████ and not on damages and relief recoverable in the lawsuit. *See id*., Ex. 16. Thus, its offer ████████████████████████████

████████████████████ anything it could recover through a copyright claim. *See id*. However, given the cost (in terms of time and money) of trial, post-trial motions, and any potential appeals, BrowserStack responded ████████████████████████████ *Id*. ¶ 5. Despite the fact that BrowserStack countered ████████████████████████████ ███████████████████████ *Id*. Thus, even at the very end of this case, Deque refused to see the writing on the wall and continued to unreasonably push for payment hundreds of times greater than what it could recover through a copyright claim, despite knowing that it failed to make damages disclosures and faced the risk of preclusion at trial. Such conduct was not reasonable and further evidences Deque's improper motivation in this case. *See Baker*, 431 F. Supp. 2d at 537; *Allora*, 532 Fed. Appx. at 352.

> **C.    An Award of Fees Will Deter Deque's Conduct**

An award of fees here will serve to deter parties from refusing to acknowledge the inevitability of claims and dragging out claims to make demands for many times more than what is legitimately recoverable in a lawsuit. Deque makes arguments that copyright law contemplates claims where actual damages cannot proven, as is the case when a plaintiff seeks non-monetary relief or statutory damages. *See* Opp. (D.I. 259) at 16. Deque's argument misses the point and is in any event, not applicable to this case. Deque was not entitled to statutory damages or non-monetary relief. *See* Section II.A.1.a)-b), above. Here, Deque advanced unsupportable arguments, dragged out this case to seek unrecoverable damages after having missed its damages disclosure deadlines, tried to circumvent those deadlines by mischaracterizing its expert report and submitting unauthorized untimely disclosures, all while refusing to engage in meaningful settlement discussions with BrowserStack. This is the type of conduct that should be deterred.

Deque makes a final argument that an award of fees is not appropriate here because BrowserStack has not shown it is financially "destitute" and thus has no "need" for compensation. Deque misstates the *Rosciszewski* factor and the considerations courts take into account in awarding fees. The "need" to compensate a prevailing party refers to compensation for legal costs incurred as a result of the non-prevailing party driving up the cost of defense, especially when plaintiff aggressively pursues an unusually large damages claim. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F. Supp. 3d 503, 515-16 (E.D. Va. 2015). There is no consideration of the financial situation of the prevailing party. While a court may take into consideration the financial situation of a *non-prevailing* party and its ability to pay fees, Deque makes no claim here that it cannot fund any fee award.

### III.    BROWSERSTACK IS ENTITLED FEES UNDER THE LANHAM ACT

#### A.    Deque Had No Basis to Maintain Its False Advertising Claim

Just as Deque had no viable claim for damages for its copyright claim after failing to make damages disclosures, so too was it precluded from seeking damages for its false advertising claim. Deque first argues false advertising claims do not require proof of damages. Deque is wrong. The law is clear; proof that the plaintiff has been injured as a result of the alleged false advertisement is an essential element of a Lanham Act false advertising claim. *Verisign, Inc. v. XYZ.com*, 848 F.3d 292, 298-99 (4th Cir. 2017), *citing Design Resources, Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 500 (4th Cir. 2015); *see also Lumber Liquidators Inc. v. Stone Mountain Carpet Mills, Inc.* NO. 3:08CV573, 2009 WL 2876881, at *2 (E.D. Va. Sept. 2, 2009) ("In the Fourth Circuit, proof of actual damages is critical to the viability of a Lanham Act claim." ).

Deque contends that it was entitled to a presumption of harm and that it could seek recovery of BrowserStack's profits without proof of actual loss. Opp. (D.I. 259) at 19-21. But

even if a presumption were applied, it is "only as to causation; the *extent of money damages* is a separate matter that must have evidentiary support." *Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. Appx. 267, 273-74 (4th Cir. 2006) (citations omitted). And whether or not Deque normally would be entitled to seek recovery of BrowserStack's profits is beside the point. Deque did not make any damages disclosures and never provided a timely calculation of false advertising damages based on BrowserStack's profits or otherwise, and thus should have known it would be precluded from seeking any monetary relief due to its discovery malfeasance. In any event, BrowserStack offered Deque entry of judgment and payment of ███████████████ ████████ from the Accessibility Toolkit. Thus, there was no reason for Deque to continue pursuit of the false advertising claim.

