# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

              Plaintiff,

   v.

                                 Case No. 1:24-cv-00217-AJT-WEF

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

              Defendants.

**DEFENDANTS' OPPOSITION TO DEQUE'S MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD .......................................................................................... 2

III.   ARGUMENT ...................................................................................................... 3

       A.   Deque's Copyright Claim Was Properly Disposed of Because Deque Has No
            Evidence Supporting the Relief Sought ................................................. 3

       B.   The Court Applied the Proper Standard For Exclusion of Evidence .................... 8

       C.   The Court Correctly Found Deque Had No Evidence of Damages ..................... 12

       D.   The Court's Order Was Not Unjust ...................................................... 16

IV.    CONCLUSION ................................................................................................. 17

## **TABLE OF AUTHORITIES**

### **Cases**

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
  938 F.3d 1170 (11th Cir. 2019) ................................................................. 6

*Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*,
  No. 19-cv-505, 2020 WL 4574493 (E.D. Va. Aug. 7, 2020) .................... 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................... 5

*Arizona v. City of Tucson*,
  761 F.3d 1005 (9th Cir. 2014) ................................................................... 6

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*,
  269 F.3d 305 (4th Cir. 2001) ................................................................... 12

*Bianco v. Globus Med., Inc.*,
  30 F. Supp. 3d 565 (E.D. Tex. 2014)........................................................ 13

*Carter v. Ball*,
  33 F.3d 450 (4th Cir. 1994) ...................................................................... 5

*Daily v. White*,
  520 F. Supp. 3d 835 (W.D. Va. 2021) ...................................................... 15

*Delong v. Thompson*,
  790 F. Supp. 594 (E.D. Va. 1991) ......................................................... 2, 8

*Durkin v. Taylor*,
  444 F. Supp. 879 (E.D. Va. 1977) ......................................................... 3, 8

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)................................................................................... 4

*EsNtion Recs., Inc. v. TritonTM, Inc.*,
  No. 3:07-CV-2027-L, 2009 WL 3805827 (N.D. Tex. Nov. 13, 2009)........ 7

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008)........................................................................... 1, 3, 8

*Fey v. Panacea Mgmt. Grp. LLC*,
  261 F. Supp. 3d 1297 (N.D. Ga. 2017) ................................................. 5, 7

*Goldberg v. B. Green & Co.*,
  836 F.2d 845 (4th Cir. 1988) .................................................................... 5

*Henry v. R.K. Chevrolet, Inc.*,
    219 Va. 1011 (1979) ................................................................................................. 15

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    No. 6:18-cv-00243, 2019 WL 4734950 (E.D. Tex. May 22, 2019) ........................... 6

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods.
    Liab. Litig.*,
    No. MDL115MD2627AJTTRJ, 2017 WL 2646286 (E.D. Va. June 20, 2017) ....................... 6

*Klaiber v. Freemason Associates, Inc.*,
    266 Va. 478 (2003) ................................................................................................. 15

*Neri v. Monroe*,
    No. 11-cv-429-slc, 2014 WL 793336 (W.D. Wis. Feb. 26, 2014), *aff'd*, 567 F. App'x 465 (7th
    Cir. 2014) ................................................................................................................. 7

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
    870 F. Supp. 1504 (D. Minn. 1994) ......................................................................... 7

*Oracle Corp. v. SAP AG*,
    734 F. Supp. 3d 956 (N.D. Cal. 2010) ..................................................................... 10

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998) .................................................................................... 2

*Reed Constr., Inc. v. James River Ins. Co.*,
    No. C11-960 MJP, 2012 WL 13024803 (W.D. Wash. Apr. 6, 2012) ....................... 11

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*,
    318 F.3d 592 (4th Cir. 2003) ........................................................................... 1, 8, 9

*Silicon Knights, Inc. v. Epic Games, Inc.*,
    No. 5:07-cv-275-D, 2012 WL 1596722 (E.D.N.C. May 7, 2012) ........................... 11

*Sloas v. CSX Transp., Inc.*,
    616 F.3d 380 (4th Cir. 2010) .................................................................................... 2

*Strickland v. Alexander*,
    772 F.3d 876 (11th Cir. 2014) .................................................................................. 7

