# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

DEQUE SYSTEMS INC.

         Plaintiff,

   v.

                                 Case No. 1:24-cv-00217-AJT-WEF

BROWSERSTACK, INC., and
BROWSERSTACK SOFTWARE PVT. LTD.,

         Defendants.


## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS.......................................................... 3

    A.    Deque's Claims Against BrowserStack ....................................................... 4

        1.    Copyright Infringement Claim .......................................................... 4

        2.    False Advertising Claims ................................................................... 6

        3.    Breach of Contract Claim .................................................................. 7

        4.    Unjust Enrichment Claim .................................................................. 8

    B.    Deque's Failure to Disclose Its Calculation of Damages During Discovery.......... 8

III.  SUMMARY JUDGMENT LEGAL STANDARD ...................................................... 10

IV.  ARGUMENT................................................................................................................ 11

    A.    The Court Should Enter Summary Judgment of No Damages .............................. 11

    B.    The Court Should Enter Summary Judgment of No Copyright Infringement ....... 17

        1.    There Is No Allegation of Copyright Infringement For Fifteen of Deque's Seventeen Asserted Copyrighted Works .................................................... 17

        2.    Deque Does Not Have Sufficient Evidence to Prove Copyright Infringement ............................................................................................ 17

            a.    Deque Has Insufficient Evidence of Extrinsic Similarity............. 18

            b.    Deque Has Insufficient Evidence of Intrinsic Similarity.............. 23

        3.    Deque Is Not Entitled to Statutory Damages, Enhanced Willfulness Damages, or Attorneys' Fees as a Matter of Law...................................... 24

        4.    BrowserStack India Cannot Be Liable for Copyright Infringement......... 25

    C.    The Court Should Enter Summary Judgment of No False Advertising................ 25

    D.    The Court Should Enter Summary Judgment of No Breach of Contract ............. 28

    E.    Deque's Unjust Enrichment Claims Are Preempted ............................................. 29

    F.    Deque Has No Basis to Seek an Injunction ......................................................... 30

**V.  CONCLUSION** ...................................................................................................................... **30**

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adickes v. S.H. Kress & Co.*,
39 U.S. 144 (1970) ................................................................................................ 10

*Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*,
No. 19-cv-505, 2020 WL 4574493 (E.D. Va. Aug. 7, 2020) ........................... 15, 16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .............................................................................................. 11

*Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*,
26 F. Supp. 2d 834 (E.D. Va. 1998) .................................................................... 30

*Bldg. Graphics, Inc. v. Lennar Corp.*,
708 F.3d 573 (4th Cir. 2013) .......................................................................... 17, 18

*Bouchat v. Baltimore Ravens Football Club, Inc.*,
346 F.3d 514 (4th Cir. 2003) .......................................................................... 11, 17

*Bouchat v. Bon-Ton Dept. Stores, Inc.*,
506 F.3d 315 (4th Cir. 2007) ............................................................................... 24

*Carter v. Ball*,
33 F.3d 450 (4th Cir. 1994) ................................................................................. 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 10

*Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*,
977 F. Supp. 2d 567 (E.D. Va. 2013) .................................................................. 24

*Christopher Phelps & Assocs., LLC v. Galloway*,
492 F.3d 532 (4th Cir. 2007) ............................................................................... 30

*Copeland v. Bieber*,
789 F.3d 484 (4th Cir. 2015) ...................................................................... 18, 22, 23

*Cottrell v. General Sys. Software Corp.*,
448 S.E.2d 421 (Va. 1994) ................................................................................... 28

*CQ, Inc. v. TXU Min. Co., L.P.*,
565 F.3d 268 (5th Cir. 2009) ............................................................................... 16

*CSS, Inc. v Herrington,*
  2:16-cv-01762, 2017 WL 3381444 (S.D. W. Va. Aug. 4, 2017)............................................. 21

*Dawson v. Hinshaw Music Inc.,*
  905 F.2d 731 (4th Cir. 1990) ...................................................................................... 2, 18, 23

*Design Res., Inc. v. Leather Indus. of Am.,*
  789 F.3d 495 (4th Cir. 2015) .................................................................................................. 26

*Design Res., Inc. v. Leather Indus. of Am.,*
  No. 1:10CV157, 2014 WL 4159991 (M.D.N.C. Aug. 19, 2014), *aff'd*, 789 F.3d 495 (4th Cir.
  2015) ..................................................................................................................................... 27

*Design Strategy, Inc. v. Davis,*
  469 F.3d 284 (2d Cir. 2006)................................................................................................... 12

*Devil's Advocate, LLC v. Zurich Am. Ins. Co.,*
  666 F. App'x 256 (4th Cir. 2016) .......................................................................................... 18

*Eaton v. Nat'l Broad. Co.,*
  972 F. Supp. 1019 (E.D. Va. 1997) ....................................................................................... 22

*Faulkner v. Nat'l Geographic Soc.,*
  576 F. Supp. 2d 609 (S.D.N.Y. 2008) ................................................................................... 25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991)............................................................................................................... 18

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,*
  586 U.S. 296 (2019)............................................................................................................... 24

*Gillum v. ICF Emergency Mgmt. Servs., LLC,*
  No. 08-cv-314, 2009 WL 1458200 (M.D. La. May 21, 2009) .............................................. 12

*Goldberg v. B. Green & Co.,*
  836 F.2d 845 (4th Cir. 1988) ................................................................................................. 11

*Gould Paper Corp. v. Madisen Corp.,*
  614 F. Supp. 2d 485 (S.D.N.Y. 2009) ................................................................................... 17

*Harmon v. Dyncorp Int'l, Inc.,*
  No. 1:13CV1597 LMB/TRJ, 2015 WL 518594 (E.D. Va. Feb. 6, 2015), aff'd, 624 F. App'x
  104 (4th Cir. 2015)................................................................................................................. 30

*Hoffman v. Constr. Protective Servs., Inc.,*
  541 F.3d 1175 (9th Cir. 2008) ............................................................................................... 15

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*,
    43 F. Supp. 3d 644 (E.D. Va. Sept. 2, 2014) ........................................................ 18

*Isom v. Midwest Div.-OPRMC, LLC*,
    No. 13-2602-RDR, 2014 WL 3541842 (D. Kan. July 17, 2014)............................ 12

*Kohus v. Mariol*,
    328 F.3d 848 (6th Cir. 2003) ........................................................................... 18, 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118  (2014).............................................................................................. 27

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) .............................................................................. 19

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*,
    351 F. Supp. 2d 436 (M.D.N.C. 2005) ................................................................. 30

*Microstrategy v. Netsolve, Inc.*,
    368 F. Supp. 2d 533 (E.D. Va. 2005) ................................................................... 29

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
    No. SACV 16-01841-CJC(KESx), 2019 WL 13045043 (C.D. Cal. Apr. 15, 2019)............... 17

*Moke Am. LLC v. Am. Custom Golf Cars, Inc.*,
    No. 3:20CV400 (DJN), 2023 WL 3686963 (E.D. Va. Jan. 11, 2023)..................... 17

*OpenRisk, LLC, v. Microstrategy Servs. Corp.*,
    876 F.3d 518, 523 (4th Cir. 2017) ........................................................................ 29

*Palmer v. Braun*,
    376 F.3d 1254 (11th Cir. 2004) ............................................................................ 25

*Pilar Servs., Inc. v. NCI Info. Sys., Inc.*,
    569 F. Supp. 2d 563 (E.D. Va. 2008) ................................................................... 29

*Rambus, Inc. v. Infineon Techs. AG*,
    145 F. Supp.2d 721 (E.D. Va. June 12, 2001) ...................................................... 14

*Reed Constr., Inc. v. James River Ins. Co.*,
    No. C11-960 MJP, 2012 WL 13024803 (W.D. Wash. Apr. 6, 2012) ..................... 15

*Reyes v. Wells Fargo Bank, N.A.*,
    No. 1:13-cv-547, 2013 WL 3874527  (E.D. Va. July 24, 2013)............................. 30

*Richardson v. Clarke*,
  52 F.4th 614 (4th Cir. 2022) ........................................................................ 10

*Rowell v. Palmetto Health Alliance*,
  3:093077, 2011 WL 4501978 (D. S.C. Aug. 17, 2011) ................................ 19

*Ruddy v. Bluestream Pro. Serv., LLC*,
  No. 1:18-CV-1480, 2020 WL 13694227 (E.D. Va. July 16, 2020) .............. 12

