# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DEQUE SYSTEMS INC., | ) |
| *Plaintiff*, | ) |
| v. | ) Civil Action No. 1:24-cv-217 (AJT/WEF) |
| BROWSERSTACK, INC., ET AL., | ) |
| *Defendants*. | ) |

**ORDER**

In this copyright infringement case, Defendants have filed motions *in limine* to restrict the admissibility of certain evidence, [Doc. No. 178] (the "*In Limine* Motions"), and the parties have filed cross-motions for summary judgment, [Doc. No. 146] (the "Plaintiff's Motion"), and [Doc. No. 138] (the "Defendants' Motion"), (collectively, the "Summary Judgment Motions"). The Court held a hearing on the Summary Judgment Motions on December 20, 2024, and on the *In Limine* Motions on January 13, 2025, following which the Court took all the motions under advisement. For the following reasons, Defendants' *In Limine* Motions concerning damages and Defendants' Summary Judgment Motion are **GRANTED**, Defendants' *In Limine* Motions concerning non-damages issues are **DENIED** as moot, and Plaintiff's Summary Judgment Motion is **DENIED**.

**I.     BACKGROUND**

Plaintiff Deque Systems, Inc. is a Virginia corporation, with a principal place of business in Herndon, Virginia. [Doc. No. 150] at 4. Defendant BrowserStack, Inc. is a Delaware corporation, with its principal place of business in Plano, Texas, and Defendant BrowserStack Software Pvt. Ltd. is an Indian private limited company, with its principal office in Mumbai, India

1

(collectively, "BrowserStack"). *Id.* Deque and BrowserStack offer competing accessibility testing services to companies so that persons with sight and hearing impairments may access websites and web-based tools.

The undisputed facts are as follows, unless indicated otherwise:

To facilitate web-based accessibility testing, Deque developed two products, the axe DevTools® software ("DevTools") and a proprietary rules engine ("Rules Help Pages"). DevTools can be downloaded as a browser extension that allows website developers to test webpage accessibility. *Id*. The Rules Help Pages is an open-source software for developers to reference when testing for accessibility, with a library of accessibility rules being continuously updated by Deque and other users. *Id*. After developing DevTools and the Rules Help Pages, Deque registered these tools with the United States Copyright Office. As relevant to this case, Registration No. TX-9-359-731 is the only registration for the Rules Help Pages, and Registration No. TX-9-336-480 is the registration for the April 2021 version of DevTools. *Id.*

Between 2021 and 2022, BrowserStack purchased at least seven licenses for DevTools and repeatedly accessed the Rules Help Pages. [Doc. No. 147-27] (Receipts); [Doc. No. 147-28] (Receipts). Upon securing the licenses, the BrowserStack purchasers agreed to be bound by the following prohibitions in Deque's licensing agreements: (1) "[BrowserStack] may not, and may not allow any third party to . . . [d]ecompile, disassemble, decrypt, or reverse engineer the Product or attempt to derive the source code for any part of the Product"; or (2) "Modify or create derivative works of the Product." [Doc. No. 147-22] (Free License); [Doc. No. 147-23] (Pro License). Deque's terms of use also provide that "[t]he information on [Deque's] website is protected by copyright. Except as specifically permitted, *no portion of this website may be distributed or*

*reproduced by any means*, or in any form, without Deque's prior written permission." [Doc. No. 147-24] (Deque Website Terms of Use) (emphasis added).

At some point in 2022, BrowserStack decided to enter the accessibility testing market and, among its strategies for doing so, was the acquisition of Deque or building on top of Deque's products. *See* [Doc. No. 150-9] (Internal Planning Document) at BROWSERSTACK-45–46. BrowserStack acted on its plans by approaching Deque regarding a potential acquisition. *See id.*; [Doc. No. 150-3] (Kumar Decl.) ¶ 16. The acquisition never occurred, and BrowserStack never obtained permission to "build on top of" Deque's products. *Id.* Nevertheless, BrowserStack entered the market in late 2022 when it rolled out the Accessibility Toolkit. [Doc. No. 150] at 7. By August 2023, BrowserStack sold a version of the Accessibility Toolkit via the Chrome Webstore, resulting in its sale and distribution to customers in the United States. *Id.* During the development of the Accessibility Toolkit, BrowserStack continued to access DevTools and the Rules Help Pages. [Doc. No. 150-13] (Data Usage Timeline).