Deque also contends that it was reasonable to move forward with the false advertising claim because it was seeking an injunction. Deque again ignores the fact that BrowserStack had removed and stopped using the complained of advertisement immediately after learning of Deque's allegations. *See* Defs. MSJ (D.I. 145) at 6 (¶18), 30. And indeed, Deque admitted during summary judgment that the alleged false advertisement was no longer being used and offered no evidence of any threat that the advertisement would be repeated. Deque's MSJ Opp. (D.I. 160) at 4 (¶18). Thus, Deque knew there was no basis to obtain an injunction. *See Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 863 (E.D. Va. 1998) (denying injunction in false advertising case where nothing in the record showed the false claims would be repeated).

Deque did not prosecute its false advertising claim in earnest. It had no evidence that any customer ever saw the alleged advertisement. *See* Sinha Tr. (D.I. 145-5) at 90:11-91:17. And it had no idea if it lost any customers or any revenues from the alleged advertisement. *Id*. at 90:19-

92:10; Barrell Tr. (D.I. 145-2) at 284:6-15; Kumar Tr. (D.I. 145-3) at 101:9-16, 102:11-21, 104:21-106:8; Schneiderman Tr. (D.I. 145-4) at 133:18-134:8; *see also* Defs. MSJ (D.I. 145) at 27; Defs. MSJ Opp. (D.I. 169) at 29-30.  Thus, it was not prosecuting the false advertising claim in good faith.

## IV.    THE COURT SHOULD AWARD FEES AGAINST COUNSEL

### A.    Deque's Counsel Made Bad Faith Arguments that Needlessly Multiplied and Prolonged Proceedings

In an effort to avoid a fees sanction, Deque's counsel erects and knocks down a series of strawman arguments to avoid addressing the bad faith and frivolous arguments advanced in this case.  Deque's counsel first argues that Deque's loss at summary judgment is immaterial to a bad faith inquiry, otherwise all non-prevailing parties could be said to have acted in bad faith.  Opp. (D.I. 259) at 24-25.  But BrowserStack does not contend that Deque's counsel acted in bad faith simply because it lost summary judgment.  Rather, counsel's bad faith tactics are part of the reason *why* Deque lost summary judgment.  Counsel did not do what was required during the case to develop and disclose a viable damages theory.  Instead, Deque and its counsel chose to let damages disclosure deadlines lapse without any justification.  They then proceeded to draw out litigation with unauthorized late disclosures seeking damages hundreds of times greater that the damages recoverable in this case.  The Court's discovery sanction and summary judgment order merely confirm what Deque and its counsel should have known when they elected not to comply with their discovery obligations—that they would not be allowed to proceed on any damages claim.

Deque and its counsel next argue that they were entitled to pursue claims even after electing not to provide an affirmative damages expert report.  Opp. (D.I. 259) at 25-26.  Deque's counsel is being intentionally obtuse.  Deque and its counsel acted unreasonably not because

they chose not to provide a damages expert report, but because they chose not to provide *any* damages disclosure.  By August 9, Deque and its counsel failed to provide a damages calculation with initial disclosures, failed to identify an amount of claimed damages in response to BrowserStack's interrogatory request, and elected not to disclose a damages calculation with expert disclosures.  Counsel then supplemented its interrogatory response at the end of August and initial disclosures in early September, but still did not provide the required damages calculation and any justification for the non-disclosure.  D.I. 242-10; D.I. 106-4.  By that time, counsel should have known that Deque would be precluded from presenting any quantification of damages at trial if there was no justification for its non-disclosure.  And indeed, Deque and its counsel never provided any justification.  *See Ali v. BC Architects Engs., PLC*, No. 1:19-cv-01385, 2023 WL 319435, at *6 (E.D. Va. Mar. 31, 2023) (fees awarded against counsel where counsel should have known claims were not viable).

Instead of accepting the consequences of their inaction and negotiating a reasonable resolution to this case, Deque and its counsel decided to try to sneak in an untimely damages disclosure under the guise of a rebuttal Kahaian Report.  Deque's counsel contends it used the Kahaian Report appropriately because Deque is entitled to rely on a rebuttal expert even when it did not disclose an affirmative expert.  Opp. (D.I. 259) at 27.  BrowserStack has never challenged Deque's right to have a rebuttal expert, and counsel's repetition of arguments on that point highlights its avoidance tactic.  Instead, BrowserStack takes issue with *how* Deque and its counsel use the "rebuttal" Kahaian Report.  As the Court recognized, the Kahaian Report contains affirmative damages claims extending beyond the proper scope of rebuttal.  *See e.g.* Oct. Tr. at 30:1-3, 42:7-10, 49:20-23; MSJ Order (D.I. 237) at 9, 11, 14.