## **Statutes**

17 U.S.C. § 412 ......................................................................................................... 15

28 U.S.C. § 2201 ......................................................................................................... 6

**<u>Rules</u>**

Fed. R. Civ. P. 57 ................................................................................................................ 6

## I.     INTRODUCTION

Setting aside Deque's irrelevant and inaccurate rehashing of the purported strengths of its copyright claim, Deque's motion for reconsideration boils down to three arguments—all of which fail.  First, Deque asserts that even without damages, it could move forward on its copyright claim to seek other relief.  This argument ignores that no other form of relief was available to Deque.  Contrary to Deque's assertion, it presented no evidence in support of injunctive relief and admitted as much during summary judgment.  *See* D.I. 157 at 29 (failing to present evidence in opposition to BrowserStack's motion for summary judgment of no injunction); D.I. 239 at 36:15-20 (admitting that its copyright claim was really about damages).  Nor was it entitled to "declaratory judgment" having failed to plead or assert a claim for declaratory relief in this case.  Absent any available relief (no actual damages, no statutory damages, no injunctive relief, and no declaratory judgement), the Court, like all other courts considering a copyright claim where no relief was available, properly disposed of Deque's copyright claim.

Second, Deque contends that the Court applied the wrong standard when excluding evidence of Deque's damages theories.  Not only is Deque's assertion incorrect—the Fourth Circuit directs courts to use the five-part test the Court applied in its Rule 37(c)(1) analysis (*see S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003))— Deque never argued for application of another standard in opposing BrowserStack's motions *in limine* and summary judgment motion.  This alone is fatal to Deque's argument now.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (explaining that Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment") (citation omitted).

1

Third, Deque contends that despite the Court's exclusion order, it could still present evidence of damages. Deque's argument misinterprets the Court's exclusion order. Indeed, after determining that Deque's failure to timely disclose the details of its "disgorgement of revenue, lost profits, and avoided development costs" theories was neither harmless nor justified, the Court precluded (pursuant Rule 37(c)(1)) Deque from presenting evidence in support of these undisclosed damages theories. D.I. 237 at 10-14. Deque's assertion that it still can present evidence in support of these theories is directly contradicted by the Court's exclusion order.

Knowing that there is no justification for reconsideration, Deque makes a final Hail Mary argument that the Court's ruling is manifestly unjust because of the purported strength of its copyright claim. Not only is Deque incorrect as to the purported strength of its copying evidence (Deque had no evidence—none—of the accused product on its trial exhibit list), the only injustice here is the one committed by Deque—filing a civil lawsuit but never telling the Court or BrowserStack the specific relief sought. It is axiomatic in all civil litigation that a plaintiff identify the relief sought. Deque never did that so its case is over. This is not only fair, it is required by law.

## II.    LEGAL STANDARD

"[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks omitted). Relief under Rule 59(e) may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [previously]; or (3) to correct a clear error of law or prevent manifest injustice." *Sloas v. CSX Transp., Inc.*, 616 F.3d 380, 386 n.2 (4th Cir. 2010) (citation omitted). Consequently, "[a] Rule 59(e) motion is not intended to allow for reargument of the very issues that the court has previously decided" (*Delong v. Thompson*, 790 F. Supp. 594, 618 (E.D. Va. 1991)), and "is

2

[not] intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977); *accord Exxon Shipping*, 554 U.S. at 486 n.5 (explaining that Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment") (citation omitted).

## III.   ARGUMENT

### A.   <u>Deque's Copyright Claim Was Properly Disposed of Because Deque Has No Evidence Supporting the Relief Sought</u>