*Salgado by Salgado v. General Motors Corp.*,
  150 F.3d 735 (7th Cir. 1998) ....................................................................... 14

*SAS Inst., Inc. v. World Programming Ltd.*,
  64 F.4th 1319 (Fed. Cir. 2023) .............................................................. 20, 21

*Scotts Co., LLC v. Pennington Seed, Inc.*,
  No. 3:12-CV-168, 2014 WL 12591406 (E.D. Va. Feb. 26, 2014) .......... 26, 27

*Silicon Knights, Inc. v. Epic Games, Inc.*,
  No. 5:07-CV-275-D, 2012 WL 1596722 (E.D.N.C. May 7, 2012) ......... 15, 16

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
  426 F. Supp. 3d 217 (E.D. Va. 2019) ......................................................... 24

*Southern States Rack and Fixture, Inc. v. Sherwinn-Williams Co.*,
  318 F.3d 592 (4th Cir. 2003). ...................................................................... 14

*Subafilms, Ltd. v. MGM–Pathe Commc'ns*,
  24 F.3d 1088 (9th Cir. 1994) ....................................................................... 25

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*,
  2016 WL 6562075 (C.D. Cal. Aug. 9, 2016) ........................................... 1, 16

*Towler v. Sayles*,
  76 F.3d 579 (4th Cir. 1996) .................................................................... 18, 19

*Ullah v. Linkenauger*,
  No. 120CV00634AJTJFA, 2020 WL 9459338, at *7 (E.D. Va. Oct. 2, 2020); ...................... 29

*United States ex rel. Berge v. Board of Trustees of the University of Alabama*,
  104 F.3d 1453, 1463 (4th Cir. 1996) ........................................................... 29

*Verisign, Inc. v. XYZ.COM LLC*,
  848 F.3d 292 (4th Cir. 2017) ................................................................. 26, 27

*Verisign, Inc. v. XYZ.com, LLC*,
No. 1:14-CV-01749, 2015 WL 7430016 (E.D. Va. Nov. 20, 2015), *aff'd*, 848 F.3d 292 (4th Cir. 2017) ............................................................................................................. 27

*Wall & Assocs., Inc. v. Better Bus. Bureau of C. Va., Inc.*,
685 F. App'x 277 (4th Cir. 2017) ................................................................. 28

*Williams v. CDP, Inc*.,
No. 4:09CV84, 2009 WL 10689717 (E.D. Va. Sept. 17, 2009) .............................. 28

*WJ Glob. LLC v. Farrell*,
941 F. Supp. 2d 688 (E.D.N.C. 2013) ................................................................ 29

*WRH Mortg., Inc. v. S.A.S. Assocs*.,
214 F.3d 528 (4th Cir. 2000) ......................................................................... 29

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ........................................................................ 14

## Statutes

17 U.S.C. § 301(a .......................................................................................... 29

17 U.S.C. § 412 .............................................................................................. 24

17 U.S.C. § 412 .............................................................................................. 25

17 U.S.C. § 504(c)(2) ..................................................................................... 24

17 U.S.C. §§ 102, 103 .................................................................................... 29

Va. Code Ann. § 59.1-68.3 .............................................................................. 27

## Other Authorities

Clapes, Lynch & Steinberg, *Silicon Epics and Binary Bards: Determining the Proper Scope of Copyright Protection for Computer Programs*, 34 U.C.L.A. L.Rev. 1493, 1571 (1986-87)23

## Rules

Fed. R. Civ. P. 26(a)(1)(A)(iii) ....................................................................... 11

Fed. R. Civ. P. 56(a) ....................................................................................... 10

Fed. R. Civ. P. 56(c) ....................................................................................... 11

Fed. R. Civ. P. 56(g) ................................................................................................ 11

Fed. R. Civ. P. 37(c)(1) ............................................................................................ 14

## I.    INTRODUCTION

There is no reason this case should go to trial.  Plaintiff Deque Systems, Inc. ("Deque") filed this lawsuit not to remedy any harm or to rectify any actual wrongdoing by BrowserStack, Inc. ("BrowserStack US") or BrowserStack Software Pvt. Ltd. ("BrowserStack India"), (collectively, "BrowserStack").  Deque filed suit just to have allegations of misconduct to wave around when competing against BrowserStack in the marketplace.  Deque's misuse of the litigation process is highlighted by the fact that, in the nine months since filing suit, it has done almost nothing to develop evidence needed to prove its allegations of copyright infringement and false advertising.  Now, with discovery closed and the trial date looming, Deque must face the consequences of its inaction—that it has no triable issue of material fact to present to a jury.

As an initial matter, Deque cannot recover any money damages.  At no point during discovery did Deque articulate its damages.  It did not disclose a damages calculation in its initial disclosures.  SUF[1] 30, 34.  In discovery, Deque did not disclose how to calculate damages or even the amount it was claiming.  SUF 31, 33.  Its corporate representatives were unable to explain the basis for its damages claim.  SUF 35-37.  And it did not offer any affirmative expert opinion on damages.  SUF 32.  Having made none of the requisite disclosures, Deque cannot now present a damages claim to the jury.  *See TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2016 WL 6562075, at *12 (C.D. Cal. Aug. 9, 2016) (granting summary judgment where plaintiff failed to timely disclose a computation of damages).

Deque also failed to develop sufficient evidence to prove copyright infringement.  Actionable copying requires Deque to prove that BrowserStack's accused software is

---

[1] Citations to SUF refer to the numbered paragraphs and evidence cited in the Statement of Undisputed Facts in Section II of this Brief, *infra*.

"substantially similar" to Deque's copyrighted works, a two-prong inquiry that requires analysis of both similarity of ideas (*i.e.*, extrinsic similarity after filtering out unprotectable elements of the work), as well as similarity of expression (*i.e.*, intrinsic similarity considered from the perspective of the work's intended audience). *See Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732-33 (4th Cir. 1990). But Deque made no effort to develop evidence for either prong. It does not have sufficient evidence, expert or otherwise, to show extrinsic similarity of the accused BrowserStack software to the protected elements of Deque's copyrighted software. Its unverified interrogatory responses are devoid of any analysis of "substantial similarity," making no effort to filter protected from unprotectable expression. SUF 9-13, 15-16. And it offers no expert testimony analyzing either the accused or copyrighted works. SUF 15. It also failed to develop evidence for a jury to determine intrinsic similarity, neglecting to proffer evidence from the perspective of the intended audience of Deque's copyrighted works, which in this case requires specialized software knowledge. SUF 16. Without such evidence, no reasonable jury could find the "substantial similarity" needed for copyright infringement.

Finally, Deque has no evidence that shows BrowserStack made any false statements, or that any statements caused any customer confusion. Deque has not identified any evidence showing that any at-issue statements were false. SUF 19. It has no evidence, through customer surveys or otherwise, that BrowserStack made statements that confused or misled any customers. SUF 19, 21, 23. In fact, the undisputed evidence shows that each accused statement about the capabilities of Deque's product was true, as verified by Deque's own witnesses. SUF 20-22.

In short, Deque does not have enough evidence to prove its case. It does not have a damages claim. It does not have sufficient evidence to support a finding of copyright infringement. And it has no evidence that any statement made by BrowserStack was false or

misleading.  That is because Deque's fight with BrowserStack belongs in the marketplace, not a courtroom.  This Court should enter summary judgment in favor of BrowserStack.

## II.    STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff Deque is a digital accessibility software and services company.  It offers tools, services, and training to help ensure people with disabilities have access to websites and Internet software applications.  FAC (D.I. 44-1) ¶¶ 18-19.

2.    One of the products offered by Deque is axe DevTools®, a browser extension that allows website developers to test their products using their web browsers.  FAC ¶¶ 21, 25.

3.    Defendant BrowserStack India is an Indian entity with its principal address in Mumbai, India.  Declaration of Apurv Jain in Support of Motion for Summary Judgment ("Jain Decl.") ¶ 4.  It designs and develops software that allows software developers to test websites and mobile applications for functionality and performance, ensuring they run as intended.  *Id*. All development of BrowserStack's products are done by BrowserStack India.  *Id.*  And all BrowserStack India operations occur in India.  *Id*.