To market its Accessibility Toolkit, BrowserStack published statements that compared the Accessibility Toolkit to Deque's products. In a side-by-side comparison table, with BrowserStack and Deque being compared, BrowserStack represented that: (i) the Accessibility Toolkit is "5x faster" than Deque's products, (ii) Deque lacks a central dashboard, (iii) Deque lacks multi-page scanning, and (iv) Deque lacks report consolidation. *Id*. at 11.

On February 13, 2024, Deque filed a Complaint against BrowserStack for copyright infringement (Count I), breach of contract (Count II), false advertising in violation of the Lanham Act (Count III), false advertising in violation of the Virginia Consumer Protection Act (Count IV), and unjust enrichment (Count V). [Doc. No. 44-1] at 1, 23–28. In its First Amended Complaint, Deque sought the following injunctive and monetary remedies in its prayer for relief: (i) to enjoin

3

BrowserStack from further copyright infringement; (ii) to obligate BrowserStack to undergo audits of its use of the DevTools software; (iii) to enjoin BrowserStack's false advertisements; (iv) actual damages; (v) lost profits; (vi) disgorgement of BrowserStack's gains, profits, and advantages generated by the unlawful conduct at issue; (v) monetary relief related to the damage to Deque's goodwill and reputation; and (vi) attorneys' fees and costs.[1] [Doc. No. 44-1] at 28–29. Discovery closed on October 11, 2024, [Doc. No. 37], and trial is set for January 21, 2025, [Doc. No. 130].

## II. LEGAL STANDARD

Motions *in limine* "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, No. 1:13-cr-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* In ruling on motions *in limine*, the Court considers the applicable procedural and evidentiary rules, and is afforded "broad discretion." *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nevertheless, a motion *in limine* "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

When reviewing a motion for summary judgment, the Court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The central question at the summary judgment stage is whether the nonmovant has produced enough evidence to demonstrate that a "dispute about a material fact is

---

[1] BrowserStack filed its first motion to dismiss on April 8, 2024, [Doc. No. 19], but before the Court ruled on that motion, Deque filed, with leave, a First Amended Complaint; and the Court denied the pending motion to dismiss as moot on May 28, 2024. [Doc. No. 46]; *see also* [Doc. No. 44]. BrowserStack moved to dismiss the First Amended Complaint on June 18, 2024. [Doc. No. 48]; and the Court denied that motion on September 11, 2024. [Doc. No. 63].

4

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### III. DISCUSSION

A. Defendants' *In Limine* Motions

BrowserStack argues that the following evidence should be excluded from trial: (i) testimony from witnesses not disclosed in Deque's Rule 26 initial disclosures; (ii) testimony from Michael Kahaian, Deque's damages expert, based on sections of his rebuttal report that improperly introduced affirmative arguments; (iii) testimony from lay witnesses about damages; (iv) testimony related to confidential settlement discussions; (v) testimony by witnesses not listed in Deque's interrogatory responses; (v) certain statements that BrowserStack claims are not relevant or prejudicial; and (vi) evidence related to conduct that occurred in India or by non-U.S.-based people. For purposes of this Order, the Court more narrowly considers the *In Limine* Motions concerning damages evidence which BrowserStack contends should be excluded because Deque failed to comply with its discovery obligations under Federal Rules of Civil Procedure and the Court's case management orders. [Doc. No. 184] at 1–4. Deque responds that BrowserStack's arguments are premature, too sweeping in what they seek to exclude, and should be preserved for trial.

B. Plaintiff's Motion for Summary Judgment

Deque seeks summary judgment on its copyright infringement, breach of contract, and false advertisement claims, arguing that, as a matter of law and based on undisputed facts, BrowserStack infringed Deque's copyrighted software, reverse engineered its software in violation

5

of their contracts, and falsely advertised that its products lacked certain features. But the resolution of these claims involves disputed facts, including whether the alleged infringement is based on unprotected aspects of Deque's products, whether BrowserStack entered into the contracts at issue, and whether BrowserStack's statement that Deque's software products were 5x slower than the Accessibility Toolkit was false. More central is whether Deque failed to provide, as required, admissible facts concerning damages, as discussed in connection with BrowserStack' Summary Judgment Motion. For the reasons stated below as to that issue, Deque's Motion will therefore be denied.