Indeed, Deque and its counsel relied on the "rebuttal" Kahaian Report to advance its affirmative damages claim.  At summary judgment, Deque and its counsel relied on the Kahaian Report to argue that Deque made requisite affirmative damages disclosures.  *See* Deque MSJ Opp. (D.I. 160) at 8 (¶ 32), 27.  Counsel argues now that they cited the Kahaian Report simply to say that Deque served a timely rebuttal report (Opp. at 28), but Deque and its counsel submitted the report as evidence to dispute BrowserStack's contention that Deque did not disclose the calculation of damages it was seeking in this case.  *See* Defs. MSJ (D.I. 145) at 9 (¶ 32) and Deque MSJ Opp (D.I. 160) at 8 (¶ 32).  Deque and its counsel relied on the Kahaian Report to support the affirmative damages calculations in Deque's late-served damages initial disclosure.  *See e.g.* 157-7 at 5, 7 (incorporating Kahaian Report calculations to support affirmative damages claims).

Additionally, counsel fails to provide any justification for serving these disclosures two months after the close of discovery, other than to repeatedly blame BrowserStack's document production for their own discovery malfeasance.  Throughout this case, counsel repeatedly claimed that Deque could not provide a damages disclosure because BrowserStack did not provide requisite documents.  Counsel relied on this argument even after Judge Fitzpatrick told Deque that BrowserStack has "provided you with the discovery necessary to reasonably calculate your damages if you get there."  *See* Sept. Tr. (177-1) at 44:4-7.  Counsel then submitted a Rule 56(d) declaration to oppose summary judgment, again suggesting Deque could not make damages disclosure because of BrowserStack's production.  *See* 157-6.  Counsel did not execute the declaration under the penalty of perjury as required for a Rule 56(d) declaration, did not use the declaration to ask for any particular relief, and based the declaration on unsubstantiated conjecture about the contents of BrowserStack's financials rather than on personal knowledge.

19

*See* 157-6.  Deque and its counsel contend that submission of the Rule 56(d) declaration was appropriate to show that BrowserStack's discovery tactics were responsible for Deque's lack of damages evidence.  Opp. at 29.  But this is the exact argument the Court has repeatedly rejected and ultimately in summary judgment noted that Deque's damages theories were based primarily on Deque's own documents and information, proving that its claimed need for information from BrowserStack was disingenuous.

Deque and its counsel also repeatedly tried to expand the scope of this case by misrepresenting the allegations in the First Amended Complaint.  As noted in Section II.A.2., above, Deque's counsel repeatedly told the Court that the First Amended Complaint identified and accused BrowserStack products in addition to the Accessibility Toolkit.  Even after Judge Fitzpatrick found that the "complaint cabins in your claim for accessibility-for the accessibility toolkit[,]" Deque's counsel again repeated the same untruth, telling the Court it was claiming infringement as to multiple BrowserStack products.  Oct. Tr. (177-2) at 21:1-5; Marton Reply Decl., Ex. 17 at 15:16-16:2.  Deque's counsel does not provide any explanation for these outright misrepresentations.  That is because counsel's intent was to continue litigation to improperly expand this case to seek millions of dollars despite the fact that this case is about a single product for which BrowserStack ███████████████████████ in revenue.  After BrowserStack offered entry of judgment and payment of ████████████, there was no legitimate reason to pursue this case.

## V.    CONCLUSION

For the foregoing reasons, BrowserStack respectfully requests this Court grant its Motion for Attorney Fees.  BrowserStack will submit a detailed statement of tasks undertaken, hours worked, and billable rate within fourteen (14) days of an order granting an award of fees.  *See* Fed. R. Civ. P. 54(d)(2)(C).

Dated:  February 18, 2025          Respectfully submitted,

                                   /s/    Belinda D. Jones
                                   Belinda D. Jones (VSB No. 72169)
                                   bjones@cblaw.com
                                   Roman Lifson (VSB No. 43714)
                                   rlifson@cblaw.com
                                   Christian & Barton, L.L.P.
                                   901 East Cary Street, Suite 1800
                                   Richmond, Virginia 23219-3095
                                   Tel.:        (804) 697-4100
                                   Fax:         (804) 697-4112


                                   Ryan J. Marton (*pro hac vice* admitted)
                                   ryan@martonribera.com
                                   Songmee L. Connolly (*pro hac vice* admitted)
                                   songmee@martonribera.com
                                   Phillip J. Haack (*pro hac vice* admitted)
                                   phaack@martonribera.com
                                   Carolyn Chang (*pro hac vice* admitted)
                                   carolyn@martonribera.com
                                   Hector Ribera (*pro hac vice* admitted)
                                   hector@martonribra.com
                                   MARTON RIBERA SCHUMANN & CHANG LLP
                                   548 Market Street, Suite 36117
                                   San Francisco, CA 94104
                                   Telephone:       (415) 360-2515

                                   *Attorneys for Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd.*