Deque incorrectly asserts that the Court erred in disposing of its copyright claim because even absent evidence of damages it still has a viable claim to pursue injunctive relief. Deque's argument ignores two things. First, as the Court noted, Deque admitted during the summary judgment hearing that its copyright claim was really about damages. D.I. 237 at 5 fn.2.; D.I. 239 at 36:18-20; *see also id*. at 45:1-9. Deque now contends it never abandoned its claim for equitable relief. But at no point during the hearing did Deque tell the Court that its copyright claim should survive summary judgment regardless of whether it could prove damages because it was seeking an injunction. Indeed, that was clearly the point of the Court's question when it asked whether Deque was "seeking any equitable relief with respect to the copyright claim beyond damages." D.I. 239 at 36:15-16. And instead of unequivocally telling the Court it would be moving forward with a request for an injunction, it told the Court that "at this point, it is primarily a damages issue. I mean, I think that is fair enough, yes." *Id*. at 36:17-20. BrowserStack also understood Deque to have abandoned its claim for an injunction at the summary judgment hearing, and Deque did not object or correct BrowserStack when it told the Court "I think [Deque] conceded here that they're not seeking equitable relief under the copyright statute." D.I. 239 at 45:4-6. Then again, after BrowserStack's counsel argued "so there's no remedy … no damages, no injunction, the case doesn't need to go forward," the Court

offered Deque another chance to respond asking the parties if they had "anything else" to say. *Id*. at 45:8-13. Deque did not respond and certainly did not explain that it was seeking an injunction or that it had not abandoned that remedy. Therefore, despite what Deque is telling the Court now, it clearly conceded that it was no longer seeking an injunction as part of its copyright claim.

Second, as detailed in BrowserStack's motion for summary judgment, Deque had no evidence to carry its burden for obtaining an injunction. D.I. 145 at 30. An injunction requires evidence of continuing harm. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). And the evidence in this case showed that there was no such threat. BrowserStack removed all allegedly copied content as soon as it learned about Deque's complaints. *See* D.I. 145 at 5 (SUF ¶ 14). And there is no evidence showing—nor does Deque make any allegations—that the current version of the Accessibility Toolkit contains any copied content or that there is any threat of future infringement. *Id.*; D.I. 160 at 29; *see also* D.I. 239 at 45:1-6. As explained in BrowserStack's Motion for Summary Judgment, Deque's copyright infringement allegations were limited to an older version of BrowserStack's Accessibility Toolkit (version v.1.0.0.4) (*see* D.I. 143-3, Exs. A & B) which is no longer being sold. *See* D.I. 145 at 30; *id.* at 5 (SUF ¶ 14). The current BrowserStack Accessibility Toolkit is not and never has been accused of infringement. Indeed, BrowserStack made its source code repository (which included the updated version of the Accessibility Toolkit) available for Deque's inspection, but Deque chose not to review it and certainly never provided any evidence that it contains any Deque copyrighted material. Deque's assertion that because it "continues to challenge BrowserStack's claim[] that it has removed any infringing material" it still has a viable claim for an injunction on its copyright claim misses the point. It is Deque's burden to show it is entitled to an injunction,

and after BrowserStack challenged the absence of evidence to support such relief on summary judgment, it was Deque's burden to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It did not do so. Unsubstantiated, conclusory allegations without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Here, Deque has never made the assertion and has never identified any evidence that the current version of BrowserStack's Accessibility Toolkit is infringing. Thus, even if Deque had not abandoned its request for an injunction, Deque has no basis to seek one, given that it made no allegations and had no evidence of any ongoing or future infringement. *See Fey v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1311 (N.D. Ga. 2017) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.") (emphasis in original) (internal quotations and citation omitted).

Deque also argues it was entitled to seek declaratory relief on its copyright claim. But not once in any discovery response or filing did Deque ask for declaratory judgment. *See, e.g.*, D.I. 157-7 at 3-5. And when the Court explicitly asked Deque whether it was seeking any relief beyond damages for its copyright claim, Deque did not mention any claim for declaratory relief. *See* D.I. 239 at 36:15-20. Now it changes its story and tells the Court that it made a "straight forward request for a declaration of liability separate and apart from any request for damages." D.I. 266 at 10 (citing FAC (44-1) at Prayer for Relief ¶ a.1.). But a simple review of Deque's First Amended Complaint shows that Deque is misrepresenting its pleading. Deque asked for entry of judgment in its favor, but did not seek a declaration of rights. *See* D.I. 44-1 at Prayer for

Relief.   In fact, the terms "declaration," "declare," and "declaratory" do not appear anywhere in the pleading.  *See generally id.*  Contrary to Deque's representation, the First Amended Complaint does not state a claim for declaratory relief, it does not recite any of the statutes or rules governing declaratory judgment actions, and does not allege any of the requisite conditions for maintaining an action under the Declaratory Judgment Act.  *See id.*; Fed. R. Civ. P. 57; 28 U.S.C. § 2201; *see also HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243, 2019 WL 4734950, at * 4 (E.D. Tex. May 22, 2019) (recognizing that to be entitled to declaratory relief, a party must bring an action for declaratory judgment in its pleadings); *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) ("Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion.").