4.    Among the many software products BrowserStack India offers is the Accessibility Toolkit, a browser extension for Google Chrome and Microsoft Edge web browsers that evaluates the navigability, readability, and compatibility of websites with assistive technologies for those with disabilities.  Jain Decl. ¶ 7.  All engineers involved in the development of the Accessibility Toolkit are employees of BrowserStack India.  *Id*.

5.    Defendant BrowserStack US is a Delaware corporation with an address in Texas. It provides marketing and distribution services for BrowserStack Limited, the Irish parent company of BrowserStack India and BrowserStack US.  Jain Decl. ¶ 5.  BrowserStack US is not involved in the design or development of any BrowserStack software.  *Id*.

A.    **Deque's Claims Against BrowserStack**

6.    Deque filed suit on February 13, 2024.  *See* D.I. 1.  Its FAC asserts five causes of action, all of which are based on allegations that BrowserStack copied Deque's axe DevTools® when developing its Accessibility Toolkit product and that BrowserStack made false or misleading statements on its website.  *See* FAC ¶¶ 73-106.

1.    **Copyright Infringement Claim**

7.    Between November 30, 2023 and February 4, 2024, Deque registered 17 U.S. copyrights for axe DevTools® and its Rules Help Pages, years after the creation of the works, and right before filing suit.  *See* FAC ¶¶ 37-38, Ex. D-E.

8.     Deque alleges that BrowserStack infringed two of the asserted works by copying portions of axe DevTools® and the Rules Help Pages into its Accessibility Toolkit, which was released in May or June 2023.  *See* FAC ¶¶ 42-44, 56, 58, 73-75.  Deque did not identify any specific conduct taken by BrowserStack India in the United States.  *See id.*; Exs. 2-3 (Rogs. 2-4).

9.    Deque does not present any allegations or evidence regarding infringement of fifteen of its seventeen asserted works.  *See* Ex. 2[2] at 2-5, Ex. 3 at 1-3 & Exhibit A; FAC ¶¶ 42-44, 56 (alleging copying of Axe Dev Tools v4.9.0 and Rules Help Pages).  Specifically, in its unverified interrogatory responses, Deque identifies only two of its seventeen registered works.  Marton Decl. ¶ 6, Ex. 3 at 1-3 & Exhibits A-B.  Additionally, the interrogatory responses (including Exhibits A and B) purport to compare portions of two of Deque's registered works with portions of something referenced as "BrowserStack 1.00.4."  Ex. 3 at Exhibits A-B.  But there is no indication as to what underlying evidence was reviewed.  *Id.*

---

[2]  Citations to numbered exhibits refer to the exhibits attached to Declaration of Ryan J. Marton ("Marton Decl.") submitted herewith.

10.     Nor has Deque identified what it contends are the protected elements of its copyrighted works.  *See* Ex. 3 at 1-3 & Exhibits A-B.  Deque did not make any Rule 26(a)(2) expert disclosures.  Marton Decl. ¶ 5.  Consequently, Deque has no evidence of anyone with the requisite technical expertise analyzing either Deque's copyrighted works, including its axe DevTools® software, or the accused BrowserStack Accessibility Toolkit.  *Id.* ¶¶ 3, 5; *see also* Ex. 3 at 1-3 & Exhibits A-B.

11.     Deque acknowledges that the allegedly copied portions of its copyrighted works relate to public accessibility standards, such as "the web content authoring guidelines, abbreviated at WCAG and ARIA, Accessible Rich Internet Applications."  Marton Decl. ¶¶ 15-16, Ex. 10 at 36:24-37:8.

12.     Deque testified that the author of those portions, Melanie Phillips, spent "countless hours reviewing various specifications in the field of web accessibility" and "used that knowledge  . . . in order to create these descriptions."   Ex. 10 at 35:9-37:16; *see also id.* at 29:25-30:12, 38:23-39:9, 40:23-43:5 (referencing Ex. 3 at Exhibit A).

13.     But in its unverified interrogatory responses, Deque did not identify Ms. Phillips as an individual who contributed to the conception, creation, and/or development of Deque's copyrighted works.  Marton Decl. ¶ 4, Ex. 2 at 2-3 (Response to Rog. 1).  Nor did it identify Ms. Phillips in its Rule 26(a)(1) initial disclosures as someone with relevant information about Deque's copyrighted works.  Exs. 1, 4.

14.     None of the allegedly copied content exists in the current version of BrowserStack's Accessibility Toolkit.  Jain Decl. ¶ 19; *see* Ex. 3 at Exhibits A-B.

15.     Deque did not provide any technical expert disclosures to support its copyright claim, neglecting to examine axe DevTools® to separate out protected from unprotectable

elements or to compare axe DevTools® with BrowserStack's Accessibility Toolkit source code for substantial similarity.  Marton Decl. ¶ 5.  Indeed, Deque chose not to review the source code for the accused BrowserStack Accessibility Toolkit that BrowserStack made available for review, and thus could not, and did not, compare the protected elements of Deque's axe DevTools® with BrowserStack's Accessibility Toolkit source code.  *Id*. ¶ 3.

16.    Deque admits that software developers are the target users of axe DevTools®. Ex. 10 at 149:17-150:3.  But, in response to discovery asking Deque to identify all facts supporting its copyright infringement claims, Deque did not set forth any facts showing that the accused Accessibility Toolkit is similar to axe DevTools® from the perspective of software developers who would be using Deque's copyrighted works.  *See* Ex. 3 at 1-3 & Exhibits A-B; Marton Decl. ¶ 5.

### 2.    False Advertising Claims

17.    Deque also asserts false advertising under federal and Virginia law, alleging that BrowserStack made the following statements about Deque in an advertisement on its website:

- BrowserStack's software is 5x faster;
- Deque's software does not have a central dashboard, and does not support multi-page scanning, report consolidation, or de-duplication of issues.

Ex. 5 at 3 (Response to Rog. 13); FAC ¶¶ 62-67, 88-90, 98-100.

18.    These statements are not on BrowserStack's current website.  Jain Decl. ¶ 9.

19.    Nor is there any evidence the statements are false or misleading.  In response to discovery seeking all facts or evidence supporting its claim that statements made by BrowserStack were false or misleading, Deque's unverified responses simply conclude, without evidence, that "Defendants did not disclose that its '5x faster' claim was based on specific

assumptions that make the claim misleading.  The fact that Deque's software has the features that Defendants advertisements stated it lacked."  Ex. 5 at 3 (Response to Rog. 13).

20.    Moreover, BrowserStack did, in fact, analyze its Accessibility Toolkit product and determined that it is approximately five times faster than other web accessibility testing products, including Deque's axe DevTools®.  Jain Decl. ¶¶ 11-16 (estimating that competitor products took approximately 100 minutes to scan and de-duplicate 10 pages with 10 states, while the Accessibility Toolkit took an estimated 20 minutes).

21.    Deque testified that it was not aware if any of the statements were false.  Ex. 10 at 135:4-25.  It admits that as of February 2024, axe DevTools® did not have a central dashboard, or support report consolidation, automatic de-duplication, or multi-page scanning.  *Id.* at 151:10-153:23 (no multi-page scanning until June), 156:19-158:13 (no multi-state scans), 158:14-159:16 (no multiple reports), 159:17-160:4 (no de-duplication), 171:24-174:21 (no central dashboard); Marton Decl. ¶ 12, Ex. 8 at 275:14-276:24, 280:7-281:3 (axe DevTools® does not have central dashboard), 282:15-283:5 (no multiple reports), 282:5-14 (no multipage scanning), 283:6-10 (no de-duplication); *see also* Jain Decl. ¶ 17.

22.    And at the time this lawsuit was filed, BrowserStack was not aware of Deque's axe DevTools® supporting any of these features.  Jain Decl. ¶¶ 16, 18.

23.    Deque is not aware if any of its customers saw any of the alleged statements.  Marton Decl. ¶¶ 17-18, Ex. 11 at 90:11-91:17.  Nor does Deque know whether it has lost a customer or any revenue because of the alleged statements.  *Id*. at 90:19-92:10; Ex. 8 at 284:6-15; Marton Decl. ¶¶ 13-14, Ex. 9 at 101:9-16, 102:11-21, 104:21-106:8; Ex. 10 at 133:18-134:8.

### 3.    Breach of Contract Claim

24.    For its breach of contract claim, Deque alleges that BrowserStack purchased axe DevTools® and agreed to Deque's Pro Software License (the "Agreement"), which prohibited

creation of derivative works of axe DevTools® or publication of any benchmark tests or evaluation run of axe DevTools®.  FAC ¶¶ 27-35, 55, 79-82.