C. Defendants' Motion for Summary Judgment.

BrowserStack also seeks summary judgment on all counts on the grounds that there is no admissible evidence of Deque's damages, given its discovery failures, as detailed below. Evidence of damages is essential for Deque's case in chief [2] and, without evidence of damages, its claims cannot survive summary judgment. *See Norfolk S. Ry. Co. v. Railworks Maint. of Way, Inc.*, No. 2:22CV3, 2023 WL 5984282, at *20 (E.D. Va. Sept. 14, 2023).

Central to the resolution of both summary judgment motions and certain of the *in limine* motions is whether Deque complied with its discovery obligations concerning its damages claims. BrowserStack contends that Deque failed to disclose adequately in its initial disclosures its damages, in compliance with Rule 26(a)(1)(iii); failed to support any damages with a timely expert's report, pursuant to Rule 26(a)(2); and first identified its own calculation of damages by way of its rebuttal expert report (filed three days before the close of discovery) and its second

---

[2] At the hearing held on December 20, 2024, Deque acknowledged that BrowserStack is no longer infringing its copyrights, that BrowserStack's comparative advertisement had been taken down, that Deque has abandoned its claims for injunctive relief and is seeking only monetary damages based on the disgorgement of BrowserStack's revenue, lost profits, and avoided development costs for all five counts.

supplement to its Rule 26 disclosures (filed months after discovery had closed). Based on these failures, BrowserStack claims that Deque's evidence of damages should be excluded under Rule 37 for the purposes of the Summary Judgment Motions and trial.

Deque maintains that its disclosures during discovery put BrowserStack on notice as to its theory of damages as most of the relevant evidence was the financial information always held by BrowserStack, such that, there is no prejudicial surprise to BrowserStack, and Deque's delay was the result of BrowserStack improperly withholding relevant evidence necessary for the damages calculations. Accordingly, dispositive of the Defendants' Motion for Summary Judgment is the extent to which the Court should consider those facts and expert opinions pertaining to damages now tendered and relied upon by Deque, despite its repeated failures to comply with its discovery disclosure obligations pertaining to those damages, or whether the Court should exclude from its consideration such facts, as authorized by Rule 37.

1. <u>Whether to exclude damages evidence under Rule 37</u>

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Practically, Rule 37 gives teeth to Rule 26; and the Court begins by assessing whether Deque complied with its obligations under Rule 26 and the Court's scheduling orders. *See* Fed. R. Civ. P. 37(c) Advisory Committee Note (1993).[3]

Here, Deque clearly and repeatedly failed to disclose adequately its damages claim in its initial disclosures, responses to BrowserStack's damages interrogatories, or expert reports, as

---

[3] "[W]hile the Court has not been presented with a Rule 37 motion, it nonetheless has the discretion to apply the Rule 37 standard and conclude that certain evidence should not be considered in determining whether summary judgment is appropriate." *Norfolk S. Ry. Co.*, 2023 WL 5984282, at *6.

prescribed by Rule 26 of the Federal Rules of Civil Procedure. Rule 26(a)(1)(iii) provides that a party must provide "a computation of each category of damages claimed by the disclosing party– who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(iii). Rather than providing the required information in its initial disclosures, in June 2024, Deque simply listed the categories of damages that it sought (i.e., Deque's lost profits, disgorgement of BrowserStack's revenue, attorney's fees) without specifying any amount, any method for computing damages, or the evidence it intended to rely on. *See* [Doc. No. 141-1].

After Deque's initial disclosures failed to comply with Rule 26(a)(1)(iii), BrowserStack served interrogatories seeking more specific information about what damages Deque sought and how those damages would be calculated. On July 29, 2024, August 30, 2024, and October 4, 2024, Deque responded to BrowserStack's interrogatories but none of those submissions adequately disclosed how Deque calculated its damages or the evidentiary basis for those damages. *See* [Doc. Nos. 141-2, 141-3, 141-5].

Moreover, under Rule 26(a)(2), a party must disclose the identity of any expert witness it may use at trial and that disclosure "must be accompanied by a written report." FED. R. CIV. P. 26(a)(2)(B). Pursuant to the Scheduling Order in effect, Deque was obligated to submit its expert disclosures, if any, by August 9, 2024, and BrowserStack was obligated to submit its expert disclosures, if any, by September 23, 2024, with rebuttal expert disclosures to be served by October 8, 2024. [Doc. Nos. 37, 59]. Deque submitted no affirmative expert report by August 9, 2024, or thereafter. On September 23, 2024, BrowserStack timely filed its expert report on damages, in

8

which its expert opined that, to the extent Deque sustained any damages in any of the damages categories it claimed, those damages were between $3,000 and $67,149. [Doc. No. 110-1] at 9.