Further, even if Deque had plead a claim for declaratory judgment (which it has not), relief under the Declaratory Judgment Act would be precluded for the same reason its claim for injunctive relief fails:  there is no ongoing harm to redress.  It is well settled that declaratory judgment is not a remedy to redress past harm.  *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. MDL115MD2627AJTTRJ, 2017 WL 2646286, at *20 (E.D. Va. June 20, 2017) ("Declaratory judgment is only appropriate when it would serve a useful purpose in clarifying and settling the legal relations in issue to guide the parties in the *future* and that *it is not an appropriate remedy to adjudicate only past misconduct*.") (emphases added, internal citations and quotations omitted); *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1179 (11th Cir. 2019) ("[L]ike an injunction, declaratory relief requires a likelihood of future harm.").  "So[,] a plaintiff seeking declaratory ... relief must allege and ultimately prove, a real and immediate—as opposed to merely hypothetical or conjectural—threat of *future* injury."  *Strickland v. Alexander*, 772

F.3d 876, 883 (11th Cir. 2014) (emphasis in original) (citation and internal quotation marks omitted). There is no future injury at issue in this case. The version of BrowserStack's product that was accused is no longer being sold. *See* Defs. MSJ (D.I. 145) at 30; Deque's MSJ Opp. (D.I. 160) at 29; *see also* Dec. Tr. (D.I. 239) at 45:1-6. The new version is not accused. *Id*. There is no continuing activity at issue in this case, no threat of future harm, and no basis to seek declaratory relief.

Given that Deque is not entitled to any relief sought as part of its copyright claim, this Court properly disposed of Deque's copyright claim, just as many courts have done in the past. *See, e.g.*, *EsNtion Recs., Inc. v. TritonTM, Inc.*, No. 3:07-CV-2027-L, 2009 WL 3805827, at *8 (N.D. Tex. Nov. 13, 2009) ("Because Plaintiff cannot show that any infringement caused it to suffer damages, it has failed to carry its burden and show that there is a genuine issue of material fact with respect to its copyright claims. Accordingly, summary judgment in favor of Defendant is warranted[.]"); *Fey*, 261 F. Supp. 3d at 1311 ("Defendants are entitled to summary judgment on Count 1 [Copyright claim] because Plaintiff has not presented evidence of his actual damages, is not entitled to statutory damages or profits, and, for the reasons explained later in this Order, is not entitled to injunctive relief."); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 870 F. Supp. 1504, 1513 (D. Minn. 1994) ("In light of the lack of evidence showing American suffered any actual damages or that Northwest … may use [the copyrighted material] in the future, American cannot show it is entitled to either remedy it seeks. Northwest's motion for summary judgment on the copyright counterclaim should be granted."); *Neri v. Monroe*, No. 11-cv-429-slc, 2014 WL 793336, at *12 (W.D. Wis. Feb. 26, 2014), *aff'd*, 567 F. App'x 465 (7th Cir. 2014) (granting summary judgment against copyright claimant where none of the remedies sought were available).

7

### B.    The Court Applied the Proper Standard For Exclusion of Evidence

Deque next argues that the Court should not have relied on the *Southern States* standard

when excluding its purported evidence of damages but instead the Court should have applied the

four-part test recited in *Wilson* (which requires a finding of bad faith).  D.I. 266 at 11-21.  This

new argument could have and should have been raised in opposition to BrowserStack motion for

summary judgment and motions *in limine*—but it was not.  This alone is fatal to Deque's

position.  "A Rule 59(e) motion is not intended to allow for reargument of the very issues that

the court has previously decided," *Delong*, 790 F. Supp. at 618 , and "is [not] intended to give an

unhappy litigant one additional chance to sway the judge." *Durkin*, 444 F. Supp. at 889 ; *accord*

*Exxon Shipping*, 554 U.S. at 486 n.5 (explaining that Rule 59(e) "may not be used to relitigate

old matters, or to raise arguments or present evidence that could have been raised prior to the

entry of judgment") (citation omitted).