25.    Deque claims BrowserStack's alleged copying breached the Agreement's prohibition against creating derivative works, and the "5x faster" statement breached the prohibition against benchmark tests or evaluation runs of axe DevTools®.  FAC ¶¶ 79-83.

26.    BrowserStack US never purchased or used axe DevTools®, and thus, never executed the Agreement.  *See* Jain Decl. ¶¶ 5-6.

27.    Furthermore, BrowserStack did not conduct any benchmark tests or evaluation runs of axe DevTools®.  Jain Decl. ¶ 15.

### 4.    Unjust Enrichment Claim

28.    For its final cause of action, Deque alleges that BrowserStack has been unjustly enriched by its alleged copying of Deque's axe DevTools®, and thus should be required to disgorge all profits from such use.  *See* FAC ¶¶ 105-106.

### B.    Deque's Failure to Disclose Its Calculation of Damages During Discovery

29.    For each cause of action discussed above, Deque seeks recovery of money damages.  *See* FAC ¶¶ 75-76, 85, 91, 93-94, 102, 106.

30.    In its initial disclosures, Deque did not provide a "computation" of damages as required by Rule 26.  Ex. 1 at 6.  Nor did it reference any documents or evidence supporting its damages claims.  *Id*.  Instead, Deque simply stated that it "seeks lost profits and/or Defendants' revenue" and "damages in the amount that Defendants' [*sic*] have been unjustly enriched."  *Id*.

31.    On July 29, 2024, in response to an interrogatory asking Deque to "identify each item of damages. . . including the type of damages, the amount, how such amounts are calculated," Deque indicated that it would seek its lost profits, BrowserStack's profits, and attorneys' fees.  Ex. 2 at 7-8 (Response to Rog. 9).  Deque did not, however, disclose any damages amount or how to

calculate damages, stating that "calculations of the amounts of damages that it seeks to recover . . . shall be disclosed at a future time in this litigation through expert reports or otherwise." *Id.* at 8.

32.     But eleven days later, on August 9, 2024, when its expert reports on damages were due, Deque elected not to serve a damages expert report.  Marton Decl. ¶ 5.  And it did not otherwise disclose its calculation of the damages it was seeking in this case.  *Id*.

33.     Three weeks later, on August 30, 2024, Deque supplemented its interrogatory responses.  Ex. 3.  It still did not disclose its calculation of damages, continuing to state that "[s]uch amounts shall be disclosed at a future time in this litigation, through either expert reports, testimony or otherwise" despite the fact that its expert disclosure deadline passed weeks before. *Id*. at 3-5 (Response to Rog. 9); *see also* Ex. 5 at 6 (Responses to Rogs. 19-20).

34.     On September 6, 2024, four weeks after its deadline for expert disclosures, Deque served its Supplement to Its Initial Disclosures to identify an expert witness on damages, but did not supplement its damages disclosure under Rule 26(a)(1) or make any affirmative expert disclosures on damages under Rule 26(a)(2).  Marton Decl. ¶ 7, Ex. 4.

35.     On October 8, 2024, three days before the close of discovery, Deque was unable to articulate a specific damages figure or identify the basis for any damages claim.  Ex. 9 at 165:12-17, 171:17-22 (claiming it was unable to quantify damages because it did not have needed information); 166:6-167:4 (unable to identify harm suffered from BrowserStack's alleged copying); 82:3-16 (unable to identify any customers lost to BrowserStack); 158:21-159:20, 169:12-170:21 (no knowledge of whether Deque would have been able to make BrowserStack's sales); 101:9-16, 102:11-21, 104:21-106:8 (unable to identify any lost customers or lost revenue due to alleged false advertising); 170:22-171:16 (unaware of harm to reputation and unable to quantify any loss of goodwill).

9

36.     On October 10, 2024—just one day before the close of discovery—Deque was unable to identify any revenue earned from its copyrights and did not know if it lost any revenue as a result of any of BrowserStack's alleged conduct.  Ex. 11 at 33:4-36:17 (unable to identify revenue received from any specific copyrighted work); 104:9-16 (unable to identify additional revenue Deque would have earned without BrowserStack in the market as such estimate would be "highly speculative"); 90:11-92:10 (unaware of whether any customers saw BrowserStack's allegedly false statements or whether Deque lost any business due to those statements).

37.     Additionally, neither Deque's CTO and nor its Senior Product Manager were aware of any lost sales due to the statements Deque alleges BrowserStack made about axe DevTools®.  Ex. 8 at 284:6-15; Ex. 10 at 133:18-134:8.

## III.    SUMMARY JUDGMENT LEGAL STANDARD

A party may move for summary judgment by identifying either a claim or defense, or a part of a claim or defense, on which summary judgment is sought.  Fed. R. Civ. P. 56(a). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact."  *Id.*  An issue of material fact is genuine if—based on the available evidence—no reasonable factfinder could find in favor of the non-movant.  *Richardson v. Clarke*, 52 F.4th 614, 618 (4th Cir. 2022).

Where the non-movant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense (*see Adickes v. S.H. Kress & Co.*, 39 U.S. 144, 158-60 (1970)), or (2) showing that there is an absence of evidence to support the nonmoving party's case (*see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003), quoting *Anderson*, 477 U.S. at 247-48 (emphasis in original).

Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## IV.    ARGUMENT

### A.    The Court Should Enter Summary Judgment of No Damages

Deque was required at several points to disclose its computation of damages. It was required to do so in its initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring disclosure of "a computation of each category of damages claimed"). It did not. SUF 30, 34. It was required to do so in response to damages-related discovery requests. It did not. SUF 31, 33. It could have made Rule 26(a)(2) expert damages disclosures. It did not. SUF 32. Its witnesses could have testified as to the amount and bases for its damages claim. They did not. SUF 35-37.

Specifically, in its initial disclosures, Deque simply stated that it "seeks its lost profits and/or Defendants' revenue," "damages in the amount that Defendants' [*sic*] have been unjustly

enriched," and "enhanced damages, attorneys' fees, and pre- and post-judgment interest." SUF 30. It did not provide any dollar figure, calculation, or methodology, and did not ever amend its initial disclosures to provide any more specificity. SUF 30, 34. Such generalized recitation of damages is insufficient to satisfy Rule 26's requirement of a computation. *See Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227, at *2-4 (E.D. Va. July 16, 2020); *Isom v. Midwest Div.-OPRMC, LLC*, No. 13-2602-RDR, 2014 WL 3541842, at *3 (D. Kan. July 17, 2014) (finding failure to comply with Rule 26 where "original initial disclosures list the type of damages sought…but fail[ed] to provide any corresponding dollar computation"); *Gillum v. ICF Emergency Mgmt. Servs., LLC*, No. 08-cv-314, 2009 WL 1458200, at *3 (M.D. La. May 21, 2009) (noting that "vague assertions of damages" do not satisfy a party's obligation under Rule 26); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents").

When asked in discovery to "identify each item of damages…including the type of damages, the amount, how such amounts are calculated," Deque's unverified responses merely asserted that it is seeking "all available damages." SUF 31, 33. It did not disclose a specific amount of claimed damages or how to calculate any such damages. *Id.* Instead, it stated that "the calculations of the amount of damages…are incomplete at this time…Such amounts shall be disclosed at a future time in this litigation, through either experts, testimony or otherwise." *Id.* But Deque's calculations remained incomplete. It never made any Rule 26(a)(2) expert disclosures to support an affirmative damages claim. SUF 32. Nor did it otherwise disclose its affirmative damages calculation at any time during this case. *Id.*; *see also* Marton Decl. ¶ 5.

Indeed, Deque's corporate representatives were also unable to provide a calculation of damages. Testifying on damages topics, Deque's founder and Chief Executive Officer, Preety Kumar, could not and did not articulate the basis for any damages claim. SUF 35. Just three days before the close of discovery, Ms. Kumar testified that Deque still could not quantify any harm suffered because it did not have information it needed from BrowserStack.[3] SUF 35 (Ex. 9 at 171:17-22); *see also* Ex. 9 at 165:12-17 ("How do you expect me to tell you what the damages are when you have not given any of the information that we requested to understand what are damages are. And I cannot possibly do it until you produce what we have requested.").[4] Ms. Kumar did not know if Deque lost any revenue or business, and could not identify any harm suffered from BrowserStack's alleged false advertising or copyright infringement. *Id.* (Ex. 9 at 101:9-16, 102:11-21, 104:21-106:8, 166:6-167:4). She could not identify any customers lost to BrowserStack (Ex. 9 at 82:3-16) and did not know whether Deque would have been able to make the sales that BrowserStack made. *Id.* (Ex. 9 at 158:21-159:20, 169:12-170:21). She also did not know whether Deque suffered any reputational harm. *Id.* (Ex. 9 at 170:22-171:7). Nor could she quantify any loss of goodwill. *Id.* (Ex. 9 at 171:8-11).