On October 8, 2024, Deque timely submitted a rebuttal expert report, authored by Michael Kahaian, who attacked the amount of damages calculated by BrowserStack's expert and, in support of that attack, provided his own calculation of damages, which ranged as high as over $30 million. Then, after discovery closed on October 11, 2024, with trial scheduled for January 21, 2025, Deque served on December 6, 2024 its second supplement to its Rule 26 disclosures, which provided with respect to the five counts, its affirmative claim for damages, as follows:

- A revenue-based calculation for BrowserStack's U.S. sales, based on BrowserStack00000653, for the period of May 16, 2023, to August 18, 2024, totaling $282,999.00. Alternatively, for the period of January 5, 2023, to February 29, 2024, a revenue-based calculation, based on BrowserStack00000652, using the following formula: $199.00 (monthly base price), multiplied by 12 (annual adjustment), multiplied by 3,004 (total number of U.S. users for the relevant period)—totaling $7,173,552.00.

- A lost profits calculation, based on the Kahaian Report, totaling $2,204,817.

- An avoided development costs calculation, based on the Kahaian Report, totaling $30,258,034.

- Only with respect to its breach of contract claim, Deque seeks to disgorge BrowserStack's revenue for non-U.S. sales, based on BrowserStack00000652, for the period of January 5, 2023, to February 29, 2024, using the following formula: $199.00 (the monthly base price), multiplied by 12 (annual adjustment), multiplied by 11,490 (number of worldwide installs (14,494) minus total number of U.S. based installs (3,004) for the relevant period) )—totaling $29,260,120.

[Doc. No. 157-7].

Where a party fails to properly disclose evidence, Rule 37 is triggered and the evidence is excluded, unless the non-disclosing party demonstrates that their failure was substantially justified or harmless. The Fourth Circuit has established a five-factor test to determine whether a party's

9

nondisclosure is "substantially justified or harmless." *S. States Rack & Fixture, Inc. v. Sherwinn-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003). Specifically, a court may consider: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id.* "The burden of establishing these factors lies with the nondisclosing party." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). Here, the five-factor analysis would apply to the three categories of damages that Deque seeks: disgorgement of revenue, lost profits, and avoided development costs.

First, with respect to the element of surprise, Deque argues that BrowserStack cannot be deemed to have been surprised by the damages calculations in its rebuttal report and second supplement to its Rule 26 disclosures because BrowserStack was on notice of the damages theories through Deque's initial disclosures and responses to interrogatories. However, Deque's prior filings made it unclear whether Deque intended to seek disgorgement of BrowserStack's profits or its revenue, since Deque's First Amended Complaint, [Doc. No. 44-1], and interrogatory responses, [Doc. Nos. 141-2, 141-3], specified the disgorgement of *profits*, and Deque's initial disclosures and later-filed interrogatory response, [Doc. Nos. 141-1, 141-5], referred to the disgorgement of *revenue*. But as discussed below, Deque's damages are based, in large part, on information and factors other than BrowserStack's own profits and revenue; and it was not until Deque served its rebuttal expert report on October 8, 2024, three days before the close of discovery, that BrowserStack was put on notice of Deque's damages claims that ranged as high as $30 million, or how they were calculated.

10

Even then, Deque's rebuttal report did not place BrowserStack on adequate notice of Deque's damages or cure Deque's failures to comply with its obligations under Rule 26(a)(2) and the Court's case management orders since rebuttal reports are "intended solely to contradict or rebut evidence on the same subject matter" identified by the other party's expert disclosures, not to provide affirmative evidence for the party's case in chief. FED. R. CIV. P. 26(a)(2)(D)(ii).

Likewise, Deque's disclosure of its damages in its second supplement to its Rule 26 disclosures did not cure those failures. Under Rule 26(e), a party must supplement Rule 26 disclosures "in a *timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the *additional or corrective information* has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e) (emphasis added). But Deque's second supplement was served on December 6, 2024, approximately a month after discovery closed on October 11, 2024, nearly six months after initial disclosures were due on June 7, 2024, and approximately one month before the trial is scheduled to begin (with intervening holidays); and compounding the untimeliness of the supplement, is that it was based on financial documents made available to Deque through discovery as early as August 2024, and updated in late September 2024. In sum, none of Deque's filings or disclosures timely provided the information on damages that Defendants were entitled to receive.