Moreover, Deque is wrong.  The Court applied the correct standard in its exclusion

finding.  *Southern States*, 318 F.3d at 597 (holding "that in exercising its broad discretion to

determine whether a nondisclosure of evidence is substantially justified or harmless for purposes

of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors:

(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that

party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to

disclose the evidence").  Pursuant to Rule 37(c)(1) and *Southern States*, the Court excluded

evidence of damages theories that was not timely disclosed.  D.I. 237 at 7-14 (holding that

because "Deque clearly and repeatedly failed to disclose adequately its damages claim in its

initial disclosures, responses to BrowserStack's damages interrogatories, or expert reports, as

prescribed by Rule 26 of the Federal Rules of Civil Procedure," evidence of damages should be excluded pursuant Rule 37(c)(1)).

Deque contends that because the Court's exclusion order ultimately resulted in a finding of summary judgment, the sanctions were not just exclusion but instead included case termination.  According to Deque, such a sanction is not a Rule 37(c)(1) sanction but some other sanction from some unspecified section of Rule 37.  Deque misreads the Court's ruling.  As noted above, the Court properly excluded certain evidence under Rule 37(c)(1); it did not dismiss the case as a sanction.  Following the exclusion order, the Court separately determined that with no evidence of damages, Deque's claims should be disposed of for lack of evidence.  D.I. 237 at 15 ("Therefore, Deque has no evidence of damages that it could present during its case in chief, such evidence is essential to all five claims, and the claims cannot survive summary judgment."). This grant of summary judgment was not based on Rule 37(b) or any other provision of Rule 37. The Court properly entered a straightforward exclusion order under Rule 37(c)(1) based on Deque's discovery failures, then followed with a summary judgment finding under Rule 56 based on review of all available evidence.  Thus, the *Wilson* standard is not implicated.  *Southern States*, 318 F.3d at 597–98 ("[T]he four-factor test recited in *... [Wilson]*, which includes bad faith, does not control the determination of whether to exclude evidence under Rule 37(c)(1)[.]").

In any case, even under the *Wilson* standard the Court's exclusion of damages evidence was proper.  Indeed, Deque's discovery failings were not inadvertent omissions or slips of the pen.  Instead, they were part of pattern of conduct that reflect an intentional bad faith effort to hide the ball.  As the Court found, "Deque was aware of its discovery deadlines, repeatedly missed those deadlines, attempted to circumvent the deadlines through untimely supplemental disclosures and rebuttal reports not permitted for the purpose now relied upon by Deque, and

those errors were not harmless or substantially justified." D.I. 237 at 14. Deque repeatedly failed to disclose a damages theory because it did not have a viable one. It suffered no actual losses and BrowserStack had not profited from sale of the accused Accessibility Toolkit. Knowing this, Deque conjured an unsupportable damages theory and chose to hide this theory until the eve of trial in an attempt to insulate it from attack. As this Court has already recognized, the vast majority of damages sought by Deque for copyright infringement are based on a theory of "avoided development costs." D.I. 157-7 at 5. And avoided development costs are not a recoverable measurement of damages under copyright law. *See Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 972 (N.D. Cal. 2010) ("The court has located no case law supporting a theory of copyright damages based on 'saved development costs,' and plaintiffs have proffered none. Thus, the court is not persuaded by plaintiffs' argument that authority exists for such a proposition."). Deque knows this and attempted to keep its "saved developments costs" theory under the radar in an effort to sneak it before the jury at trial. Violating discovery rules repeatedly for a chance of an improper windfall payout is the definition of bad faith.