Testifying about revenues and profits, Deque's Vice President of Sales, Neel Sinha, similarly was unable to provide a damages calculation. SUF 36. Mr. Sinha did not know how much more revenue Deque would have received if BrowserStack's accused product was not

---

[3] There is no merit to Deque's discovery complaints. After consideration of Deque's motion to compel, this Court did not require further production of documents relating to damages, or otherwise. *See* Order on Motion to Compel (D.I. 127).

[4] Ms. Kumar made reference to a damages figure discussed during the parties' confidential settlement conference with Judge Fitzpatrick. Ex. 9 at 77:23-78:24, 106:9-24. But when pressed, Ms. Kumar was unclear as to the basis of the figure and continued to cite the need for more information from BrowserStack. *Id.* at 173:20-24 ("So until you get us the data that you owe us, that you should give us if you have nothing to hide all of this is just the flow of what we are talking about."); *see also id.* 171:23-172:6, 174:7-180:16.

available in the market, admitting that any such estimation would be "highly speculative." *Id.* (Ex. 11 at 104:9-16). He did not know how much revenue Deque has earned from any of its copyrighted works, nor was he aware of any lost business due to the allegedly false statements made by BrowserStack. *Id*. (Ex. 11 at 91:11-92:10). Thus, just one day before the close of discovery, Deque still did not know and did not disclose what, if any damages, it suffered.

Having failed to provide its damages calculation during discovery, Deque cannot now make a damages presentation at trial. Federal Rule of Civil Procedure 37(c)(1) provides:

> If a party fails to provide information . . . as required by Rule 26(a) or (e),
> the party is not allowed to use that information . . . to supply evidence  . . .
> at a trial, unless the failure was ***substantially justified or is harmless***.

The sanction is ***automatic and mandatory*** unless the sanctioned party can show that the violation was substantially justified or harmless. *See Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp.2d 721, 724 (E.D. Va. June 12, 2001); *see also* Fed. R. Civ. P. 37, 1993 Advisory Committee Notes (describing sanction as "self-executing" and "mandatory"). The basic purpose of Rule 37(c)(1) is preventing surprise and prejudice. *See Southern States Rack and Fixture, Inc. v. Sherwinn-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). The Fourth Circuit has established a five-factor test to determine whether a party's nondisclosure is "substantially justified or harmless." *Id*. at 596-97. Specifically, a court is to consider: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id*.

Deque cannot carry its burden to establish that its nondisclosure was substantially justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). First, Deque's failure to comply with Rule 26 will necessarily result in surprise

and prejudice to BrowserStack. Discovery is closed, trial is set for January 2025, and BrowserStack still has no notice of the amount of monetary damages Deque may claim or the calculations Deque may use to determine that amount. This has deprived BrowserStack of the opportunity to develop an informed defense to Deque's damages case and, consequently will preclude a fair and informed trial. *Silicon Knights, Inc. v. Epic Games, Inc*., No. 5:07-CV-275-D, 2012 WL 1596722, at *7 (E.D.N.C. May 7, 2012) ("[T]he prejudice…is manifest if…[plaintiff] were allowed to present at trial a damages computation never revealed to [defendant] before it came from the witnesses' lips at trial."); *Reed Constr., Inc. v. James River Ins. Co*., No. C11-960 MJP, 2012 WL 13024803, at *1-2 (W.D. Wash. Apr. 6, 2012) ("This [Rule 26 damages computation] requirement promotes transparency in litigation and informs a client's decision on whether to pursue litigation or an early settlement. Without knowing the scope of the potential damages sought, a defendant is unable to make the necessary calculations to determine how to proceed…The defendant is not required to simply guess at the value of the claim."); *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-cv-505, 2020 WL 4574493, at *7 (E.D. Va. Aug. 7, 2020) ("[I]t is abundantly clear that…[defendant] would be [inappropriately] surprised by whatever damages testimony ATG intends to elicit at trial because ATG has not disclosed the information required by Rule 26(a)[.]").

Second, Deque cannot cure this failure without a significant disruption to the schedule. An effective cure would require Deque to make a complete damages disclosure (including a computation). BrowserStack would then need to take discovery as to the basis for that disclosure and resubmit an expert report in response to Deque's late disclosure. This would necessarily postpone the current January 21, 2025 trial date, which is not justified in this case. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) ("Later disclosure of

15

damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date.  Such modifications to the court's and the parties' schedules support a finding that the failure to disclose was not harmless.") (citation omitted); *Advanced Training.*, 2020 WL 4574493, at *7, 8 (holding factor "weighs strongly in favor of the exclusion of any damages evidence at trial" where " no ability for…[plaintiff] to cure the surprise to…[defendant] without disrupting preparations for trial in this case.").

Third, while evidence of damages is important to Deque's case "the importance of this evidence cuts both ways." *Advanced Training*, 2020 WL 4574493, at *8.  It was important to BrowserStack that Deque make its required disclosures so that BrowserStack could prepare its defense.  *Id*.  If any party should now bear the brunt of Deque's nondisclosure, it should be Deque.  Moreover, "this single factor does not tilt the scale in…[Deque's] favor when it 'is only one of five [factors]…[and Deque] alone is to blame for creating this situation."  *Silicon Knights*, 2012 WL 1596722, at *8, quoting *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009).

Finally, Deque has not and cannot provide any justification for failing to provide a damages calculation.  It had the entire discovery period to get the information it needed, and a full and complete opportunity to present a damages claim.  With no justification for its failure to comply with Rule 26, Deque cannot present evidence of damages at trial, and the Court should thus enter summary judgment of no damages.  *See TCL Commc'ns*,  2016 WL 6562075, at *12 (granting summary judgment where plaintiff lacked evidence of damages because it failed to timely disclose a computation of damages); *Advanced Training Grp.*, 2020 WL 4574493, at *4 ("Because ATG did not disclose a proper damages computation as required…ATG will be precluded from introducing evidence related to any claimed damages at trial."); *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, No. 3:20CV400 (DJN), 2023 WL 3686963, at *2-4 (E.D. Va. Jan.

16

11, 2023) (precluding presentation of evidence of damages for failure to present a damages computation); *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, No. SACV 16-01841-CJC(KESx), 2019 WL 13045043, at *4-6 (C.D. Cal. Apr. 15, 2019) (granting summary judgment of no damages where plaintiff failed to disclose a damages computation); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (precluding counterclaimants from proving damages where their Rule 26(a) disclosure stated they intended to prove damages through expert testimony, but they failed to disclose any such expert-based evidence).

### B.    The Court Should Enter Summary Judgment of No Copyright Infringement

#### 1.    There Is No Allegation of Copyright Infringement For Fifteen of Deque's Seventeen Asserted Copyrighted Works

Deque identifies seventeen registered works in its pleading.  SUF 7.  It, however, makes no allegations with respect to fifteen of them.  SUF 8-9.  The FAC addresses only two works: Registration No. TX0009336480 for "Axe Dev Tools v4.9.0" and Registration No. TX 9-359-731 for "Rules Help Pages."  SUF 8 (FAC ¶¶ 42-44).  Deque's discovery responses address only those two works.  SUF 9 (Ex. 3 at Exhibit A (identifying "Deque 4.9.0" and "Deque Rules Help Pages (in web application) TX 9-359-731").  Thus, Deque's claim must be limited to only these two copyrighted works, and summary judgment with respect to the remaining fifteen asserted works should be granted.  *See Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 574 (4th Cir. 2013) (finding summary judgment in favor of defendant in copyright infringement suit proper where plaintiff "lacked sufficient evidence to support a prima facie case of infringement").