Nor can it be persuasively argued, as Deque contends, that there was no surprise to BrowserStack because its damages are allegedly based on BrowserStack's financial information, which was always in BrowserStack's possession, given that Deque's damages in large part are based, not on BrowserStack's actual profits or revenue as to the accused products but rather on hypotheticals, not substantially reflected in BrowserStack's actual commercial experience. For

11

example, under its revenue disgorgement theory, Deque sought anywhere from $282,999 to over $30 million, relying not only on the accused product but on other unspecified products,[4] relying on non-U.S. sales, and relying on a hypothetical number of BrowserStack customers based on Chrome store "clicks," demonstrating that BrowserStack could not merely review its own financial information to determine the damages Deque sought. Likewise, its lost profits and avoided development costs theories rely almost exclusively on Deque's financial information, not BrowserStack's. *See Ruddy v. Bluestream Pro. Serv., LLC*, No. 1:18-CV-1480, 2020 WL 13694227, at *4 (E.D. Va. July 16, 2020) (rejecting plaintiff's argument that defendants could calculate her damages by reviewing their wage and salary documents to speculate as to what damages plaintiff will claim because a plaintiff "cannot rewrite the requirements of the Federal Rules of Civil Procedure . . . to transfer [its] burden to defendants"). For these reasons, the element of surprise factor weighs against Deque.

Further, Deque's failures cannot be easily cured. Discovery would need to be reopened for the purpose of deposing Kahaian, or other witnesses that Deque intends to rely on for damages, *see infra.* p. 8, and [Doc. No. 154] at 43:7–13, revised expert opinions reports would likely need to be prepared, *id.* at 45:4–10; additional depositions would be in order, including those of Adobe and HSBC employees who have information relied upon by Deque in support of its alleged lost profits; and the trial would need to be continued for a significant period of time, causing disruption

---

[4] At the January 13, 2025 hearing before this Court, Deque's counsel argued that it sought to disgorge BrowserStack's profits for the Accessibility Toolkit and other "products that enable accessibility testing on automated basis." However, Deque's initial disclosures and corresponding supplements identified specifically the Accessibility Toolkit as the basis for its disgorgement claim, and did not specify disgorgement amounts attributable specifically to any other products. Likewise, the First Amended Complaint discusses the Accessibility Toolkit, with only a passing generic mention of BrowserStack's "Accessibility Testing products" without specifying what those products are. [Doc. No. 44-1] ¶ 62.

12

to the Court's docket generally, all of which weighs heavily against Deque. *See Wilkins*, 751 F.3d at 223 (affirming the exclusion of evidence under Rule 37 because of the untimely disclosure); *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) (affirming the exclusion of evidence under Rule 37, in part, because of the court's high volume of cases and the need for parties to meet court-imposed discovery deadlines). Therefore, the second and third *Southern States* factors weigh against Deque.

With respect to the fourth *Southern States* factor, there is no question that the evidence at issue is important, as it relates to an essential element for each of Deque's five claims. As the Fourth Circuit has repeatedly noted, "the more important the evidence, the more important it is for the proponent to disclose [the evidence] in a timely manner because it is more likely to prejudice the opposing party." *Sparks*, 986 F.3d at 343 (internal citations omitted). Given the importance of this information, requiring BrowserStack to proceed to trial under the current posture of the case would impose substantial prejudice. As a result, Deque's delay in disclosing such material evidence cuts against Deque.

Finally, Deque contends that its delay was substantially justified because it was caused by BrowserStack's improper withholding of evidence. That explanation was rejected by the Magistrate Judge who coordinated the discovery in this case and denied Deque's motion to compel additional discovery, explaining to Deque that BrowserStack "provided you with the discovery necessary to reasonably calculate your damages if you get there." [Doc. No. 154] at 44:4–7. Deque has not provided any other explanation for its lateness. Moreover, as discussed above and found by the Magistrate Judge, BrowserStack timely produced in discovery the information it possessed that Deque has relied on, and Deque's damages claims are, to a substantial degree, based on sources of information not in BrowserStack's possession.