Deque's bad faith also is reflected in the arguments it now makes to the Court. Deque argues once again that its failure to comply with Rule 26 "was largely based on BrowserStack's own delays in providing the necessary information through discovery." D.I. 266 at 15. This exact argument is belied by the record which includes Judge Fitzpatrick telling Deque that BrowserStack has "provided you with the discovery necessary to reasonably calculate your damages." D.I. 177-7 at 44:4-7. This argument again was rejected by the Court in its exclusion order. *See* D.I. 237 at 13 ("BrowserStack timely produced in discovery the information it possessed that Deque has relied on, and Deque's damages claims are, to a substantial degree, based on sources of information not in BrowserStack's possession."). That Deque again makes

the same argument twice rejected by this Court reflects its bad faith effort to do whatever it takes to prolong this case in the hopes of recovering a damages award that is unjustifiable under the law.

The second *Wilson* factor, prejudice, also weighs heavily in favor of exclusion.  Prior to close of discovery, BrowserStack received no notice of the amount of monetary damages Deque may claim or the calculations Deque may use to determine that amount.  This deprived BrowserStack of the opportunity to develop an informed defense to Deque's damages case, precluding a fair and informed trial.  *See, e.g.*, *Silicon Knights, Inc. v. Epic Games, Inc*., No. 5:07-cv-275-D, 2012 WL 1596722, at *7 (E.D.N.C. May 7, 2012) ("[T]he prejudice to [defendant] is manifest if [plaintiff] were allowed to present at trial a damages computation never revealed to [defendant] before it came from the witnesses' lips at trial."); *Reed Constr., Inc. v. James River Ins. Co*., No. C11-960 MJP, 2012 WL 13024803, at *1-2 (W.D. Wash. Apr. 6, 2012) ("The importance of the lay-down discovery rules cannot be over-emphasized…This [Rule 26(a)(1)(A)(iii)] requirement promotes transparency in litigation and informs a client's decision on whether to pursue litigation or an early settlement. Without knowing the scope of the potential damages sought, a defendant is unable to make the necessary calculations to determine how to proceed…The defendant is not required to simply guess at the value of the claim[.]").

The third *Wilson* factor, the need for deterrence, also warrants exclusion.  As the Court found, "Deque was aware of its discovery deadlines, repeatedly missed those deadlines, attempted to circumvent the deadlines through untimely supplemental disclosures and rebuttal reports not permitted for the purpose now relied upon by Deque, and those errors were not harmless or substantially justified."  D.I. 237 at14.  These flagrant and repeated discovery violations are exactly the type that should be deterred.  *Belk v. Charlotte-Mecklenburg Bd. of*

*Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (finding repeated discovery violations warrant deterrence).

The final *Wilson* factor—whether less drastic sanctions would have been appropriate—also weighs in favor of exclusion.  Indeed, the Court already found that the harm caused by Deque's discovery violations "cannot be easily cured."  D.I. 237 at 12.  The Court held that "[d]iscovery would need to be reopened," "revised expert opinion reports would likely need to be prepared," "additional depositions would be in order," and "trial would need to be continued for a significant period of time."  *Id*.  Such disruption to Court's docket and schedule weighs heavily in favor of exclusion.  *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493, at *8 (E.D. Va. Aug. 7, 2020) (holding where "there is no ability for…[plaintiff] to cure the surprise to…[defendant] without disrupting preparations for trial in this case," it "weighs strongly in favor of the exclusion of any damages evidence at trial").  In sum, under any standard, the Court properly exercised its discretion to exclude Deque's damages case.

### C.    The Court Correctly Found Deque Had No Evidence of Damages

Deque next argues that even if the Court's exclusion was appropriate, summary judgment was inappropriate because despite exclusion of evidence of damages, Deque somehow still could have presented evidence of damages.  D.I. 266 at 22-25.  Deque misunderstands the scope of the Court's exclusion.  The Court held "Deque clearly and repeatedly failed to disclose adequately *its damages claim* in its initial disclosures, responses to BrowserStack's damages interrogatories, or expert reports, as prescribed by Rule 26 of the Federal Rules of Civil Procedure" (D.I. 237 at 7-8) (emphasis added), and it thus precluded Deque from presenting evidence of damages theories that it should have disclosed but did not, including evidence related to the late disclosed

damages theories "contained in [Deque's] rebuttal expert report and second supplement to [Deque's] Rule 26 disclosures." *Id.* at 14; *see also generally id.*