#### 2.    Deque Does Not Have Sufficient Evidence to Prove Copyright Infringement

For the remaining two asserted works, to prove infringement, Deque "must show" that BrowserStack "copied ***protected elements*** of the [copyrighted] work."  *Bouchat*, 241 F.3d at 353 (citations omitted) (emphasis added).  "Not all 'copying' is actionable…it is a constitutional

requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original.*'" *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (emphasis in original), citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *see also Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp. 3d 644, 658-59 (E.D. Va. Sept. 2, 2014) (copying "requires not only a showing that a defendant copied a plaintiff's work, but that the defendant copied 'protected elements' of the plaintiff's work") (citation omitted).

To prove copying, Deque must present sufficient evidence to show that BrowserStack's accused work is "substantially similar" to the protected elements of Deque's copyrighted works. *See Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x. 256, 263 (4th Cir. 2016), citing *Bldg. Graphics*, 708 F.3d at 577-78. In the Fourth Circuit, "there are two prongs to the substantial similarity inquiry. The plaintiff must establish substantial similarity of both the ideas of the two works and of the expression of those ideas." *Dawson*, 905 F.2d at 732 (internal citation omitted). Deque does not have sufficient evidence to satisfy either prong of the "substantial similarity" inquiry, and thus cannot prove copyright infringement.

a.    **Deque Has Insufficient Evidence of Extrinsic Similarity**

The first prong, referred to as the "extrinsic" inquiry, is an objective one that looks to external criteria of substantial similarity "between the original elements (and only the original elements) of a protected work and an alleged copy." *Copeland v. Bieber*, 789 F.3d 484, 489 (4th Cir. 2015). It typically requires the aid of expert testimony. *Id.*; *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996). "And because it is focused only on the original elements of the copyrighted work, a court examining extrinsic similarity must first engage in a process what we sometimes call 'analytic dissection,' separating out those parts of the work that are original and protected from those that are not." *Copeland*, 789 F.3d at 489 (citation omitted).

But Deque has no evidence of any "analytic dissection" of its copyrighted works. The only thing Deque provides to support its claim of copying is a chart attached as Exhibit A to its interrogatory responses, which purports to compare portions of "BrowserStack 1.0.0.4" to "Deque 4.9.0," as shown in the excerpt below:

| Deque 4.9.0:<br>Formatted excerpt of file "panel.bundle.js" | BrowserStack 1.0.0.4:<br>Formatted excerpt of file "default.1bfa8a9b.js" |
|---|---|
| }] : [{<br>    id: e + "-false",<br>    value: "false",<br>    label: f.a`No, there is no alternative`<br>}, {<br><br>    id: e + "-true-alternative",<br>    value: "true",<br>    label: f.a`Yes, there is an alternative AND the alternative is in the tab order`<br>}, {<br><br><br>    id: e + "-false-no-alternative",<br>    value: "false-no-alternative",<br>    label: f.a`Yes, there is an alternative but it is not in the tab order`<br>}] | u.createElement(ir, {<br>  ariaLabelText: "No, there is no alternative.",<br>  id: pn.NO,<br>  labelText: "No, there is no alternative.",<br><br>u.createElement(ir, {<br>  ariaLabelText: "Yes, there is an alternative and it is in the tab order.",<br>  id: pn.YES_IN_ORDER,<br>  labelText: "Yes, there is an alternative and it is in the tab order.",<br><br>u.createElement(ir, {<br>  ariaLabelText: "Yes, there is an alternative but it is not in the tab order.",<br>  id: pn.YES_NO_IN_ORDER,<br>  labelText: "Yes, there is an alternative but it is not in the tab order.", |

SUF 9-10 (Ex. 3 at Exhibit A). But this comparison is not sufficient to show extrinsic similarity for several reasons. First, Deque's interrogatory responses were not verified and thus, the responses and attached chart does not constitute admissible evidence that can be considered on summary judgment. SUF 9; *see Rowell v. Palmetto Health Alliance*, 3:093077, 2011 WL 4501978, at * 1 (D. S.C. Aug. 17, 2011) (finding unverified interrogatory responses did not constitute admissible evidence sufficient to defeat summary judgment). In addition, there is no indication of the underlying source of "BrowserStack 1.0.0.4" or "Deque 4.9.0," and thus, no way to determine whether any of the information is derived from admissible evidence. SUF 9.

Second, the chart is, at best, a mere listing of cursory comparisons between excerpts from "BrowserStack 1.0.0.4" and excerpts from "Deque 4.9.0" and the "Deque Rules Help Pages (in web application) - TX 9-359-731." SUF 9-10 (Ex. 3 at Exhibit A). Such "a list comparing 'random similarities scattered throughout the works' is 'inherently subjective and unreliable.'" *Towler*, 76 F.3d at 584, quoting *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir. 1984). A

proper extrinsic analysis requires examination of both the accused and copyrighted works, searching for extrinsic similarities. *Towler*, 76 F.3d at 584. Here, it is not even clear if the chart was based on review of software that is in evidence in this case.

Third and most importantly, nothing in Deque's interrogatory responses or attached chart conducts the required "analytic dissection" of Deque's works to separate protectable from non-protectable content. SUF 9-10. Where copyrighted works are technical in nature, "[t]he first prong of the inquiry will almost certainly require expert testimony, because…a lay person is unlikely to understand what constitutes creativity in this area, which elements are standard for the industry, and which elements are dictated by efficiency or by external standards." *Kohus*, 328 F.3d at 857-58. In this case, as exemplified above in the excerpts from Deque's chart, Deque's copyright infringement claims require comparison of source code files (*e.g.*, "panel.bundel.js" and "default.1bfa8a9b.js"). SUF 9 (Ex. 3 at Exhibit A). Analysis of Deque's source code files to determine what constitutes creativity, what is standard in coding, and what is dictated by efficiency in coding necessarily requires an expert. *Kohus*, 328 F.3d at 856 (noting expert testimony needed in cases "that involve a functional object rather than a creative work" to "establish what elements, if any, are necessary to the function"). Deque, however, has made no expert disclosure in this case. SUF 10, 32. Without the aid of an expert, there is no way to determine what portions of Deque's source code relate to what is the result of functionality and efficiency versus creativity, and whether any of the allegedly copied portions are protectable.

Indeed, several courts, including a district court in the Fourth Circuit, have adopted what is known as the abstraction-filtration-comparison test to determine the scope of copyright protection for computer programs. *SAS Inst., Inc. v. World Programming Ltd.*, 64 F.4th 1319, 1326 (Fed. Cir. 2023) (noting various circuits have adopted the abstraction-filtration-comparison

test for computer programs in copyright infringement cases); *CSS, Inc. v Herrington*, 2:16-cv-01762, 2017 WL 3381444, at *6-7 (S.D. W. Va. Aug. 4, 2017) (noting the courts that have applied the abstraction-filtration-comparison test and choosing to employ that test in analyzing asserted software copyright infringement claims). "First, a court breaks down the allegedly infringed program into its constituent structural parts—abstraction. This step 'help[s] a court separate ideas [and processes] from expression and eliminate…those portions of the work that are not eligible for protection.'" *SAS Inst.*, 64 F.4th at 1326-27 (internal citations omitted). "Second, the court sifts out all non-protectable material—filtration." *Id*. at 1327 (citations omitted). "And, third, the trier of fact compares any remaining 'core of protectable expression' with the allegedly infringing program to determine if there is in fact a substantial similarity—comparison." *Id*. (citation omitted). In applying this test to the relevant computer programs, "[c]ourts typically receive guidance from the parties' experts[.]" *Id*. at 1334 (citation omitted).

Here, Deque has no expert to guide the Court in an abstraction-filtration-comparison, or any other, analysis of its works to determine what elements are protected. SUF 10, 32. Nor has it otherwise identified in discovery any facts or contentions with which it can show that the allegedly copied portions relate to copyrightable elements of its works. SUF 9-10. In *SAS*, the Federal Circuit found a district court properly dismissed a plaintiff's copyright claim where plaintiff's expert refused to conduct a filtration analysis. 64 F.4th at 1333-34. Here, Deque does not have an expert at all, and provides no analysis of any filtering of non-copyrightable content from its works. SUF 9-10. Thus, the Court should enter summary judgment of no copyright infringement. *Id*. (noting that it is appropriate for a district court to require a plaintiff to "articulate a legally viable theory on which it expected to base its copyright infringement claims" before proceeding to trial).