13

Given the sequence of events discussed above, the Court finds no justification for Deque's discovery lapses. Where a party's noncompliance with Rule 26(a)(1) is not substantially justified or harmless, the district court has "broad discretion in its choice of the type and degree of the sanctions to be imposed." *Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 801 (4th Cir. 1975). One of the sanctions that may be imposed is excluding certain evidence when determining whether summary judgment is appropriate. *See Norfolk S. Ry. Co.*, 2023 WL 5984282, at *6.

Here, Deque was aware of its discovery deadlines, repeatedly missed those deadlines, attempted to circumvent the deadlines through untimely supplemental disclosures and rebuttal reports not permitted for the purpose now relied upon by Deque, and those errors were not harmless or substantially justified. Therefore, the Court will grant Defendants' *In Limine* Motions pertaining to damages and exclude under Rule 37 Deque's evidence pertaining to damages contained in its rebuttal expert report and second supplement to its Rule 26 disclosures.

2. <u>Whether summary judgment is appropriate</u>

Next, the Court must determine whether any of Deque's claims can survive without the affirmative evidence of damages which has been excluded under Rule 37.

Upon excluding the rebuttal expert report and second supplement to Deque's Rule 26 disclosures, the only remaining evidence regarding damages is BrowserStack's expert report and certain lay witnesses that Deque claims could testify as to damages. Whether to permit Deque to call BrowserStack's expert witness during Deque's case in chief is a decision "committed to the sound discretion of the district court." *N5 Techs. LLC v. Cap. One N.A.*, 56 F. Supp. 3d 755, 766 (E.D. Va. 2014) (citing *Peterson v. Willie,* 81 F.3d 1033, 1037–38, 1038 n.4. (11th Cir. 1996)); *see also Santos-Arrieta v. Hosp. Del Maestro*, 14 F.4th 1, 4 (1st Cir. 2021). In applying the discretionary balancing standard, courts have routinely weighed: "[i] the interests of the party seeking access to the expert and [ii] the interests of the court in an informed resolution of the claims

14

in the case, balanced against [iii] the possibility of prejudice arising from prior retention of the expert by the opposing party." *N5 Techs. LLC*, 56 F. Supp. 3d at 766 (internal citations omitted). Here, there is no persuasive reason to exercise discretion in favor of allowing Deque to call BrowserStack's expert after Deque repeatedly failed to disclose adequately its own damages evidence.

Further, the only lay witnesses Deque would call to testify as to damages would be Preety Kumar, Deque's Chief Executive Officer, who was deposed as Deque's corporate representative pursuant to Rule 30(b)(6) with respect to " all damages [Deque] claim or otherwise seek to recover in this Action" and Neel Sinha, Deque's Vice President for Sales, who was deposed as Deque's corporate representative pursuant to Rule 30 (B)(6) as to "revenues and profits" related to Deque's copyrighted products, neither of whom explained with any specificity Deque's claimed damages, or how they were calculated; nor do they appear to have the necessary qualifications to testify about BrowserStack's financials under Rule 701 of the Federal Rules of Evidence. *See* FED. R. EVID. 701. Therefore, Deque has no evidence of damages that it could present during its case in chief, such evidence is essential to all five claims, and the claims cannot survive summary judgment. *See Norfolk S. Ry. Co.*, 2023 WL 5984282, at *20 (granting summary judgment after excluding damages evidence under Rule 37); *King v. King*, 117 F.4th 301, 308 (5th Cir. 2024) (same). The Court does not lightly dismiss this case but, under all the circumstances, finds no other disposition is warranted.

Accordingly, it is hereby

**ORDERED** that Defendants' *In Limine* Motions Nos. 1, 2, 3, and 4 [Doc. Nos. 178, 184], be, and the same hereby are **GRANTED**; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 138], be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment, [Doc. No. 146], be, and the same hereby is, **DENIED**; and it is further

**ORDERED** that Defendants' *In Limine* Motions Nos. 5-16, [Doc. Nos. 178, 184], be, and the same hereby are **DENIED**, as moot.

The Clerk is directed to forward copies of this Order to all counsel of record and to enter judgment in favor of Defendants on all counts pursuant to Rule 58.

January 13, 2025  
Alexandria, Virginia

/s/  
Anthony J. Trenga  
Senior U.S. District Judge