Deque appears to think it is merely precluded from presenting its second supplemental initial disclosures or its rebuttal expert report as evidence. But that is not and cannot be the scope of the exclusion because initial disclosures and expert reports are not evidence; the exclusion of such materials by itself would be meaningless. *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("expert reports … are hearsay and, absent agreement to their admission, are inadmissible"). Instead, after concluding that "Deque clearly and repeatedly failed to disclose adequately its *damages claim* in its initial disclosures, responses to BrowserStack's damages interrogatories, or expert reports" (D.I. 237 at 7 (emphasis added)), the Court evaluated whether Deque's failure to disclose "three categories of damages that Deque [now] seeks:  disgorgement of revenue, lost profits, and avoided development costs" was substantially justified or harmless. *Id.* at 10.  Then, after determining that Deque's failure to timely disclose the details of its "disgorgement of revenue, lost profits, and avoided development costs" theories was not harmless or justified, the Court precluded (pursuant Rule 37(c)(1)) Deque from presenting evidence in support of these undisclosed damages theories. *Id.* at 10-14.

Deque now contends that even in light of the Court's exclusion, it could present evidence of damages through the testimony of its CEO, Preety Kumar. D.I. 266 at 23-24. Deque asserts that Ms. Kumar could testify regarding Deque's lost profits and disgorgement of BrowserStack revenue. *Id.*  But not only was Deque excluded from presenting any evidence of lost profits or disgorgement of BrowserStack's revenue, this Court already addressed Deque's argument in its summary judgment order. It already found that Ms. Kumar, who was Deque's Rule 30(b)(6) representative with respect to "all damages [Deque] claim or otherwise seek to recover in this

Action," was unable at her deposition to explain "with any specificity Deque's claimed damages, or how they were calculated; … [and did not] appear to have the necessary qualifications to testify about BrowserStack's financials under Rule 701 of the Federal Rules of Evidence."  D.I. 237 at 15.  Deque attempts to circumvent the Court's ruling by arguing that Ms. Kumar's "difficulty specifically quantifying Deque's damages" at her deposition was because "BrowserStack had failed to provide the required information to calculate Deque's damages."  D.I. 266 at 23.  It makes the disingenuous and unsupportable claim that since Ms. Kumar's deposition "much of the information requested from BrowserStack has been provided and Ms. Kumar has been given an opportunity to review this information" she is now able to testify as to Deque's damages (lost profits and disgorgement of BrowserStack's revenue).  *Id*.  Deque's argument ignores that the Court excluded any evidence in support of Deque's late disclosed damages theories including lost profits and disgorgement of BrowserStack's revenue—which includes the now proposed testimony from Ms. Kumar.  Moreover, Deque's argument is factually wrong.  BrowserStack made one document production since Ms. Kumar's October 8, 2024 deposition.  Declaration of Ryan J. Marton In Support of Defendants' Opposition to Deque's Motion for Reconsideration ("Marton Decl.") ¶ 2.  That production included eleven documents, four of which were designated "Highly Confidential Attorney's Eyes Only" and could not be reviewed by Ms. Kumar.  *Id*.  The seven documents in that production that she could review were different invoices and receipts issued to BrowserStack by Deque for the DevTools product.  *Id*.  Not only would Deque have these documents already (they are Deque documents), these receipts and invoices have nothing to do with any of the damages theories Deque asserts that Ms. Kumar should be allowed to testify about.

Deque next contends that despite the exclusion, it could present evidence of BrowserStack's revenue in support of its disgorgement damages theory.  D.I. 266 at 24-25.  Deque again ignores the

fact that this Court excluded any evidence of Deque's undisclosed damages theories including disgorgement of BrowserStack revenue. Deque further ignores that this Court also concluded that none of Deque's witnesses "appear to have the necessary qualifications to testify about BrowserStack's financials under Rule 701 of the Federal Rules of Evidence." D.I. 237 at 15.