Summary judgment is further warranted because what evidence does exist reveals the allegedly copied content is not copyrightable.  Deque admitted that the allegedly copied content relates to public computer accessibility standards, such as "the web content authoring guidelines, abbreviated as WCAG and ARIA, Accessible Rich Internet Applications."  SUF 11.  Deque further identified Melanie Phillips as the author of the allegedly copied content, noting that she spent "countless hours reviewing various specifications in the field of web accessibility" and "used that knowledge … in order to create these descriptions."  SUF 12.  But Ms. Phillips was not listed as someone with relevant knowledge in Deque's initial disclosures.  SUF 13 (Exs. 1, 4).  Nor was she among the 111 individuals that Deque identified as contributing "to the conception, creation and/or development of at least one of the Axe DevTools® Chrome Extension versions" or "the Docs-Issue-Help Pages versions" that are the subject of Deque's registered copyrights.  SUF 13 (Ex. 2 at 2-3).  Thus, while Ms. Phillips authored the allegedly copied material, Deque did not consider her as someone with relevant knowledge of the conception, creation, or development of its copyrighted works, which shows that Deque did not consider the material she authored to be copyrightable content.

Because Deque has no evidence, expert or otherwise, to show that the allegedly copied content concerns the protectable elements of its works, summary judgment of no infringement is appropriate.  *Copeland*, 789 F.3d at 490 n.1 (district court may grant summary judgment of no copyright infringement "under the extrinsic prong alone"); *Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1023 (E.D. Va. 1997) (noting court may determine non-infringement as a matter of law on summary judgment "because the substantial similarity between two works concerns only 'non-copyrightable elements of the plaintiff's work'") (internal quotations and citations omitted).

b.     **Deque Has Insufficient Evidence of Intrinsic Similarity**

Regardless of whether Deque has evidence to satisfy the extrinsic prong, summary judgment of no infringement is also appropriate here because Deque cannot satisfy the second "intrinsic" prong of the "substantial similarity" analysis.  The intrinsic inquiry is a subjective one that measures the "total concept and feel" of the works in question in asking if they are substantially similar.  *Copeland*, 789 F.3d at 489.  This subjective inquiry must be made from the perspective of the "intended audience" of the copyrighted work.  *Dawson*, 905 F.2d at 736.  Where the "intended audience" is narrow in that it possesses specialized expertise, "[s]uch an inquiry may include, and no doubt in many cases will require, admission of testimony from members of the intended audience or, possibly, from those who possess expertise with reference to the…perceptions of the intended audience."  *Id*.

As shown by Deque's comparison of source code files in its interrogatory response, this case undoubtedly involves the comparison of computer programs.  *See* SUF 9 (Ex. 3 at Exhibit A).  The Fourth Circuit recognizes that "[w]hen dealing with computer programs…[t]he average judge or jury cannot read source code or appreciate the 'total concept and feel' of a program.  Thus, it is necessary to rely on the reaction of persons who do typify the members of the intended audience."  *Dawson*, 905 F.2d at 736 (citing Clapes, Lynch & Steinberg, *Silicon Epics and Binary Bards: Determining the Proper Scope of Copyright Protection for Computer Programs*, 34 U.C.L.A. L.Rev. 1493, 1571 (1986-87)).  Even Deque acknowledges that the intended audience for its axe DevTools® product are software developers, not ordinary laymen.  SUF 16.  But it offers no expert testimony to assist a judge or jury in understanding the perspective of someone with computer and software expertise.  SUF 10, 32.  Without such expert testimony, there is no basis for the fact finder to find intrinsic similarity from the appropriate perspective.  Thus, Deque's failure to provide evidence of the "intended audience" is fatal to its

23

copyright infringement claim.  *See Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 977 F. Supp. 2d 567, 580 (E.D. Va. 2013) (stating a court may determine "non-infringement of a copyright as a matter of law" where "no reasonable trier of fact could find the two works in question to be substantially similar").

### 3.    Deque Is Not Entitled to Statutory Damages, Enhanced Willfulness Damages, or Attorneys' Fees as a Matter of Law

Deque also cannot recover statutory damages, enhanced damages for willful infringement, or attorneys' fees on its copyright infringement claim.  "Not every copyright owner is eligible to seek statutory damages."  *Bouchat v. Bon-Ton Dept. Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007).  The copyright statute provides that "no award of statutory damages… shall be made for…any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412; *see also Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 229 (E.D. Va. 2019) ("[I]nfringement before registration can only support a claim for statutory damages if the owner has preregistered the copyright and the registration takes effect within three months of the first publication."), citing *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).  Here, Deque alleges that BrowserStack's infringement began in May or June of 2023.  SUF 8.  This is years after publication of Deque's copyrighted works and months before Deque registered its copyrights.  SUF 7-8.  Thus, statutory damages are not available.  *See* 17 U.S.C. § 412.

Damages for willful infringement are available only as an enhancement of statutory damages.  17 U.S.C. § 504(c)(2) ("In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages"); *see also, e.g, Faulkner v. Nat'l Geographic Soc.*,

576 F. Supp. 2d 609, 613 (S.D.N.Y. 2008). Because there are no statutory damages, there can be no enhancement of those damages. Finally, as with statutory damages, to be entitled to an award of attorneys' fees, a copyright owner must register its copyright before or within three months of the work's first publication. 17 U.S.C. § 412. By Deque's own admission, it did not register its copyrights until years after publication of the works. SUF 7. Thus, BrowserStack is entitled to summary judgment on Deque's claim for willful infringement damages and attorneys' fees.

### 4.    BrowserStack India Cannot Be Liable for Copyright Infringement

"[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004), citing *Subafilms, Ltd. v. MGM–Pathe Commc'ns*, 24 F.3d 1088, 1091 (9th Cir. 1994) (en banc). BrowserStack India is an Indian entity and all its operations are in India. SUF 3. Deque has not identified any specific conduct by BrowserStack India that is alleged to have occurred within the United States. SUF 8. Thus, there is no basis to allege BrowserStack India's infringement of a U.S. copyright, and the Court, at the very least, should enter summary judgment of no infringement on behalf of BrowserStack India.

### C.    The Court Should Enter Summary Judgment of No False Advertising

Deque alleges that BrowserStack published an advertisement on its website that made the following false or misleading statements about Deque's axe DevTools® product:[5]

- BrowserStack's software is 5x faster;
- Deque's software does not have a central dashboard, and does not support multi-page scanning, report consolidation, or de-duplication of issues.

SUF 17. Deque claims fail because it has no evidence that these statements were false or misleading or that it suffered any resulting injury. *See Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d

---

[5] Deque alleges its false advertising claims against BrowserStack U.S. only. *See* FAC ¶¶ 86-103.

292, 298-99 (4th Cir. 2017) (identifying falsity and injury as elements of a federal false advertising claim); *Scotts Co., LLC v. Pennington Seed, Inc.*, No. 3:12-CV-168, 2014 WL 12591406, at *9 n.1 (E.D. Va. Feb. 26, 2014) (same analysis under Virginia law).

"For false advertising liability to arise, the contested statement must be false, and it must be a representation of fact." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015). An advertisement can be literally false or false by implication, meaning it is likely to mislead or confuse consumers of the product the statement concerns. *Id.* Deque has no evidence that any of the at-issue statements are false or misleading.

In response to discovery asking for all facts or evidence supporting its false advertising claims, Deque did not cite any facts or evidence. SUF 19. It simply restated the conclusion that the statements are false or misleading based on "[t]he fact that Defendants did not disclose that its '5x faster' claims is based on specific assumptions that make the claim misleading. The fact that Deque's software has the features that the Defendants advertisements stated it lacked." *Id.* This failure of evidence alone is enough to defeat Deque's claims.

In addition, the evidence that does exist shows that the at-issue statements were all true. With respect to the statement that BrowserStack is "5x faster," BrowserStack's product manager for the Accessibility Toolkit personally analyzed the Accessibility Toolkit and estimated it to be five times faster than existing web accessibility testing products such as Deque's axe DevTools®. SUF 10. Additionally, Deque admits that at the time this suit was filed, it was true that its axe DevTools® product did not have a central dashboard, or support report consolidation, automatic de-duplication, or multi-page scanning. SUF 21.