Finally, Deque argues that despite the Court's exclusion order, it can still "prove it is entitled to attorney's fee and costs for BrowserStack's blatant copyright infringement and breach of contract." D.I. 266 at 25-26. But in the very next paragraph Deque acknowledges that it is "not seeking attorney's fees directly under the Copyright Act[.]" D.I. 266 at 26. Deque is not seeking attorney's fees under the Copyright Act because it cannot. To be entitled to an award of attorney's fees under the Copyright Act, a copyright owner must register its copyright before or within three months of the work's first publication. 17 U.S.C. § 412. By Deque's own admission, it did not register its copyrights until years after publication of the works. D.I. 145 at 4 (SUF 7). Similarly, Deque does not provide any basis for seeking attorney's fees for a contract claim--particularly where there are no damages. Indeed, damages are an essential element of a breach of contract. *Daily v. White*, 520 F. Supp. 3d 835, 841 (W.D. Va. 2021). Thus, given the Court's exclusion order, it is not clear how Deque could obtain attorney's fees on a failed contract claim. Deque also asserts "attorney's fees [are] available for a violation of section 18.2-216 of the Virginia Code." D.I. 266 at 26. But Section 18.2–216 only "subjects the defendant to an action for damages [and attorney's fees] [under Va.Code Ann. § 59.1–68.3]" where the plaintiff has "suffer[ed] loss as the result" of a statutory violation. *See Henry v. R.K. Chevrolet, Inc.*, 219 Va. 1011, 1013-14 (1979); *see also Klaiber v. Freemason Associates, Inc.*, 266 Va. 478, 487 (2003) ("[Section 59.1–68.3] by its express terms requires, however, that the plaintiff must 'suffer[ ] loss' in order to recover"). Thus, given the Court's exclusion of evidence of

15

damages or loss as a result of the alleged false advertising, Deque cannot have a claim for attorney's fees or any recovery for the alleged violation of the Virginia Code.

In sum, in light of the Court's exclusion of evidence in support of Deque's damages theories (including, disgorgement of revenue, lost profits, and avoided development costs), Deque cannot present any evidence in support of any type of monetary relief (*e.g.*, attorney's fees). And, thus, as the Court already found, all of Deque's claims fail.

### D.  The Court's Order Was Not Unjust

In a last ditch plea to overturn the Court's ruling, Deque argues that even absent an error the Court should reconsider its ruling because of the purported strength of Deque's evidence of copying. D.I. 266 at 26-29. But no case holds that even in the absence of evidence of essential elements of a claim, the claim remains viable because of the strength of evidence in support of other elements of the claim. Such a holding would be nonsensical and inconsistent with the basic requirement that to succeed on a claim, a plaintiff must prove all essential elements. Moreover, contrary to its assertion, Deque does not have any viable evidence of copying. There is no evidence of the accused BrowserStack Accessibility Toolkit product on Deque's trial exhibit list. *See* D.I. 123. Instead, Deque relies on a Requirements document that was made in India (beyond the reach of U.S. Copyright law), and there is no evidence that any of the information from the Requirements document was included in the accused Accessibility Toolkit product. D.I. 169 at 15-18. Deque also relies on a purported admission of BrowserStack's CEO. But BrowserStack's CEO never made such an admission and, in any case, the alleged "admission" is inadmissible because it was made in the course of a settlement discussion. D.I. 169 at 6-8; D.I. 165. In short, Deque has never had a viable claim, and the Court's disposal of the case on summary judgment was not only just, but required by the law.

## IV.    CONCLUSION

For the foregoing reasons, BrowserStack respectfully requests this Court deny Deque's Motion for Reconsideration.

Dated:  February 24, 2025                Respectfully submitted,

/s/    Belinda D. Jones
Belinda D. Jones (VSB No. 72169)
bjones@cblaw.com
Roman Lifson (VSB No. 43714)
rlifson@cblaw.com
Christian & Barton, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-3095
Tel.:            (804) 697-4100
Fax:            (804) 697-4112


Ryan J. Marton (*pro hac vice* admitted)
ryan@martonribera.com
Songmee L. Connolly (*pro hac vice* admitted)
songmee@martonribera.com
Phillip J. Haack (*pro hac vice* admitted)
phaack@martonribera.com
Carolyn Chang (*pro hac vice* admitted)
carolyn@martonribera.com
Hector Ribera (*pro hac vice* admitted)
hector@martonribra.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:        (415) 360-2515

*Attorneys for Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd.*