To the extent that Deque is relying on claims of implied falsehood, these claims also fail because Deque has no evidence, extrinsic or otherwise, that any at-issue statement is likely to

mislead or confuse consumers. *See, e.g.*, *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2014 WL 4159991, at *6 (M.D.N.C. Aug. 19, 2014), *aff'd*, 789 F.3d 495 (4th Cir. 2015). Where a plaintiff argues that a statement is literally true but misleading, "it is incumbent on the plaintiff to present 'extrinsic evidence of consumer confusion' generally in the form of consumer survey evidence." *Verisign*, 848 F.3d at 304 (internal quotations omitted and citations omitted); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 276 (4th Cir. 2002) (same) (citation omitted). The deception also "must impact a substantial segment of its audience." *Verisign, Inc. v. XYZ.com, LLC*, No. 1:14-CV-01749, 2015 WL 7430016, at *4 (E.D. Va. Nov. 20, 2015), *aff'd*, 848 F.3d 292 (4th Cir. 2017), citing *Scotts*, 315 F.3d at 273. Here, Deque does not even know if any customers saw the alleged statements, much less that they were misled by them. *See* SUF 23, 35-36. Deque cannot meet its evidentiary burden to show any consumer deception, and summary judgment is thus warranted. *See Design Res.*, 2014 WL 4159991, at *10-12 (citing cases); *Verisign*, 848 F.3d at 304-05.

Deque's claims also fail because there is no evidence that the at-issue statements caused Deque any injury. *See Verisign*, 848 F.3d at 299-300 (It is a "core requirement that a plaintiff 'show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising'"), citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); Va. Code Ann. § 59.1-68.3 (requiring plaintiff to suffer loss "as a result" of a violation). Deque does not know if any customer saw the at-issue statements, let alone if it lost any customers or revenue as a result. SUF 23. Thus, Deque cannot prevail on its false advertising claims. *See, e.g.*, *Verisign*, 2015 WL 7430016, at *5 (granting summary judgment where plaintiff could not "establish the causal connection between the alleged false statements and damages" to it); *Design Res.*, 2014 WL 4159991, at *14 (summary judgment "required"

where no evidence manufacturers read advertisements or based buying decisions on the advertisements "as opposed to any of the other incalculable business reasons"); *Wall & Assocs., Inc. v. Better Bus. Bureau of C. Va., Inc*., 685 F. App'x 277, 279 (4th Cir. 2017).

### D.    The Court Should Enter Summary Judgment of No Breach of Contract

Deque seeks recovery against both defendants for alleged breach of the Agreement based on allegations that BrowserStack (1) copied axe DevTools® into the Accessibility Toolkit, and (2) published "a purported evaluation run" on axe DevTools® "by advertising that BrowserStack is 5x faster than Deque."  SUF 24.  Deque's contract claim cannot survive summary judgment. As an initial matter, the claim fails with respect to BrowserStack U.S. because there is no evidence that the U.S. entity, or anyone on its behalf, is a party to the Agreement.  SUF 26; *Williams v. CDP, Inc*., No. 4:09CV84, 2009 WL 10689717, at *2 (E.D. Va. Sept. 17, 2009) ("[O]nly the promisor is liable for the legal interests, duties and obligations promised in the contract…Without a promisor-promisee relationship, a party may not be sued for breach of contract."), citing *Cottrell v. General Sys. Software Corp*., 448 S.E.2d 421, 422 (Va. 1994).

Moreover, the first contract breach theory based on alleged copying dies for the same reasons as Deque's copyright infringement claims as set forth in Section III.B.2. above.  The second contact breach theory fails because Deque has no evidence that BrowserStack India performed any "benchmark tests or other evaluation run" of axe DevTools® in connection with the "5x faster" statement.  SUF 27.  The undisputed evidence shows that BrowserStack assessed its Accessibility Toolkit was "5x faster" based on estimations its product manager made without conducting a benchmark test or evaluation run on axe DevTools®.  SUF 20, 27.  Because no benchmark test or evaluation run was done in connection with any statement that BrowserStack is "5x faster," there is no breach.

### E.    Plaintiff's Unjust Enrichment Claims Are Preempted

The federal Copyright Act preempts all state law rights equivalent to rights under federal copyright law, and its application is "broad and absolute."  *See* 17 U.S.C. § 301(a); *OpenRisk, LLC, v. Microstrategy Servs. Corp.*, 876 F.3d 518, 523 (4th Cir. 2017).  A two-part inquiry determines whether any state law claims are preempted: (1) whether the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102, 103; and (2) whether the rights granted under the state law are "equivalent to" those protected by federal copyright. *OpenRisk*, 876 F.3d at 523 (citation omitted).  Here, both prongs are met.

Deque bases its unjust enrichment claim on allegations that BrowserStack's misused axe DevTools® and the Rules Help Pages, the asserted copyrighted works.  SUF 28.  These works fall squarely within the subject matter of copyright.  *See OpenRisk*, 876 F.3d at 523-24 (citation omitted).  Additionally, the claim is based on alleged misuse of intellectual property in those works (*see, e.g.*, FAC ¶ 105 ("content, design and text")) and therefore seeks to protect rights "equivalent" to those protected by federal copyright.  The claim is thus preempted.  *See Microstrategy v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 536-37 (E.D. Va. 2005) (unjust enrichment claim preempted); *WJ Glob. LLC v. Farrell*, 941 F. Supp. 2d 688, 693 (E.D.N.C. 2013) (finding preemption of unjust enrichment where claim stemmed only from claim that defendant improperly acquired software and other intellectual property); *OpenRisk*, 876 F.3d at 523.

In addition, an unjust enrichment claim cannot lie where, as here, one or more contracts govern the parties' relationship.  *See e.g.*, *Pilar Servs., Inc. v. NCI Info. Sys., Inc.*, 569 F. Supp. 2d 563, 569 (E.D. Va. 2008) (granting summary judgment), citing *WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 534 (4th Cir. 2000) (where a contract governs relationship of parties, equitable remedy of restitution grounded in quasi-contract or unjust enrichment "does not lie"); *Reyes v. Wells Fargo Bank, N.A.*, No. 1:13-cv-547, 2013 WL 3874527, at *3-4 (E.D. Va. July

24, 2013) (same); *Harmon v. Dyncorp Int'l, Inc.*, No. 1:13CV1597 LMB/TRJ, 2015 WL 518594, at *15 (E.D. Va. Feb. 6, 2015), aff'd, 624 F. App'x 104 (4th Cir. 2015) ("Under Virginia law, plaintiffs cannot recover under their equitable claims for unjust enrichment or quantum meruit in the face of their valid, express FSEA."); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005) (finding enrichment claim could "not be brought in the face of an express contractual relationship between the parties" under state laws).

### F.    Deque Has No Basis to Seek an Injunction

For its copyright infringement and federal false advertising claims, Deque seeks an injunction.  FAC ¶¶ 76-77, 91-92.  But injunctive relief requires continuing harm.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (an injunction is not automatic in copyright cases and requires evidence of continuing harm); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (rejecting argument that plaintiff is automatically entitled to injunction upon a finding of copyright infringement); *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 863 (E.D. Va. 1998) (denying injunction in false advertising case where nothing in record suggested defendant would repeat the false claims).

Here, Deque has no evidence to prove continuing harm.  In fact, the undisputed evidence shows that there is no threat of continuing harm.  None of the portions of Deque's copyrighted works that it contends was copied by BrowserStack exists in the current version of BrowserStack's Accessibility Toolkit product.  SUF 14.  In addition, none of the allegedly false statements are on BrowserStack's current website.  SUF 18.  Without any continuing harm, Deque is not entitled to injunctive relief.

### V.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests the Court enter summary judgment in their favor as to all causes of action raised in the First Amended Complaint.

Dated:  November 15, 2024        Respectfully submitted,

/s/    Belinda D. Jones
Belinda D. Jones (VSB No. 72169)
bjones@cblaw.com
Roman Lifson (VSB No. 43714)
rlifson@cblaw.com
Christian & Barton, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-3095
Tel.:        (804) 697-4100
Fax:        (804) 697-4112

Ryan J. Marton (*pro hac vice* admitted)
ryan@martonribera.com
Songmee L. Connolly (*pro hac vice* admitted)
songmee@martonribera.com
Phillip J. Haack (*pro hac vice* admitted)
phaack@martonribera.com
Carolyn Chang (*pro hac vice* admitted)
carolyn@martonribera.com
Hector Ribera (*pro hac vice* admitted)
hector@martonribra.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:        (415) 360-2515

*Attorneys for Defendants BrowserStack, Inc. and BrowserStack Software Pvt. Ltd.*